UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOR VASQUEZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET SERVICES, INC., WHOLE FOODS MARKET GROUP, INC.,<br><br>    Defendants. | Case No. 1:17-cv-00112-APM |

## SECOND JOINT STATUS REPORT

In accordance with Court's Scheduling Orders, the parties in *Vasquez, et al. v. Whole Foods Market Services, Inc. & Whole Foods Market Group, Inc.,* Case No. 1:17-cv-00112 ("Vasquez") submit the following Second Joint Status Report. A Status Conference is currently set for Wednesday, January 9, 2019, at 2:00 PM.

**1.   Scheduling Order**

On July 11, 2018, the Court entered a scheduling order. *See* Dkt. 39. As part of the scheduling order, the Court ordered the parties to "conduct a recurring status conference every ninety (90) days to determine the status of discovery."

This is the Court's second recurring status conference. The Court's next scheduling conference would tentatively be scheduled for April 9, 2019. As discussed more fully below, document production was scheduled to be complete on January 1. However, despite Whole Foods' diligent efforts, that deadline could not be met. Whole Foods has completed 7 rounds of document production, totaling approximately 22,000 documents, including

1

certain of the "core" documents in this litigation. In addition, based on the allegations of the complaints, the discovery to date, and Whole Foods' internal fact-gathering in connection therewith, Whole Foods has identified some 189 custodians whose electronically stored information will need to be reviewed.[1] The parties will be conferring on an e-discovery protocol, and agree to make a good faith effort to reach a reasonable compromise on search terms to be used for the review and production of all of Whole Foods' 189 custodians' electronically stored information. As outlined in more detail below, given the breadth of discovery in this case and the time and resources required to process, review, and produce both electronically stored information and physical documents Whole Foods seeks, with Plaintiffs consent, leave to modify the scheduling order to extend the deadline to complete document production by six months. The reasons for this requested extension are set forth more fully in section 6.A, below. The Parties will provide an update to the Court on the status of document production during the April scheduling conference. Based on this requested six-month extension for document production, the Parties likewise seek to modify the scheduling order to extend the deadlines for completing written discovery, depositions, expert discovery, and dispositive motions.

---

[1] These custodians include all of the named plaintiffs in both this case and *Molock*; all Store Team Leaders (STLs), Assistant Store Team Leaders (ASTLs), and Payroll Benefit Specialists (PBSs) for the stores at which the Plaintiffs worked during the time they worked there; individuals specifically identified in plaintiffs' interrogatory responses or initial disclosures, either in this case or *Molock*; and individuals who are responsive to Plaintiffs' general request for certain categories of custodians, such as "central payroll specialists" or employees with access to the "gainsharing@wholefoods.com" email address.

*AUS 536807860v11*

2.  **Initial Disclosures**

Per the Court's scheduling orders, the Parties exchanged initial disclosures on or before July 1, 2018. To date, the parties have not raised any disputes concerning these initial disclosures.

3.  **Protective Order**

The Court entered a Confidentiality and Protective Order on August 6, 2018. *See Protective Order* [Dkt. 47]. The parties do not request any modification to the Confidentiality and Protective Orders at this time.

4.  **Written Discovery**

Pursuant to the Court's scheduling orders, the parties propounded their initial written discovery requests—including a first set of interrogatories and first set of requests for production—on or before July 1, 2018. *See* Scheduling Order [Dkt. 39] at 2. The parties produced their respective written responses.

Since the last status report, the parties have not raised or conferred on any disputes concerning other party's written discovery responses. The Parties reserve the right to raise disputes concerning written discovery responses as discovery is ongoing.

Supplemental responses to all written discovery requests in both cases are presently due April 3, 2019. *See* Scheduling Order [Dkt 39] Part II.F. Given the Parties request to extend the deadline for document production, the Parties request that the Court also extend the deadline for responding to written discovery request by six months, up to and including October 3, 2019.

5.  **Joinder of parties/amendment of pleadings**

The deadline for joining parties or amending the pleadings was September 1, 2018. *See* Scheduling Order [Dkt. 39] Part II.D. Neither the Plaintiffs nor Defendants have

3

sought to join another party or amend their respective pleadings at this time. The Parties reserve the right to seek leave to amend their respective pleadings or join additional parties, or oppose any such motion for leave, in the future.

**6.      Production of documents**

    A.    *Agreed Extension of Deadline for Document Production*

Production of documents was scheduled to be completed in both cases by January 1, 2019. *See* Scheduling Order [Dkt. 39] Part II.E. As of the date of this filing, Whole Foods has produced 7 separate rolling productions, encompassing 22,000 total documents representing more than 39,000 pages of materials. These include:

- all written policies and procedures concerning the Gainsharing program during the relevant period;

- all Gainsharing reports for the 22 Phase One Stores (as defined in *Molock*) in the Mid-Atlantic Region within the three years prior to the investigation of the *Vasquez* plaintiffs;

- the Whole Foods internal investigative reports generated in or about December 2016 regarding questioned gainsharing activities at twelve stores in the Washington, D.C. Metropolitan Area, including the interview records and witness statements obtained during that investigation;

- three months' worth of raw gainsharing data from 2016, showing the data underlying gainsharing calculations, for all stores nationwide;

- an additional three months' of recovered Gainsharing reports from 2015, broken down by store, for all stores nationwide;

- personnel files for every plaintiff in either this case or *Molock*; and

- three years' worth of responsive material from Iron Mountain for one—specifically, the store in Annapolis, Maryland—for purposes of exemplifying the volume and type of store-level hard-copy records that may exist.

The Plaintiffs produced their first rolling production, encompassing 1,905 pages of documents. Plaintiffs have confirmed that they anticipate producing additional documents.

4

Whole Foods has retained a new, nationally recognized document vendor to streamline the process of managing and producing documents in both this case and *Molock*. As discussed more fully below, the anticipated collection, processing, review, and production of documents in these cases will be massive, complex, and time-consuming. In an effort to avoid potential pitfalls during this production, Whole Foods is spending significant effort on the front end to resolve as many disputes as possible regarding the scope of discovery and to ensure that the vendor is given as clear directions as possible to address potential issues or disputes that may arise in the future.

Given the breadth of discovery, the Parties request to extend the deadline to complete document production in both this case and the *Molock* case by **six months**, up to and including June 1, 2019. This extension is necessary to afford Whole Foods sufficient time to produce the following categories of documents:

- Collecting and processing all electronically stored information for the 189 custodians identified by Plaintiffs. Whole Foods' vendor is currently processing the electronic data from approximately 60 of the 189 custodians, so that it can run both Plaintiffs' and Whole Foods' proposed list of search terms against that subset of custodians' data. Once the vendor provides the Parties with a "hit count" of those search term lists, the Parties will confer and attempt to agree on a refined search term list that can then be used for all custodians. However, even for that subset of 60 custodians, the vendor has advised Whole Foods that it is processing more than 308 gigabytes of data, which has taken 5 weeks to upload and sufficiently process the data so that searches may be run against it. The vendor has advised that each gigabyte of data represents approximately 100,000 emails, meaning just the 60 custodians have approximately 3 million emails upon which search terms will be applied. Given that this represents less than 1/3 of the total custodians, Whole Foods anticipates that the vendor will ultimately have to process over 1 terabyte of data for all custodians before it could run a complete search utilizing any agreed-upon search terms, then process those search results into a format that will be usable for Whole Foods document review. Even conservatively assuming that the Parties' agreed search terms will only find a "hit" in 20% of

5

those collected electronic materials, after de-duplication, Whole Foods anticipates that this e-discovery protocol will generate several hundreds of thousands of documents for document review. Whole Foods anticipates that once the Parties have finalized the relevant search terms—either by agreement or Court ruling—the vendor will be able to run those searches and prepare the results for document review within 4 weeks.

- Collecting, scanning, and processing all physical documents housed on-site at Phase One Stores.[2] Whole Foods' policy is that a store is required to maintain hard copies of paper documents on-site for a minimum of two years before those documents can be shipped to Iron Mountain. However, stores may maintain more than two years of documents on-site in order to accumulate a sufficient "mass" of boxes to ship to Iron Mountain. Based on its review of the Iron Mountain ledger, Whole Foods understands that the only Phase One Stores which may have relevant physical documents on-site are the nine stores at which the Plaintiffs worked, plus all of the stores in Maryland and the District of Columbia, representing 22 stores total.[3] Whole Foods has no way of knowing the volume of potentially relevant documents that may exist at all of these stores until it sends a legal professional to perform a cursory review of those documents on site. However, assuming that each store, on average, has approximately one year's worth of on-site material that needs to be scanned, based on previous review of Iron Mountain material, it is reasonable to assume that Whole Foods will collect approximately 6,000 documents per store. That would represent over 130,000 physical documents that need to be collected from stores on site.

- Collecting, processing, and scanning all physical documents for Phase One stores that are housed in Iron Mountain.[4] As discussed more fully below, there are approximately 140 boxes from Phase One Stores that—based on Iron Mountain's ledger—may contain potentially responsive material. Whole Foods has processed the six

---

[2] The *Vasquez* Plaintiffs are not requesting any physical documents from the stores in which they worked. This production relates to the *Molock* case.

[3] There are additional Phase One stores where the *Vasquez* Plaintiffs previously worked. However, based on its review of the Iron Mountain ledger, any hard documents from those stores corresponding to the time when a Plaintiff worked at that store have already been transferred to Iron Mountain. Therefore, Whole Foods does not anticipate conducting additional, on-site collection of documents for those additional stores.

[4] The *Vasquez* Plaintiffs are not requesting this information as described more fully in Section 6.D below. This production relates to the *Molock* case.

6

relevant Iron Mountain boxes from the Annapolis store in order to get a rough estimate of the scope of this hard-document review.[5] Those six boxes produced approximately 18,000 documents that Whole Foods then reviewed for responsiveness, indicating that each Iron Mountain box contains approximately 3,000 documents. As discussed more fully below, Whole Foods requests that the review of this Iron Mountain material be limited in order to avoid the scanning, review, and production of over 400,000 documents whose limited probative value is outweighed by the burden of production, as a result of which such review would be disproportionate in scope. Regardless of what limits the Parties or the Court may agree to, however, Whole Foods anticipates that it will likely have to review several tens of thousands of documents from this Iron Mountain collection.

- After collecting and processing the ESI, On-Site, and Iron Mountain material listed above, Whole Foods then has to begin actually reviewing all of this collected material for responsiveness and privilege.[6] Based on the above calculation of sources of documents, Whole Foods anticipates that, at a minimum, it will have to review 500,000 documents. Whole Foods has retained a third-party document review vendor to expedite this document. However, even with the fifteen reviewers designated for this review, it will take Whole Foods several months to review and produce the hundreds of thousands of documents captured above.

- In addition, Plaintiffs have requested that Whole Foods separately produce "raw" timekeeper data from Whole Foods' third-party vendor, Kronos. The Plaintiffs in this case and *Molock* are conferring with each other, and will provide Whole Foods with a more specific description of exactly what data they are seeking. Once Plaintiffs provide that description, there is a question whether that data exists in a usable format and, if so, how to produce that data without violating any licensing or contractual obligations Whole Foods has with Kronos. The Parties will confer regarding this production once Whole Foods can provide sufficient information regarding this data.

---

[5] The Annapolis store was used as an example because (a) it is Maryland store that none of the *Vasquez* Plaintiffs worked in, and therefore it is only "Phase One response" for the three years prior to the investigation of the *Vasquez* plaintiffs and (b) the Iron Mountain ledger for the Annapolis store's material had the most consistently detailed description of any of the Phase One Stores.

[6] The *Vasquez* Plaintiffs are not requesting this information as described more fully in Section 6.D below. This production relates to the *Molock* case.

7

- Plaintiffs also request that Whole Foods separately produce all "audits" of the Gainsharing program. Whole Foods is in the process of determining what files or documents, if any, are maintained regarding any such "audits" and how to best collect, process, and produce that data. The Parties will confer regarding this production once Whole Foods can provide sufficient information to assist in negotiation.

- Finally, to the extent either Plaintiffs or Whole Foods cannot obtain relevant documents directly from each other, it is possible that the Parties will each need to seek third-party discovery. The Parties will not know what scope of third-party discovery, if any, is appropriate until they have first made a diligent effort to obtain what information they can from the Parties to this action.

Based on the substantial time and expense needed to complete the above discovery, the Parties believe that a six-month extension for document production is necessary. This is the first requested extension of this deadline.

The parties will confer on reasonable parameters for the e-Discovery protocol, as well as other potential document-production issues. To the extent that the Parties cannot reach a mutually agree on these issues, they may request a conference with the Court to resolve those disputes.

B. *Scope of Discovery in Vasquez*

(1) <u>Whole Foods' Position</u>

As discussed in the previous status conference, Whole Foods contends that because (a) the Court encouraged the parties in both *Molock* and *Vasquez* to coordinate discovery; (b) the Court's Scheduling Order in *Molock* limits "Phase One" discovery to Whole Foods stores in the District of Columbia, Maryland, and any store at which the *Vasquez* Plaintiffs previously worked;[7] and (c) Plaintiffs' only claims are for defamation and "false light,"

---

[7] The specific language concerning Phase One discovery in the Molock Scheduling Order is as follows:

8

with an unspecified but certainly limited scope of potential damages, Whole Foods should be allowed to limit the scope of its discovery response in this case to the same Phase One discovery scope as in *Molock*. Counsel for the *Vasquez* Plaintiffs contends that this is an improper restriction on the scope of discovery for his clients' claims that is unsupported by any Order of this Court.

At the previous status conference, the Court asked Plaintiffs to "give me an example of what it is that you're looking for that's outside phase 1." Tr. Of Joint Status Conference [DKT 49] 4:18–6:10. Plaintiffs' counsel stated that a "perfect example" was Whole Foods' "gainsharing reports," and Plaintiffs requested that the Court order Whole Foods to produce three months of gainsharing reports for every Whole Foods store nationwide. The Court ordered Whole Foods to produce the raw data underlying these reports for that time period, and Whole Foods has produced those documents. Furthermore, given Plaintiffs' expressed concern that they could not decipher this raw data, Whole Foods voluntarily produced an additional three months' worth of Gainsharing reports from stores, nationwide, for July, August, and September of 2015.

Plaintiffs' counsel has recently identified additional examples of discovery that they seek outside of Phase One discovery identified in *Molock*. Therefore, Whole Foods

---

In light of its ruling, pending resolution of the interlocutory appeal, the court stays all discovery with respect to certification of a nationwide class. Accordingly, the scope of discovery in this case shall proceed with respect to all Whole Foods grocery stores operated by WFMG in the District of Columbia, Maryland, and any other store at which a plaintiff in *Vasquez* was employed. This limitation does not preclude Plaintiffs from attempting to discover the extent to which WFMG executives, officers, and employees directed or had knowledge of alleged abuses of the Gainsharing program.

Molock Scheduling Order [Dkt. 46] at 2.

9

respectfully requests that the Court treat the outstanding discovery requests as limited to Phase One discovery at this time. Whole Foods has not had an opportunity to fully review Plaintiffs' proposed non-Phase One discovery requests. Therefore, Whole Foods requests that the Parties confer regarding these requests and, if they are unable to reach an agreement, that the Parties address any dispute using the discovery-dispute procedure outlined in the Court's Scheduling Order. *See* Scheduling Order [Dkt. 39] Part III.

(2) *Vasquez* Plaintiffs' Position

This is Whole Foods' third attempt to limit discovery in this case to "phased discovery." Whole Foods first asked the Court to adopt this "phased" discovery in the Joint Rule 26(f) report. *See* ECF No. 38 at 7-8. Plaintiffs objected then, as they do now, to any attempt to informally consolidate the *Vasquez* and the *Molock* cases for the purposes of discovery. The Court denied Whole Foods' request to consolidate discovery. *See* Scheduling Order at 1 [Dkt. 39]. The Court previously found that "in order to avoid unnecessary conflicts and expense, conserve judicial resources, and expedite the disposition of both cases, the court will not consolidate discovery in both cases." *Id.* Then again in the Joint Status Report filed on September 27, 2018, Whole Foods pleaded with the Court to consolidate discovery in *Molock* and *Vasquez*. *See* ECF No. 48 at 4-8. The Court against declined to adopt "phased" discovery in this case. *See* Tr. 33:13-37:23 [ECF No. 49].

It is unclear why Whole Foods is again attempting to force this case into the phased discovery that is only applicable to the *Molock* class action lawsuit. This is especially true since the outstanding discovery that Plaintiffs are seeking beyond the Mid-Atlantic region

10

is limited in nature.[8]  Specifically, Plaintiffs are seeking the following documents from Whole Foods:

(1)  All communications subject to the e-discovery protocol outlined below in Section B.

(2)  All documents relating to the transfer of labor contained in the Kronos system.

(3)  All audits, audit reports, and/or documents referring or relating to audits from the Kronos system from December 2010 through the present.

(4)  All documents (including without limitation the raw data from Kronos) showing manual inputs and/or modifications of labor in the Kronos systems.

(5)  All documents and communications relied upon by Brooke Buchanan in making her comments to the Associated Press and Washington Post; and all communication sent to, sent from, or received by Brooke Buchanan referring or relating to Plaintiffs and/or the shifting of labor costs. (Requests for Production Nos. 35-40)

(6)  Timekeeper Transaction Forms (TTFs) as described more fully below in Section C.

(7)  All documents relating to Whole Foods' Counterclaim and alleged damages. (Requests for Production Nos. 50-52).

C.   *E-discovery*

The parties have exchanged proposed e-discovery search terms and custodian lists to be used in Whole Foods' e-discovery protocol.  Counsel for Plaintiffs in this case and in *Molock* have proposed using a single list of search terms and custodians, consisting of 189 custodians and broad search terms.  Whole Foods' vendor is running Plaintiffs' proposed search terms on 62[9] of the 189 custodians to determine the hit count for those custodians

---

[8]  This list is not an exhaustive list of all outstanding discovery.  This list only identifies the areas that Whole Foods appears to be limiting as "phased" discovery.
[9]  These custodians include the Plaintiffs, the ASTLs and PBSs at the nine stores where Plaintiffs last worked, and the regional Whole Foods management for the Mid-Atlantic Region, which encompasses all of Virginia, Maryland, and the District of Columbia.

11

using Plaintiffs' proposed terms.  Once they have reviewed these hit-counts, the Parties have agreed to confer in good faith to agree upon a final list of e-discovery search terms. If the Parties are unable to reach an agreement, they will use the discovery-dispute procedure outlined in the Court's Scheduling Order. *See* Scheduling Order [Dkt. 39] Part III.

    D.    ***Iron Mountain material.***

        (1)    <u>Whole Foods' Position</u>

In addition to the above e-discovery, Plaintiffs' discovery requests in both cases require Whole Foods to collect and review a large number of physical documents that are located at Whole Foods stores or were previously located at Whole Foods' stores but are now located in off-site storage at an Iron Mountain facility. There are numerous Iron Mountain facilities throughout the country where such documents are located.  For example, plaintiffs in both cases have requested copies of all Timekeeper Transaction Forms (TTFs), which are filled out manually by store management and kept on site at the respective store for a limited period of time and then moved to Iron Mountain.  This issue was raised at the previous status conference, in which the Court noted that this "is the kind of burdensome discovery that I just talked about that may warrant narrowing the scope of that search [for nationwide TTFs] at this point." Tr. of Joint Status Conference [DKT 49] 27:21–28:13.  However, because Whole Foods had not yet begun reviewing this Iron Mountain material, the parties did not ask the Court to address the issue at that time.

Now that Whole Foods has begun producing some of the documents housed at Iron Mountain, Whole Foods requests that the Court intervene to limit the scope of this burdensome discovery.  As outlined in the previous Joint Status Report, Whole Foods contacted Iron Mountain and obtained a ledger of over **61,000 boxes of documents** from

12

the Phase One stores alone. Whole Foods has reviewed the ledger and identified 146 boxes that may contain relevant material for the at-issue stores based on the boxes' descriptions.

Whole Foods has processed six of these boxes—representing the potentially responsive material from the Annapolis store, which is a Phase One Store in Maryland that none of the *Vasquez* Plaintiffs ever worked in. These six boxes generated approximately 18,000 total documents that defense counsel has now reviewed for responsiveness. Defense counsel has spent approximately 90 hours on document review to complete the review and production of the first quarter of those documents alone. Iron Mountain estimates that it will cost an additional $86,700.00 to scan the remaining 140 boxes from the Phase One stores, merely to get them ready for Whole Foods' review. Assuming those 140 boxes contain approximately the same number of documents as the previous 6, this will represent an additional 420,000 documents that Defendants will be required to review for responsiveness. Assuming the same level of review is necessary, review of those documents will entail thousands of hours of attorney time.

Moreover, there are still well over 60,000 boxes on the Iron Mountain ledger that either do not contain a description of the contents or have a description that is too vague as to indicate whether or not it may contain responsive documents. Whole Foods has contacted representatives at Iron Mountain concerning the cost associated with conducting even a conservative, cursory review of these boxes from the at-issue stores since 2013. Iron Mountain has informed Whole Foods that for Iron Mountain to pull the approximately 10,000 boxes from the at-issue stores that have no description in the ledger and for Iron Mountain to create an inventory of which boxes potentially contain Gainsharing documents would cost in excess of $150,000. This does not even capture the tens if not hundreds of

thousands of additional dollars it would cost to scan and process these documents or the hundreds if not thousands of hours it would require Whole Foods counsel to review these documents. This potential burden of collecting and producing these physical documents far outstrips their probative value in this case and would be disproportionate.

Given the substantial expense Whole Foods has already incurred and continues to incur in complying with e-discovery, Whole Foods requests reasonable limits be imposed for this off-site document collection. First, Whole Foods proposes that, for now, its processing, review, and production with respect to the remaining 140 boxes that have been identified as more likely to contain potentially relevant documents from the Phase One stores should be limited to only those boxes from October 1, 2015 through October 31, 2016—representing the year prior to the first anonymous report that led to the investigation of these Plaintiffs. According to Whole Foods' notes, this would reduce the number of boxes to 6, representing approximately 18,000 documents for review. This is in addition to Whole Foods' collection, review, and production of (1) the hard-copy documents housed on-site at the Phase One Stores, which likely will include several thousand additional documents,[10] and (2) the ESI discussed in section 6.B above. If, after review of that smaller set of documents, Plaintiffs contend that they need to conduct additional discovery of this material, Whole Foods requests that the Court impose reasonable limits on such discovery, including but not limited to cost sharing between the parties to offset the

---

[10] Whole Foods' policy is to retain physical documents for each store on-site for at least three years, and then ship those documents to Iron Mountain. Whole Foods will have to send outside counsel to the applicable stores to review this on-site material to determine what portions, if any, contain potentially responsive documents that need to be processed. Whole Foods has not yet calculated exactly how many boxes of documents from the Phase One Stores are on site. The relevant Phase One materials are located in 22 different stores located in the D.C. metropolitan area.

*AUS 536807860v11*

substantial, disproportionate financial burden involved in both collecting these documents and hiring outside document review teams.

Finally, Whole Foods requests that if Plaintiffs seek review of any portion of the 60,000 untagged boxes still in Iron Mountain (i.e., the boxes that do not contain a description of the contents suggesting the presences of potentially relevant documents), Plaintiffs be required to first show good cause for whatever additional discovery they request, and provide an appropriate proposal for cost-sharing.

(2) Plaintiff's Response

One of the defamatory statements at issue in this case is Whole Foods' statement to the Washington Post that it conducted an investigation and that the purported manipulation of the gainsharing was "isolated to a relatively small number of its 457 stores." According to Brooke Buchanan, "relative to the rest of the company, this manipulation only happened in nine of our locations." So, essentially Whole Foods is claiming that it was able to conduct a company-wide investigation[11] of 457 stores before determining that the purported gainsharing manipulation only occurred in the nine stores where Plaintiffs worked. Yet now in this lawsuit when Plaintiffs request Whole Foods to produce the documents that it must have necessarily reviewed as part of its company-wide investigation, Whole Foods claims that the request is too burdensome and expensive. If it is true that a company-wide investigation was conducted, it was completed in a short amount of time and Whole Foods should be able to produce the results of the investigation.

---

[11] Brook Buchanan, a spokeswoman for Austin, Texas-based Whole Foods Market Inc., said they were dismissed in recent weeks **after a company-wide investigation**. *See AP, American-Statesman staff.*

Nonetheless, Plaintiffs are not requesting "Whole Foods to collect and review a large number of physical documents" as Whole Foods claims.[12] The only physical documents that Whole Foods has identified that it intends to produce are TTFs. Plaintiffs are willing to target their requests for TTFs to specific stores, for specific months pursuant to the following proposal.

On December 27, 2018, Whole Foods produced gainsharing reports for every store in the country for the months of July, August, and September 2015. Plaintiffs have begun reviewing those reports to identify the stores that had labor transfers occur during the three-month period. Once those stores are identified, Plaintiffs will request Whole Foods to produce TTFs for each specific store that had a labor transfer during that time-period. This will certainly limit the scope of Whole Foods' review and production of the physical documents stored in Iron Mountain.

In addition, Plaintiffs further request TTFs for each of the 40 gainsharing reports produced by Plaintiffs that show transfers of labor occurring in stores other than those nine stores where Plaintiffs worked. *See* VasquezPlaintiffs 000001—VasquezPlaintiffs 001518. The TTFs (or lack thereof) will show that labor was transferred in stores across the country, and that Whole Foods statement that the purported "manipulation" of gainsharing was limited to nine stores is false.

---

[12] Furthermore, the majority of documents that Whole Foods is attempting to gather from the stores where Plaintiffs worked are not needed for Plaintiffs' affirmative defamation case, as Plaintiffs proofs will rest on whether any other stores or regions were shifting labor costs – not the nine stores where Plaintiffs worked when they were terminated. To the extent Whole Foods requires such documents for its counterclaims, Plaintiffs will, of course, request copies, but it is not Plaintiffs' requests in this case that will lead to the enormous discovery described by Whole Foods.

16

**7.   Fact-Witness Depositions**

Depositions of fact witnesses in both cases are currently scheduled to be completed by June 30, 2019. Vasquez Scheduling Order [Dkt. 39] Part II.G. Based on the Parties request to extend document production, the Parties likewise request that the deadline for completing fact-witness depositions be extended by six months, up to and including December 30, 2020.

The parties have begun discussing deposition dates for a limited number of Whole Foods' witnesses as well as the nine Plaintiffs in this case. Because of the additional time needed for document production, the parties have agreed to begin depositions after a significant portion of the materials have been produced, likely in the February timeframe.

**8.   Expert Discovery**

If either party intends to designate an expert on liability, the parties will file a proposed schedule for expert discovery by July 5, 2019. *See* Scheduling Order [Dkt. 39] Part II.I. Given the Parties' request for an extension of the document-production deadline, the Parties likewise request that the deadline for completing expert discovery be extended by six months, up to and including January 6, 2020. Expert discovery concerning damages in Vasquez shall occur after the Court rules on motions for summary judgment, if any, as to liability. *Id.*

Respectfully submitted,

| **KLAPROTH LAW PLLC** | **GREENBERG TRAURIG, LLP** |
|---|---|
| */s/ Brendan J. Klaproth*<br>Brendan J. Klaproth (D.C. Bar No. 999360)<br>Jesse C. Klaproth (Bar No. PA 00063)<br>Klaproth Law PLLC<br>406 5th Street NW, Suite 350<br>Washington, DC 20006<br>Telephone: 202-618-2344<br>Email: Bklaproth@klaprothlaw.com<br>jklaproth@klaprothlaw.com<br><br>*Attorneys for Plaintiffs* | By: */s/ Gregory J. Casas*<br>Gregory J. Casas<br>Bar No. 455329<br>Alan W. Hersh<br>Bar ID: TX0158<br>300 West 6th Street, Suite 2050<br>Austin, Texas 78701<br>Telephone:  512.320.7200<br>Facsimile:  512.320.7210<br><br>David Sellinger<br>Bar No. 282780<br>500 Campus Drive, Suite 400<br>Florham Park, New Jersey 07932<br>Telephone:  973.360.7900<br>Facsimile:  973.301.8410<br><br>John H. Hempfling, II (pro hac vice)<br>550 Bowie Street<br>Austin, TX 78703<br>Telephone:  512.542.0213<br>Facsimile:  512.482.7213<br><br>*Attorneys for Defendants Whole Foods Market Services, Inc. and Whole Foods Market Group, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this *4th* day of January, 2019, via the Court's CM/ECF System.

                                                       */s/ Brendan Klaproth*
                                                        Brendan Klaproth