IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
MICHAEL MOLOCK, ET AL.,              )
                                     )    CA No. 16-2483
          Plaintiffs,                )
                                     )
      vs.                            )
                                     )
WHOLE FOODS MARKET, INC., ET AL.,    )    Washington, D.C.
                                     )    July 9, 2019
          Defendants.                )    1:08 p.m.
---------------------------------)
                                     )
VICTOR VASQUEZ, ET AL.,              )
                                     )
                                     )    CA No. 17-112
          Plaintiffs,                )
                                     )
      vs.                            )
                                     )
WHOLE FOODS MARKET, INC., ET AL.,    )
                                     )
_____Defendants._____)
```

TRANSCRIPT OF JOINT STATUS CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Molock Plaintiffs:          Salvatore J. Zambri
                                REGAN ZAMBRI & LONG, PLLC
                                1919 M Street, NW
                                Suite 350
                                Washington, D.C. 20036
                                (202) 463-3030
                                szambri@reganfirm.com


For Vasquez Plaintiffs:         Brendan J. Klaproth
                                KLAPROTH LAW PLLC
                                406 Fifth Street, NW
                                Suite 350
                                Washington, D.C. 20001
                                (202) 618-2344
                                jklaproth@klaprothlaw.com

APPEARANCES CONTINUED

For the Defendants:              Gregory J. Casas
                                 David E. Sellinger
                                 GREENBERG TRAURIG, LLP
                                 300 West Sixth Street
                                 Suite 2050
                                 Austin, TX 78701
                                 (512) 320-7238
                                 casasg@gtlaw.com
                                 sellingerd@gtlaw.com

                                 John H. Hempfling, II
                                 WHOLE FOODS
                                 MARKET SERVICES, INC.
                                 828 West Sixth Street
                                 Suite 100
                                 Austin, TX 78703
                                 (512) 542-0213
                                 john.hempfling@wholefoods.com

Court Reporter:                  William P. Zaremba
                                 Registered Merit Reporter
                                 Certified Realtime Reporter
                                 Official Court Reporter
                                 U.S. Courthouse
                                 333 Constitution Avenue, NW
                                 Room 6511
                                 Washington, D.C. 20001
                                 (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

2          DEPUTY CLERK:  Your Honor, this is a Joint Status

3    Conference for Civil Action 16-2483 and Civil Action 17-112,

4    Michael Molock, et al., versus Whole Foods Market, Inc., et

5    al.; and Victor Vasquez, et al., versus Whole Foods Market,

6    Inc., et al.

7               Salvatore Zambri for the Molock plaintiffs.

8               Brendan Klaproth for the Vasquez plaintiffs.

9               Gregory Casas, David Sellinger, and John Hempfling

10   for the defendants.

11          THE COURT:  Okay, everyone, welcome, and welcome

12   back.  Nice to see everybody.

13               Okay.  So we're here for one of our regular status

14   conferences.

15               I have received and reviewed the status reports

16   that were filed in both cases, and they're both quite

17   voluminous and suggest that there may be some things that we

18   need to talk about this morning.

19               So why don't we -- let me, actually, just sort of

20   turn it over to you all and sort of tell me where you think

21   we ought to -- what's a reasonable entry point in terms of

22   where we ought to begin.

23          MR. CASAS:  Thank you, Your Honor.

24               I think the best place to start is just to talk

25   about the state of the document production.

1          We did our best, but we couldn't get to July 1 and

2    finish everything.

3          We're mostly done with all the custodians, I think

4    we've got a production going out this Thursday or Friday.

5          We'll finish all the E-discovery probably in about

6    two to three weeks; we should finish the documents from the

7    Phase 1 stores.

8          We've got about 20,000 documents from the Phase 1

9    stores that are lined up and they're being reviewed right

10   now.  Once that review is done, we'll produce those.  From

11   talking to our vendor but also our E-discovery team, they're

12   saying two to three weeks to finish those.

13          The bigger issue is going to be the documents, the

14   TTFs, from the -- it's actually 113 stores.  Your Honor had

15   suggested -- or had ordered us to produce the TTFs from the

16   119 stores that were on that map.

17          It turns out that out of those 119 stores, only

18   113 had actually time transfers during the period.  So it's

19   the 113 stores.

20          It's proven very difficult to get those documents,

21   just logistically, because of the way the stores don't

22   follow a unformed protocol as far as how they keep the

23   documents and how they store them.

24          We actually have gone individually to some of

25   these stores and said, where are the files, where are the

1    documents.

2            One store lost all of its documents in a flood, so

3    we're not going to be able to produce those.

4            Two other stores never labeled the documents when

5    they put them away in Iron Mountain, so they're just in

6    massive boxes, where we're talking about thousands of pages

7    we'd have to go through to find these TTFs.

8            But we are on track.  We've gotten about -- almost

9    half of the stores at issue, we have their documents,

10   they're being processed.  We reviewed them to make sure

11   they're responsive, and we'll get those produced.

12           Again, talking to the vendor and the E-discovery

13   team, we're thinking probably August before we can get --

14   the end of August, to be clear, before we can get all of the

15   TTFs from those 113 stores or, to the extent the documents

16   exist, actually produced to the plaintiffs.

17           And we have agreed that when we produce those

18   TTFs, we'll do it in a batch so that they know exactly that

19   document 1 through whatever number are the actual TTFs from

20   that production.

21           THE COURT:  Okay.

22           MR. CASAS:  So I apologize that we couldn't meet

23   the July 1 deadline.

24           But we did process several hundred thousand

25   documents, and we've produced several hundred thousand

1   pages.  So we did our best.  And so that's where we are.

2           And that's why, from talking to the plaintiffs

3   during our meet and confer on the Status Report, we probably

4   do need to extend some of the deadlines at least with regard

5   to the deposition so we can get the documents produced and

6   then do the depositions in a timely -- in an orderly

7   fashion.

8           THE COURT:  Okay.

9           So then, Mr. Casas, is it -- am I understanding

10  correctly that you think all document discovery will be

11  concluded, at least from your perspective, by the end of

12  August, or is there more that's still outstanding?

13          MR. CASAS:  By the end of August, we will have

14  produced everything that's been requested or ordered to be

15  produced.

16          THE COURT:  Okay.

17          MR. CASAS:  Now -- and that's -- and I'll call it

18  round one.

19          I know Mr. Zambri has reserved his right to ask

20  for more documentation in the next phase; or also to the

21  extent he finds information through the depositions that

22  required additional discovery, he's reserved the right to

23  request that.

24          But otherwise, yes, we would be complete by the

25  end of August.

1          THE COURT:  Okay.

2          So let me ask plaintiffs' counsel:  Do either of

3    you presently anticipate -- I mean, there's this issue

4    about, if we extend the deadline, what would be -- what the

5    purpose of the extension would be and whether you could

6    still make additional document requests during the extension

7    period.

8          So do either of you at present, as of today, have

9    any intention of issuing any more document requests?

10          MR. ZAMBRI:  May I go first?

11          THE COURT:  Sure.

12          MR. ZAMBRI:  No.

13          However, I don't necessarily agree, without

14    looking at what's going to be produced between now and the

15    end of August, that we will have everything that's been

16    requested or ordered.

17          And there are some disputes.

18          And I don't feel like we need to burden the Court,

19    unless the Court is interested in hearing about what may be

20    in dispute, because we are talking about it, and, hopefully,

21    we'll be able to resolve any of those issues.

22          So no.

23          But a lot of times, Your Honor, in fairness to my

24    clients, when you start taking depositions and you start

25    going through these records and you're interpreting stuff

1    that you've seen for the first time, much of which we just

2    received in July, I mean, over 100,000 pages of documents,

3    that may spur us, in a reasonable period of time, to make a

4    supplemental request, and that's why we reserve the right to

5    do that.

6            But the answer to your question is:  No, not as of

7    right now.

8            THE COURT:  Okay.

9            MR. ZAMBRI:  And just technically, if I may, on

10   the document production status, as I see things happening

11   right now, I think technically, really, there's -- there

12   should be a motion for leave to extend, it's by consent, the

13   document production deadline, with the understanding that we

14   have, that certain deadlines are going to have to be pushed

15   back, because we need time to look at all this stuff and

16   take depositions and do what we need to do.

17           That's what I have to say.

18           THE COURT:  Okay.

19           In terms of -- while you're here, Mr. Zambri, your

20   production of records to Whole Foods, where do we stand with

21   that?  I thought there were some issues, but are you all

22   still working through that?

23           MR. ZAMBRI:  Yeah, I think we worked it all out.

24   And, in fact, it should be worked out likely within the next

25   48 hours.

1           THE COURT:  Well, that's good to hear.

2           All right, Mr. Klaproth.

3           MR. KLAPROTH:  Good morning, Your Honor.

4           THE COURT:  Good morning.

5           MR. KLAPROTH:  So with respect to the Vasquez

6    plaintiffs, we've produced everything within our possession

7    right now.

8           I do anticipate some additional productions.  For

9    example, there was an issue with the tax documents we

10   produced, because some of the plaintiffs had joint tax

11   filings.  So we're going to endeavor to get the W-2s to

12   support those tax filings.

13          We still anticipate additional third-party

14   documents that may come into our possession.  For example,

15   we subpoenaed *The Washington Post* and the *Associated Press*

16   to get all documents within their possession.

17          They objected on the basis that we first have to

18   exhaust all other avenues through discovery, which we're

19   doing.

20          So assuming we can't get any correspondence

21   between Brooke Buchanan and *The Washington Post*, then we

22   would eventually seek to enforce that subpoena.

23          THE COURT:  When you -- you've asked for those?

24   Are they not available through Whole Foods and their

25   servers?

1    MR. KLAPROTH:  So we haven't -- we've received

2    some of what -- I think most of the SI, and, admittedly, I

3    haven't gone through it all, considering we've gotten so

4    much of it in the past month.  But presumably, those

5    communications will be there, so you may be able to speak

6    more to that.

7    MR. CASAS:  Your Honor, to the extent that

8    anything was in the E-discovery that will be in response to

9    that, has been produced from Ms. Buchanan's custodial files.

10   THE COURT:  To me, it just seemed to me that if

11   she communicated with any reporters electronically, you all,

12   theoretically, should have it, unless there is some way in

13   which it fell through the cracks.

14   MR. CASAS:  From my understanding from talking to

15   Ms. Buchanan, she only ever talked to the reporters on the

16   phone, there was no email communication.

17   To the extent there are documents she may have

18   received from other sources, they would have been in her

19   custodian files and they would have been produced.

20   THE COURT:  Okay.

21   MR. CASAS:  But as far as an exchange between her

22   and the *AP* or *The Washington Post*, that was done, I believe,

23   by phone.

24   THE COURT:  Okay.

25   MR. HEMPFLING:  Your Honor, this is John

1    Hempfling.

2           And Greg's recollection is correct, at least as

3    far as our conversations with Brooke Buchanan, she told us

4    way back that she only had phone conversations, no email.

5           THE COURT:  Okay.

6           And then so, Mr. Klaproth, are you -- is your

7    subpoena also for testimony also or is it just limited to

8    documents at this point?

9           MR. KLAPROTH:  We were seeking documents at this

10   point.

11          THE COURT:  Okay.

12          MR. KLAPROTH:  So any correspondence that was

13   exchanged.

14          And we're also seeking data relating to the hits

15   that the stories received and how many views, which goes to

16   damages.

17          And we got that with respect to *The Washington*

18   *Post*.

19          THE COURT:  You did get that?

20          MR. KLAPROTH:  Yes.  As of, I think it was last

21   November.

22          THE COURT:  Okay.

23          Is that information that you would get from

24   *The Post* or is that something you could get from a third

25   party?

1          I don't know the answer.  I'm just curious.

2          MR. KLAPROTH:  So I believe it's their internal

3     data.

4          The problem we have with the *Associated Press*,

5     however, is because it's a news wire, they just blast it off

6     to every local, regional newspaper --

7          THE COURT:  Right.

8          MR. KLAPROTH:  -- and they can't track that.

9          What they can do is track who they sent it to,

10    though.  So we're going to follow up to get that

11    information.

12         So at least we know how many news organizations

13    received the alleged defamatory statements.

14         THE COURT:  Do you anticipate issuing a deposition

15    notice or, I mean, a subpoena for testimony to any of the

16    reporters that wrote the stories?

17         MR. KLAPROTH:  We do, with the caveat that we're

18    going to first take Brooke Buchanan's deposition and see how

19    forthcoming she is.

20         THE COURT:  All right.

21         MR. KLAPROTH:  But that's what we anticipate, just

22    some supplemental information.

23         I know there's a request for medical records.  One

24    of her clients did see a therapist, so we're going to look

25    into getting -- and we produced what we have.  I'm going to

1  see if there's more medical records as well.

2          THE COURT:  Okay.

3          MR. CASAS:  Your Honor, I think with regard to

4  the -- other than one issue, I think with regard to the

5  discovery, the parties are actually cooperating very well,

6  as far as working through disputes.

7          The only issue that I think -- I want to bring to

8  the Court's attention, and it's in the two different status

9  reports, relates to the documentation we've requested from

10 the plaintiffs in both cases, to which they've alleged

11 either a joint prosecution privilege or a common interest

12 privilege.

13         THE COURT:  Oh, right.

14         MR. CASAS:  And I would like to bring that to the

15 Court's attention because I do think that's the one area

16 that we do have -- reached an impasse on that.

17         And I do -- whether we address it today, if you'd

18 rather have some more briefing on it -- I'm ready to address

19 it today, but we would like a ruling from the Court on that

20 issue.

21         THE COURT:  Okay.

22         Before we get to that, because I do remember that

23 issue, is there anything else?

24         Look, I've got 38 pages' worth of status reports

25 here.  And there are a number of issues that are at least

1    identified as potential issues, but you all are potentially

2    still working through them.

3            So is there anything else, other than the issue

4    Mr. Casas has flagged, that you all want to raise at this

5    point?

6            MR. KLAPROTH:  So for the Vasquez plaintiffs,

7    there were two issues, I believe one has been resolved, and

8    that's the manner in which the TTFs were being produced.

9    And Mr. Casas has represented here today that we are going

10   to get it in a discrete batch.  So that issue, from our

11   perspective, is resolved.

12           THE COURT:  In other words, you'll be able to

13   identify what stores each batch of TTFs is from, right?

14           MR. KLAPROTH:  That's the goal.

15           THE COURT:  Okay.

16           MR. KLAPROTH:  And then the --

17           MR. CASAS:  Later on today, yes.

18           THE COURT:  Okay.

19           MR. KLAPROTH:  And then with respect, which

20   I think it's a dispute that's still outstanding, is that

21   Whole Foods, in their counterclaim, is seeking attorneys'

22   fees incurred as a result of the Molock case, as well as the

23   Vasquez case, as part of their damages.

24           So we've been requesting discovery on that, as far

25   as whether it's bills, invoices, time sheets, because if

1    it's going to be part of their damages, we're entitled to

2    understand what their damages are.

3            THE COURT:  Right.

4            MR. KLAPROTH:  So I think Whole Foods has taken

5    the position that this is really expert discovery.  It's

6    not -- these are underlying documents that potentially an

7    expert may rely on.

8            THE COURT:  I think what their response was, if I

9    remember correctly -- and I'll confess, I did not go back to

10   the original order.  But they quoted from the order, and

11   that was that this was discovery relating to damages and

12   that we had deferred damages discovery to a later point in

13   time.

14           MR. KLAPROTH:  Just with -- I'm sorry.

15           THE COURT:  So for -- I mean, I'm just quoting

16   from the revised scheduling order, Docket 52:  "Any expert

17   discovery concerning damages shall occur after the Court

18   rules on the parties' motion for summary judgment, if any,

19   as to liability."

20           MR. KLAPROTH:  So my understanding of the order

21   was that that would be the disclosure of expert reports and

22   depositions of the experts.

23           But as to what the experts are going to be relying

24   on and to have a complete factual record that will be

25   closed, presumably, before summary judgment, we believe that

```
1   we would have to be entitled to that at this juncture.

2           THE COURT:  Well, let me ask you this:  Do you

3   think there's any value to that information for purposes of

4   the liability phase, or do those documents, are they, in

5   your view, strictly a damages issue?

6           MR. KLAPROTH:  I would say it's a damages issue.

7           But with respect to my clients, Whole Foods is

8   claiming that they're being sued for millions and millions

9   of dollars, I think they ought to know their exposure,

10  especially prior to summary judgment; or even approaching

11  any sort of discovery discussions, I think that would be

12  helpful for them to know.

13          THE COURT:  Well, when you say that, is that

14  something that you think -- I can understand it being a data

15  point that your clients would be interested in

16  understanding.  And to the extent that there's ever any

17  discussions about settlement, obviously, that would be an

18  important thing for them to know.

19          But would you be satisfied -- because if what

20  you're asking for, for example, is every invoice that

21  Whole Foods has received from Mr. Casas and Mr. Sellinger's

22  firms, you know, we could be talking about, A, a lot of

23  documentation, and, B, might be getting into areas of

24  attorney-client privilege that I'd much rather avoid at this

25  point.
```

1          On the other hand, if you're just looking for a

2     number, then perhaps that's something they could provide you

3     with in the interim basis.

4          MR. KLAPROTH:  So I think there is a compromise to

5     be struck there.

6          With the understanding that I think by putting

7     this issue in the case, the privilege is waived.  But at

8     this juncture, we would be willing to accept redacted -- any

9     invoices regarding services provided and stuff like that.

10          But as far as the total amount that's been billed,

11     we believe that that should be discoverable, without

12     broaching on any sort of attorney-client issues.

13          THE COURT:  Right.

14          No, I agree with you that the amount is

15     discoverable.

16          It's not clear to me that just because they're

17     seeking attorneys' fees, that the actual, for example, line

18     items -- you'd be entitled to know what particular line

19     items say.

20          I mean, we'd have to -- it's the kind of thing

21     that would, obviously, come up on a case-by-case basis, and,

22     frankly, would involve potentially a fair amount of review

23     of invoices and redacting and potential complexities arising

24     out of that.

25          I guess what I would leave it as is this -- unless

1   you want me to make a decision on this right now.

2           But it seems to me that this is largely an issue

3   of damage.

4           I mean, it is an issue of damages.

5           MR. KLAPROTH:  Correct.

6           THE COURT:  And I don't know, for example, when

7   Mr. Casas refers to this as relating to expert discovery

8   concerning damages, that they intend to have some expert who

9   will essentially act in an accounting function, if you will,

10  who will say, I've looked at all these invoices; or maybe

11  somebody who's actually an expert in legal billing, says,

12  I've looked at all of these invoices, this is reasonable,

13  and, therefore, their damages are X.  And certainly in that

14  case, you would be entitled to all the invoices and any

15  opinion that the expert would have as to the reasonableness

16  of the amount.

17          But that said, you know, if, for present purposes,

18  what you really care about is a number and what that number

19  looks like now and can potentially look like into the

20  future, it seems to me that you don't need the underlying

21  invoices for that purpose.

22          And perhaps in the interest of avoiding a lot of

23  time and expense and potential complications that might

24  arise from seeking invoices from a law firm, to just work

25  through it in that way and just sort of get a number from

1   them, if that would satisfy you.

2          MR. KLAPROTH:  Your Honor, I think that's a fair

3   and reasonable compromise at this point, and that's

4   something we would agree to, with the understanding that if

5   they do seek the attorneys' fees, and obviously, we can

6   challenge the reasonableness at trial, we would need the

7   underlying invoices.

8          THE COURT:  Right.  Okay.

9          Mr. Casas, is that something that is acceptable to

10  you all?

11         MR. CASAS:  Yes, Your Honor, we can provide the

12  numbers.

13         And Mr. Klaproth is right.  To the extent that we

14  go to trial and we actually are seeking our damages for our

15  attorneys' fees, we would, of course, produce the invoices

16  at that point, we would need to.

17         And Whole Foods has never taken the position that

18  we don't want to produce these.  We just don't think it's

19  ripe right now.

20         But we can provide the numbers.

21         THE COURT:  All right.

22         Any other issues, Mr. Zambri?  Did you have

23  anything else you wanted to raise in terms of document

24  issues or any other discovery matters that we can take up

25  before we talk about the communications between clients and

```
 1   counsel?

 2           MR. KLAPROTH:  No, Your Honor.

 3           THE COURT:  Okay.

 4           So let me just make sure I understand what that

 5   particular issue is.

 6           So the Vasquez case involves individuals, nine,

 7   I believe, all of whom are suing in their individual

 8   capacities, if you will.

 9           And whereas the Molock plaintiffs, of which

10   I think there are three, is that right or are there more?

11   Lead plaintiffs, I should say.

12           Are there more than three lead plaintiffs?

13           MR. ZAMBRI:  I think we have four.

14           THE COURT:  Four.  Okay.

15           So four lead plaintiffs.

16           But Molock is, obviously, you know, it's a class

17   action.

18           And so sounds like Whole Foods has asked for

19   communications between the Vasquez plaintiffs and

20   Mr. Zambri.

21           Likewise, you've asked for communications between

22   any of the Molock named plaintiffs and Mr. Klaproth;

23   is that correct?

24           MR. CASAS:  It's actually a little broader than

25   that, Your Honor.
```

1           THE COURT:  Okay.

2           MR. CASAS:  And let me back up a little bit and

3    give some context.

4           And so the Molock original complaint and the

5    Vasquez original complaint were filed very closely in time.

6           The original allegations are almost identical.

7    And so to us, that indicated that there was probably some

8    communication back and forth between counsel to coordinate

9    these pleadings.

10          And so our position is that not that we want

11   Mr. Zambri's discussions with his clients or Mr. Klaproth's

12   discussions with his clients.  But to the extent that

13   Mr. Zambri and Mr. Klaproth exchanged drafts or there were

14   emails or there were discussions that were memorialized

15   someplace as far as the coordination of the filing of these

16   cases, we believe we're entitled to that communication,

17   because we don't think there's a privilege that attaches to

18   that.  We don't think there's a common interest privilege.

19          THE COURT:  So if I may interrupt.

20          But are you just, then, seeking communications

21   between the lawyers, or are you also seeking communications

22   between clients, if there have been any, between clients in

23   one action and the counsel in the other?

24          MR. CASAS:  Both, Your Honor.

25          THE COURT:  Both.  Okay.

1           MR. CASAS:  Yeah.

2           We look at it in terms of if there was

3     communication even between Mr. Vasquez and Molock, that

4     would be discoverable, we believe.

5           We don't think that there's a joint prosecution

6     arrangement that would apply; we don't think there's a

7     common interest that would arise here at all.

8           We do believe that the very nature of the claims

9     being alleged by the Molock class action versus the claims

10    that are being alleged by the Vasquez plaintiffs, they're

11    necessarily adverse.

12          Mr. Zambri has to show that, for whatever reason,

13    these nine Vasquez plaintiffs violated the gainsharing

14    policy in such a way that it deprived the Molock class

15    action of funds.

16          By that very nature, that destroys any common

17    interest that would exist; and as a result, we believe that

18    there never -- it's not as if Mr. Zambri has waived it or

19    Mr. Klaproth has waived it by anything they've said, there

20    just isn't a privilege there at all.

21          THE COURT:  Right.

22          MR. CASAS:  And so we believe we're entitled to

23    that information.

24          THE COURT:  So let me ask Mr. Zambri and

25    Mr. Klaproth.

1              If I remember correctly, didn't -- well, let me

2      ask:  Are there any such communications, to your knowledge?

3              MR. KLAPROTH:  With?

4              THE COURT:  Is there anything that would be

5      responsive to that request that we'd actually even have to

6      reach the issue?

7              MR. KLAPROTH:  So without waiving any sort of

8      privilege or having conducted a thorough, thorough search,

9      I think it would be a futile effort to even engage and go

10     down this path.

11             But, again, I don't want to be in a position to

12     waive any privilege.

13             THE COURT:  Futile why?  Because there aren't any

14     documents, you think?  Or futile because you think you're

15     right on the law?

16             MR. KLAPROTH:  Because I don't think there's any

17     documents or smoking guns that they're seeking.

18             THE COURT:  Okay.  Well, leave aside smoking guns,

19     I just want to know whether you think there are any

20     communications, period.

21             MR. KLAPROTH:  I mean, there's certainly plenty of

22     communications between Mr. Zambri and I.

23             THE COURT:  Okay.

24             MR. KLAPROTH:  We both serve on the Board of

25     Governors for the Trial Lawyers Association.

1          THE COURT:  Well, they're not asking for that

2    stuff.

3          What I'm asking you is:  Are there any

4    communications -- do you believe there are communications

5    relevant to these cases that would either be between you and

6    Mr. Zambri or between your clients and Mr. Zambri or

7    Mr. Zambri's clients and you?

8          MR. KLAPROTH:  So I haven't conducted a thorough

9    search, so I don't want to make a representation that could

10   be inaccurate.

11         THE COURT:  Okay.  I'm just asking you based on

12   what you believe to be the case, based on whatever diligence

13   you've conducted to date.

14         MR. KLAPROTH:  Based on the diligence I conducted,

15   I haven't seen much of anything.

16         THE COURT:  Okay.

17         Well, again, when you say "much of anything," does

18   that mean, is there some stuff but it's not a lot or

19   is there zero?

20         MR. KLAPROTH:  I don't want to say "zero" just

21   because I haven't conducted a thorough search.

22         THE COURT:  I know, but this is not a difficult

23   question:  Based on what you know right now today,

24   do you believe there are any communications?  Even if

25   there's just one email that just says, you know, what date

 1  do you think you'll be filing, let me know.  Is there

 2  anything, even if there's one email, I just want to know

 3  whether there's some email.

 4          MR. KLAPROTH:  I don't think there are emails

 5  relating to that, no.

 6          THE COURT:  Okay.

 7          And any other types of communications that would

 8  be memorialized in documents other than emails that you can

 9  recall, whether it's -- any other memorialization,

10  communications?

11          MR. KLAPROTH:  Just so the Court understands the

12  diligence I conducted, I did a search for "Whole Foods" with

13  Mr. Zambri's -- "from Mr. Zambri" and "to Mr. Zambri," and

14  everything started at coordination, once we started

15  coordinating filings with the status reports and stuff like

16  that.

17          THE COURT:  Okay.

18          So in other, words after the case -- okay.

19  I understand.

20          And I don't know that that's what Mr. Casas is

21  seeking, but maybe he is, I'm not sure.

22          MR. CASAS:  To clarify, Your Honor, I mean, given

23  that the allegations in the complaint were so similar, we

24  just are assuming, and maybe we're assuming incorrectly, but

25  there should have been drafts that were exchanged back and

1  forth, there should have been some sort of documentation

2  that would allow these two complaints that were filed so

3  soon after each other to be coordinated in that way.  So we

4  think we're entitled to the documentation that resulted in

5  these almost simultaneous and nearly identical complaints.

6         And Mr. Sellinger was just reminding me that in

7  one of the -- we believe it was in the first complaint filed

8  by the Vasquez plaintiffs in Superior Court actually refers

9  to a soon-to-be-filed class action.  Well, how would they

10  know that?

11         And so we want to make sure we have all the

12  documentation that leads up to that, because we want to see

13  what was discussed, because we think there may be statements

14  against interest, admissions by a party opponent.  We think

15  there's material there that might be useful, not just in the

16  defense of the Molock class action but in the prosecution of

17  our counterclaims against the Vasquez plaintiffs.

18         THE COURT:  Mr. Zambri, what about you, what

19  do you understand to be the scope of potential responsive

20  documents?

21         MR. ZAMBRI:  I'm not aware of any drafts that were

22  ever exchanged, but I have not done a full search, but

23  I think I would have remembered that.

24         Did we talk to each other and not memorialize it?

25  That's possible, about other issues.  Some or all of that, I

1    would argue, is work product.  It's me talking to a lawyer

2    about things that I'm allowed to do.

3           I'm not making admissions on behalf of my clients.

4    Mr. Klaproth wouldn't be making -- as a lawyer, wouldn't be

5    making admissions on behalf of his clients.

6           I had asked in a telephone conference that we had

7    recently:  Why is this even relevant?  And they mentioned

8    two things to me, which is what they've said to the Court

9    today; one is, it has to do with damages in the Vasquez

10   case.  So that has nothing to do with my case.

11          And their argument was, it has to do with damages

12   because, but for allegedly the Vasquez plaintiffs and their

13   lawyer saying something or doing something with respect to

14   me and my clients, there wouldn't be a class-action lawsuit.

15          I think they'd have a really hard time meeting the

16   causation burden on that claim, and they shouldn't be able

17   to use, as a sword, their own wrongdoing to somehow

18   gather -- make that kind of claim.  But, again, I leave that

19   battle really between them, because that has to do with the

20   Vasquez case and not my own.

21          The other was just sort of this blanket statement

22   that it has to do with a potential admission made by my

23   clients, and they weren't able to be any more specific than

24   that to me.

25          So has there been a situation, Your Honor, where

1    one of my clients was in a room with me and Mr. Klaproth or

2    one of Mr. Klaproth's clients and a document was created

3    related to that?  No.  No.

4            So I don't think there's anything out there.  But

5    on principle, I stand by the common interest privilege.

6            Counsel has made a big issue about something I

7    said before the Court at an earlier status conference, where

8    I said that we ought to be -- we, me and Mr. Klaproth -- we

9    ought to be seated at different tables because our interests

10   are diametrically opposed, and in some circumstances and on

11   some issues, their interests are aligned.  That is not --

12   there's no logical disconnect in making that argument, and,

13   at the same time, saying that there is a common interest.

14           They know there is a common interest, a large,

15   looming common interest that the Court has addressed, too,

16   with us, which is:  How broad is the illicit wrongdoing?

17           And we can have a common interest and disparate

18   interest at the same time.

19           And my statement to the Court, without saying

20   anything substantive about what was stated between us or

21   stated between my clients and his clients, if anything ever

22   was even stated -- and I'm not suggesting it was between

23   clients -- is not a waiver.  Identifying disparate interest

24   is not a waiver of that common interest.

25           THE COURT:  Well, I don't know that there's a

```
1    waiver issue, at least certainly, there hasn't been -- that
2    hasn't been raised.
3              MR. ZAMBRI:  That was raised with us, Your Honor,
4    and I believe it was raised in a Status Report.
5              THE COURT:  Right.
6              Well, in any event, I thought the point that was
7    being made by Mr. Casas was not about waiver but rather
8    whether there's a privilege that attached at all in the
9    first place, because a --
10             MR. ZAMBRI:  That's a new position that I've heard
11   today.
12             The issue about -- they've put on paper, it's in
13   the Status Report, Your Honor, and in conversations with me,
14   that my earlier comment to the Court constituted a waiver of
15   that privilege.
16             THE COURT:  All right.
17             Well -- Mr. Casas, are you taking the position
18   that Mr. Zambri's statement was a waiver?
19             MR. CASAS:  No, Your Honor.
20             To the extent that that was not clear --
21             THE COURT:  That doesn't strike me as a waiver.
22   It just seems like a rhetorical statement that doesn't
23   qualify as a waiver.  He hasn't disclosed anything, so I
24   don't know why it would be a waiver.
25             MR. KLAPROTH:  And I think, Your Honor, it was
```

1    just sort of a vague language on our part in the Status

2    Report.

3                THE COURT:  Right.  I mean, that's what I

4    exist.

3                It's not a waiver.  You can't waive what doesn't

4    exist.

5                THE COURT:  Right.  I mean, that's what I

6    understood you to be arguing.

7                MR. CASAS:  What the statement shows is that, and

8    from our perspective and acknowledgment, that there is no

9    common interest.

10               That's what that statement shows.  It shows that

11   because Mr. Zambri has to show that either because there's

12   this unwritten policy that the 9 STLs or others, allegedly,

13   were following that caused the manipulation of gainsharing,

14   or whether these nine STLs on their own went rogue and

15   violated gainsharing.

16               Either way, his class, to a certain extent, is

17   entitled to money.  That fact -- or that burden, those

18   claims that he's making necessarily put him at odds with the

19   Vasquez plaintiffs.

20               THE COURT:  No, no.  I understand that argument,

21   and there is an adversity there between the two different

22   sets of plaintiffs.

23               I mean, I have been sort of intrigued by what

24   Mr. Zambri's suggesting, which is that there could be a

25   common interest as to some issues but not as to others.

1    I don't know that I've ever experienced that, certainly not

2    as a judge and not even in practice.  I mean, common

3    interest privileges are fairly common, and joint defense,

4    particularly on the defense side.

5            But I will say it's not abundantly clear to me

6    what that common interest is here.  I mean, you can't have a

7    common interest just based upon a common enemy.  You know,

8    you actually have to have your interests aligned in a way

9    that makes a joint privilege meaningful.

10           And I'm not sure what the law is here in the

11   District, but I -- and I'm not suggesting I can rule today,

12   but I'm a little perplexed as to where the common interest

13   actually lies, especially given the two competing theories

14   that the plaintiffs in each case have advanced.

15           MR. KLAPROTH:  So, Your Honor, I think the common

16   interest is clear.  In our case, we have to prove that the

17   defamatory statements that this labor shifting only occurred

18   in nine stores is false.  So that means we have to prove

19   that it occurred in more than nine stores.

20           And I think Mr. Zambri, in his nationwide class

21   action, is trying to prove the same thing; that this

22   occurred; this was a pervasive, systemic policy that

23   resulted in the manipulation of the gainsharing program.

24           So I don't think it could be any more common than

25   trying to prove that essential element in both cases.

1          THE COURT:  So maybe I misunderstood your -- or at

2    least part of your theory was not just that -- well, let me

3    put it this way:  In the first instance, I thought your

4    position was that your clients didn't engage in any

5    manipulation.

6          MR. KLAPROTH:  They didn't engage in any

7    manipulation because they were told to do this.

8          THE COURT:  Okay.

9          MR. ZAMBRI:  Your Honor, may I?

10         THE COURT:  Sure.

11         MR. ZAMBRI:  I just want to make sure I understood

12   that comment by Mr. Klaproth.

13         I think there's an agreement that -- among all the

14   parties, and anybody can correct me if I am wrong, that

15   manipulation took place, the scope of which is a debate.

16         Mr. Klaproth's, as I understand his commentary, is

17   that it was done at the direction of superiors.

18         My position is, I don't even need to go beyond the

19   superiors, because the store manager's the apex of the

20   store.  It is Whole Foods.  If you walked into any of these

21   places and I want to speak to Whole Foods, that's the

22   highest, most important person you can talk to.

23         So the common interest, therefore, lies in a

24   narrow issue or maybe a set of issues.

25         And if there were -- and perhaps the way to skin

1    this cat, Your Honor, if I may give a suggestion to think

2    about that maybe we can agree on before the Court rules, is

3    if there were certain discussions that had to do with

4    something -- or communications of documents created related

5    to those communications outside of those common interest

6    issues, I think they have a better argument.

7            But if it is tethered to the common interest,

8    which is the scope of the manipulation, then I think the

9    interest absolutely applies and the case that they relied

10   upon was mischaracterized.

11           They were suggesting to you that that case stands

12   for the proposition that it has to be the same lawyer with

13   two clients.  That's not the law.

14           THE COURT:  No, that's not the law.

15           And it's not been the least unusual for there to

16   be common-interest agreements across parties.

17           MR. CASAS:  No.  That's true, Your Honor.

18           But Mr. Zambri's final comments there, talking

19   about what he needs to show in order to win, I think,

20   highlights exactly the fact that there's no common interest

21   here.

22           THE COURT:  Well, but, again, I guess the question

23   that I have is a legal question is the one that Mr. Zambri

24   poses, which is:  Can you have an interest as to some issues

25   but not others.  And I don't know what the Courts have had

1    about that.  I don't know whether anybody has.

2              I mean, I've certainly never thought about it in

3    those terms, and that's largely as a practitioner; that you

4    could have a -- you either had a common interest with

5    your -- with another party or you didn't, and so I'd have to

6    think about the issue a little bit more.

7              I guess -- I'm not going to be in a position today

8    to rule on this.  I mean, it seems like a fairly complicated

9    issue.  So if you all feel like you've kind of met and

10   conferred to the extent that you can and have reached an

11   impasse on this, although Mr. Zambri has suggested that

12   there's some possible way forward, why don't we just set a

13   briefing schedule and I'll ask you all to just put some --

14   put your arguments in writing.

15             How much time do you think you need?  The 23rd for

16   opening letter briefs, would that be acceptable?  That's two

17   weeks from today.

18             MR. CASAS:  I think that's fine, Your Honor.

19   Absolutely.

20             THE COURT:  Does that work for you all?

21             MR. ZAMBRI:  Your Honor, to put this in context,

22   is the sort of pathway forward that they're going to file a

23   motion on this issue and we file an opposition, or are we

24   just -- maybe the best way to do it is just two briefs on

25   the position, two court bench briefs.

1          THE COURT:  What I was going to schedule is you

2    all can file opening letter briefs -- and these aren't going

3    to be long -- on the 23rd.  And then if you want to file a

4    reply to what the other side has filed, you can do so by the

5    30th.

6          MR. ZAMBRI:  Understood.  That's fine.

7          THE COURT:  And then so I'll have the benefit of

8    your responses to what the other side has filed.

9          I mean, you know, if you all -- look, it is your

10   burden, at the end of the day.  I mean, if you're asserting

11   that there is a joint common interest privilege of some

12   kind, it's the privilege -- the party that's asserting the

13   privilege, it's your burden.  So just bear that in mind.

14         MR. KLAPROTH:  Understood.

15         THE COURT:  So let's do that.

16         So the 23rd, I'll ask for letter briefs, no more

17   than five pages.  It can be single-spaced since these are

18   letter briefs.

19         And then any replies by the 30th, also the same

20   page limit of five pages.  Again, that can be single-spaced

21   since these are letter briefs.

22         And then just go ahead and file that via ECF.  And

23   then I'll take a look at what you all have filed and we'll

24   take it from there.

25         Okay.  Let's talk, then, about scheduling unless

1    there are any other issues.

2           So right now -- well, let me just ask:  Mr. Casas,

3    what are you -- have you all discussed how the schedule

4    ought to be modified?  Is there any disagreement as to what

5    the modification should look like?

6           MR. CASAS:  I don't think there was a

7    disagreement.  I'm not sure we've come to a consensus yet.

8           I think Mr. Zambri had a suggestion that I liked,

9    which was:  Let's see how we do as far as the document

10   production and scheduling depositions come the fall; and

11   then in our next status conference in October, we can tell

12   you what we think we're going to need as far as additional

13   time for depositions.

14          THE COURT:  Okay.  That's fine by me.

15          I mean, do you want -- we had a deadline for

16   production; but if both sides are comfortable with not

17   having one, I'm not inclined to put one down.

18          MR. CASAS:  I'm sorry, I couldn't hear Your Honor.

19          THE COURT:  A deadline for production?

20          MR. CASAS:  We can come up with a deadline for

21   production.  Honestly, it's up to the plaintiffs and

22   Your Honor.

23          I think, again, based upon my discussions with the

24   vendor and with my E-discovery team, absent something -- now

25   that I say this, it's probably going to happen, but absent

```
 1   anything unusual happening with the TTF production, we're
 2   supposed to be done by the end of August.
 3            THE COURT:  All right.  So let's just do this.
 4            Why don't we just set September 5th as the
 5   production deadline, and that way we'll give you a little
 6   bit of breathing room.
 7            So we'll set the new production deadline for
 8   documents to be September the 5th.
 9            And then we're back here in October; is that
10   right?
11            MR. CASAS:  Just doing the three months from
12   today.
13            THE COURT:  Right.
14            So October.  Do we have a date or we just need to
15   set one?
16            MR. KLAPROTH:  I think it's October 7th.
17            THE COURT:  We have a set date.  October --
18            MR. ZAMBRI:  7th.
19            THE COURT:  -- 7th?  Okay.
20            All right.  So let's just do that.  We'll set a
21   deadline of September the 6th for document production.  And
22   then when we're back together on October the 7th, we can
23   talk about where things stand and what things ought to look
24   like in terms of timing going forward.
25            So acceptable to everyone?
```

1          MR. CASAS:  Yes, Your Honor.  Thank you.

2          MR. ZAMBRI:  Yes, Your Honor.

3          MR. KLAPROTH:  Yes, Your Honor.

4          THE COURT:  All right.  Anything else, folks?

5          MR. KLAPROTH:  No, Your Honor.

6          MR. ZAMBRI:  No, Your Honor.

7          THE COURT:  Thank you, everybody.  I've got

8  another matter, so don't wait for me.

9          (Proceedings concluded at 11:11 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date: July 9, 2019_____        /S/__William P. Zaremba_____

William P. Zaremba, RMR, CRR

**DEPUTY CLERK: [1]** 3/1

**MR. CASAS: [26]** 3/22 5/21 6/12 6/16 10/6 10/13 10/20 13/2 13/13 14/16 19/10 20/23 21/1 21/23 21/25 22/21 25/21 29/18 30/6 33/16 34/17 36/5 36/17 36/19 37/10 37/25

**MR. HEMPFLING: [1]** 10/24

**MR. KLAPROTH: [39]** 9/2 9/4 9/25 11/8 11/11 11/19 12/1 12/7 12/16 12/20 14/5 14/13 14/15 14/18 15/3 15/13 15/19 16/5 17/3 18/4 19/1 20/1 23/2 23/6 23/15 23/20 23/23 24/7 24/13 24/19 25/3 25/10 29/24 31/14 32/5 35/13 37/15 38/2 38/4

**MR. ZAMBRI: [15]** 7/9 7/11 8/8 8/22 20/12 26/20 29/2 29/9 32/8 32/10 34/20 35/5 37/17 38/1 38/5

**THE COURT: [77]**

**/**

**/S [1]** 39/7

**0**

**0213 [1]** 2/10

**1**

**100 [1]** 2/9
**100,000 [1]** 8/2
**112 [2]** 1/9 3/3
**113 [4]** 4/14 4/18 4/19 5/15
**119 [2]** 4/16 4/17
**11:11 [1]** 38/9
**16-2483 [2]** 1/4 3/3
**17-112 [2]** 1/9 3/3
**1919 [1]** 1/18
**1:08 [1]** 1/7

**2**

**20,000 [1]** 4/8
**20001 [2]** 1/23 2/15
**20036 [1]** 1/19
**2019 [2]** 1/7 39/7
**202 [3]** 1/19 1/23 2/15
**2050 [1]** 2/4
**2344 [1]** 1/23
**23rd [3]** 34/15 35/3 35/16
**2483 [2]** 1/4 3/3
**2s [1]** 9/11

**3**

**300 [1]** 2/3
**3030 [1]** 1/19
**30th [2]** 35/5 35/19
**320-7238 [1]** 2/5

**333 [1]** 2/14
**350 [2]** 1/18 1/22
**354-3249 [1]** 2/15
**38 [1]** 13/24

**4**

**406 [1]** 1/22
**463-3030 [1]** 1/19
**48 [1]** 8/25

**5**

**512 [2]** 2/5 2/10
**52 [1]** 15/16
**542-0213 [1]** 2/10
**5th [2]** 37/4 37/8

**6**

**618-2344 [1]** 1/23
**6511 [1]** 2/14
**6th [1]** 37/21

**7**

**7238 [1]** 2/5
**78701 [1]** 2/4
**78703 [1]** 2/9
**7th [4]** 37/16 37/18 37/19 37/22

**8**

**828 [1]** 2/8

**A**

**a.m [1]** 38/9
**able [6]** 5/3 7/21 10/5 14/12 27/16 27/23
**about [27]** 3/18 3/25 4/5 4/8 5/6 5/8 7/4 7/19 7/20 16/17 16/22 18/18 19/25 26/18 26/25 27/2 28/6 28/20 29/7 29/12 33/2 33/19 34/1 34/2 34/6 35/25 37/23
**above [1]** 39/4
**above-titled [1]** 39/4
**absent [2]** 36/24 36/25
**absolutely [2]** 33/9 34/19
**abundantly [1]** 31/5
**accept [1]** 17/8
**acceptable [3]** 19/9 34/16 37/25
**accounting [1]** 18/9
**acknowledgment [1]** 30/8
**across [1]** 33/16
**act [1]** 18/9
**action [10]** 3/3 3/3 20/17 21/23 22/9 22/15 26/9 26/16 27/14 31/21
**actual [2]** 5/19 17/17
**actually [13]** 3/19 4/14 4/18 4/24 5/16 13/5 18/11 19/14 20/24 23/5 26/8 31/8 31/13
**additional [6]** 6/22 7/6 9/8 9/13 36/12
**address [2]** 13/17 13/18

**admission [1]** 27/22
**admissions [3]** 26/14 27/3 27/5
**admittedly [1]** 10/2
**advanced [1]** 31/14
**adverse [1]** 22/11
**adversity [1]** 30/21
**after [3]** 15/17 25/18 26/3
**again [7]** 5/12 23/11 24/17 27/18 33/22 35/20 36/23
**against [2]** 26/14 26/17
**agree [4]** 7/13 17/14 19/4 33/2
**agreed [1]** 5/17
**agreement [1]** 32/13
**agreements [1]** 33/16
**ahead [1]** 35/22
**aided [1]** 2/17
**al [8]** 1/3 1/6 1/9 1/12 3/4 3/5 3/5 3/6
**aligned [2]** 28/11 31/8
**all [40]**
**All right [4]** 9/2 12/20 37/20 38/4
**allegations [2]** 21/6 25/23
**alleged [4]** 12/13 13/10 22/9 22/10
**allegedly [2]** 27/12 30/12
**allow [1]** 26/2
**allowed [1]** 27/2
**almost [3]** 5/8 21/6 26/5
**also [7]** 4/11 6/20 11/7 11/7 11/11 21/21 35/19
**although [1]** 34/11
**am [2]** 6/9 32/14
**AMIT [1]** 1/14
**among [1]** 32/13
**amount [4]** 17/10 17/14 17/22 18/16
**another [2]** 34/5 38/8
**answer [2]** 8/6 12/1
**anticipate [5]** 7/3 9/8 9/13 12/14 12/21
**any [40]**
**anybody [2]** 32/14 34/1
**anything [15]** 10/8 13/23 14/3 19/23 22/19 23/4 24/15 24/17 25/2 28/4 28/20 28/21 29/23 37/1 38/4
**AP [1]** 10/22
**apex [1]** 32/19
**apologize [1]** 5/22
**APPEARANCES [2]** 1/16 2/1
**applies [1]** 33/9
**apply [1]** 22/6
**approaching [1]** 16/10
**are [49]**
**area [1]** 13/15
**areas [1]** 16/23
**aren't [2]** 23/13 35/2

**arguing [1]** 30/6
**argument [4]** 27/11 28/12 30/20 33/6
**arguments [1]** 34/14
**arise [2]** 18/24 22/7
**arising [1]** 17/23
**arrangement [1]** 22/6
**as [48]**
**aside [1]** 23/18
**ask [8]** 6/19 7/2 16/2 22/24 23/2 34/13 35/16 36/2
**asked [4]** 9/23 20/18 20/21 27/6
**asking [4]** 16/20 24/1 24/3 24/11
**asserting [2]** 35/10 35/12
**Associated [2]** 9/15 12/4
**Association [1]** 23/25
**assuming [3]** 9/20 25/24 25/24
**attached [1]** 29/8
**attaches [1]** 21/17
**attention [2]** 13/8 13/15
**attorney [2]** 16/24 17/12
**attorney-client [2]** 16/24 17/12
**attorneys' [4]** 14/21 17/17 19/15 19/15
**August [7]** 5/13 5/14 6/12 6/13 6/25 7/15 37/2
**Austin [2]** 2/4 2/9
**available [1]** 9/24
**Avenue [1]** 2/14
**avenues [1]** 9/18
**avoid [1]** 16/24
**avoiding [1]** 18/22
**aware [1]** 26/21
**away [1]** 5/5

**B**

**back [9]** 3/12 8/15 11/4 15/9 21/2 21/8 25/25 35/7 37/9 37/22
**based [6]** 24/11 24/12 24/14 24/23 31/7 36/23
**basis [3]** 9/17 17/3 17/21
**batch [3]** 5/18 14/10 14/13
**battle [1]** 27/19
**be [70]**
**bear [1]** 35/13
**because [25]** 4/21 7/20 8/15 9/10 12/5 13/15 13/22 14/25 16/19 17/16 21/17 23/13 23/14 23/16 24/21 26/12 26/13 27/12 27/19 28/9 29/9 30/11 30/11 32/7 32/19
**been [16]** 6/14 7/15

**2011122-APM   Document 54   Filed 07/11/19   Page 40 of 46**

**10/9 10/18 10/19 14/7 14/24 17/10 21/22 25/25 26/1 27/25 29/1 29/2 30/23 33/15
**before [8]** 1/14 5/13 5/14 13/22 15/22 15/25 19/25 28/7 33/2
**begin [1]** 3/22
**behalf [2]** 27/3 27/5
**being [8]** 4/9 5/10 14/8 16/8 16/14 22/9 22/10 29/7
**believe [16]** 10/22 12/2 14/7 15/25 17/11 20/7 21/16 22/4 22/8 22/17 22/22 24/4 24/12 24/24 26/7 29/4
**bench [1]** 34/25
**benefit [1]** 35/7
**best [4]** 3/24 4/1 6/1 34/24
**better [1]** 33/6
**between [19]** 7/14 9/21 10/21 19/25 20/19 20/21 21/8 21/21 21/22 21/22 22/3 23/22 24/5 24/6 27/19 28/20 28/21 28/22 30/21
**beyond [1]** 32/18
**big [1]** 28/6
**bigger [1]** 4/13
**billed [1]** 17/10
**billing [1]** 18/11
**bills [1]** 14/5
**bit [3]** 21/2 34/6 37/6
**blanket [1]** 27/21
**blast [1]** 12/5
**Board [1]** 23/24
**both [8]** 3/16 3/16 13/10 21/24 21/25 23/24 31/25 36/16
**boxes [1]** 5/6
**breathing [1]** 37/6
**Brendan [2]** 1/21 3/8
**briefing [2]** 13/18 34/13
**briefs [7]** 34/16 34/24 34/25 35/2 35/16 35/18 35/21
**bring [2]** 13/7 13/14
**broaching [1]** 17/12
**broad [1]** 28/16
**broader [1]** 20/24
**Brooke [3]** 9/21 11/3 12/18
**Brooke Buchanan [2]** 9/21 11/3
**Brooke Buchanan's [1]** 12/18
**Buchanan [3]** 9/21 10/15 11/3
**Buchanan's [1]** 10/9 12/18
**burden [5]** 7/18 27/16 30/17 30/10 35/13

**C**

**CA [2]** 1/4 1/9

**C**

call [1] 6/17
can [25] 5/13 5/14 6/5
12/9 16/14 18/19 19/5
19/11 19/20 19/24 25/8
28/17 31/11 32/14
32/22 33/2 33/24 34/10
35/2 35/4 35/17 35/20
36/11 36/20 37/22
can't [4] 9/20 12/8 30/3
31/6
capacities [1] 20/8
care [1] 18/18
Casas [12] 2/2 3/9 6/9
14/4 14/9 16/21 18/7
19/9 25/20 29/7 29/17
36/2
casasg [1] 2/5
case [16] 14/22 14/23
17/7 17/21 17/21 18/14
20/6 24/12 25/18 27/10
27/10 27/20 31/14
31/16 33/9 33/11
case-by-case [1] 17/21
cases [5] 3/16 13/10
21/16 24/5 31/25
cat [1] 33/1
causation [1] 27/16
caused [1] 30/13
caveat [1] 12/17
certain [3] 8/14 30/16
33/3
certainly [5] 18/13
23/21 29/1 31/1 34/2
Certified [1] 2/12
certify [1] 39/2
challenge [1] 19/6
circumstances [1]
28/10
Civil [2] 3/3 3/3
claim [2] 27/16 27/18
claiming [1] 6/18
claims [3] 22/8 22/9
30/18
clarify [1] 25/22
class [8] 20/16 22/9
22/14 26/9 26/16 27/14
30/16 31/20
class-action [1] 27/14
clear [5] 5/14 17/16
29/20 31/5 31/16
client [2] 16/24 17/12
clients [22] 7/24 12/24
16/7 16/15 19/25 21/11
21/12 21/22 21/22 24/6
24/7 27/3 27/5 27/14
27/23 28/1 28/2 28/21
28/21 28/23 32/4 33/13
closed [1] 15/25
closely [1] 21/5
COLUMBIA [1] 1/2
come [9] 9/14 17/21
36/7 36/10 36/20
comfortable [1] 36/16
comment [2] 29/14
32/12
commentary [1] 32/16
comments [1] 33/18

common [27] 4/3 10/1
21/18 22/7 22/16 28/5
28/13 28/14 28/15
28/17 28/24 30/9 30/25
31/2 31/3 31/6 31/7
31/7 31/12 31/15 31/24
32/23 33/5 33/7 33/16
33/20 34/4 35/15
common-interest [1]
33/16
communicated [1]
10/11
communication [4]
10/16 21/8 21/16 22/3
communications [16]
10/5 19/25 20/19 20/21
21/20 21/21 23/2 23/20
23/22 24/4 24/4 24/24
25/7 25/13 34/4 34/5
competing [1] 31/13
complaint [4] 21/4
21/5 25/23 26/7
complaints [1] 26/2
26/5
complete [2] 6/24
15/24
complexities [1] 17/23
complicated [1] 34/8
complications [1]
18/23
compromise [2] 17/4
19/3
computer [1] 2/17
computer-aided [1]
2/17
concerning [1] 15/17
18/8
concluded [2] 6/11
38/9
conducted [6] 23/8
24/8 24/13 24/14 24/21
25/12
confer [1] 6/3
conference [5] 1/14
3/3 27/6 28/7 36/11
conferences [1] 3/14
conferred [1] 34/10
confess [1] 15/9
consensus [1] 36/7
consent [1] 8/12
considering [1] 10/3
constituted [1] 29/14
Constitution [1] 2/14
context [2] 21/3 34/21
CONTINUED [1] 2/1
conversations [3] 11/3
11/4 29/13
cooperating [1] 13/5
coordinate [1] 21/8
coordinated [1] 26/3
coordinating [1] 25/15
coordination [2] 21/15
25/14
correct [5] 11/2 18/5
20/23 32/14 39/3
correctly [3] 6/10 15/9
23/1
correspondence [2]

could [8] 7/5 11/24
16/22 17/2 24/9 30/24
31/24 34/4
couldn't [3] 4/1 5/22
36/18
counsel [5] 7/2 20/1
21/8 21/23 28/6
counterclaim [1] 14/21
counterclaims [1]
26/17
course [1] 19/15
court [16] 1/1 2/11
2/13 7/18 7/19 13/19
15/17 25/11 26/8 27/8
28/7 28/15 28/19 29/14
33/2 34/25
Court's [2] 13/8 13/15
Courthouse [1] 2/13
Courts [1] 33/25
cracks [1] 10/13
created [1] 28/2 33/4
CRR [2] 39/2 39/8
curious [1] 12/1
custodial [1] 10/9
custodian [1] 10/19
custodians [1] 4/3

**D**

D.C [4] 1/6 1/19 1/23
2/15
damage [1] 18/3
damages [15] 11/16
14/23 15/1 15/2 15/11
15/12 15/17 16/5 16/6
18/4 18/8 18/13 19/14
27/9 27/11
data [3] 11/14 12/3
16/14
date [5] 24/13 24/25
37/14 37/17 39/7
David [2] 2/2 3/9
day [1] 35/10
deadline [9] 5/23 7/4
8/13 36/15 36/19 36/20
37/5 37/7 37/21
deadlines [2] 6/4 8/14
debate [1] 32/15
decision [1] 18/1
defamatory [2] 12/13
31/17
defendants [4] 1/7
1/13 2/2 3/10
defense [1] 26/16 31/3
31/4
deferred [1] 15/12
deposition [3] 6/5
12/14 12/18
depositions [7] 6/6
6/21 7/24 8/16 15/22
36/10 36/13
deprived [1] 22/14
destroys [1] 22/16
diametrically [1] 28/10
did [9] 4/1 5/24 6/1
11/19 12/24 15/9 19/22
25/12 26/24
didn't [4] 23/1 32/4

different [3] 13/8 28/9
30/21
difficult [2] 4/20 24/22
diligence [3] 24/12
24/14 25/12
direction [1] 32/17
disagreement [2] 36/4
36/7
disclosed [1] 29/23
disclosure [1] 15/21
disconnect [1] 28/12
discoverable [3] 17/11
17/15 22/4
discovery [17] 4/5 4/11
5/12 6/10 6/22 9/18
10/8 13/5 14/24 15/5
15/11 15/12 15/17
16/11 18/7 19/24 36/24
discrete [1] 14/10
discussed [2] 26/13
36/3
discussions [7] 16/11
16/17 21/11 21/12
21/14 33/3 36/23
disparate [2] 28/17
28/23
dispute [2] 7/20 14/20
disputes [2] 7/17 13/6
DISTRICT [4] 1/1 1/2
1/15 31/11
do [42]
do you [2] 12/14 26/19
do you believe [2]
24/4 24/24
do you think [1] 25/1
Docket [1] 15/16
document [11] 3/25
5/19 6/10 7/6 7/9 8/10
8/13 19/23 28/2 36/9
37/11
documentation [6]
6/20 13/9 16/23 26/1
26/4 26/12
documents [27] 4/6
4/8 4/13 4/20 4/23 5/1
5/2 5/4 5/9 5/15 5/25
6/5 8/2 9/9 9/14 9/16
10/17 11/8 11/9 15/6
16/4 23/14 23/17 25/8
26/20 33/4 37/8
does [2] 24/17 34/20
doesn't [3] 29/21 29/22
30/3
doing [3] 9/19 27/13
37/11
dollars [1] 16/9
don't [31] 3/19 4/21
7/13 7/18 12/1 18/6
18/20 19/18 19/18
21/17 21/18 22/5 22/6
23/11 23/16 24/9 24/20
25/4 25/20 28/4 28/25
29/24 31/1 31/24 32/18
33/25 34/1 34/12 36/6
37/4 38/8
done [6] 4/3 4/10 10/22
26/22 32/17 37/2

down [2] 23/10 36/17
drafts [3] 21/13 25/25
26/21
during [3] 4/18 6/3 7/6

**E**

E-discovery [5] 4/5
4/11 5/12 10/8 36/24
each [4] 14/13 26/3
26/24 31/14
earlier [2] 28/7 29/14
ECF [1] 35/22
effort [1] 33/3
either [7] 7/2 7/8 13/11
24/5 30/11 30/16 34/4
electronically [1]
10/11
element [1] 31/25
else [4] 13/23 14/3
19/23 38/4
email [10] 10/16 11/4
24/25 25/2 25/3
emails [3] 21/14 25/4
25/8
end [7] 5/14 6/11 6/13
6/25 7/15 35/10 37/2
endeavor [1] 9/11
enemy [1] 31/7
enforce [1] 9/22
engage [3] 23/9 32/4
32/6
entitled [8] 15/1 16/1
17/18 18/14 21/16
22/22 26/4 30/17
entry [1] 3/21
especially [2] 16/10
30/13
essential [1] 31/25
essentially [1] 18/9
et [8] 1/3 1/6 1/9 1/12
3/4 3/4 3/5 3/6
even [10] 16/10 22/3
23/5 23/9 24/24 25/2
27/7 28/22 31/2 32/18
event [1] 29/6
eventually [1] 9/22
ever [5] 10/15 16/16
26/22 28/21 31/1
every [2] 12/6 16/20
everybody [2] 3/12
38/7
everyone [2] 3/11
37/25
everything [5] 4/2 6/14
7/15 9/6 25/14
exactly [2] 5/18 33/20
example [5] 9/9 9/14
16/20 17/17 18/6
exchange [1] 10/21
exchanged [4] 11/13
21/13 25/25 26/22
exhaust [1] 9/18
exist [3] 5/16 22/17
30/4
expense [1] 18/23
experienced [1] 31/1
expert [8] 15/5 15/7
15/16 15/21 18/7 18/8

**E**

expert... [2] 18/11 18/15
experts [2] 15/22 15/23
exposure [1] 16/9
extend [3] 6/4 7/4 8/12
extension [2] 7/5 7/6
extent [10] 5/15 6/21 10/7 10/17 16/16 19/13 21/12 29/20 30/16 34/10

**F**

fact [3] 8/24 30/17 33/20
factual [1] 15/24
fair [2] 17/22 19/2
fairly [2] 31/3 34/8
fairness [1] 7/23
fall [1] 36/10
false [1] 31/18
far [4] 4/22 10/21 11/3 13/6 14/24 17/10 21/15 36/9 36/12
fashion [1] 6/7
feel [2] 7/18 34/9
fees [4] 14/22 17/17 19/5 19/15
fell [1] 10/13
Fifth [1] 1/22
file [5] 34/22 34/23 35/2 35/3 35/22
filed [8] 3/16 21/5 26/2 26/7 26/9 35/4 35/8 35/23
files [3] 4/25 10/9 10/19
filing [2] 21/15 25/1
filings [3] 9/11 9/12 25/15
final [1] 33/18
find [1] 5/7
finds [1] 6/21
fine [3] 34/18 35/6 36/14
finish [4] 4/2 4/5 4/6 4/12
firm [1] 18/24
firms [1] 16/22
first [7] 7/10 8/1 9/17 12/18 26/7 29/9 32/3
five [2] 35/17 35/20
flagged [1] 14/4
flood [1] 5/2
folks [1] 38/4
follow [2] 4/22 12/10
following [1] 30/13
FOODS [16] 1/6 1/12 2/7 3/4 3/5 8/20 9/24 14/21 15/4 16/7 16/21 19/17 20/18 25/12 32/20 32/21
foregoing [1] 39/3
forth [2] 21/8 26/1
forthcoming [1] 12/19
forward [3] 34/12 34/22 37/24
four [3] 20/13 20/14

**G**

frankly [1] 17/22
Friday [1] 4/4
full [1] 26/22
function [1] 18/9
funds [1] 22/15
futile [3] 23/9 23/13 23/14
future [1] 18/20

**G**

gainsharing [4] 22/13 30/13 30/15 31/23
gather [1] 27/18
get [16] 4/1 4/20 5/11 5/13 5/14 6/5 9/11 9/16 9/20 11/19 11/23 11/24 12/10 13/22 14/10 18/25
getting [2] 12/25 16/23
give [3] 21/3 33/1 37/5
given [2] 25/22 31/13
go [7] 5/7 7/10 15/9 19/14 23/9 32/18 35/22
go ahead [1] 35/22
goal [1] 14/14
goes [1] 11/15
going [21] 4/4 4/13 5/3 7/14 7/25 8/4 9/11 12/10 12/18 12/24 12/25 14/9 15/1 15/23 34/7 34/22 35/1 35/2 36/12 36/25 37/24
gone [2] 4/24 10/3
good [3] 9/1 9/3 9/4
Good morning [1] 9/4
got [5] 4/4 4/8 11/17 13/24 38/7
gotten [2] 5/8 10/3
Governors [1] 23/25
GREENBERG [1] 2/3
Greg's [1] 11/2
Gregory [2] 2/2 3/9
gtlaw.com [2] 2/5 2/6
guess [1] 17/25 33/22 34/7
guns [2] 23/17 23/18

**H**

had [13] 4/14 4/15 4/18 9/10 11/4 15/12 27/6 27/6 33/3 33/25 34/4 36/8 36/15
half [1] 5/9
hand [1] 17/1
happen [1] 36/25
happening [2] 8/10 37/1
hard [1] 27/15
has [26] 6/19 10/9 14/4 14/7 14/9 15/4 16/21 19/17 20/18 22/12 22/18 22/19 27/9 27/10 27/11 27/19 27/22 27/25 28/6 28/15 30/11 33/12 34/1 34/11 35/4 35/8
hasn't [3] 29/1 29/2

**H**

have [55]
haven't [5] 10/1 10/3 24/8 24/15 24/21
having [2] 23/8 36/17
he [4] 6/21 25/21 29/23 33/19
he's [2] 6/22 30/18
hear [1] 9/1 36/18
heard [1] 29/10
hearing [1] 7/19
helpful [1] 16/12
Hempfling [3] 2/7 3/9 11/1
her [3] 10/18 10/21 12/24
here [9] 3/13 8/19 13/25 14/9 22/7 31/6 31/10 33/21 37/9
highest [1] 32/22
highlights [1] 33/20
him [1] 30/18
his [8] 6/19 21/11 21/12 27/5 28/21 30/16 31/20 32/16
hits [1] 11/14
Honestly [1] 36/21
Honor [32] 3/2 3/23 4/14 7/23 9/3 10/7 10/25 13/3 19/2 19/11 20/2 20/25 21/24 25/22 27/25 29/3 29/13 29/19 29/25 31/15 32/9 33/1 33/17 34/18 34/21 36/18 36/22 38/1 38/2 38/3 38/5 38/6
HONORABLE [1] 1/14
hopefully [1] 7/20
hours [1] 8/25
how [10] 4/22 4/23 11/15 12/12 12/18 26/9 28/16 34/15 36/3 36/9
however [2] 7/13 12/5
hundred [2] 5/24 5/25

**I**

I believe [4] 10/22 12/2 14/7 20/7
I can [2] 16/14 31/11
I couldn't [1] 36/18
I did [2] 15/9 25/12
I don't [2] 7/13 32/18
I don't know [6] 12/1 18/6 28/25 31/1 33/25 34/1
I don't think [4] 25/4 28/4 31/24 36/6
I guess [2] 33/22 34/7
I have [5] 3/15 8/17 26/22 30/23 33/23
I haven't [2] 24/8 24/15
I just [3] 23/19 25/2 32/11
I know [2] 6/19 24/22
I mean [10] 7/3 15/15 17/20 18/4 25/22 31/2 34/8 35/9 35/10 36/15
I think [27] 3/24 4/3

**I**

13/3 13/4 13/7 14/20 15/8 16/9 16/11 17/6 19/2 20/10 20/13 23/9 26/23 27/15 31/15 32/13 33/6 33/8 34/18 36/23 37/16
I thought [2] 8/21 29/6
I understand [4] 20/4 25/19 30/20 32/16
I want [1] 13/7
I was [1] 35/1
I'd [2] 16/24 34/5
I'll [6] 6/17 15/9 34/13 35/7 35/16 35/23
I'm [19] 12/1 12/25 13/18 15/14 15/15 24/3 24/11 25/21 26/21 27/2 27/3 28/22 31/10 31/11 31/12 34/7 36/7 36/17 36/18
I'm going [1] 12/25
I'm just [3] 12/1 15/15 24/11
I'm not [6] 26/21 27/3 28/22 31/11 34/7 36/17
I'm not sure [3] 25/21 31/10 36/7
I'm sorry [2] 15/14 36/18
I've [7] 13/24 18/10 18/12 29/10 31/1 34/2 38/7
identical [2] 21/6 26/5
identified [1] 14/1
identify [1] 14/13
Identifying [1] 28/23
II [1] 2/7
illicit [1] 28/16
impasse [2] 13/16 34/11
important [2] 16/18 32/22
inaccurate [1] 24/10
INC [5] 1/6 1/12 2/8 3/4 3/6
inclined [1] 36/17
incorrectly [1] 25/24
incurred [1] 14/22
indicated [1] 21/7
individual [1] 20/7
individually [1] 4/24
individuals [1] 20/6
information [6] 6/21 11/23 12/11 12/22 16/3 22/23
instance [1] 32/3
intend [1] 18/8
intention [1] 7/9
interest [30] 13/11 18/22 21/18 22/7 22/17 26/14 28/5 28/13 28/14 28/15 28/17 28/18 28/23 28/24 30/9 30/25 31/3 31/6 31/7 31/12 31/16 32/23 33/5 33/7 33/9 33/16 33/20 33/24 34/4 35/11

**I**

13/13 13/14 13/7 14/20
16/15
interests [3] 28/9 28/11 31/8
interim [1] 17/3
internal [1] 7/25
interpreting [1] 7/25
interrupt [1] 21/19
intrigued [1] 30/23
invoice [1] 16/20
invoices [10] 14/25 17/9 17/23 18/10 18/12 18/14 18/21 18/24 19/7 19/15
involve [1] 17/22
involves [1] 20/6
Iron [1] 5/5
is [91]
is that correct [1] 20/23
is there [7] 6/12 13/23 24/18 24/19 25/1 36/4
isn't [1] 22/20
issue [24] 4/13 5/9 7/3 9/9 13/4 13/7 13/20 13/23 14/3 14/10 16/5 16/6 17/7 18/2 18/4 20/5 23/6 28/6 29/1 29/12 32/24 34/6 34/9 34/23
issues [15] 7/21 8/21 13/25 14/1 14/7 17/12 19/22 19/24 26/25 28/11 30/25 32/24 33/6 33/24 36/1
issuing [2] 7/9 12/14
it [56]
it would be [1] 23/9
it's [30] 4/14 4/18 4/20 8/12 12/22 12/5 13/8 14/20 14/25 15/1 15/5 16/6 17/16 17/20 19/18 20/16 20/24 22/18 24/18 25/9 27/1 29/12 30/3 31/5 33/15 35/12 35/13 36/21 36/25 37/16
items [2] 17/18 17/19
its [1] 5/2

**J**

jklaproth [1] 1/24
John [3] 2/7 3/9 10/25
john.hempfling [1] 2/10
joint [8] 1/14 3/2 9/10 13/11 22/5 31/3 31/9 35/11
judge [2] 1/15 31/2
judgment [3] 15/18 15/25 16/10
July [5] 1/7 4/1 5/23 8/2 39/7
juncture [2] 16/1 17/8
just [49]

**K**

kind [4]  17/20 27/18 34/9 35/12
Klaproth [14]  1/21 1/21 3/8 9/2 11/6 19/13 20/22 21/13 22/19 22/25 27/4 28/1 28/8 32/12
Klaproth's [3]  21/11 28/2 32/16
klaprothlaw.com [1]  1/24
know [29]  5/18 6/19 12/1 12/12 12/23 16/9 16/12 16/18 16/22 17/18 18/6 18/17 20/16 23/19 24/22 24/23 24/25 25/1 25/2 25/20 26/10 28/14 28/25 29/24 31/1 31/7 33/25 34/1 35/9
knowledge [1]  23/2

**L**

labeled [1]  5/4
labor [1]  31/17
language [1]  30/1
large [1]  28/14
largely [2]  18/2 34/3
last [1]  11/20
later [2]  14/17 15/12
law [6]  1/21 18/24 23/15 31/10 33/13 33/14
lawsuit [1]  27/14
lawyer [4]  27/1 27/4 27/13 33/12
lawyers [2]  21/21 23/25
lead [3]  20/11 20/12 20/15
leads [1]  26/12
least [8]  6/4 6/11 11/2 12/12 13/25 29/1 32/2 33/15
leave [4]  8/12 17/25 23/18 27/18
legal [2]  18/11 33/23
let [10]  3/19 7/2 16/2 20/4 21/2 22/24 23/1 25/1 32/2 36/2
let's [5]  35/15 35/25 36/9 37/3 37/20
Let's see [1]  36/16
letter [5]  34/16 35/2 35/16 35/18 35/21
liability [2]  15/19 16/4
lies [2]  31/13 32/23
like [13]  7/18 13/14 13/19 17/9 18/19 18/19 20/18 25/15 29/22 34/8 34/9 36/5 37/24
liked [1]  36/8
likely [1]  8/24
Likewise [1]  20/21
limit [1]  35/20
limited [1]  11/7
line [2]  17/17 17/18

little [5]  20/24 21/2 31/12 34/6 37/5
LLP [1]  2/3
local [1]  12/6
logical [1]  28/12
logistically [1]  4/21
long [2]  1/17 35/3
look [9]  8/15 12/24 13/24 18/19 22/2 35/9 35/23 36/5 37/23
looked [2]  18/10 18/12
looking [2]  7/14 17/1
looks [1]  18/19
looming [1]  28/15
lost [1]  5/2
lot [4]  7/23 16/22 18/22 24/18

**M**

made [3]  27/22 28/6 29/7
make [5]  5/10 7/6 8/3 18/1 20/4 24/9 26/11 27/18 32/11
makes [1]  31/9
making [5]  27/3 27/4 27/5 28/12 30/18
manager's [1]  32/19
manipulation [6]  30/13 31/23 32/5 32/7 32/15 33/8
manner [1]  26/15
many [2]  11/15 12/12
map [1]  4/16
MARKET [5]  1/6 1/12 2/8 3/4 3/5
massive [1]  5/6
material [1]  26/15
matter [2]  38/8 39/4
matters [1]  19/24
may [13]  3/17 7/10 7/19 8/3 8/9 9/14 10/5 10/17 15/7 21/19 26/13 32/9 33/1
maybe [7]  18/10 25/21 25/24 32/1 32/24 33/2 34/24
me [30]  3/19 3/20 7/2 10/10 10/10 16/2 17/16 18/1 18/2 18/20 20/4 21/2 22/24 23/1 25/1 26/6 27/1 27/8 27/14 27/24 28/1 28/8 29/13 29/21 31/5 32/2 32/14 36/2 36/14 38/8
mean [18]  7/3 8/2 12/15 15/15 17/20 18/4 23/21 24/18 25/22 30/5 30/23 31/2 31/6 34/2 34/8 35/9 35/10 36/5 37/24
meaningful [1]  31/9
means [1]  31/18
mechanical [1]  2/16
medical [2]  12/23 13/1
meet [2]  5/22 6/3
meeting [2]  27/15
MEHTA [1]  1/14

25/9
memorialize [1]  26/24
memorialized [2]  21/14 25/8
mentioned [1]  27/7
Merit [1]  2/12
met [1]  34/9
MICHAEL [1]  1/3 3/4
might [3]  16/23 18/23 26/15
millions [2]  16/8 16/8
mind [1]  35/13
mischaracterized [1]  33/10
misunderstood [1]  32/1
modification [1]  36/5
modified [1]  36/4
MOLOCK [13]  1/3 1/17 3/4 3/7 14/22 20/9 20/16 20/22 21/4 22/3 22/9 22/14 26/16
money [1]  30/17
month [1]  10/4
months [1]  37/11
more [13]  6/12 6/20 7/9 10/6 13/1 13/18 20/10 20/12 27/23 31/19 31/24 34/6 35/16
morning [3]  3/18 9/3 9/4
most [2]  10/2 32/22
mostly [1]  4/3
motion [3]  8/12 15/18 34/23
Mountain [1]  5/5
Mr [1]  36/8
Mr. [51]
Mr. Casas [10]  6/9 14/4 14/9 16/21 18/7 19/9 25/20 29/7 29/17 36/2
Mr. Klaproth [11]  9/2 11/6 19/13 20/22 21/13 22/19 22/25 27/4 28/1 28/8 32/12
Mr. Klaproth's [3]  21/11 28/2 32/16
Mr. Sellinger [1]  26/6
Mr. Sellinger's [1]  16/21
Mr. Vasquez [1]  22/3
Mr. Zambri [18]  6/19 8/19 19/22 20/20 21/13 22/12 22/18 22/24 23/22 24/6 24/6 25/13 25/13 26/18 30/11 31/20 33/23 34/1
Mr. Zambri's [6]  21/11 24/7 25/13 29/18 30/24 31/9
Ms. [2]  10/9 10/15
Ms. Buchanan [1]  10/15
Ms. Buchanan's [1]  10/9
much [6]  8/1 10/4

34/15
my [16]  7/23 10/14 15/20 16/7 27/3 27/10 27/14 27/20 27/22 28/1 28/19 28/21 29/14 32/18 36/23 36/24

**N**

named [1]  20/22
narrow [1]  32/24
nationwide [1]  31/20
nature [2]  22/8 22/16
nearly [1]  26/5
necessarily [3]  7/13 22/11 30/18
need [12]  3/18 6/4 7/18 8/15 8/16 18/20 19/6 19/16 32/18 34/15 36/12 37/14
needs [1]  33/19
never [4]  5/4 19/17 22/18 34/2
new [2]  29/10 37/7
news [2]  12/5 12/12
newspaper [1]  12/6
next [2]  6/20 8/24 36/11
Nice [1]  3/12
nine [5]  20/6 22/13 30/14 31/18 31/19
no [23]  1/4 1/9 7/12 7/22 8/6 10/16 11/4 17/14 20/2 25/5 28/3 28/3 28/12 29/19 30/8 30/20 30/20 33/14 33/17 33/20 35/16 38/5 38/6
not [40]
nothing [1]  27/10
notice [1]  12/15
November [1]  11/21
now [12]  4/10 6/17 7/14 8/7 8/11 9/7 18/1 18/19 19/19 24/23 36/2 36/24
number [6]  5/19 13/25 17/2 18/18 18/18 18/25
numbers [2]  19/12 19/20
NW [3]  1/18 1/22 2/14

**O**

objected [1]  9/17
obviously [4]  16/17 17/21 19/5 20/16
occur [1]  15/17
occurred [3]  31/17 31/19 31/22
October [6]  36/11 37/9 37/14 37/16 37/17 37/22
odds [1]  30/18
off [1]  12/5
Official [1]  2/13
Oh [1]  13/13
okay [33]  3/11 3/13 5/21 6/8 6/16 7/1 8/8

6/18 10/20 10/24 11/5 11/11 11/22 13/2 13/21 14/15 14/18 19/8 20/3 20/14 21/1 21/25 23/18 23/23 24/11 24/16 25/6 25/17 25/18 32/8 35/25 36/14 37/19
once [2]  34/16 35/2
one [18]  3/13 5/2 6/18 12/23 13/4 13/15 14/7 21/23 24/25 25/2 26/7 27/9 28/1 28/2 33/23 36/17 36/17 37/15
only [5]  4/17 10/15 11/4 13/7 31/17
opening [2]  34/16 35/2
opinion [1]  18/15
opponent [1]  26/14
opposed [1]  28/10
opposition [1]  34/23
order [5]  15/10 15/10 15/16 15/20 33/19
ordered [3]  4/15 6/14 7/16
orderly [1]  6/6
organizations [1]  12/12
original [4]  15/10 21/4 21/5 21/6
other [21]  5/4 9/18 10/18 13/4 14/3 14/12 17/1 19/22 19/24 21/23 25/7 25/8 25/9 25/18 26/3 26/24 26/25 27/21 35/4 35/8 36/1
others [3]  30/12 30/25 33/25
otherwise [1]  6/24
ought [7]  3/21 3/22 16/9 28/8 28/9 36/4 37/23
our [19]  3/13 4/1 4/11 4/11 6/1 6/3 9/6 9/14 11/3 14/10 19/14 19/14 21/10 26/17 28/9 30/1 30/8 31/16 36/11
out [7]  4/4 4/17 4/17 8/23 8/24 17/24 28/4
outside [1]  33/5
outstanding [6]  6/12 14/20
over [2]  3/20 8/2
own [3]  27/17 27/20 30/14

**P**

p.m [1]  1/7
page [1]  35/20
pages [5]  5/6 6/1 8/2 35/17 35/20
pages' [1]  13/24
paper [1]  29/12
part [4]  14/23 15/1 30/1 32/2
particular [2]  17/18 20/5
particularly [1]  31/4
parties [3]  13/5 32/14

**P**

parties... [1]  33/16
parties' [1]  15/18
party [5]  9/13 11/25
 26/14 34/5 35/12
past [1]  10/4
path [1]  23/10
pathway [1]  34/22
perhaps [3]  17/2 18/22
 32/25
period [4]  4/18 7/7 8/3
 23/20
perplexed [1]  31/12
person [1]  32/22
perspective [3]  6/11
 14/11 30/8
pervasive [1]  31/22
phase [4]  4/7 4/8 6/20
 16/4
Phase 1 [2]  4/7 4/8
phone [3]  10/16 10/23
 11/4
place [3]  3/24 29/9
 32/15
places [1]  32/21
plaintiffs [27]  1/4 1/10
 1/17 1/21 3/7 3/8 5/16
 6/2 9/6 9/10 13/10 14/6
 20/9 20/11 20/12 20/15
 20/19 20/22 22/10
 22/13 26/8 26/17 27/12
 30/19 30/22 31/14
 36/21
plaintiffs' [1]  7/2
pleadings [1]  21/9
plenty [1]  23/21
PLLC [2]  1/17 1/21
point [10]  3/21 11/8
 11/10 14/5 15/12 16/15
 16/25 19/3 19/16 29/6
policy [3]  22/14 30/12
 31/22
poses [1]  33/24
position [10]  15/5
 19/17 21/10 23/11
 29/10 29/17 32/4 32/18
 34/7 34/25
possession [3]  9/6
 9/14 9/16
possible [2]  26/25
 34/12
Post [5]  9/15 9/21
 10/22 11/18 11/24
potential [5]  14/1
 17/23 18/23 26/19
 27/22
potentially [4]  14/1
 15/6 17/22 18/19
practice [1]  31/2
practitioner [1]  34/3
present [2]  7/8 18/17
presently [1]  7/3
Press [2]  9/15 12/4
presumably [2]  10/4
 15/25
principle [1]  28/5
prior [1]  16/10
privilege [16]  13/11

 21/18 22/20 23/8 23/12
 28/5 29/8 29/15 31/9
 35/11 35/12 35/13
privileges [1]  31/3
probably [4]  4/5 5/13
 6/3 21/7 36/25
problem [1]  12/4
proceedings [4]  1/14
 2/16 38/9 39/4
process [1]  5/24
processed [1]  5/10
produce [6]  4/10 4/15
 5/3 5/17 19/15 19/18
produced [14]  2/17
 5/11 5/16 5/25 6/5 6/14
 6/15 7/14 9/6 9/10 10/9
 10/19 12/25 14/8
product [1]  27/1
production [14]  3/25
 4/4 5/20 8/10 8/13 8/20
 36/10 36/16 36/19
 36/21 37/1 37/5 37/7
 37/21
productions [1]  9/8
program [1]  31/23
proposition [1]  33/12
prosecution [3]  13/11
 22/5 26/16
protocol [1]  4/22
prove [4]  31/16 31/18
 31/21 31/25
proven [1]  4/20
provide [3]  17/2 19/11
 19/20
provided [1]  17/9
purpose [2]  7/5 18/21
purposes [2]  16/3
 18/17
pushed [1]  8/14
put [8]  5/5 29/12 30/18
 32/3 34/13 34/14 34/21
 36/17
putting [1]  17/6

**Q**

qualify [1]  29/23
question [4]  8/6 24/23
 33/22 33/23
quite [1]  3/16
quoted [1]  15/10
quoting [1]  15/15

**R**

raise [2]  14/4 19/23
raised [3]  29/2 29/3
 29/4
rather [3]  13/18 16/24
 29/7
reach [1]  23/6
reached [2]  13/16
 34/10
ready [1]  13/18
really [5]  8/11 15/5
 18/18 27/15 27/19
Realtime [1]  2/12
reason [1]  22/12
reasonable [4]  3/21

reasonableness [2]
 18/15 19/6
recall [1]  25/9
received [7]  3/15 8/2
 10/1 10/18 11/15 12/13
 16/21
recently [1]  27/7
recollection [1]  11/2
record [2]  15/24 39/3
recorded [1]  2/16
records [4]  7/25 8/20
 12/23 13/1
redacted [1]  17/8
redacting [1]  17/23
refers [2]  18/7 26/8
REGAN [1]  1/17
reganfirm.com [1]
 1/20
regard [3]  6/4 13/3
 13/4
regarding [1]  17/9
regional [1]  12/6
Registered [2]  2/12
regular [1]  3/13
related [2]  28/3 33/4
relates [1]  13/9
relating [4]  11/14
 15/11 18/7 25/5
relevant [2]  24/5 27/7
relied [1]  33/9
rely [1]  15/7
relying [1]  15/23
remember [3]  13/22
 15/9 23/1
remembered [1]  26/23
reminding [1]  26/6
replies [1]  35/19
reply [1]  35/4
Report [4]  6/3 29/4
 29/13 30/2
Reporter [2]  2/11 2/12
 2/12 2/13
reporters [3]  10/11
 10/15 12/16
reports [5]  3/15 13/9
 13/24 15/21 25/15
representation [1]
 24/9
represented [1]  14/9
request [6]  6/23 8/4
 12/23 23/5
requested [3]  6/14
 7/16 13/9
requesting [1]  14/24
requests [2]  7/6 7/9
required [1]  6/22
reserve [1]  8/4
reserved [2]  6/19 6/22
resolve [1]  7/21
resolved [2]  14/7 14/11
respect [5]  9/5 11/17
 14/19 16/7 27/13
response [2]  10/8 15/8
responses [1]  35/8
responsive [3]  5/11
 23/5 26/19
result [2]  14/22 22/17

issued [1]  13/18
review [2]  4/10 17/22
reviewed [3]  3/15 4/9
 5/10
revised [1]  15/16
rhetorical [1]  29/22
right [32]  4/9 6/19 6/22
 8/4 8/7 8/11 9/2 9/7
 12/7 12/20 13/13 14/13
 15/3 17/13 18/1 19/8
 19/13 19/19 19/21
 20/10 22/21 23/15
 24/23 29/5 29/16 30/5
 36/2 37/3 37/10 37/13
 37/20 38/4
ripe [1]  19/19
RMR [2]  39/2 39/8
rogue [1]  30/14
room [2]  2/14 28/1
 37/6
round [1]  6/18
rule [2]  31/11 34/8
rules [2]  15/18 33/2
ruling [1]  13/19

**S**

said [6]  4/25 18/17
 22/19 27/8 28/7 28/8
Salvatore [1]  1/17 3/7
same [5]  28/13 28/18
 31/21 33/12 35/19
satisfied [1]  16/19
satisfy [1]  19/1
say [10]  8/17 16/6
 16/13 17/19 18/10
 20/11 24/17 24/20 31/5
 36/25
saying [4]  4/12 27/13
 28/13 28/19
says [2]  18/11 24/25
schedule [3]  34/13
 35/1 36/3
scheduling [3]  15/16
 35/25 36/10
scope [2]  26/19 32/15
 33/8
search [5]  23/8 24/9
 24/21 25/12 26/22
seated [1]  28/9
see [7]  3/12 8/10 12/18
 12/24 13/1 26/12 36/9
seek [2]  9/22 19/5
seeking [10]  11/9
 11/14 14/21 17/17
 18/24 19/14 21/20
 21/21 23/17 25/21
seemed [1]  10/10
seems [4]  18/2 18/20
 29/22 34/8
seen [2]  8/1 24/15
Sellinger [3]  2/2 3/9
 26/6
Sellinger's [1]  16/21
sellingerd [1]  2/6
sent [1]  12/9
September [3]  37/4
 37/8 37/21
serve [1]  23/24

servers [1]  9/25
services [2]  2/8 17/9
set [7]  32/24 34/12
 37/4 37/7 37/15 37/17
 37/20
sets [1]  30/22
settlement [1]  16/17
several [5]  5/24 5/25
shall [1]  15/17
she [6]  10/11 10/15
 10/17 11/3 11/4 12/19
sheets [1]  14/25
shifting [1]  31/17
should [9]  4/6 8/12
 8/24 10/12 17/11 20/11
 25/25 26/1 36/5
shouldn't [1]  27/16
show [3]  22/12 30/11
 33/19
shows [3]  30/7 30/10
 30/10
SI [1]  10/2
side [3]  31/4 35/4 35/8
sides [1]  36/16
similar [1]  25/23
simultaneous [1]  26/5
since [2]  35/17 35/21
single [2]  35/17 35/20
single-spaced [2]
 35/17 35/20
situation [1]  27/25
Sixth [2]  2/3 2/8
skin [1]  32/25
smoking [2]  23/17
 23/18
so [76]
So I think [2]  15/4 17/4
So if you [1]  34/9
So it's [1]  4/18
some [25]  3/17 4/24
 6/4 7/17 8/21 9/8 9/10
 10/2 10/12 12/22 13/18
 18/8 21/3 21/7 24/18
 25/3 26/1 26/25 28/10
 28/11 30/25 33/24
 34/12 34/13 35/11
somebody [1]  18/11
somehow [1]  27/17
someplace [1]  21/15
something [10]  11/24
 16/14 17/2 19/4 19/9
 27/13 27/13 28/6 33/4
 36/24
soon [2]  26/3 26/9
soon-to-be-filed [1]
 26/9
sorry [2]  15/14 36/18
sort [11]  3/19 3/20
 16/11 17/12 18/25 23/7
 26/1 27/21 30/1 30/23
 34/22
sounds [1]  20/18
sources [1]  10/18
spaced [2]  35/17 35/20
speak [2]  10/5 32/21
specific [1]  27/23
spur [1]  8/3
stand [1]  8/20 28/5

**stand...** [1] 37/23
**stands** [1] 33/11
**start** [3] 3/24 7/24 7/24
**started** [2] 25/14 25/14
**state** [1] 3/25
**stated** [3] 28/20 28/21
28/22
**statement** [6] 27/21
28/19 29/18 29/22 30/7
30/10
**statements** [3] 12/13
26/13 31/17
**STATES** [2] 1/1 1/15
**status** [14] 1/14 3/2
3/13 3/15 6/3 8/10 13/8
13/24 25/15 28/7 29/4
29/13 30/1 36/11
**stenography** [1] 2/16
**still** [6] 6/12 7/6 8/22
9/13 14/2 14/20
**STLs** [2] 30/12 30/14
**store** [4] 4/23 5/2 32/19
32/20
**stores** [14] 4/7 4/9 4/14
4/16 4/17 4/19 4/21
4/25 5/4 5/9 5/15 14/13
31/18 31/19
**stories** [2] 11/15 12/16
**Street** [4] 1/18 1/22 2/3
2/8
**strictly** [1] 16/5
**strike** [1] 29/21
**struck** [1] 17/5
**stuff** [6] 7/25 8/15 17/9
24/2 24/18 25/15
**subpoena** [3] 9/22
11/7 12/15
**subpoenaed** [1] 28/20
**substantive** [1] 28/20
**such** [2] 22/14 23/2
**sued** [1] 16/8
**suggest** [1] 3/17
**suggested** [2] 4/15
34/11
**suggesting** [4] 28/22
30/24 31/11 33/11
**suggestion** [2] 33/1
36/8
**suing** [1] 20/7
**Suite** [4] 1/18 1/22 2/4
2/9
**summary** [3] 15/18
15/25 16/10
**Superior** [1] 26/8
**superiors** [2] 32/17
32/19
**supplemental** [2] 8/4
12/22
**support** [1] 9/12
**supposed** [1] 37/2
**sure** [9] 5/10 7/11 20/4
25/21 26/11 31/10
32/10 32/11 36/7
**sword** [1] 27/17
**systemic** [1] 31/22
**szambri** [1] 1/20

**tables** [1] 28/9
**take** [5] 8/16 12/18
19/24 35/23 35/24
**taken** [2] 15/4 19/17
**taking** [2] 7/24 29/17
**talk** [7] 3/18 3/24 19/25
26/24 32/22 35/25
37/23
**talked** [1] 10/15
**talking** [9] 4/11 5/6
5/12 6/2 7/20 10/14
16/22 27/1 33/18
**tax** [3] 9/9 9/10 9/12
**team** [3] 4/11 5/13
36/24
**technically** [2] 8/9 8/11
**telephone** [1] 27/6
**tell** [2] 3/20 36/11
**terms** [6] 3/21 8/19
19/23 22/2 34/3 37/24
**testimony** [2] 11/7
12/15
**tethered** [1] 33/7
**than** [9] 13/4 14/3
20/12 20/24 25/8 27/23
31/19 31/24 35/17
**Thank** [3] 3/23 38/1
38/7
**Thank you** [1] 38/1
**that** [246]
**that's** [33] 6/1 6/2 6/12
6/14 6/17 7/15 8/4 8/17
9/1 12/21 13/15 14/8
14/14 14/20 17/2 17/10
19/2 19/3 25/20 26/25
29/10 30/5 30/10 32/21
33/13 33/14 33/17 34/3
34/16 34/18 35/6 35/12
36/14
**The Post** [1] 11/24
**The Washington** [3]
9/15 9/21 11/17
**their** [17] 5/9 9/16 9/24
12/2 14/21 14/23 15/1
15/2 15/8 16/9 18/13
20/7 27/11 27/12 27/17
28/11 30/14
**them** [8] 4/23 5/5 5/10
14/2 16/12 16/18 19/1
27/19
**then** [18] 6/6 6/9 9/21
11/6 14/16 14/19 17/2
21/20 33/8 35/3 35/7
35/19 35/22 35/23
35/25 36/11 37/9 37/22
**theoretically** [1] 10/12
**theories** [1] 31/13
**theory** [1] 32/2
**therapist** [1] 12/24
**there** [61]
**there's** [24] 7/3 8/11
12/23 13/1 16/3 16/16
21/17 21/18 22/5 22/6
23/16 23/21 24/25 25/2
25/3 26/15 28/4 28/12
28/25 29/8 30/11 32/13
33/20 34/12

**unanswered** [2] 32/15
32/23
**these** [18] 4/25 5/7
7/25 15/6 18/10 18/12
19/18 21/9 21/15 22/13
24/5 26/2 26/5 30/14
32/20 35/2 35/17 35/21
**they** [28] 4/22 4/23 5/5
5/18 9/17 9/24 10/18
10/19 12/5 12/8 12/9
12/9 15/10 16/4 16/9
17/2 18/8 19/5 26/9
27/7 27/16 27/23 28/14
32/6 32/7 33/6 33/9
33/11
**they'd** [1] 27/15
**they're** [12] 3/16 4/9
4/11 5/5 5/10 5/11 16/8
17/16 22/10 23/17 24/1
34/22
**they've** [4] 13/10 22/19
27/8 29/12
**thing** [3] 16/18 17/20
21/21
**things** [6] 3/17 8/10
27/2 27/8 37/23 37/23
**think** [59]
**thinking** [1] 5/13
**third** [2] 9/13 11/24
**third-party** [1] 9/13
**this** [39] 3/2 3/18 4/4
7/3 8/15 10/25 11/8
11/9 14/4 15/5 15/11
16/1 16/2 16/24 17/7
17/8 17/25 18/1 18/2
18/7 18/12 19/3 23/10
24/22 27/7 27/21 30/12
31/17 31/21 31/22 32/3
32/7 33/1 34/8 34/11
34/21 34/23 36/25 37/3
**thorough** [4] 23/8 23/8
24/8 24/21
**those** [17] 4/10 4/12
4/17 4/20 5/3 5/11 5/15
5/17 7/21 9/12 9/23
10/4 16/4 30/17 33/5
33/5 34/3
**though** [1] 12/10
**thought** [4] 8/21 29/6
32/3 34/2
**thousand** [2] 5/24 5/25
**thousands** [1] 5/6
**three** [5] 4/6 4/12 20/10
20/12 37/11
**through** [12] 5/7 5/19
6/21 7/25 8/22 9/18
9/24 10/3 10/13 13/6
14/2 18/25
**Thursday** [1] 4/4
**time** [13] 4/18 8/1 8/3
8/15 14/25 15/13 18/23
21/5 27/15 28/13 28/18
34/15 36/13
**timely** [1] 6/6
**times** [1] 7/23
**timing** [1] 37/24
**titled** [1] 39/4
**today** [12] 7/8 13/17

**unanswered** [2] 12/642
27/9 29/11 31/11 34/7
34/17 37/12
**together** [1] 37/22
**told** [2] 11/3 32/7
**too** [1] 28/15
**took** [1] 32/15
**total** [1] 17/10
**track** [3] 5/8 12/8 12/9
**transcript** [3] 1/14 2/16
39/3
**transcription** [1] 2/17
**transfers** [1] 4/18
**TRAURIG** [1] 2/3
**trial** [3] 19/6 19/14
23/25
**true** [1] 33/17
**trying** [2] 31/21 31/25
**TTF** [1] 37/1
**TTFs** [8] 4/14 4/15 5/7
5/15 5/18 5/19 14/8
14/13
**turn** [1] 3/20
**turns** [1] 4/17
**two** [13] 4/6 4/12 5/4
13/8 14/7 26/2 27/8
30/21 31/13 33/13
34/16 34/24 34/25
**TX** [2] 2/4 2/9
**types** [1] 25/7

**U.S** [1] 2/13
**underlying** [3] 15/6
18/20 19/7
**understand** [7] 15/2
16/14 20/4 25/19 26/19
30/20 32/16
**understanding** [7] 6/9
8/13 10/14 15/20 16/16
17/6 19/4
**understands** [1] 25/11
**understood** [4] 30/6
32/11 35/6 35/14
**unformed** [1] 4/22
**UNITED** [2] 1/1 1/15
**unless** [4] 7/19 10/12
17/25 35/25
**unusual** [2] 33/15 37/1
**unwritten** [1] 30/12
**up** [8] 4/9 12/10 17/21
19/24 21/2 26/12 36/20
36/21
**upon** [3] 31/7 33/10
36/23
**us** [7] 4/15 8/3 11/3
21/7 28/16 28/20 29/3
**use** [1] 27/17
**useful** [1] 26/15

**vague** [1] 30/1
**value** [1] 16/3
**VASQUEZ** [19] 1/9
1/21 3/5 3/8 9/5 14/6
14/23 20/6 20/19 21/5
22/3 22/10 22/13 26/8
26/17 27/9 27/12 27/20

**vendor** [3] 4/11 5/12
36/24
**versus** [3] 3/4 3/5 22/9
**very** [5] 4/20 13/5 21/5
22/8 22/16
**via** [1] 35/22
**VICTOR** [1] 1/9 3/5
**Victor Vasquez** [1] 3/5
**view** [1] 16/5
**views** [1] 11/15
**violated** [2] 22/13
30/15
**voluminous** [1] 3/17

W

**W-2s** [1] 9/11
**wait** [1] 38/8
**waive** [2] 23/12 30/3
**waived** [3] 17/7 22/18
22/19
**waiver** [10] 28/23
28/24 29/1 29/7 29/14
29/18 29/21 29/23
29/24 30/3
**waiving** [1] 23/7
**walked** [1] 32/20
**want** [16] 13/7 14/4
18/1 19/18 21/10 23/11
23/19 24/9 24/20 25/2
26/11 26/12 32/11
32/21 35/3 36/15
**wanted** [1] 19/23
**was** [37] 9/9 10/8
10/16 10/22 11/12
11/20 15/8 15/11 15/11
15/21 21/7 22/2 26/6
26/7 26/13 27/11 27/21
28/1 28/2 28/20 28/22
28/22 29/3 29/4 29/6
29/7 29/18 29/20 29/25
31/22 32/2 32/4 32/17
33/10 35/1 36/6 36/9
**Washington** [8] 1/6
1/19 1/23 2/15 9/15
9/21 10/22 11/17
**way** [13] 4/21 10/12
11/4 18/25 22/14 26/3
30/16 31/8 32/3 32/25
34/12 34/24 37/5
**we** [117]
**we believe** [6] 15/25
17/11 21/16 22/4 22/17
26/7
**we will** [2] 6/13 7/15
**we'd** [3] 5/7 17/20 23/5
**we'll** [9] 4/5 4/10 5/11
5/18 7/21 35/23 37/5
37/7 37/20
**we're** [20] 3/13 4/3 5/3
5/6 5/13 9/11 9/18
11/14 12/10 12/17
12/24 15/1 21/16 22/22
25/24 26/4 36/12 37/1
37/9 37/22
**we've** [10] 4/4 4/8 5/8
5/25 9/6 10/1 10/3 13/9
14/24 36/7

**W**

**weeks [3]** 4/6 4/12 34/17
**welcome [2]** 3/11 3/11
**well [17]** 9/1 13/1 13/5 14/22 16/2 16/13 23/1 23/18 24/1 24/17 26/9 28/25 29/6 29/17 32/2 33/22 36/2
**went [1]** 30/14
**were [19]** 3/16 4/16 8/21 11/9 14/7 14/8 21/5 21/13 21/14 21/14 25/23 25/25 26/2 26/21 30/13 32/7 32/25 33/3 33/11
**weren't [1]** 27/23
**West [2]** 2/3 2/8
**what [46]**
**what's [2]** 3/21 7/14
**whatever [3]** 5/19 22/12 24/12
**when [8]** 5/4 5/17 7/24 9/23 16/13 18/6 24/17 37/22
**where [11]** 3/20 3/22 4/25 4/25 5/6 6/1 8/20 27/25 28/7 31/12 37/23
**whereas [1]** 20/9
**whether [9]** 7/5 13/17 14/25 23/19 25/3 25/9 29/8 30/14 34/1
**which [15]** 8/1 9/18 10/13 11/15 13/10 14/8 14/19 20/9 27/8 28/16 30/24 32/15 33/8 33/24 36/9
**while [1]** 8/19
**who [3]** 12/9 18/8 18/10
**who's [1]** 18/11
**WHOLE [16]** 1/6 1/12 2/7 3/4 3/5 8/20 9/24 14/21 15/4 16/7 16/21 19/17 20/18 25/12 32/20 32/21
**Whole Foods [8]** 8/20 14/21 15/4 16/7 16/21 19/17 20/18 25/12
**wholefoods.com [1]** 2/10
**whom [1]** 20/7
**why [8]** 3/19 6/2 8/4 23/13 27/7 29/24 34/12 37/4
**will [11]** 6/10 6/13 7/15 10/5 10/8 15/24 18/9 18/9 18/10 20/8 31/5
**William [4]** 2/11 39/2 39/7 39/8
**willing [1]** 17/8
**win [1]** 33/19
**wire [1]** 12/5
**within [3]** 8/24 9/6 9/16
**without [4]** 7/13 17/11 23/7 28/19
**words [2]** 14/12 25/18
**work [3]** 18/24 27/1

**worked [2]** 8/23 8/24
**working [3]** 8/22 13/6 14/2
**worth [1]** 13/24
**would [41]**
**wouldn't [3]** 27/4 27/4 27/14
**writing [1]** 34/14
**wrong [1]** 32/14
**wrongdoing [2]** 27/17 28/16
**wrote [1]** 12/16

**Y**

**Yeah [2]** 8/23 22/1
**yes [7]** 6/24 11/20 14/17 19/11 38/1 38/2 38/3
**yet [1]** 36/7
**you [91]**
**you know [3]** 16/22 18/17 24/25
**you'd [2]** 13/17 17/18
**you'll [2]** 14/12 25/1
**you're [6]** 7/25 8/19 16/20 17/1 23/14 35/10
**you've [5]** 8/1 9/23 20/21 24/13 34/9
**your [50]**
**Your Honor [30]** 3/2 4/14 7/23 9/3 10/7 10/25 13/3 19/2 19/11 20/2 20/25 21/24 25/22 27/25 29/3 29/13 29/19 31/15 32/9 33/1 33/17 34/18 34/21 36/18 36/22 38/1 38/2 38/3 38/5 38/6

**Z**

**Zambri [22]** 1/17 1/17 3/7 6/19 8/19 19/22 20/20 21/13 22/12 22/18 22/24 23/22 24/6 24/6 25/13 25/13 26/18 30/11 31/20 33/23 34/11 36/8
**Zambri's [6]** 21/11 24/7 25/13 29/18 30/24 33/18
**Zaremba [4]** 2/11 39/2 39/7 39/8
**zero [2]** 24/19 24/20