```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA


MICHAEL MOLOCK, ET AL.,            )
                                   )
          Plaintiffs,              )
                                   )   CA No. 16-2483
       vs.                         )
                                   )
WHOLE FOODS MARKET, INC., ET AL.,  )
                                   )
          Defendants.              )   Washington, D.C.
-----------------------------------)   April 7, 2021
                                   )   11:30 a.m.
VICTOR VASQUEZ, ET AL.,            )
                                   )
          Plaintiffs,              )
                                   )
          vs.                      )   CA No. 17-112
                                   )
WHOLE FOODS MARKET, INC., ET AL.,  )
                                   )
          Defendants.              )
_____)


             TRANSCRIPT OF JOINT STATUS CONFERENCE
                 VIA TELECONFERENCE PROCEEDINGS
             BEFORE THE HONORABLE AMIT P. MEHTA
                 UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For Molock Plaintiffs:          Salvatore J. Zambri
                                REGAN ZAMBRI & LONG, PLLC
                                1919 M Street, NW
                                Suite 350
                                Washington, D.C. 20036
                                (202) 463-3030
                                szambri@reganfirm.com


For Vasquez Plaintiffs:         Brendan J. Klaproth
                                KLAPROTH LAW PLLC
                                2141 Wisconsin Ave., NW
                                Suite M3
                                Washington, D.C. 20007
                                (202) 618-2344
                                bklaproth@klaprothlaw.com

APPEARANCES CONTINUED

For the Defendants:            Gregory J. Casas
                               John Hempfling
                               Alan Hersh
                               GREENBERG TRAURIG, LLP
                               300 West Sixth Street
                               Suite 2050
                               Austin, TX 78701
                               (512) 320-7238
                               casasg@gtlaw.com
                               sellingerd@gtlaw.com
                               john.hempfling@wholefoods.com

                               David E. Sellinger
                               GREENBERG TRAURIG LLP
                               200 Park Avenue
                               P.O. Box 677
                               Florham Park, New Jersey 07932
                               (973) 360-7925
                               sellingerd@gtlaw.com

                               John H. Hempfling, II
                               WHOLE FOODS MARKET
                               SERVICES, INC.
                               828 West Sixth Street
                               Suite 100
                               Austin, TX 78703
                               (512) 542-0213
                               Email:
                               john.hempfling@wholefoods.com

Court Reporter:                William P. Zaremba
                               Registered Merit Reporter
                               Certified Realtime Reporter
                               Official Court Reporter
                               E. Barrett Prettyman CH
                               333 Constitution Avenue, NW
                               Washington, D.C. 20001
                               (202) 354-3249

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

COURTROOM DEPUTY:  Good morning, Your Honor.
This is a Joint Status Conference for Civil Action 16-2483
and 17-112, Michael Molock, et al. and Victor Vasquez,
et al., versus Whole Foods Market, Inc., et al.

Salvatore Zambri for the Molock Plaintiffs,
Brendan Klaproth for the Vasquez Plaintiffs.

Gregory Casas, David Sellinger, John Hempfling,
and Alan Hersh for the defendants.

THE COURT:  All right, Counsel.  Good morning to
all of you again.  I hope everybody is doing well.

So we're back just to check on the status of
things.  And we were together about a month ago.  And I was
just looking back at my notes and Mr. Zambri suggested that
we all gather again in about 30 days to gauge progress
towards the fact-discovery deadline.

I've reviewed the parties' Joint Status Report,
and thank you for submitting that.  And it seems like things
continue to progress.  And at least as of today, there may
not be an issue that I need to resolve on any particular
topic.

But why don't I turn to the parties and sort of
get their sense of where things stand and any other issues
that you want to raise.

So why don't we start with Mr. Zambri.

1          MR. ZAMBRI:  Good morning, Your Honor.  I hope

2     you're doing well also.

3          I don't think there's much that the Court needs to

4     rule on, although there is one pressing issue that, perhaps,

5     we will need your involvement either today or maybe through

6     some briefing, and it has to do with the boxes.

7          There are two categories of boxes at issue; one is

8     a set of a collection of boxes that Whole Foods knew clearly

9     which stores they relate to, and then they took -- and they

10    produced a lot of those boxes or the contents of the boxes.

11    And then they also took photographs of approximately -- of

12    the file folders within about 200 remaining boxes.  And then

13    they produced, based upon their review of the labels of the

14    folders in those boxes, which appeared to contain

15    potentially relevant information and then did not produce

16    the contents of the folders which did not appear to contain

17    relevant information.  Plaintiffs' counsel, I'm speaking for

18    the Molocks only now, we're comfortable with that, that's

19    fine.

20          At the end of the day, this is a reminder to the

21    Court, the evidence has shown that when you have a transfer

22    of labor of, for instance, two team leaders in one

23    department, more likely than not, it's an inappropriate

24    transfer.  That's come out of the mouths of multiple

25    representatives of Whole Foods so far.

1        So from our perspective, it's Whole Foods' burden,

2   then, to sort of show something different.  So they've given

3   us what they believe is relevant.  We accept that.  We're

4   not going to be looking at boxes that have labels of folders

5   that, in our view, clearly don't relate to the merits of

6   this case.

7        The other category of boxes, and this is a big

8   issue because it has to do -- it impacts the discovery

9   schedule here, at least in my mind -- is a set of 3500

10  boxes.  As the Court likely knows from the status reports,

11  those boxes contain who knows what.  They're not associated.

12  There's nothing on those boxes associated with any

13  particular store.  And there's no idea of, just, I guess,

14  from reviewing the boxes, what the contents might be.

15       So our position is that we're not -- we shouldn't

16  be obligated to go on any fishing expedition.  Again, it's

17  their affirmative defense to justify what more likely than

18  not is an inappropriate transfer.  And if they want to

19  advance that affirmative defense, go ahead and do it, but we

20  don't believe we should be going on a fishing expedition.

21       And my position, Your Honor, as set forth in the

22  status report, is that there shouldn't be a jury instruction

23  that says, well, you know, plaintiffs' counsel could have

24  looked at those unlabeled boxes, related to who knows what

25  stores, if they're even related to stores, and because he

1    didn't, that, therefore, you should have an adverse

2    inference against what might be in there.

3            Similarly, I'm not suggesting that there ought to

4    be an adverse-inference instruction against the defendant.

5    Let the jury just -- if they want to argue to a jury at some

6    point or to you, Your Honor, that more likely than not there

7    were TTFs in there to support these transfers, they can have

8    at that argument, and we'll counter that argument with our

9    thoughts on the issue, which I think you can pretty well

10    glean from what I've said to you so far today.

11            So that's the issue about the boxes.  And from my

12    perspective, I think the issue is resolved.  They've given

13    us everything that they felt was relevant and we're done.

14    So I don't know if you want me to stop there before we get

15    into any other issue, Your Honor.

16            THE COURT:  Well, let me hear from Mr. Klaproth

17    and get his views and then we can sort of talk through what,

18    if anything, needs to be done about this.

19            MR. KLAPROTH:  Good morning, Your Honor.  This is

20    Brendan Klaproth for the Vasquez Plaintiffs.

21            So I share Mr. Zambri's view.  I think the issue

22    with the boxes, the relevance of them and what it all comes

23    down to, is TTFs.  And it's Whole Foods that has come

24    forward, as part of its defense, to say that these TTFs are

25    relevant to determine whether a transfer is proper or not.

1        During the course of discovery, we've now had two

2   depositions, one from Scott Allshouse, and I believe the

3   other one was Kristin May, that said, more likely than not

4   when you look at a gainsharing report, there's two team

5   leaders; it's an improper transfer.

6        So from our perspective, that's enough to carry

7   our burden.  And if Whole Foods wants to come forward as its

8   defense and say these TTFs are relevant and you have to look

9   at them and that some may exist in unlabeled, unmarked boxes

10  but we don't know, that's their prerogative and we'll

11  cross-examine their witnesses on trial as to that and the

12  jury can assess it.

13       So I don't think there's much for the Court to do

14  here.  I think the issue has been resolved and I'm satisfied

15  with the current state of things.

16       MR. ZAMBRI:  Your Honor, this is Sal Zambri.

17  May I add something?

18       THE COURT:  Sure.  Of course.

19       MR. ZAMBRI:  Just on the issue of these unlabeled

20  boxes, again, just as a reminder, of course, we're in

21  Phase 1 and those boxes could relate to any store, if they

22  relate to any store at all, throughout the entire country.

23  And so statistically even, it's unlikely that they're

24  related to the Phase 1 store, let alone if there is

25  something related to a Phase 1 store, it has anything to do

1    with the merits of this case.  So that's just another reason

2    for it.

3            And I will add one more thing:  There was a

4    spreadsheet that we found in discovery that had hidden

5    fields in them.  This may have been brought to your

6    attention in the last status conference.  A hidden field in

7    a spreadsheet can only be designed intentionally as a hidden

8    field.  And when we figured this thing out and we were able

9    to open these hidden fields, in them was store after store

10   highlighted in red as "blatant," is their term,

11   inappropriate transfers.  Now, the quote is only around the

12   word "blatant."  The rubric was something, you know, a

13   little bit different.  Maybe Mr. Klaproth remembers it;

14   I can pull it up.  But it was clearly a blatant,

15   inappropriate transfer based on two team leaders being in

16   the same department, and possibly being based on two

17   assistant store team leaders being in the same department.

18           So I'm not blaming opposing counsel for that.

19   I certainly don't think that they would -- I know that they

20   wouldn't do that.  But somebody felt desperate enough to

21   keep us from seeing that, that they manually went in there

22   and they hid those fields.

23           So that's the status of the evidence that we're

24   comfortable with, and that's another reason upon which we

25   don't feel that we should be sent on this expedition of

1    viewing 3500 boxes that have no labeling system at all.

2              THE COURT:  Okay.

3              Mr. Casas, why don't I hear from you and then --

4    let me hear from you first and then we'll figure out what,

5    if anything, I need to do about this.

6              So why don't you go ahead, Mr. Casas.

7              MR. CASAS:  Thank you, Your Honor.  This is

8    Greg Casas.  And good morning, and I hope you're doing well.

9              So to start, I think we need to sort of reset here

10   the issue of the two team leaders on a particular team and

11   even what Mr. Brady testified about at his deposition with

12   regard to this spreadsheet.

13             And I think what the evidence is and what the

14   deposition testimony was with regard to two team leaders is

15   not that it was evidence of inappropriate conduct; but if

16   there are two team leaders on a team, you need to do more

17   investigation.

18             It's not evidence of anything other than, let's go

19   and take a look, let's look for TTFs or let's go and

20   interview the relevant personnel from Whole Foods to

21   determine whether or not it was something suspicious going

22   on or whether there was a legitimate reason for that.

23   So I think the inferences that Mr. Klaproth and Mr. Zambri

24   are trying to draw here are a little bit too attenuated.

25   Again, that's a merits issue, but I wanted to make sure the

 1   record was clear with regard to that particular point.

 2          And with regard to the spreadsheet, Mr. Grady was

 3   the sponsor of that spreadsheet; he's been deposed.  And

 4   with regard to the fields that were collapsed, they were not

 5   necessarily hidden.  I think there's a pejorative term there

 6   and a connotation there that I don't agree with.  But these

 7   fields were collapsed; Mr. Brady didn't know why; he

 8   couldn't remember why.  And the information that was in

 9   those fields is nothing -- is information that was in other

10   documents that was produced.

11          And with regard to the word "blatant," I don't

12   remember Mr. Brady using that word "blatant."  But what it

13   showed was that there were transfers that appeared from

14   data, raw data that needed to be investigated.  And this is

15   the heat map, Your Honor, that ultimately we have produced

16   and come to the 119 stores.  So this is not something that

17   is a wild omission by Whole Foods.  It's just, again, using

18   data to determine where to go and do more investigation,

19   having set that out there on the record.

20          With regard to the 3500 boxes, Your Honor, they

21   are boxes that they are affiliated with the Phase 1 stores

22   based upon information we have from the various storage

23   sites around the country.  These boxes -- and we talked

24   about this probably a year and a half ago, Your Honor, it

25   might be two years.

1          THE COURT:  Right.

2          MR. CASAS:  Honestly, I don't remember the exact

3    status conference.

4          But these are boxes affiliated with those stores

5    based upon the records that we have from the Iron Mountain

6    and other storage facilities.  These boxes, unfortunately,

7    do not have labels on them one way or the other.  We don't

8    know what's in them.  We don't the time frame for them.  We

9    just know that they're responsive in the sense that they're

10   related to the Phase 1 stores.  And we're happy to make

11   those available, as they're stored in the normal course, as

12   we're allowed under Rule 26.

13         With regard to the other 200 boxes, I think

14   Mr. Zambri and Mr. Klaproth are correct in the sense that

15   those are boxes that we have photographs.  We have pulled

16   what we believe is responsive out of them, but we have not

17   even gone through all 200 boxes.  But, again, we're happy to

18   make those available for inspection and copying under

19   Rule 26.

20         And it's not so much, Your Honor, that -- we do --

21   rather, Whole Foods does believe that there should be no

22   inference at all, there should be no jury question, there

23   should be nothing other than the plaintiffs, whether they be

24   the Vasquez Plaintiffs or the Molock Plaintiffs, can't point

25   to unproduced documents as any argument to the jury unless

1   they have gone through these boxes as we're willing to make

2   them available for inspection and copying.

3          So it's not so much an inference in the sense that

4   we're hiding something, which I think is the adverse

5   instruction or the adverse inference that the parties may

6   have been talking about several months ago.  I don't think

7   that either -- I don't think any party right now would wish

8   that.  What we're saying is, if you want to reference these

9   boxes at all, then you need to go through them, and we're

10  happy to make them available in Washington, D.C. for that to

11  occur.

12          THE COURT:  Well, this has been helpful.

13          I mean, it sounds like where things are is that

14  neither side, at least right now, intends to make any use of

15  these boxes.  And what I mean by that is for any evidentiary

16  purpose.  If that's wrong, then you all ought to let me

17  know, because in a sense what you're telling me is that this

18  is a non-issue.

19          I mean, the plaintiffs don't intend to make any

20  argument with respect to these 3500 boxes and what they

21  might or might not show.  Likewise, Whole Foods doesn't

22  intend to make any argument or ask a jury to draw an

23  inference as to what these boxes might contain and the

24  failure to produce evidence that might be contained in the

25  boxes.

1        Now, if either side, as we move forward, tends

2   to -- your assessment changes about the value of the

3   non-review and non-production, then you'll need to let me

4   know, because I think that'll, then, open up the question of

5   what, if anything, it would be an appropriate inference to

6   draw.

7        But right now, these are 3500 boxes that may or

8   may not have relevant material; and to suggest that they do,

9   I think, is problematic.  And, on the other hand, to suggest

10  that Whole Foods has been anything less than diligent in

11  identifying potentially responsive material, I think that

12  wouldn't be accurate either.

13       So the way I hear both sides describe this is, it

14  really is a non-issue right now, and one that, until either

15  side makes a decision to try and make something of these

16  3500 boxes and what's in there and ask either me or a jury

17  to draw some inference from that, then it doesn't sound like

18  it's anything I really need to deal with at this point or

19  maybe ever.

20       Does everybody agree with that assessment?

21       MR. CASAS:  Your Honor, Greg Casas real quick.

22       I believe that's right, except for one small

23  caveat, is that:  If their expert is claiming that these

24  missing TTFs mean that it automatically is a bad transfer,

25  I mean, Whole Foods does need to be able to defend itself

1   and point out that there are 3500 boxes that plaintiffs on

2   either side have not yet gone through.  So we do believe

3   that if there's an offensive use of the lack of TTFs,

4   meaning automatically it's a bad transfer, we do have this

5   issue.

6           MR. ZAMBRI:  Well, Your Honor, this is Salvatore

7   Zambri, if I may respond to that.

8           That's not the way the law works.  You know,

9   I don't have a brief on this for you right now, but this is

10  their defense that they've created.  They went -- they were

11  in open court a long time ago saying to you that when you

12  have a transfer like this, if there's a TTF for it, it's

13  okay.  Well, that being their defense, they need to produce

14  it.

15          So producing it for our inspection to satisfy a

16  discovery obligation is one thing.  It's a wholly different

17  thing to say that because they didn't look at it, they get

18  to say it's in there.  That's not what the law is and that's

19  not the benefit that they should get out of that failure to

20  inspect it.

21          They're going to have to inspect it.  If that's

22  what they want to run with, they're going to have to go in

23  there and find that stuff and produce it, is my position.

24          THE COURT:  I mean, look, before we ever get to

25  trial, and if this becomes an issue, we'll obviously need to

1    explore this a little bit more.

2            But look, I agree with you insofar as the argument

3    goes that Whole Foods couldn't say, in response to -- if

4    your position is that the absence of a TTF is, let's just

5    call it, prima facie evidence of an improper transfer, you

6    know, Whole Foods couldn't come back and say, well, there

7    were 3500 boxes that the plaintiffs didn't inspect, and so,

8    therefore, you know, as to those stores, you can't, ladies

9    and gentlemen of the jury, assume the TTFs don't exist.

10   Now, I don't think they could do that, in part because it

11   suggests -- it would be suggestive of the fact that there

12   are TTFs.

13           On the other hand, you know, there may not be

14   anything inappropriate in just sort of saying that, look,

15   there are these other boxes and we don't know what's in

16   those boxes.  The plaintiffs can't tell you what's in the

17   boxes and defendants can't tell you what's in the boxes, and

18   all of that can be considered as part of the evidence.

19           I mean, ultimately, the burden of proof is yours

20   to prevail on your claim.  I mean, they have affirmative

21   defenses, but it's not clear to me that the affirmative

22   defense here is a traditional -- is an affirmative defense

23   for which the burden rests on the defendant, if you follow

24   me.

25           I mean, there are some affirmative defenses in

1   which the burden of proof rests on the defendant, whereas,

2   in the ordinary course when a defendant raises a defense,

3   you know, it's ultimately part of the back and forth and the

4   burden that ultimately rests with the plaintiff.  So, you

5   know, I'm not sure I'm completely on board with what you

6   said, but I agree with some of what you said, Mr. Zambri.

7            MR. ZAMBRI:  Thank you, Your Honor.  And

8   I understand everything that you just said, and I appreciate

9   it.

10            And maybe I shouldn't have used the term

11   "affirmative."  That was me transforming it into an

12   affirmative defense, rightly or wrongly.  It's based upon

13   the testimony to date which multiple people from Whole Foods

14   have actually said it there, Your Honor.

15            THE COURT:  Right.

16            And, you know --

17            MR. ZAMBRI:  They said more likely than not,

18   I'm sorry --

19            THE COURT:  No, no.  It's okay.

20            Just to be clear, it's been a while since I've

21   looked at this, but, for example, the statute of limitations

22   is an affirmative defense.  And if a defendant raises a

23   statute-of-limitations defense, and my recollection of the

24   law is that -- the defendant bears the burden of proving

25   that defense, it's not a burden to negate the defense,

1   whereas what I hear you saying is that Whole Foods is
2   raising as a defense or disputing the inferences that you're
3   trying to draw from the record, and that burden ultimately
4   rests with you-all as the plaintiffs, and that's not in
5   dispute.
6           MR. ZAMBRI:  So, Your Honor, again, this is
7   Salvatore Zambri.
8           I mean, one of the things I'm concerned about,
9   then, is how the Court would handle this 3500-box issue,
10  because if you're going to allow them to say to you or to a
11  jury that it may be in there and that's good enough for them
12  in arguing that we haven't met our burden, when
13  statistically we think it's not likely to be in there, I
14  suppose that might force me to have to go look at 3500
15  boxes.
16          THE COURT:  Well, I don't know.
17          I mean, again, I think this really does depend
18  upon what -- I mean, if what Mr. Casas says is that you-all
19  are going to come in and say, look, unless a TTF is produced
20  to justify a transfer -- or if there's no TTF to back up a
21  transfer, then that means the transfer was improper, you
22  know, I think the burden rests on the plaintiff to show the
23  absence of that record, it seems to me.
24          I mean, I have to think about this, but I think if
25  that's your affirmative case, which is that no TTF equals

1    bad transfer, then it seems to me that it's the plaintiffs'

2    burden to establish the absence of a TTF for a particular

3    transfer.

4            Now, you could, you would have to do that for

5    every single transfer, and clearly that would be sort of

6    burdensome.  But if you've got a sampling on that kind of

7    thing, a statistically significant sampling, as a

8    substitute, then that'll probably do, at least for purposes

9    of summary judgment, I think probably trial, too.

10           But, you know, I'm just sort of -- I'm just

11   talking out loud here.  So I think you all probably need to

12   think about how this is all going to fit into your case.

13   And if we need to tee this up on what inferences can and

14   can't be drawn and however I come out on that would dictate

15   what you do with these 3500 boxes, then maybe we ought to

16   try to resolve that sooner than later.

17           MR. CASAS:  And --

18           MR. ZAMBRI:  Your Honor, again, this is Salvatore

19   Zambri.

20           And, Greg, if I can just pipe in one more time on

21   this, I think we probably do need to resolve it sooner

22   rather than later, because, Your Honor, I agree, I have

23   always held the position that at this stage of the

24   litigation, pre-certification and for when we petition for

25   it, you know, this isn't a deep-in-the-weeds merits issue,

1  it's just whether it qualifies for class certification, and

2  then we get into more merits discovery later.

3        And so we have plenty of samples of the absence of

4  TTFs.  We also have plenty of samples of TTFs that are

5  wholly inadequate by their own admission.  So it's as if

6  they don't exist.  I mean, maybe even worse, maybe it's

7  worse than not even existing, it's just another level of

8  some wrongdoing.

9        But here's the problem, though, that I'm noodling

10  through or need to noodle through, which is, let's say we

11  give you a sample of one store or many samples of Phase 1

12  stores, I suppose they can just argue, yeah, well, that

13  could be in the 3500 boxes, and they could just say that

14  time after time for every single one of these.

15        THE COURT:  Maybe.  I mean, maybe.

16        And I'm not -- you know, they could, but I'm not

17  sure how strong the inference comes from the argument that

18  it could.

19        You know, Whole Foods has as much access to these

20  records as you do.  And, you know, if they're going to

21  suggest that the documents are there, I'm not sure you can

22  draw the inference that, in fact, the documents are there,

23  if nobody is actually laying eyeballs on them.

24        MR. CASAS:  Your Honor, Greg Casas, if I may.

25        THE COURT:  Go ahead.

1      MR. CASAS:  Thank you, Your Honor.

2      I do agree with Mr. Zambri that I think we need to

3 tee this up sooner rather than later, and we're happy to

4 brief this.

5      But, more importantly as part of that, I think

6 it's important for Your Honor to see the actual deposition

7 testimony of not just the Vasquez Plaintiffs who are saying

8 that an absence of a TTF or two team leaders on a team must

9 mean it's improper, but I think you need to also submit

10 testimony of the Whole Foods witnesses so you can get a

11 better understanding of actually what they're saying,

12 because I do think the testimony that you'll see from the

13 depositions is that there really is no inference you can

14 draw other than an absence of a TTF means you have to keep

15 looking.  And I don't mean keep looking for a TTF.  I mean,

16 you have to figure out what's going on and you have to do

17 your due diligence at that point.  If you're a member of

18 Whole Foods and you see this on a gainsharing report, it

19 just means more information is necessary.

20      So, Your Honor, I do believe that -- and I agree,

21 Your Honor, with the burden that you're talking about here

22 that the plaintiffs have.  So I do think it's important for

23 us to brief this, I'm not saying immediately, but I agree

24 with Mr. Zambri that we should resolve this so we can figure

25 out what to do with these boxes.

1          MR. KLAPROTH:  And, Your Honor, Brendan Klaproth,

2     if I could just jump in briefly.

3          The thing about the TTFs from our perspective, and

4     it might be unique to my case, I don't think they're

5     relevant for our affirmative case.

6          I mean, we put someone on the stand -- for

7     example, this spreadsheet Mr. Zambri just referred to, it's

8     Bates number 53237, and the actual function is called

9     "unhiding cells."  And it says:  "Yes, appears blatant."

10    And those are the exact words used.  And it's highlighted in

11    red.  And it's identified for 69 stores across the country.

12         So I intend to use that as part of my affirmative

13    case.  And if Whole Foods, while I have a witness on the

14    stand, says, well, you've got to do more, you've got to look

15    at TTFs, that's, then, now trying to refute that this isn't

16    enough.

17         And so at that point, I mean, if Whole Foods is

18    going to say, well, there's 35 -- we did a company-wide

19    investigation in December of 2016 and we knew that this

20    didn't happen anywhere, but there's still 3500 boxes that

21    the plaintiffs haven't looked at, I think that's almost an

22    admission that the statement that they did a company-wide

23    investigation is false.

24         So it's probably less relevant in the *Vasquez*

25    case, because, as it plays out on the stand, I think it's

 1  just going to be a credibility determination, and we don't

 2  need to use the TTFs affirmatively.  But when Whole Foods

 3  comes in and says, well, you've got to do more, which, you

 4  know, you just heard Mr. Casas say and it's going to be a

 5  foregone conclusion that that's going to be their defense,

 6  then we are going to say, well, look, we have looked at the

 7  TTFs and it still shows, there's X number of transfers that

 8  don't have any TTFs.  So even if you accept their defense,

 9  it still doesn't fly.  So that's how I see it playing out at

10  trial or even on summary judgment.

11          THE COURT:  Well, let's do this.  Why don't you

12  all confer amongst yourselves as to when you think this

13  ought to get teed up and just propose a schedule to me for

14  briefing the issue.

15          Is that something you all could get back to me on

16  by Monday?

17          MR. CASAS:  This is Greg Casas.

18          Yes, Your Honor.  Of course.

19          MR. ZAMBRI:  Absolutely, Your Honor.  This is

20  Sal Zambri.

21          THE COURT:  All right.

22          So why don't you go just confer and then get back

23  to me by Monday about a potential briefing schedule on this

24  issue and then we can take that up once it's fully briefed,

25  because I do think the issue deserves some briefing and it's

1    not one that I can resolve just based on your conversation;

2    I think I need a better understanding of the record and what

3    the -- how this issue sort of fits into the larger case.

4          Okay.  So, Mr. Zambri, you've flagged the one big

5    issue that at least the Joint Status Report flagged as well.

6    Are there any other issues that you think ought to be

7    brought to my attention this morning?

8          MR. ZAMBRI:  Your Honor, this is Sal Zambri.

9          There is one issue that may or may not iron out,

10   and I don't think we need to spend much time on it today,

11   which is the privilege-log issue.

12         At the last status conference we had, Mr. Casas

13   indicated that they were going to be producing documents.

14   I thought I heard him say he was going to produce most of

15   the documents that had a privilege label on them.

16   I don't think that that happened, and I think we got very

17   few of the documents that were on the privilege log.

18         And so it's a relatively recent dump of materials.

19   So I'm going through that, I'm sure Mr. Klaproth is, and

20   we'll collaborate at some point and get back to Mr. Casas

21   and Mr. Sellinger soon.  But there may be a lingering

22   issue -- a lingering dispute over whether it's a full and

23   fair production.

24         MR. CASAS:  Your Honor, Greg Casas.

25         And I agree with Mr. Zambri:  We can work this

1   out.

2          I admit it's clearly a misunderstanding on my

3   part.  What I meant at our last status conference was:

4   Mr. Zambri had sent us a letter with specific documents that

5   he was highlighting, and so I looked at those.  And most of

6   the ones that he highlighted in his letter are the ones that

7   we produced and removed the privilege tag from.

8          If Mr. Zambri is talking about the entire

9   privilege log, I was not speaking to that in particular.

10  But I think that Mr. Zambri and I can work that out.

11          THE COURT:  Okay.

12          Yeah, I had left with the impression last time

13  that the material you were going to produce were these

14  Brooke Buchanan records that had initially been withheld on

15  privilege grounds, and it sounds like those records have now

16  been produced.

17          MR. CASAS:  Yes -- this is Greg Casas,

18  Your Honor -- we have produced all but three.  Two of them

19  we have removed some redaction but kept some redactions.

20  And one document we are retaining all the redactions, and

21  we believe those -- we believe that's appropriate, from our

22  perspective, under the privilege.

23          I can confer with Mr. Klaproth and Mr. Zambri; and

24  if there continues to be a challenge, we may just want to

25  submit those in camera real quickly for your review.

1          THE COURT:  All right.  Well, just let me know if

2    that becomes an issue.

3          Okay.  Mr. Zambri, anything else from you that you

4    want to raise?

5          MR. ZAMBRI:  Your Honor, this is Salvatore Zambri.

6          No, I don't believe so today.  I think we're

7    working through the other issues quite well.

8          THE COURT:  Okay.

9          All right.  Mr. Klaproth, how about for you?

10          MR. KLAPROTH:  Yes.  Hi.  This is

11    Brendan Klaproth, Your Honor.

12          So I have a couple issues that might be a little

13    more pressing.

14          Just to comment briefly on the Brooke Buchanan

15    issue, we have a call scheduled for later today, counsel,

16    and we're going to confer.  I just want to -- one of the

17    things I envision being an issue is the scope of what the

18    waiver is.

19          So it seems like -- you know, there's three

20    waivers at issue here -- or three doctrines at least:

21    Express waiver.  And it seems like we're all in agreement

22    that Brooke Buchanan was told information from the lawyers

23    and then conveyed that to the public.  That was an express

24    waiver.

25          There's also the issue of subject-matter waiver,

1    which tells us that you can't selectively disclose certain

2    materials that are privileged relating to a subject matter,

3    everything's waived relating to that subject matter.

4    So I think that's where there's going to be an issue.

5    I think the waiver is going to be a little bit larger than

6    Whole Foods sees it.

7              And there's also the at-issue waiver doctrine.

8    And one of the elements we need to prove in our case, and

9    I'm looking at page 36 of Your Honor's decision on the

10   motion to dismiss, is that we need to prove that the

11   defendants' fault in publishing the statement amounted to at

12   least negligence.

13             And so Brooke Buchanan, the publisher of the

14   defamatory statement, basically testified that she did

15   nothing to verify that the statements were accurate or

16   truthful and that she was relying upon the lawyers.  So that

17   brings us to this issue now where the attorney-client

18   privilege can potentially be used as a sword and shield by

19   Whole Foods, because they're going to claim, well, our

20   attorneys did an investigation and determined that --

21   reviewed all the materials in the investigation and

22   determined that these two statements were truthful.  And

23   then there's -- the shield is going to get thrown up when we

24   ask, well, let's see the emails between the attorneys or to

25   see what they knew.  And so one of the elements that I need

1   to prove is whether Whole Foods knew that the statements

2   were false or acted negligently in making those statements.

3           So we're going to confer over the scope of what's

4   going to be produced, I don't know yet.  And I flagged -- I

5   went through the privilege log earlier this week and I

6   flagged all the communications I think is basically

7   everything that's prior to the publication of the *Washington*

8   *Post* and *Associated Press* articles.

9           So that may be an issue that may need briefing;

10  and it may be premature at this point, but it's something I

11  wanted to put on the Court's radar.

12          Second issue --

13          MR. CASAS:  I'm sorry --

14          MR. KLAPROTH:  Go ahead.

15          MR. CASAS:  -- this is Greg Casas, Your Honor.

16          I'm not sure how many issues Mr. Klaproth has.

17  I can respond to that particular one.  Other members of the

18  team, Mr. Hempfling and Mr. Sellinger, are briefed on some

19  of the other issues we expected Mr. Klaproth to talk about.

20  So I'm not sure if Your Honor wants to do this piece by

21  piece or all at once and then Whole Foods will just switch

22  out responding counsel.

23          THE COURT:  Well, why don't you go ahead --

24  Mr. Klaproth, did you want to present anything more on this

25  privilege issue or were you going to move to a different

1  topic?

2          MR. KLAPROTH:  I was going to move to a different

3  topic.

4          THE COURT:  All right.

5          Why don't we go ahead and hear from Mr. Casas

6  then, and then we can bounce back to you, Mr. Klaproth, on

7  the other issues you want to raise.

8          MR. CASAS:  Thank you, Your Honor.  Greg Casas.

9          With regard to Ms. Buchanan, the documents -- or

10  the email exchanges that she's had with Susan Anderson, who

11  at the time was in-house counsel for Whole Foods, those are

12  the ones that I have looked at, redacted -- I'm sorry,

13  produced most of the ones that were redacted and that were

14  at issue.  Like I said, I've kept three that I have at least

15  some, if not all, redactions.  The subject-matter issue,

16  though, Your Honor, I think is going to be important, as

17  well as the sword-and-shield doctrine.

18          There was a lot of information that Ms. Anderson

19  had access to that she did not provide to Ms. Buchanan, and

20  the information she provided to Ms. Buchanan are those

21  things in the particular emails that are at issue that we've

22  addressed almost all of them.  And so just because there was

23  an email that had a couple of sentences that has now been

24  produced because it's at issue in the sense that it's a

25  particular document, Whole Foods does not believe that that

1   suddenly opens up discovery into all the things that

2   Ms. Anderson was involved with on behalf of Whole Foods as

3   part of its investigation.

4          Similarly, Ms. Buchanan was -- and I believe

5   Mr. Klaproth could recite this sentence in his sleep, but

6   Ms. Buchanan was adamant in her deposition that she spoke

7   with not just Mr. Anderson but also with Mr. Martin Tracey,

8   who was the global head of HR and who was leading, from the

9   business side, the investigation.  And so to the extent that

10  Mr. Tracey has information that he has that was unrelated to

11  any legal work or legal counsel, then, of course, that's

12  fair game.

13         And so I don't believe that there's a need here

14  for a subject-matter waiver with regard to everything that

15  Ms. Anderson knew as in-house counsel for Whole Foods.

16  Mr. Tracey has quite a bit of information that he had access

17  to and that he provided to Ms. Buchanan as well.

18         And so from that sword-and-shield doctrine, Your

19  Honor, I don't know that that necessarily is going to come

20  up.  I agree that -- I'm happy to continue to talk to

21  Mr. Klaproth about it and provide briefing, but there are

22  other avenues by which Mr. Klaproth and his clients can

23  learn what was going on, from an investigatory perspective,

24  at Whole Foods, without delving into Ms. Anderson's files or

25  Ms. Anderson's internal emails with other in-house counsel,

1   from that perspective.

2          THE COURT:  Well, I guess what I would ask you all

3   to do is continue to meet and confer on this issue, and,

4   again, by Monday if you think this is an issue that needs to

5   be briefed, let me know that.

6          I mean, you know, what occurs to me in hearing

7   from you both is this question.  So if I remember correctly,

8   Ms. Klaproth, Ms. Buchanan is also an individual in this

9   case, correct?

10          MR. ZAMBRI:  She was dismissed, Your Honor, on

11   personal-jurisdiction grounds.

12          THE COURT:  She was dismissed.  That's right.

13   That's right.  Okay.

14          You know, I guess the question of negligence in

15   this context arises as to the entity as a whole, and to what

16   extent Whole Foods will say that, look, we conducted this

17   investigation, and based on the investigation, this was our

18   best assessment of how far and wide the gainsharing

19   violations were taking place.

20          And if that is part of a defense, then I guess the

21   question does become to what extent the investigation is

22   subject to scrutiny by plaintiff who claims that the

23   statement that was the end product of that investigation was

24   defamatory and to what extent the attorney-client privilege

25   or work product can shield the underlying work that produced

1    the statements that are claimed to be defamatory.

2         I don't know the answer to that.  And it's an

3    interesting cross-section -- or intersection, I should say,

4    of, as I said, defamation, libel law, and privilege, and

5    it's just not something I've encountered.

6         So, again, we might have an issue here that I'll

7    need some help with from both sides in writing.  But it

8    certainly has the potential to lead to some broader

9    discovery than it seems to me that thus far has been

10   afforded.

11        But I think that's a big decision.  And so, again,

12   like with the other one, I would like to get something in

13   writing before I make a decision about something as

14   important as whether a privilege can be pierced in any way.

15        MR. KLAPROTH:  Your Honor, this is

16   Brendan Klaproth.

17        I agree it's a significant issue and we'll confer

18   and report back to the Court on Monday.

19        THE COURT:  Okay.

20        MR. CASAS:  Agree -- this is Greg Casas.  I agree.

21        THE COURT:  Okay.

22        All right.  What else, Mr. Klaproth?

23        MR. KLAPROTH:  All right.

24        So the next issue -- and this is a new issue

25   that's come up:  Brooke Buchanan testified during her

1   deposition that she heard, i.e., it's hearsay -- that she

2   heard from *The Washington Post* and *Associated Press*

3   reporters that my clients are the ones that basically tipped

4   them off and started this whole thing.  And presumably,

5   Whole Foods is now going to argue their new defense that my

6   clients caused all this; and but for them contacting the

7   *Associated Press* or *The Washington Post*, none of this would

8   have happened.

9           And so leaving aside how it's illogical that my

10  clients would call these reporters and say, hey, we did it,

11  we manipulated all this gainsharing stuff, leaving that

12  aside, the issue's come up that Whole Foods has asked for

13  supplement -- deposition by written questions, and we've

14  agreed to do basically verified responses or interrogatory

15  responses.

16          So we've reached agreement on that, and I

17  anticipate that my clients are all going to say they never

18  spoke with the *Associated Press* or *Washington Post*.  So now

19  it that leaves us with this issue.  My clients say they

20  never spoke with the reporter.  Brooke Buchanan says, well,

21  I heard from the reporter that, you know, they did.  So I

22  never envisioned going down this path, but now I need to

23  foreclose that defense and that argument.

24          And so it can probably be addressed one of two

25  ways.  First is, take the deposition of Matthew Barakat and

1   Justin Moyer, the two reporters, and ask them to identify

2   their sources, which they're not going to do even probably

3   with a court order, which creates a lot of problems and

4   litigation.  You know, perhaps I can say, well, look, if my

5   clients were the sources, we waive any sort of

6   confidentiality, just confirm they weren't the sources.

7            Again, though, it creates a problem.  So a

8   different alternative is that I just file a preliminary

9   motion in limine that says -- you know, seeks to exclude

10  this testimony from Brooke Buchanan on the basis of

11  inadmissible hearsay.  She's just reporting what she heard.

12  And if Whole Foods wants to offer this defense, then they

13  can call the reporters at trial.  But, you know.

14           So I see this being resolved one of two ways.  But

15  I think it's going to be an issue, and if they make the

16  argument, I'm going to have to foreclose it.

17           MR. CASAS:  Your Honor, this is Greg Casas.

18           Mr. Sellinger, who's a former reporter, so this is

19  near and dear to his heart, he is going to address this

20  issue for Whole Foods.

21           THE COURT:  Okay.

22           Mr. Sellinger.

23           MR. SELLINGER:  Good morning, Your Honor.

24  Thank you very much.

25           If you could bear with me one second, Your Honor,

1  I was on mute and I'm trying to get one of these phone calls
2  off.  Just bear with me one second, please.
3          Okay.  I don't think I'm on mute anymore.
4  Thank you very much.
5          Judge, I think that Mr. Klaproth's suggestion that
6  his clients waive any assertion of confidentiality would be
7  important to the plaintiffs and their claiming defamation,
8  and this goes to the heart of the defamation claim.
9          Basically, Mr. Klaproth has agreed with us that
10 his clients will answer discrete interrogatories that go to
11 whether or not they are the source of the reporter's story,
12 and that's really the issue.
13         Ms. Buchanan testified that more than one of the
14 terminated employees -- that she was told by both reporters
15 that they had been contacted by more than one of the
16 terminated employees.  That's the issue that's at issue
17 here, and Ms. Buchanan's testimony is clearly, on that
18 point, important, and we would obviously oppose a motion in
19 limine.
20         But I think rather than sort of addressing a
21 motion in limine, if this is a search for the truth, we
22 should try and determine what the facts are and the extent
23 to which the reporters may be willing to disclose their
24 source.
25         And as you know, there's a qualified privilege for

1   newsmen in the District of Columbia, and the courts in the

2   District of Columbia apply a balancing test.

3           What we've done and what Mr. Klaproth has agreed

4   to with respect to these interrogatories is to get us part

5   of the way home and eliminate the issue whether or not

6   there's an alternative avenue by which we could obtain this

7   information.

8           So I gather from what Mr. Klaproth has told us and

9   has told you, all of the nine Vasquez Plaintiffs are going

10  to say, I wasn't the source of the information.

11          We then have Ms. Buchanan's testimony, and she'll

12  be in court that she was told by both reporters that they

13  were the source.

14          We then have to go to the reporters.  I think it's

15  a hollow offer for Mr. Klaproth to say, you know, he's

16  agreed to let the Vasquez Plaintiffs answer the

17  interrogatories and agreed that we would jointly go and

18  request the depositions of the reporters but then not be

19  willing to waive any assertion by the Vasquez Plaintiffs

20  that they're asserting confidentiality as the source.

21          So we think in this context, we're going to get

22  the interrogatories.  And Mr. Klaproth himself suggested we

23  should jointly request the depositions of the reporters.  We

24  think that's a good idea.  We think in that context,

25  Mr. Klaproth should stipulate that the nine Vasquez

1   Plaintiffs are not asserting any right to confidentiality as

2   to whether they were the source of the stories.

3          I think we, then, are obviously going to have to

4   have a negotiation with the lawyers for *The Washington Post*

5   and the *Associated Press*.  And, you know, we would present

6   them with that information and the information about

7   Mr. Klaproth's client's waiver in an effort to get the

8   reporters to agree that -- you know, that they would

9   identify that limited information.

10         And I would think, assuming that they kind of act

11  reasonably, that it might be possible for us to negotiate a

12  narrow scope of depositions of both of these reporters that

13  would just get us to, were these Vasquez Plaintiffs the

14  source of the information.

15         And here, this is the central issue, Your Honor.

16         THE COURT:  So, Mr. Sellinger -- go ahead,

17  Mr. Sellinger.  Why don't you finish up and then we'll --

18         MR. SELLINGER:  Okay.  Thank you, Judge.

19         The central issue will be whether any qualified

20  privilege has been waived.  And the law is that you sort

21  of -- where the reporter himself has disclosed the

22  information to somebody else, you know, that gets you -- you

23  know, a long way towards overcoming the qualified privilege.

24  And there are cases where the reporter disclosed his

25  sources, these cases he had identified as the sources, to

 1    somebody else, and the courts held that was a waiver of the

 2    D.C. courts.

 3            Here, he hasn't identified them by name, but he's

 4    identified them by a category, which is more than one of the

 5    nine people.  And we think that's substantially the same

 6    here, that they're clearly identifiable.  So we want to be

 7    in a situation where we can present the best record to the

 8    Court, that any qualified privilege has been waived, and

 9    take their depositions.

10            THE COURT:  So I've had this come up once before,

11    and I'm sort of keenly aware of what the qualified privilege

12    looks like and what the case law is in this Circuit, and

13    it's not easy to overcome the qualified privilege.  You

14    know, it requires a degree of diligence on the party seeking

15    the information to demonstrate that there really is no other

16    possible source for the information, so on and so forth.

17    But that's just a general observation.

18            Look, I'll tell you:  I don't think it's ever

19    going to be easy, and I'm not suggesting either side thinks

20    it is, but it's not going to be easy to shake loose any

21    information from a reporter.

22            I would be surprised if the reporters will agree

23    with Ms. Buchanan's assessment that they disclosed sources

24    to her.  Maybe I'm wrong about that, but it strikes me as

25    odd that a reporter would have told to Ms. Buchanan, well,

1    this is where we got the information from, and maybe that's

2    what they did, but that would come as a surprise to me, and

3    so we may have a factual dispute there.  And notwithstanding

4    Ms. Buchanan's testimony, the reporters may say, we never

5    said any such thing to Ms. Buchanan, and she's just not

6    correct about that.

7            So, you know, you'll have, Mr. Klaproth,

8    transfers.  And if you think you need more to confirm with

9    the reporters that none of these nine individuals were the

10   source, then maybe, maybe *The Washington Post* will give you

11   an affidavit from the reporters that simply says, none of

12   these nine people were the source.  Even that might be a

13   challenge.

14           But, you know, any time you want to get a reporter

15   in a chair, it's going to face an uphill climb, in my

16   experience.  And even if both parties agree that that's what

17   ought to be done, *The Washington Post* and media outlets tend

18   to fight tooth and nail before any reporter is forced to

19   provide testimony under oath.  So I don't think this is so

20   simple as what's been described.

21           So, again, I don't know that there's anything here

22   for me to resolve.  And I think you all can jump through

23   your hoops.  And if where you come out is that you're left

24   in a position where you can't get the cooperation from

25   *The Post* and the *AP* for a simple declaration that disavows,

1    for example, that any of the nine plaintiffs were the

2    source.  I don't know that that's something that either

3    media organization would be prepared to do.  And if they're

4    not, then the issue will have to be teed up with me.  But

5    I don't think it's going to be so easy to get the

6    information, is just my initial take of this.

7                MR. SELLINGER:  I understand exactly, Your Honor.

8                And I agree with your initial take.  But I think

9    what Mr. Klaproth has done is simply to give the Court kind

10   of a preview that the issue is coming up.  And we'll speak

11   to Mr. Klaproth, we'll finish those discussions.  But

12   I think -- I guess we need the Court's approval in any event

13   to permit us to take depositions of new witnesses at this

14   time, and this is newly discovered information that just

15   came up in Ms. Buchanan's deposition.

16               So assuming that we don't get the cooperation from

17   *The Post* and the *AP*, as Your Honor sort of predicts, I'm

18   sure correctly, then we'll be asking the Court to permit us

19   to take depositions.  And then they'll assert -- if that's

20   their position, they'll assert privilege and we'll have to

21   be before the Court on that issue and a discussion that

22   that's likely to happen.

23               THE COURT:  Yeah.

24               Look, I mean, if you're asking for leave, if you

25   will, to attempt to depose these folks, you've got it; both

1    sides agree that it would be appropriate.

2            And so the limitation right now that is in place

3    on the universe of deponents, I'm happy to sort of grant

4    leave to pursue this.  But as I said, I don't think this is

5    going to be easy, and I think you're potentially getting

6    yourself in a substantial thicket of litigation here that

7    may not really end up -- well, I don't know -- I don't want

8    to predict about what the end result is going to be, but at

9    least any litigation involving the media that I've had

10   before me tends to be fought tooth and nail by media

11   organizations themselves.  If it comes to that, it comes to

12   that.  But if you all just -- and maybe -- I mean, if you're

13   going to go down that road, you're going to go with your

14   eyes open to that possibility.

15           MR. SELLINGER:  Thank you very much, Your Honor,

16   on both counts.

17           Can I ask, with respect to Mr. Klaproth's

18   suggestion, that that also be something that occurs so that

19   we can have at least a reasonable and meaningful basis to go

20   to *The Post*; that is, that Mr. Klaproth agrees in some form,

21   and we can negotiate what that is, that the nine Vasquez

22   Plaintiffs are not asserting any right to the

23   confidentiality of the information as to whether or not they

24   are the sources of the reporters' stories?

25           MR. KLAPROTH:  Your Honor, I can address that

```
 1    quickly.   This is Brendan Klaproth.

 2              We have no issue.   I'm not going to -- I thought I

 3    already made that clear, but we are not going to assert any

 4    sort of confidentiality or privilege or anything like that.

 5              Ultimately, we think if these depositions will be

 6    taken, it just undermines Brooke Buchanan's credibility and

 7    lack of truthworthiness.   So that's how we see this playing

 8    out.

 9              The one thing I may ask, though, because, from our

10    perspective, this becomes a non-issue if we do get a

11    preliminary ruling, that Brooke Buchanan's testimony, that

12    what she heard from the reporter is inadmissible hearsay.

13    You know, the issues at rest, from our perspective -- and if

14    Whole Foods wants to pursue the depositions, we'll certainly

15    cooperate and agree to do that.   But as far as I'm

16    concerned, there's --

17              THE COURT:   I mean, I'll just say --

18              Yeah.   Look, I mean, I'll say this.   I mean --

19    and, again, everything is subject to hearing from Whole

20    Foods, but certainly it strikes me as hearsay.

21              I mean, if this opposition Whole Foods is trying

22    to establish is that, in fact, the source of these stories

23    was one of the nine plaintiffs, you know, that's an

24    out-of-court statement for the truth and it certainly

25    strikes me as hearsay.   So, you know, I don't know if Whole
```

1   Foods thinks otherwise, but it's certainly my initial

2   impression, based upon this description of the circumstances

3   of the statement.

4           MR. SELLINGER:  But it wouldn't be hearsay.

5           THE COURT:  I'm sorry, go ahead.

6           MR. SELLINGER:  Didn't mean to interrupt,

7   Your Honor.

8           THE COURT:  Go ahead.  No.  That's fine.

9           MR. SELLINGER:  I don't know that it would be

10  hearsay if the reporter was there.  They would not be

11  out-of-court declarants.

12          THE COURT:  Well, sure.  You know, you don't need

13  Ms. Buchanan's testimony if the reporter is going to be

14  there.

15          I'm talking about any testimony that would come

16  from Ms. Buchanan, right?

17          I mean, Ms. Buchanan couldn't come into court, at

18  least I don't think she could come into court and say, I was

19  told X by this reporter, and Whole Foods would then say,

20  well, X is true, and then that's the classic out-of-court

21  statement.

22          On the other hand, if the reporter were to somehow

23  come in and say, yes, plaintiff lied, said the following to

24  me and was the source of the story, then that wouldn't be

25  hearsay at all.

```
 1              MR. SELLINGER:  Okay.  Can we just reserve the

 2    right, Your Honor, to come back and address at a later

 3    point, if it comes up, the issue of whether Ms. Buchanan's

 4    testimony would be inadmissible hearsay?

 5              THE COURT:  Sure.

 6              And, again, I'm just giving you my preliminary

 7    thoughts.

 8              MR. SELLINGER:  Yes.

 9              THE COURT:  But if there's -- if I'm missing

10    something, then you'll certainly let me know that.

11              MR. KLAPROTH:  Thank you, Judge.

12              THE COURT:  All right.

13              Counsel, I've got -- I didn't expect that we would

14    last an hour, but I've got an arrangement with somebody at a

15    jail facility at 12:30 that I have to hop on, because if we

16    don't do that, who knows when I can get back on with this

17    person, with this defendant.

18              So are there other issues that you all want to

19    raise, and, if so, we should probably set down another time,

20    either later this afternoon or on another day, to address

21    them, because, regrettably, I do have to jump on for this

22    hearing in this criminal case at 12:30.

23              MR. ZAMBRI:  Your Honor, this is Sal Zambri for

24    the Molock Plaintiffs.

25              No, I don't think we need to discuss anything
```

```
 1   further today.  It might make sense to get something on the
 2   books for maybe 30 to 45 days from now, since the discovery
 3   cut-off is going to be approaching in June, to give the
 4   Court an update.
 5              THE COURT:  All right.
 6              MR. KLAPROTH:  This is Brendan Klaproth -- yeah.
 7   Sorry -- for the Vasquez Plaintiffs.
 8              I do have one more issue that's, I think, probably
 9   ripe, but -- regarding Whole Foods' claim for attorney fees.
10   We can follow up separately.  Perhaps Whole Foods and I
11   coordinate a briefing schedule and we just brief the issue
12   or we could schedule a call this afternoon or later this
13   week.  Whatever the Court's preference is.
14              THE COURT:  Okay.
15              Well, let me hear from Mr. Casas as to whether
16   there are any issues he's intended to raise that we haven't
17   covered already.
18              MR. CASAS:  Nothing that we haven't covered
19   already, Your Honor.
20              Some other issues might come up that we could
21   notify the Court as we continue to meet and confer.  And we
22   can provide the Court on Monday with all outstanding issues
23   that might be there.
24              And perhaps Mr. Klaproth and I can try again on
25   the attorneys' fees issues and notify the Court on Monday on
```

1  that, as well as everything else we've talked about today.

2          THE COURT:  Okay.  All right.

3          Let's do that.  Instead of scheduling this for

4  later this afternoon, let's just -- why don't you-all focus

5  on your submissions that you're going to make on Monday and

6  then we'll figure out a schedule if it's still a live issue.

7          MR. CASAS:  Thank you, Your Honor.

8          THE COURT:  All right.

9          Thank you, everyone.  I appreciate everyone's time

10  and look forward to -- oh, before we leave, we need to set a

11  next date.  So why don't we look at something in mid May, if

12  that works for everyone.  How about May 18th at 11:00 a.m.?

13          MR. ZAMBRI:  Your Honor, this is Sal Zambri.

14          That's good for the Molock Plaintiffs.

15          MR. CASAS:  Your Honor, Greg Casas.  That's fine

16  for Whole Foods.

17          MR. KLAPROTH:  And, Your Honor, Brendan Klaproth

18  for the Vasquez Plaintiffs.  That's good for us.

19          One thing is, our discovery schedule is set to end

20  at the end of April, and we both have agreed, all parties,

21  to a 30-day extension.

22          THE COURT:  I'm sorry.  When you say -- you mean

23  your fact-discovery deadline is April, is that what -- is

24  that right?  Because I remember there's a June date for -- I

25  haven't looked at the schedule in a while, but are the

```
 1   Vasquez Plaintiffs, is your fact cut-off in April?

 2              MR. KLAPROTH:  It's April 29th.

 3              THE COURT:  Okay.

 4              MR. KLAPROTH:  And we think an additional 30 days

 5   to resolve these issues is sufficient.

 6              THE COURT:  Okay.

 7              Mr. Casas, you're in agreement with that

 8   additional 30 days?

 9              MR. CASAS:  Yes, Your Honor, we are.  This is

10   Greg Casas.

11              THE COURT:  Okay.

12              All right.  So why don't we move the

13   fact-discovery deadline for the Vasquez Plaintiffs -- well,

14   what's the fact-discovery deadline for the Molock

15   Plaintiffs, June 28?

16              MR. ZAMBRI:  28, Your Honor.  This is Sal Zambri.

17   June 28.

18              THE COURT:  28.  Okay.

19              All right.  So why don't we set the fact discovery

20   cut-off in Vasquez, then, too.

21              And I'm sorry, you said April 20- -- what's the

22   current fact discovery cut-off in Vasquez, I'm sorry?

23              MR. KLAPROTH:  It's April 29th.

24              And I think 30 days, we agreed, would be May 31st

25   because of the weekend.
```

```
 1              THE COURT:  Yeah.  All right.
 2              So May 31st is Memorial Day.  So why don't we make
 3    it June 1.
 4              MR. KLAPROTH:  Okay.
 5              THE COURT:  Why don't we make it June 2 just in
 6    case there's any challenges presented by the three-day
 7    weekend, you'll have that extra business day or two extra
 8    business days that week to get anything done you need to get
 9    done.  So we'll extend it to June 2nd and then we'll go from
10    there.
11              So we'll look forward to getting your submission
12    on Monday, and I expect we'll see one another before that
13    next hearing we have set.  But I'll look forward to getting
14    what the parties submitted on Monday.
15              MR. ZAMBRI:  Your Honor, real quick.  This is Sal
16    Zambri.
17              When would you like our Status Report before the
18    May 18th conference, a week before or that Friday before?
19              THE COURT:  Yeah, that Friday before would be
20    fine, the 14th.
21              MR. ZAMBRI:  The 14th.  Okay.  Thank you.
22              THE COURT:  Yeah.
23              All right.  Thank you, all, very much.  Take care,
24    everyone.
25              (Proceedings concluded at 12:33 p.m.)
```

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

        Please note:  This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

Date:__April 9, 2021_____    /S/__William P. Zaremba_____

                          William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [1]** 3/2
**MR. CASAS: [18]** 9/7 11/2 13/21 18/17 19/24 20/1 22/17 23/24 24/17 27/13 27/15 28/8 31/20 33/17 44/18 45/7 45/15 46/9
**MR. KLAPROTH: [15]** 6/19 21/1 25/10 27/14 28/2 31/15 31/23 40/25 43/11 44/6 45/17 46/2 46/4 46/23 47/4
**MR. SELLINGER: [9]** 33/23 36/18 39/7 40/15 42/4 42/6 42/9 43/1 43/8
**MR. ZAMBRI: [17]** 4/1 7/16 7/19 14/6 16/7 16/17 17/6 18/18 22/19 23/8 25/5 30/10 43/23 45/13 46/16 47/15 47/21
**THE COURT: [47]** 3/10 6/16 7/18 9/2 11/1 12/12 14/24 16/15 16/19 17/16 19/15 19/25 22/11 22/21 24/11 25/1 25/8 27/23 28/4 30/2 30/12 31/19 31/21 33/21 36/16 37/10 39/23 41/17 42/5 42/8 42/12 43/5 43/9 43/12 44/5 44/14 45/2 45/8 45/22 46/3 46/6 46/11 46/18 47/1 47/5 47/19 47/22

**/**
**/S [1]** 48/10

**0**
**0213 [1]** 2/15
**07932 [1]** 2/10

**1**
**100 [1]** 2/14
**112 [2]** 1/10 3/4
**119 [1]** 10/16
**11:00 [1]** 45/12
**11:30 [1]** 1/8
**12:30 [2]** 43/15 43/22
**12:33 [1]** 47/2
**14th [2]** 47/20 47/21
**16-2483 [2]** 1/4 3/3
**17-112 [2]** 1/10 3/4
**18th [2]** 45/12 47/18
**19 [1]** 48/6
**1919 [1]** 1/19

**2**
**20 [1]** 46/21
**200 [4]** 2/9 4/12 11/3 11/17
**20001 [1]** 2/20
**20007 [1]** 1/24
**20036 [1]** 1/20

**202 [3]** 1/20 1/24 2/20
**2021 [2]** 1/7 48/10
**2050 [1]** 2/4
**2141 [1]** 1/23
**2344 [1]** 1/24
**2483 [2]** 1/4 3/3
**26 [2]** 11/12 11/19
**28 [4]** 46/15 46/16 46/17 46/18
**29th [2]** 46/2 46/23
**2nd [1]** 47/9

**3**
**30 [5]** 3/15 44/2 46/4 46/8 46/24
**30-day [1]** 45/21
**300 [1]** 2/4
**3030 [1]** 1/20
**31st [2]** 46/24 47/2
**320-7238 [1]** 2/5
**3249 [1]** 2/20
**333 [1]** 2/19
**35 [1]** 21/18
**350 [1]** 1/19
**3500 [12]** 5/9 9/1 10/20 12/20 13/7 13/16 14/1 15/7 17/14 18/15 19/13 21/20
**3500-box [1]** 17/9
**354-3249 [1]** 2/20
**36 [1]** 26/9
**360-7925 [1]** 2/10

**4**
**45 [1]** 44/2
**463-3030 [1]** 1/20

**5**
**512 [2]** 2/5 2/15
**53237 [1]** 21/8
**542-0213 [1]** 2/15

**6**
**618-2344 [1]** 1/24
**677 [1]** 2/9
**69 [1]** 21/11

**7**
**7238 [1]** 2/5
**78701 [1]** 2/5
**78703 [1]** 2/14
**7925 [1]** 2/10

**8**
**828 [1]** 2/13

**9**
**973 [1]** 2/10

**A**
**a.m [2]** 1/8 45/12
**able [2]** 8/8 13/25
**about [28]** 3/13 3/15 4/12 6/11 6/18 9/5 9/11 10/24 12/6 13/2 17/8 17/24 18/12 20/21 21/3 22/23 24/8 25/9 27/19 29/21 31/13 36/6 37/24

**45/12**
**above [1]** 48/4
**above-titled [1]** 48/4
**absence [6]** 15/4 17/23 18/2 19/3 20/8 20/14
**Absolutely [1]** 22/19
**accept [2]** 5/3 22/8
**access [3]** 19/19 28/19 29/16
**accurate [2]** 13/12 26/15
**across [1]** 21/11
**act [1]** 36/10
**acted [1]** 27/2
**Action [1]** 3/3
**actual [2]** 20/6 21/8
**actually [3]** 16/14 19/23 20/11
**adamant [1]** 29/6
**add [2]** 7/17 8/3
**additional [2]** 46/4 46/8
**address [4]** 33/19 40/25 43/2 43/20
**addressed [2]** 28/22 32/24
**addressing [1]** 34/20
**admission [2]** 19/5 21/22
**admit [1]** 24/2
**advance [1]** 5/19
**adverse [4]** 6/1 6/4 12/4 12/5
**adverse-inference [1]** 6/4
**affidavit [1]** 38/11
**affiliated [2]** 10/21 11/4
**affirmative [12]** 5/17 5/19 15/20 15/21 15/22 15/25 16/11 16/12 16/22 17/25 21/5 21/12
**affirmatively [1]** 22/2
**afforded [1]** 31/10
**after [2]** 8/9 19/14
**afternoon [3]** 43/20 44/12 45/4
**again [18]** 3/11 3/15 5/16 7/20 9/25 10/17 11/17 17/6 17/17 18/18 30/4 31/6 31/11 33/7 38/21 41/19 43/6 44/24
**against [2]** 6/2 6/4
**ago [4]** 3/13 10/24 12/6 14/11
**agree [19]** 10/6 13/20 15/2 16/6 18/22 20/2 20/20 20/23 23/25 29/20 31/17 31/20 31/20 36/8 37/22 38/16 39/8 40/1 41/15
**agreed [7]** 32/14 34/9 35/3 35/16 35/17 45/20 46/24
**agreement [3]** 25/21 32/16 46/7
**agrees [1]** 40/20
**ahead [9]** 5/19 9/6

**36/16 42/5 42/8**
**al [7]** 1/3 1/6 1/8 1/11 3/4 3/5 3/5
**Alan [2]** 2/3 3/9
**all [53]**
**allow [1]** 17/10
**allowed [1]** 11/12
**Allshouse [1]** 7/2
**almost [2]** 21/21 28/22
**alone [1]** 7/24
**already [3]** 41/3 44/17 44/19
**also [9]** 4/2 4/11 19/4 20/9 25/25 26/7 29/7 30/8 40/18
**alternative [2]** 33/8 35/6
**although [1]** 4/4
**always [1]** 18/23
**AMIT [1]** 1/15
**amongst [1]** 22/12
**amounted [1]** 26/11
**Anderson [5]** 28/10 28/18 29/2 29/7 29/15
**Anderson's [2]** 29/24 29/25
**another [6]** 8/1 8/24 19/7 43/19 43/20 47/12
**answer [3]** 31/2 34/10 35/16
**anticipate [1]** 32/17
**any [35]** 3/20 3/23 5/12 5/16 6/15 7/21 7/22 11/25 12/7 12/14 12/15 12/19 12/22 22/8 23/6 29/11 31/14 33/5 34/6 35/19 36/1 36/19 37/8 37/20 38/5 38/14 38/18 39/1 39/12 40/9 40/22 41/3 42/15 44/16 47/6
**anymore [1]** 34/3
**anything [14]** 6/18 7/25 9/5 9/18 13/5 13/10 13/18 15/14 25/3 27/24 38/21 41/4 43/25 47/8
**anywhere [1]** 21/20
**AP [2]** 38/25 39/17
**appear [1]** 4/16
**APPEARANCES [2]** 1/17 1/25
**appeared [2]** 4/14 10/13
**appears [1]** 21/9
**apply [1]** 35/2
**appreciate [2]** 16/8 45/9
**approaching [1]** 44/3
**appropriate [3]** 13/5 24/21 40/1
**approval [1]** 39/12
**approximately [1]** 4/11
**April [8]** 1/7 45/20 45/23 46/1 46/2 46/21 46/23 48/10
**are [49]**

**argue [3]** 6/5 9/12 32/5
**arguing [1]** 17/12
**argument [9]** 6/8 6/8 11/25 12/20 12/22 15/2 19/17 32/23 33/16
**arises [1]** 30/15
**around [2]** 8/11 10/23
**arrangement [1]** 43/14
**articles [1]** 27/8
**as [58]**
**aside [2]** 32/9 32/12
**ask [7]** 12/22 13/16 26/24 30/2 33/1 40/17 41/9
**asked [1]** 32/12
**asking [2]** 39/18 39/24
**assert [3]** 39/19 39/20 41/3
**asserting [3]** 35/20 36/1 40/22
**assertion [2]** 34/6 35/19
**assess [1]** 7/12
**assessment [4]** 13/2 13/20 30/18 37/23
**assistant [1]** 8/17
**associated [7]** 5/11 5/12 27/8 32/2 32/7 32/18 36/5
**assume [1]** 15/9
**assuming [2]** 36/10 39/16
**attempt [1]** 39/25
**attention [2]** 8/6 23/7
**attenuated [1]** 9/24
**attorney [2]** 26/17 30/24 44/9
**attorney-client [2]** 26/17 30/24
**attorneys [2]** 26/20 26/24
**attorneys' [1]** 44/4
**Austin [2]** 2/5 2/14
**automatically [2]** 13/24 14/4
**available [4]** 11/11 11/18 12/2 12/10
**Ave [1]** 1/23
**avenue [2]** 2/9 2/19 35/6
**avenues [1]** 29/22
**aware [1]** 37/11

**B**
**back [12]** 3/12 3/14 15/6 16/3 17/20 22/15 22/22 23/20 28/6 31/18 43/2 43/16
**bad [3]** 13/24 14/4 18/1
**balancing [1]** 35/2
**Barakat [1]** 32/25
**Barrett [1]** 2/19
**based [9]** 4/13 8/15 8/16 10/22 11/5 16/12 23/1 30/17 42/2
**basically [5]** 26/14 27/6 32/3 32/14 34/9

**B**

**basis [2]** 33/10 40/19
**Bates [1]** 21/8
**be [84]**
**bear [2]** 33/25 34/2
**bears [1]** 16/24
**because [19]** 5/8 5/25
12/17 13/4 14/17 15/10
17/10 18/22 20/12
21/25 22/25 26/19
28/22 28/24 41/9 43/15
43/21 45/24 46/25
**become [1]** 30/21
**becomes [3]** 14/25
25/2 41/10
**been [15]** 7/14 8/5 10/3
12/6 12/12 13/10 16/20
24/14 24/16 28/23 31/9
34/15 36/20 37/8 38/20
**before [14]** 1/15 6/14
14/24 31/13 37/10
38/18 39/21 40/10
45/10 47/12 47/17
47/18 47/18 47/19
**behalf [1]** 29/2
**being [6]** 8/15 8/16
8/17 14/13 25/17 33/14
**believe [14]** 5/3 5/20
7/2 11/16 11/21 13/22
14/2 20/20 24/21 24/21
25/6 28/25 29/4 29/13
**benefit [1]** 14/19
**best [2]** 30/18 37/7
**better [2]** 20/11 23/2
**between [1]** 26/24
**big [3]** 5/7 23/4 31/11
**bit [5]** 8/13 9/24 15/1
26/5 29/16
**bklaproth [1]** 1/25
**blaming [1]** 8/18
**blatant [6]** 8/10 8/12
8/14 10/11 10/12 21/9
**board [1]** 16/5
**books [1]** 44/2
**both [10]** 13/13 30/7
31/7 34/14 35/12 36/12
38/16 39/25 40/16
45/20
**bounce [1]** 28/6
**box [2]** 2/9 17/9
**boxes [47]** 4/6 4/7 4/8
4/10 4/10 4/12 4/14 5/4
5/7 5/10 5/11 5/12 5/14
5/24 6/11 6/22 7/9 7/20
7/21 9/1 10/20 10/21
10/23 11/4 11/6 11/13
11/15 11/17 12/1 12/9
12/15 12/20 12/23
12/25 13/7 13/16 14/1
15/7 15/15 15/16 15/17
15/17 17/15 18/15
19/13 20/25 21/20
**Brady [3]** 9/11 10/7
10/12
**Brendan [9]** 1/22 3/7
6/20 21/1 25/11 31/16
41/1 44/6 45/17
**Brendan Klaproth [6]**

**B**

41/1 45/17
46/10
**brief [4]** 14/9 20/4
20/23 44/11
**briefed [3]** 22/24 27/18
30/5
**briefing [7]** 4/6 22/14
22/23 22/25 27/9 29/21
44/11
**briefly [2]** 21/2 25/14
**brings [1]** 26/17
**broader [1]** 31/8
**Brooke [9]** 24/14 25/14
25/22 26/13 31/25
32/20 33/10 41/6 41/11
**Brooke Buchanan [7]**
24/14 25/14 25/22
26/13 31/25 32/20
33/10
**Brooke Buchanan's [2]**
41/6 41/11
**brought [2]** 8/5 23/7
**Buchanan [19]** 24/14
25/14 25/22 26/13 28/9
28/19 28/20 29/4 29/6
29/17 30/8 31/25 32/20
33/10 34/13 37/25 38/5
42/16 42/17
**Buchanan's [9]** 34/17
35/11 37/23 38/4 39/15
41/6 41/11 42/13 43/3
**burden [13]** 5/1 7/7
15/19 15/23 16/1 16/4
16/24 16/25 17/3 17/12
17/22 18/2 20/21
**burdensome [1]** 18/6
**business [3]** 29/9 47/7
47/8

**C**

**CA [2]** 1/4 1/10
**call [5]** 15/5 25/15
32/10 33/13 44/12
**called [1]** 21/8
**calls [1]** 34/1
**came [1]** 39/15
**camera [1]** 24/25
**can [39]** 6/7 6/9 6/17
7/12 8/7 8/14 15/18
18/13 18/20 19/12
19/21 20/10 20/13
20/24 22/24 23/1 23/25
24/10 24/23 26/18
27/17 28/6 29/22 30/25
31/14 32/24 33/4 33/13
37/7 38/22 40/17 40/19
40/21 40/25 43/1 43/16
44/10 44/22 44/24
**can't [7]** 11/24 15/8
15/16 15/17 18/14 26/1
38/24
**care [1]** 47/23
**carry [1]** 7/6
**Casas [23]** 2/2 3/8 9/3
9/6 9/8 13/21 17/18
19/24 22/4 22/17 23/12
23/20 23/24 24/17
27/15 28/5 28/8 31/20

**C**

41/1 45/17
46/10
**casasg [1]** 2/6
**case [14]** 5/6 8/1 17/25
18/12 21/4 21/5 21/13
21/25 23/3 26/8 30/9
37/12 43/22 47/6
**cases [2]** 36/24 36/25
**categories [1]** 4/7
**category [2]** 5/7 37/4
**caused [1]** 32/6
**caveat [1]** 13/23
**cells [1]** 21/9
**central [2]** 36/15 36/19
**certain [1]** 26/1
**certainly [7]** 8/19 31/8
41/14 41/20 41/24 42/1
43/10
**certification [2]** 18/24
19/1
**Certified [1]** 2/18
**certify [1]** 48/2
**CH [1]** 2/19
**chair [1]** 38/15
**challenge [2]** 24/24
38/13
**challenges [1]** 47/6
**changes [1]** 13/2
**check [1]** 3/12
**Circuit [1]** 37/12
**circumstances [1]**
42/2
**Civil [1]** 3/3
**claim [4]** 15/20 26/19
34/8 44/9
**claimed [1]** 31/1
**claiming [2]** 13/23 34/7
**claims [1]** 30/22
**class [1]** 19/1
**classic [1]** 42/20
**clear [4]** 10/1 15/21
16/20 41/3
**clearly [7]** 4/8 5/5 8/14
18/5 24/2 34/17 37/6
**client [2]** 26/17 30/24
**client's [1]** 36/7
**clients [9]** 29/22 32/3
32/6 32/10 32/17 32/19
33/5 34/6 34/10
**climb [1]** 38/15
**collaborate [1]** 23/20
**collapsed [2]** 10/4 10/7
**collection [1]** 4/8
**COLUMBIA [3]** 1/1
35/1 35/2
**come [19]** 4/24 6/23
7/7 10/16 15/7 17/19
18/14 29/19 31/25
32/12 37/10 38/2 38/23
42/15 42/17 42/18
42/23 43/2 44/20
**comes [6]** 6/22 19/17
22/3 40/11 40/11 43/3
**comfortable [2]** 4/18
8/24
**coming [1]** 39/10
**comment [1]** 25/14
**communications [1]**

**C**

**company [2]** 29/18
21/22
**company-wide [2]**
21/18 21/22
**completely [1]** 16/5
**computer [1]** 2/22
**computer-aided [1]**
2/22
**concerned [2]** 17/8
41/16
**concluded [1]** 47/25
**conclusion [1]** 22/5
**conduct [1]** 9/15
**conducted [1]** 30/16
**confer [8]** 22/12 22/22
24/23 25/16 27/3 30/3
31/17 44/21
**conference [7]** 1/14
3/3 8/6 11/3 23/12 24/3
47/18
**confidentiality [6]** 33/6
34/6 35/20 36/1 40/23
41/4
**confirm [2]** 33/6 38/8
**connotation [1]** 10/6
**considered [1]** 15/18
**Constitution [1]** 2/19
**contacted [1]** 34/15
**contacting [1]** 32/6
**contain [4]** 4/14 4/16
5/11 12/23
**contained [1]** 12/24
**contents [3]** 4/10 4/16
5/14
**context [3]** 30/15 35/21
35/24
**continue [4]** 3/19
29/20 30/3 44/21
**CONTINUED [1]** 2/1
**continues [1]** 24/24
**conversation [1]** 23/1
**conveyed [1]** 25/23
**cooperate [1]** 41/15
**cooperation [2]** 38/24
39/16
**coordinate [1]** 44/11
**copying [2]** 11/18 12/2
**correct [4]** 11/14 30/9
38/6 48/3
**correctly [2]** 30/7
39/18
**could [16]** 5/23 7/21
15/10 18/4 19/13 19/13
19/16 19/18 21/2 22/15
29/5 33/25 35/6 42/18
44/12 44/20
**couldn't [4]** 10/8 15/3
15/6 42/17
**counsel [11]** 3/10 4/17
5/23 8/18 25/15 27/22
28/11 29/11 29/15
29/25 43/13
**counter [1]** 6/8
**country [3]** 7/22 10/23
21/11
**counts [1]** 40/16
**couple [2]** 25/12 28/23

**C**

**course [7]** 7/1 7/16
7/20 11/11 16/2 22/18
29/11
**court [26]** 1/1 2/17
2/18 4/3 4/21 5/10 7/13
14/11 17/9 31/18 33/3
35/12 37/8 39/9 39/18
39/21 41/24 42/11
42/17 42/18 42/20 44/4
44/21 44/22 44/25 48/7
**Court's [3]** 27/11 39/12
44/13
**courts [3]** 35/1 37/1
37/2
**covered [2]** 44/17
44/18
**COVID [1]** 48/6
**COVID-19 [1]** 48/6
**created [1]** 14/10
**creates [2]** 33/3 33/7
**credibility [2]** 22/1
41/6
**criminal [1]** 43/22
**cross [2]** 7/11 31/3
**cross-examine [1]**
7/11
**cross-section [1]** 31/3
**CRR [2]** 48/2 48/11
**current [2]** 7/15 46/22
**cut [4]** 44/3 46/1 46/20
46/22
**cut-off [4]** 44/3 46/1
46/20 46/22

**D**

**D.C [5]** 1/7 1/20 1/24
2/20 12/10
**D.C. [1]** 37/2
**D.C. courts [1]** 37/2
**data [3]** 10/14 10/14
10/18
**date [4]** 16/13 45/11
45/24 48/10
**David [2]** 2/8 3/8
**day [6]** 4/20 43/20
45/21 47/2 47/6 47/7
**days [6]** 3/15 44/2 46/4
46/8 46/24 47/8
**deadline [4]** 3/16 45/23
46/13 46/14
**deal [1]** 13/18
**dear [1]** 33/19
**December [1]** 21/19
**decision [4]** 13/15 26/9
31/11 31/13
**declarants [1]** 42/11
**declaration [1]** 38/25
**deep [1]** 18/25
**defamation [3]** 31/4
34/7 34/8
**defamatory [3]** 26/14
30/24 31/1
**defend [1]** 13/25
**defendant [7]** 6/4
15/23 16/1 16/2 16/22
16/24 43/17
**defendants [5]** 1/7
1/12 2/2 3/9 15/17

**D**

defendants' [1] 26/11
defense [21] 5/17 5/19
6/24 7/8 14/10 14/13
15/22 15/22 16/2 16/12
16/22 16/23 16/25
16/25 17/2 22/5 22/8
30/20 32/5 32/23 33/12
defenses [2] 15/21
15/25
degree [1] 37/14
delving [1] 29/24
demonstrate [1] 37/15
department [3] 4/23
8/16 8/17
depend [1] 17/17
deponents [1] 40/3
depose [1] 39/25
deposed [1] 10/3
deposition [8] 9/11
9/14 20/6 29/6 32/1
32/13 32/23 32/25 39/15
depositions [10] 7/2
20/13 35/18 35/23
36/12 37/9 39/13 39/19
41/5 41/14
describe [1] 13/13
described [1] 38/20
description [1] 42/2
deserves [1] 22/25
designed [1] 8/7
desperate [1] 8/20
determination [1] 22/1
determine [4] 6/25
9/21 10/18 34/22
determined [2] 26/20
26/22
dictate [1] 18/14
did [11] 4/15 4/16
21/18 21/22 26/14
26/20 27/24 28/19
32/10 32/21 38/2
didn't [7] 6/1 10/7
14/17 15/7 21/20 42/6
43/13
different [6] 5/2 8/13
14/16 27/25 28/2 33/8
diligence [2] 20/17
37/14
diligent [1] 13/10
disavows [1] 38/25
disclose [2] 26/1 34/23
disclosed [3] 36/21
36/24 37/23
discovered [1] 39/14
discovery [15] 3/16 5/8
7/1 8/4 14/16 19/2 29/1
31/9 44/2 45/19 45/23
46/13 46/14 46/19
46/22
discrete [1] 34/10
discuss [1] 43/25
discussion [1] 39/21
discussions [1] 39/11
dismiss [1] 26/10
dismissed [2] 30/10
30/12
dispute [3] 17/5 23/22

disputing [1] 17/2
DISTRICT [5] 1/1 1/1
1/15 35/1 35/2
do [41] 4/6 5/8 5/19
7/13 7/25 8/20 9/5 9/16
10/18 11/7 11/20 13/8
14/2 14/4 15/10 18/4
18/8 18/15 18/21 19/20
20/2 20/12 20/16 20/20
20/22 20/25 21/14 22/3
22/11 22/25 27/20 30/3
32/14 33/2 39/3 41/10
41/15 43/16 43/21 44/8
45/3
doctrine [3] 26/7 28/17
29/18
doctrines [1] 25/20
document [2] 24/20
28/25
documents [9] 10/10
11/25 19/21 19/22
23/13 23/15 23/17 24/4
28/9
does [6] 11/21 13/20
13/25 17/17 28/25
30/21
doesn't [3] 12/21 13/17
22/9
doing [3] 3/11 4/2 9/8
don't [64]
done [7] 6/13 6/18 35/3
38/17 39/9 47/8 47/9
down [4] 6/23 32/22
40/13 43/19
draw [7] 9/24 12/22
13/6 13/17 17/3 19/22
20/14
drawn [1] 18/14
due [1] 20/17
dump [1] 23/18
during [3] 7/1 31/25
48/5

**E**

earlier [1] 27/5
easy [5] 37/13 37/19
37/20 39/5 40/5
effort [1] 36/7
either [10] 4/5 12/7
13/1 13/12 13/14 13/16
14/2 37/19 39/2 43/20
elements [2] 26/8
26/25
eliminate [1] 35/5
else [5] 25/3 31/22
36/22 37/1 45/1
email [3] 2/15 28/10
28/23
emails [3] 26/24 28/21
29/25
employees [2] 34/14
34/16
encountered [1] 31/5
end [6] 4/20 30/23 40/7
40/8 45/19 45/20
enough [4] 7/6 8/20
17/11 21/16

entity [1] 30/15
envision [1] 25/17
envisioned [1] 32/22
equals [1] 17/25
establish [2] 18/2
41/22
et [7] 1/3 1/6 1/8 1/11
3/4 3/5 3/5
et al [3] 3/4 3/5 3/5
even [11] 5/25 7/23
9/11 11/17 19/6 19/7
22/8 22/10 33/2 38/12
38/16
event [1] 39/12
ever [3] 13/19 14/24
37/18
every [2] 18/5 19/14
everybody [2] 3/11
13/20
everyone [3] 45/9
45/12 47/24
everyone's [1] 45/9
everything [6] 6/13
16/8 27/7 29/14 41/19
45/1
everything's [1] 26/3
evidence [8] 4/21 8/23
9/13 9/15 9/18 12/24
15/5 15/18
evidentiary [1] 12/15
exact [2] 11/2 21/10
exactly [1] 39/7
examine [1] 7/11
example [3] 16/21 21/7
39/1
except [1] 13/22
exchanges [1] 28/10
exclude [1] 33/9
exist [3] 7/9 15/9 19/6
existing [1] 19/7
expect [2] 43/13 47/12
expected [1] 27/19
expedition [3] 5/16
5/20 8/25
experience [1] 38/16
expert [1] 13/23
explore [1] 15/1
express [2] 25/21
25/23
extend [1] 47/9
extension [1] 45/21
extent [5] 29/9 30/16
30/21 30/24 34/22
extra [2] 47/7 47/7
eyeballs [1] 19/23
eyes [1] 40/14

**F**

face [1] 38/15
facie [1] 15/5
facilities [1] 11/6
facility [1] 43/15
fact [10] 3/16 15/11
19/22 41/22 45/23 46/1
46/13 46/14 46/19
46/22
fact-discovery [4] 3/16

facts [1] 34/22
factual [1] 38/3
failure [2] 12/24 14/19
fair [2] 23/23 29/12
false [2] 21/23 27/2
far [5] 4/25 6/10 30/18
31/9 41/15
fault [1] 26/11
feel [1] 8/25
fees [2] 44/9 44/25
felt [2] 6/13 8/20
few [1] 23/17
field [2] 8/6 8/8
fields [6] 8/5 8/9 8/22
10/4 10/7 10/9
fight [1] 38/18
figure [4] 9/4 20/16
20/24 45/6
figured [1] 8/8
file [2] 4/12 33/8
files [1] 29/24
find [1] 14/23
fine [4] 4/19 42/8 45/15
47/20
finish [2] 36/17 39/11
first [2] 9/4 32/25
fishing [2] 5/16 5/20
fit [1] 18/12
fits [1] 23/3
flagged [4] 23/4 23/5
27/4 27/6
Florham [1] 2/10
fly [1] 22/9
focus [1] 45/4
folders [2] 4/12 4/14
4/16 5/4
folks [1] 39/25
follow [2] 15/23 44/10
following [1] 42/23
FOODS [45] 1/6 1/11
2/12 3/5 4/8 4/25 6/23
7/7 9/20 10/17 11/21
12/21 13/10 13/25 15/3
15/6 16/13 17/1 19/19
20/10 20/18 21/13
21/17 22/2 26/6 26/19
27/1 27/21 28/11 28/25
29/2 29/15 29/24 30/16
32/5 32/12 33/12 33/20
41/14 41/20 41/21 42/1
42/19 44/10 45/16
Foods' [2] 5/1 44/9
force [1] 17/14
forced [1] 38/18
foreclose [2] 32/23
33/16
foregoing [1] 48/3
foregone [1] 22/5
form [1] 40/20
former [1] 33/18
forth [3] 5/21 16/3
37/16
forward [6] 6/24 7/7
13/1 45/10 47/11 47/13
fought [1] 40/10
found [1] 8/4
frame [1] 11/8

Friday [2] 47/18 47/19
full [1] 23/22
fully [1] 22/24
function [1] 21/8
further [1] 44/1

**G**

gainsharing [4] 7/4
20/18 30/18 32/11
game [1] 29/12
gather [2] 3/15 35/8
gauge [1] 3/15
general [1] 37/17
gentlemen [1] 15/9
get [28] 3/23 6/14 6/17
14/17 14/19 14/24 19/2
20/10 22/13 22/15
22/22 23/20 26/23
31/12 34/1 35/4 35/21
36/7 36/13 38/14 38/24
39/5 39/16 41/10 43/16
44/1 47/8 47/8
gets [1] 36/22
getting [3] 40/5 47/11
47/13
give [4] 19/11 38/10
39/9 44/3
given [2] 5/2 6/12
giving [1] 43/6
glean [1] 6/10
global [1] 29/8
go [24] 5/16 5/19 9/6
9/18 9/19 10/18 12/9
14/22 17/14 19/25
22/22 27/14 27/23 28/5
34/10 35/14 35/17
36/16 40/13 40/13
40/19 42/5 42/8 47/9
go ahead [5] 19/25
27/23 36/16 42/5 42/8
goes [2] 15/3 34/8
going [54]
gone [2] 11/17 12/1
14/2
good [10] 3/2 3/10 4/1
6/19 9/8 17/11 33/23
35/24 45/14 45/18
good morning [5] 3/2
3/10 6/19 9/8 33/23
got [9] 18/6 21/14
21/14 22/3 23/16 38/1
39/25 43/13 43/14
Grady [1] 10/2
grant [1] 40/3
GREENBERG [2] 2/3
2/8
Greg [13] 9/8 13/21
18/20 19/24 22/17
23/24 24/17 27/15 28/8
31/20 33/17 45/15
46/10
Greg Casas [10] 9/8
13/21 19/24 22/17
23/24 27/15 28/8 31/20
45/15 46/10
Gregory [2] 2/2 3/8
grounds [2] 24/15
30/11

# G

**gtlaw.com [3]** 2/6 2/6 2/11
**guess [5]** 5/13 30/2 30/14 30/20 39/12

# H

**had [15]** 7/1 8/4 23/12 23/15 24/4 24/12 24/14 28/10 28/19 28/23 29/16 34/15 36/25 37/10 40/9
**half [1]** 10/24
**hand [3]** 13/9 15/13 42/22
**handle [1]** 17/9
**happen [2]** 21/20 39/22
**happened [2]** 23/16 32/8
**happy [6]** 11/10 11/17 12/10 20/3 29/20 40/3
**has [25]** 4/6 4/21 5/8 6/23 7/14 7/25 12/12 13/10 19/19 27/16 28/23 29/10 29/10 29/16 31/8 31/9 32/12 34/9 35/3 35/8 35/9 36/20 36/21 37/8 39/9
**hasn't [1]** 37/3
**have [67]**
**haven't [5]** 17/12 21/21 44/16 44/18 45/25
**having [1]** 10/19
**he [11]** 5/25 10/7 23/14 24/5 24/6 29/10 29/16 29/17 33/19 36/25 37/3
**he's [4]** 10/3 35/15 37/3 44/16
**head [1]** 29/8
**hear [7]** 6/16 9/3 9/4 13/13 17/1 28/5 44/15
**heard [7]** 22/4 23/14 32/1 32/2 32/21 33/11 41/12
**hearing [5]** 30/6 41/19 43/22 47/13 48/5
**hearsay [9]** 32/1 33/11 41/12 41/20 41/25 42/4 42/10 42/25 43/4
**heart [2]** 33/19 34/8
**heat [1]** 10/15
**held [2]** 18/23 37/1
**help [1]** 31/7
**helpful [1]** 12/12
**Hempfling [4]** 2/2 2/12 3/8 27/18
**her [3]** 29/6 31/25 37/24
**here [16]** 5/9 7/14 9/9 9/24 15/22 18/11 20/21 25/20 29/13 31/6 34/17 36/15 37/3 37/6 38/21 40/6
**here's [1]** 19/9
**Hersh [2]** 2/3 3/9
**hey [1]** 32/10
**Hi [1]** 25/10
**hid [1]** 8/22
**hidden [3]** 8/6 8/6 8/9 10/5
**hiding [1]** 12/4
**highlighted [3]** 8/10 21/10 24/6
**highlighting [1]** 24/5
**him [1]** 23/14
**himself [2]** 35/22 36/21
**his [9]** 6/17 9/11 24/6 29/5 29/22 33/19 34/6 34/10 36/24
**hollow [1]** 35/15
**home [1]** 35/5
**Honestly [1]** 11/2
**Honor [58]**
**Honor's [1]** 26/9
**HONORABLE [1]** 1/15
**hoops [1]** 38/23
**hop [1]** 43/15
**hope [3]** 3/11 4/1 9/8
**hour [1]** 43/14
**house [3]** 28/11 29/15 29/25
**how [11]** 17/9 18/12 19/17 22/9 23/3 25/9 27/16 30/18 32/9 41/7 45/12
**however [1]** 18/14
**HR [1]** 29/8

# I

**I admit [1]** 24/2
**I believe [3]** 7/2 13/22 29/4
**I can [6]** 8/14 23/1 24/23 27/17 33/4 40/25
**I certainly [1]** 8/19
**I didn't [1]** 43/13
**I don't [3]** 10/11 11/12 29/13
**I don't agree [1]** 10/6
**I don't have [1]** 14/9
**I don't think [14]** 4/3 7/13 12/6 12/7 15/10 21/4 23/16 34/3 37/18 38/19 39/5 40/4 42/18 43/25
**I guess [5]** 5/13 30/2 30/14 30/20 39/12
**I have [6]** 17/24 18/22 25/12 28/12 28/14 43/15
**I hope [3]** 3/11 4/1 9/8
**I just [2]** 25/16 33/8
**I know [1]** 8/19
**I mean [12]** 12/15 13/25 15/20 17/17 17/18 17/24 19/15 20/15 21/17 30/6 41/18 41/21
**I see [1]** 33/14
**I should [1]** 31/3
**I think [40]** 6/9 6/12 6/21 7/14 9/9 9/13 10/5 11/13 12/4 13/4 13/9 13/11 17/17 17/22 17/24 18/9 18/21 20/2 20/5 20/9 21/21 21/25
**hiding [1]** 26/5 27/6 28/16 31/11 33/15 34/5 34/20 35/14 36/3 38/22 39/8 39/12 44/8 46/24
**I thought [2]** 23/14 41/2
**I understand [2]** 16/8 39/7
**I was [3]** 24/9 34/1 42/18
**I would [1]** 31/12
**I'll [5]** 31/6 37/18 41/17 41/18 47/13
**I'll look [1]** 47/13
**I'm [40]** 4/17 6/3 7/14 8/18 16/5 16/5 16/18 17/8 18/10 18/10 19/9 19/16 19/16 19/21 20/23 23/19 23/19 26/9 27/13 27/16 27/20 28/12 29/20 33/16 34/1 34/3 37/11 37/19 37/24 39/17 40/3 41/2 41/15 42/5 42/15 43/6 43/9 45/22 46/21 46/22
**I'm going [2]** 23/19 33/16
**I'm just [2]** 18/10 18/10
**I'm not [6]** 6/3 8/18 19/16 20/23 37/19 41/2
**I'm not sure [1]** 19/21
**I'm sorry [5]** 16/18 27/13 42/5 46/21 46/22
**I'm sure [1]** 23/19
**I've [9]** 3/17 6/10 16/20 28/14 31/5 37/10 40/9 43/13 43/14
**i.e [1]** 32/1
**idea [2]** 5/13 35/24
**identifiable [1]** 37/6
**identified [4]** 21/11 36/25 37/3 37/4
**identify [2]** 33/1 36/9
**identifying [1]** 13/11
**II [1]** 2/12
**illogical [1]** 32/9
**immediately [1]** 20/23
**impacts [1]** 5/8
**important [6]** 20/6 20/22 28/16 31/14 34/7 34/18
**importantly [1]** 20/5
**impression [2]** 24/12 42/2
**improper [4]** 7/5 15/5 17/21 20/9
**inadequate [1]** 19/5
**inadmissible [3]** 33/11 41/12 43/4
**inappropriate [6]** 4/23 5/18 8/11 8/15 9/15 15/14
**INC [4]** 1/6 1/11 2/13 3/5
**indicated [1]** 23/13
**individual [1]** 30/8
**individuals [1]** 38/9
**inference [7]** 9/21 11/22 12/3 12/5 12/23 13/5 13/17 19/17 19/22 20/13
**inferences [3]** 9/23 17/2 18/13
**information [25]** 4/15 4/17 10/8 10/9 10/22 20/19 25/22 28/18 28/20 29/10 29/16 35/7 35/10 36/6 36/6 36/9 36/14 36/22 37/15 37/16 37/21 38/1 39/6 39/14 40/23
**initial [3]** 39/6 39/8 42/1
**initially [1]** 24/14
**insofar [1]** 15/2
**inspect [3]** 14/20 14/21 15/7
**inspection [3]** 11/18 12/2 14/15
**instance [1]** 4/22
**Instead [1]** 45/3
**instruction [3]** 5/22 6/4 12/5
**intend [3]** 12/19 12/22 21/12
**intended [1]** 44/16
**intends [1]** 12/14
**intentionally [1]** 8/7
**interesting [1]** 31/3
**internal [1]** 29/25
**interrogatories [4]** 34/10 35/4 35/17 35/22
**interrogatory [1]** 32/14
**interrupt [1]** 42/6
**intersection [1]** 31/3
**interview [1]** 9/20
**investigated [1]** 10/14
**investigation [12]** 9/17 10/18 21/19 21/23 26/20 26/21 29/3 29/9 30/17 30/17 30/21 30/23
**investigatory [1]** 29/23
**involved [1]** 29/2
**involvement [1]** 4/5
**involving [1]** 40/9
**iron [2]** 11/5 23/9
**is [152]**
**isn't [2]** 18/25 21/15
**issue [66]**
**issue's [1]** 32/12
**issues [14]** 3/23 23/6 25/7 25/12 27/16 27/19 28/7 41/13 43/18 44/16 44/20 44/22 44/25 46/5
**it [80]**
**it would be [4]** 13/5 15/11 40/1 42/9
**it wouldn't be [1]** 42/4
**it's [60]**
**its [3]** 6/24 7/7 29/3
**itself [1]** 13/25

# J

**jail [1]** 43/15
**Jersey [1]** 2/10
**John [3]** 2/2 2/12 3/8
**john.hempfling [2]** 2/7 2/16
**JOINT [4]** 1/14 3/3 3/17 23/5
**jointly [2]** 35/17 35/23
**JUDGE [4]** 1/15 34/5 36/18 43/11
**judgment [2]** 18/9 22/10
**jump [3]** 21/2 38/22 43/21
**June [7]** 44/3 45/24 46/15 46/17 47/3 47/5 47/9
**jurisdiction [1]** 30/11
**jury [10]** 5/22 6/5 6/5 7/12 11/22 11/25 12/22 13/16 15/9 17/11
**just [54]**
**justify [3]** 5/17 17/20
**Justin [1]** 33/1
**Justin Moyer [1]** 33/1

# K

**keenly [1]** 37/11
**keep [3]** 8/21 20/14 20/15
**kept [2]** 24/19 28/14
**kind [3]** 18/6 36/10 39/9
**Klaproth [37]** 1/22 1/22 3/7 6/16 6/20 8/13 9/23 11/14 21/1 23/19 24/23 25/9 25/11 27/16 27/19 27/24 28/6 29/5 29/21 29/22 30/8 31/16 31/22 34/9 35/3 35/8 35/15 35/22 35/25 38/7 39/9 39/11 40/20 41/1 44/6 44/24 45/17
**Klaproth's [3]** 34/5 36/7 40/17
**klaprothlaw.com [1]** 1/25
**knew [5]** 4/8 21/19 26/25 27/1 29/15
**know [57]**
**knows [4]** 5/10 5/11 5/24 43/16
**Kristin [1]** 7/3

# L

**label [1]** 23/15
**labeling [1]** 9/1
**labels [3]** 4/13 5/4 11/7
**labor [1]** 4/22
**lack [2]** 14/3 41/7
**ladies [1]** 15/8
**larger [2]** 23/3 26/5
**last [5]** 8/6 23/12 24/3 24/12 43/14
**later [9]** 18/16 18/22 19/2 20/3 25/15 43/2 43/20 44/12 45/4
**law [7]** 1/22 14/8 14/18 16/24 31/4 36/20 37/12

**L**

lawyers [3] 25/22
26/16 36/4
laying [1] 19/23
lead [1] 31/8
leaders [8] 4/22 7/5
8/15 8/17 9/10 9/14
9/16 20/8
leading [1] 29/8
learn [1] 29/23
least [11] 3/19 5/9
12/14 18/8 23/5 25/20
26/12 28/14 40/9 40/19
42/18
leave [1] 39/24 40/4
45/10
leaves [1] 32/19
leaving [2] 32/9 32/11
left [2] 24/12 38/23
legal [2] 29/11 29/11
legitimate [1] 9/22
less [2] 13/10 21/24
let [11] 6/5 6/16 7/24
9/4 12/16 13/3 25/1
30/5 35/16 43/10 44/15
let's [9] 9/18 9/19 9/19
15/4 19/10 22/11 26/24
45/3 45/4
let's see [1] 26/24
letter [2] 24/4 24/6
level [1] 19/7
libel [1] 31/4
lied [1] 42/23
like [13] 3/18 12/13
13/17 14/12 24/15
25/19 25/21 28/14
31/12 31/12 37/12 41/4
47/17
likely [8] 4/23 5/10
5/17 6/6 7/3 16/17
17/13 39/22
Likewise [1] 12/21
limine [3] 33/9 34/19
34/21
limitation [1] 40/2
limitations [3] 16/21
16/23 48/7
limited [1] 36/9
lingering [2] 23/21
23/22
litigation [4] 18/24
33/4 40/6 40/9
little [5] 8/13 9/24 15/1
25/12 26/5
live [1] 45/6
LLP [2] 2/3 2/8
log [4] 23/11 23/17
24/9 27/5
long [3] 1/18 14/11
36/23
look [21] 7/4 7/8 9/19
9/19 14/17 14/24 15/2
15/14 17/14 17/19
21/14 22/6 30/16 33/4
37/18 39/24 41/18
45/10 45/11 47/11
47/13
looked [7] 5/24 16/21

45/25
looking [5] 3/14 5/4
20/15 20/15 26/9
looks [1] 37/12
loose [1] 37/20
lot [3] 4/10 28/18 33/3
loud [1] 18/11

**M**

M3 [1] 1/23
made [1] 41/3
make [15] 9/25 11/10
11/18 12/1 12/10 12/14
12/19 12/22 13/15
31/13 33/15 44/1 45/5
47/2 47/5
makes [1] 13/15
making [1] 27/2
manipulated [1] 32/11
manually [1] 8/21
many [2] 19/11 27/16
map [1] 10/15
MARKET [4] 1/6 1/11
2/12 3/5
Martin [1] 29/7
material [3] 13/8 13/11
24/13
materials [3] 23/18
26/2 26/21
matter [6] 25/25 26/2
26/3 28/15 29/14 48/4
Matthew [1] 32/25
may [29] 3/19 7/3 7/9
7/17 8/5 12/5 13/7 13/8
14/7 15/13 17/11 19/24
23/9 23/9 23/21 24/24
27/9 27/9 27/10 34/23
38/3 38/4 40/7 41/9
45/11 45/12 46/24 47/2
47/18
May I [1] 7/17
maybe [15] 4/5 8/13
13/19 16/10 18/15 19/6
19/6 19/15 19/15 37/24
38/1 38/10 38/10 40/12
44/2
me [32] 6/14 6/16 9/4
12/16 12/17 13/3 13/16
15/21 15/24 16/11
17/14 17/23 18/1 22/13
22/15 22/23 25/1 30/5
30/6 31/9 33/25 34/2
37/24 38/2 38/22 39/4
40/10 41/20 41/25
42/24 43/10 44/15
mean [30] 12/13 12/15
12/19 13/24 13/25
14/24 15/19 15/20
15/25 17/8 17/17 17/18
17/24 19/6 19/25 20/9
20/15 20/15 21/6 21/17
30/6 39/24 40/12 41/17
41/18 41/18 41/21 42/6
42/17 45/22
meaning [1] 14/4
meaningful [1] 40/19
means [1] 17/21 20/14

meant [1] 24/3
mechanical [1] 9/24
mechanical [1] 19/23
media [4] 38/17 39/3
40/9 40/10
meet [2] 30/3 44/21
MEHTA [1] 1/15
member [1] 20/17
members [1] 27/17
Memorial [1] 47/2
Merit [1] 2/17
merits [5] 5/5 8/1 9/25
18/25 19/2
met [1] 17/12
MICHAEL [2] 1/3 3/4
Michael Molock [1] 3/4
mid [1] 45/11
might [16] 5/14 6/2
10/25 12/21 12/21
12/23 12/24 17/14 21/4
25/12 31/6 36/11 38/12
44/1 44/20 44/23
mind [1] 5/9
missing [2] 13/24 43/9
misunderstanding [1]
24/2
MOLOCK [8] 1/3 1/18
3/4 3/6 11/24 43/24
45/14 46/14
Molocks [1] 4/18
Monday [9] 22/16
22/23 30/4 31/18 44/22
44/25 45/5 47/12 47/14
month [1] 3/13
months [1] 12/6
more [22] 4/23 5/17 6/6
7/3 8/3 9/16 10/18 15/1
16/17 18/20 19/2 20/5
20/19 21/14 22/23 25/11
27/24 34/13 34/15 37/4
38/8 44/8
morning [7] 3/2 3/10
4/1 6/19 9/8 23/7 33/23
most [3] 23/14 24/5
28/13
motion [4] 26/10 33/9
34/18 34/21
Mountain [1] 11/5
mouths [1] 4/24
move [4] 13/1 27/25
28/2 46/12
Moyer [1] 33/1
Mr. [69]
Mr. Anderson [1] 29/7
Mr. Brady [3] 9/11 10/7
10/12
Mr. Casas [9] 9/3 9/6
17/18 22/4 23/12 23/20
28/5 44/15 46/7
Mr. Grady [1] 10/2
Mr. Hempfling [1]
27/18
Mr. Klaproth [26] 6/16
8/13 9/23 11/14 23/19
24/23 25/9 27/16 27/19
27/24 28/6 29/5 29/21
29/22 31/22 34/9 35/3
35/8 35/15 35/22 35/25

44/24
Mr. Klaproth's [3] 34/5
36/7 40/17
Mr. Martin [1] 29/7
Mr. Sellinger [6] 23/21
27/18 33/18 33/22
36/16 36/17
Mr. Tracey [2] 29/10
29/16
Mr. Zambri [15] 3/14
3/25 9/23 11/14 16/6
20/2 20/24 21/7 23/4
23/25 24/4 24/8 24/10
24/23 25/3
Mr. Zambri's [1] 6/21
Ms. [25] 28/9 28/18
28/19 28/20 29/2 29/4
29/6 29/15 29/17 29/24
29/25 30/8 30/8 34/13
34/17 35/11 37/23
37/25 38/4 38/5 39/15
42/13 42/16 42/17 43/3
Ms. Anderson [3]
28/18 29/2 29/15
Ms. Anderson's [2]
29/24 29/25
Ms. Buchanan [12]
28/9 28/19 28/20 29/4
29/6 29/17 30/8 34/13
37/25 38/5 42/16 42/17
Ms. Buchanan's [7]
34/17 35/11 37/23 38/4
39/15 42/13 43/3
Ms. Klaproth [1] 30/8
much [10] 4/3 7/13
11/20 12/3 19/19 23/10
33/24 34/4 40/15 47/23
multiple [2] 4/24 16/13
must [1] 20/8
mute [2] 34/1 34/3
my [20] 3/14 5/9 5/21
6/11 14/23 16/23 21/4
21/12 23/7 24/2 32/3
32/5 32/9 32/17 32/19
33/4 38/15 39/6 42/1
43/6

**N**

nail [2] 38/18 40/10
name [1] 37/3
narrow [1] 36/12
near [1] 33/19
necessarily [2] 10/5
29/19
necessary [1] 20/19
need [33] 3/20 4/5 9/5
9/9 9/16 12/9 13/3
13/18 13/25 14/13
14/25 18/11 18/13
18/21 19/10 20/2 20/9
22/2 23/2 23/10 26/8
26/10 26/25 27/9 29/13
31/7 32/22 38/8 39/12
42/12 43/25 45/10 47/8
needed [1] 10/14
needs [3] 4/3 6/18 30/4
negate [1] 16/25

negligence [2] 26/12
30/14
negligently [1] 27/2
negotiate [2] 36/11
40/21
negotiation [1] 36/4
neither [1] 12/14
never [4] 32/17 32/20
32/22 38/4
new [4] 2/10 31/24
32/5 39/13
newly [1] 39/14
newsmen [1] 35/1
next [3] 31/24 45/11
47/13
nine [8] 35/9 35/25
37/5 38/9 38/12 39/1
40/21 41/23
no [16] 1/4 1/10 5/13
9/1 11/21 11/22 16/19
16/19 17/20 17/25
20/13 25/6 37/15 41/2
42/8 43/25
nobody [1] 19/23
non [5] 12/18 13/3 13/3
13/14 41/10
non-issue [3] 12/18
13/14 41/10
non-production [1]
13/3
non-review [1] 13/3
none [3] 32/7 38/9
38/11
noodle [1] 19/10
noodling [1] 19/9
normal [1] 11/11
not [67]
note [1] 48/5
notes [1] 3/14
nothing [5] 5/12 10/9
11/23 26/15 44/18
notify [2] 44/21 44/25
notwithstanding [1]
38/3
now [20] 4/18 7/1 8/11
12/7 12/14 13/1 13/7
13/14 14/9 15/10 18/4
21/15 24/15 26/17
28/23 32/5 32/18 32/22
40/2 44/2
number [2] 21/8 22/7
NW [3] 1/19 1/23 2/19

**O**

oath [1] 38/19
obligated [1] 5/16
obligation [1] 14/16
observation [1] 37/17
obtain [1] 35/6
obviously [3] 14/25
34/18 36/3
occur [1] 12/11
occurred [1] 48/5
occurs [2] 30/6 40/18
odd [1] 37/25
off [6] 32/4 34/2 44/3
46/1 46/20 46/22
offensive [1] 14/3

**O**

**offer [2]** 33/12 35/15
**Official [1]** 2/18
**oh [1]** 45/10
**okay [22]** 9/2 14/13
16/19 23/4 24/11 25/3
25/8 30/13 31/19 31/21
33/21 34/3 36/18 43/1
44/14 45/2 46/3 46/6
46/11 46/18 47/4 47/21
**omission [1]** 10/17
**once [2]** 22/24 27/21
37/10
**one [36]** 4/4 4/7 4/22
7/2 7/3 8/3 11/7 13/14
13/22 14/16 17/8 18/20
19/11 19/14 23/1 23/4
23/9 24/20 25/16 26/8
26/25 27/17 31/12
32/24 33/14 33/25 34/1
34/2 34/13 34/15 37/4
41/9 41/23 44/8 45/19
47/12
**ones [5]** 24/6 24/6
28/12 28/13 32/3
**only [3]** 4/18 8/7 8/11
**open [4]** 8/9 13/4 14/11
40/14
**opens [1]** 29/1
**oppose [1]** 34/18
**opposing [1]** 8/18
**opposition [1]** 41/21
**order [1]** 33/3
**ordinary [1]** 16/2
**organization [1]** 39/3
**organizations [1]**
40/11
**other [26]** 3/23 5/7
6/15 7/3 9/18 10/9 11/6
11/7 11/13 11/23 13/9
15/13 15/15 20/14 23/6
25/7 27/17 27/19 28/7
29/22 29/25 31/12
37/15 42/22 43/18
44/20
**otherwise [1]** 42/1
**ought [6]** 6/3 12/16
18/15 22/13 23/6 38/17
**our [19]** 5/1 5/5 5/15
6/8 7/6 7/7 14/15 17/12
21/3 21/5 24/3 24/21
26/8 26/19 30/17 41/9
41/13 45/19 47/17
**out [23]** 4/24 8/8 9/4
10/19 11/16 14/1 14/19
18/11 18/14 20/16
20/25 21/25 22/9 23/9
24/1 24/10 27/22 38/23
41/8 41/24 42/11 42/20
45/6
**outlets [1]** 38/17
**outstanding [1]** 44/22
**over [2]** 23/22 27/3
**overcome [1]** 37/13
**overcoming [1]** 36/23
**own [1]** 19/5

**P**

**p.m [1]** 47/25
**P.O [1]** 2/9
**page [1]** 26/9
**pandemic [1]** 48/6
**Park [2]** 2/9 2/10
**part [10]** 6/24 15/10
15/18 16/3 20/5 21/12
24/3 29/3 30/20 35/4
**particular [9]** 3/20 5/13
9/10 10/1 18/2 24/9
27/17 28/21 28/25
**parties [5]** 3/22 12/5
38/16 45/20 47/14
**parties' [1]** 3/17
**party [2]** 12/7 37/14
**path [1]** 32/22
**pejorative [1]** 10/5
**people [3]** 16/13 37/5
38/12
**perhaps [4]** 4/4 33/4
44/10 44/24
**permit [2]** 39/13 39/18
**person [1]** 43/17
**personal [1]** 30/11
**personal-jurisdiction
[1]** 30/11
**personnel [1]** 9/20
**perspective [9]** 5/1
6/12 7/6 21/3 24/22
29/23 30/1 41/10 41/13
**petition [1]** 18/24
**Phase [6]** 7/21 7/24
7/25 10/21 11/10 19/11
**Phase 1 [3]** 7/21 10/21
19/11
**phone [1]** 34/1
**photographs [2]** 4/11
11/15
**piece [2]** 27/20 27/21
**pierced [1]** 31/14
**pipe [1]** 18/20
**place [2]** 30/19 40/2
**plaintiff [1]** 16/4 17/22
30/22 42/23
**plaintiffs [34]** 1/4 1/9
1/18 1/22 3/6 3/7 6/20
11/23 11/24 11/24
12/19 14/1 15/7 15/16
17/4 20/7 20/22 21/21
34/7 35/9 35/16 35/19
36/1 36/13 39/1 40/22
41/23 43/24 44/7 45/14
45/18 46/1 46/13 46/15
**plaintiffs' [3]** 4/17 5/23
18/1
**playing [2]** 22/9 41/7
**plays [1]** 21/25
**please [2]** 34/2 48/5
**plenty [2]** 19/3 19/4
**PLLC [2]** 1/18 1/22
**point [11]** 6/6 10/1
11/24 13/18 14/1 20/17
21/17 23/20 27/10
34/18 43/3
**position [7]** 5/15 5/21
14/23 15/4 18/23 38/24
39/20

**possible [2]** 36/11
37/16
**possibly [1]** 8/16
**Post [10]** 27/8 32/2
32/7 32/18 36/4 38/10
38/17 38/25 39/17
40/20
**potential [2]** 22/23
31/8
**potentially [4]** 4/15
13/11 26/18 40/5
**pre [1]** 18/24
**pre-certification [1]**
18/24
**predict [1]** 40/8
**predicts [1]** 39/17
**preference [1]** 44/13
**preliminary [3]** 33/8
41/11 43/6
**premature [1]** 27/10
**prepared [1]** 39/3
**prerogative [1]** 7/10
**present [2]** 27/24 36/5
37/7
**presented [1]** 47/6
**Press [5]** 27/8 32/2
32/7 32/18 36/5
**pressing [2]** 4/4 25/13
**presumably [1]** 32/4
**pretty [1]** 6/9
**Prettyman [1]** 2/19
**prevail [1]** 15/20
**preview [1]** 39/10
**prima [1]** 15/5
**prior [1]** 27/7
**privilege [21]** 23/11
23/15 23/17 24/7 24/9
24/15 24/22 26/18 27/5
27/25 30/24 31/4 31/14
34/25 36/20 36/23 37/8
37/11 37/13 39/20 41/4
**privilege-log [1]** 23/11
**privileged [1]** 26/2
**probably [10]** 10/24
18/8 18/9 18/11 18/21
21/24 32/24 33/2 43/19
44/8
**problem [2]** 19/9 33/7
**problematic [1]** 13/9
**problems [1]** 33/3
**proceedings [4]** 1/14
2/21 47/25 48/4
**produce [6]** 4/15 12/24
14/13 14/23 23/14
24/13
**produced [13]** 2/22
4/10 4/13 10/10 10/15
17/19 24/7 24/16 24/18
27/4 28/13 28/24 30/25
**producing [2]** 14/15
23/13
**product [2]** 30/23
30/25
**production [2]** 13/3
23/23
**progress [2]** 3/15 3/19
**proof [2]** 15/19 16/1

**propose [2]** 22/13
**prove [3]** 26/8 26/10
27/1
**provide [4]** 28/19
29/21 38/19 44/22
**provided [2]** 28/20
29/17
**proving [1]** 16/24
**public [1]** 25/23
**publication [1]** 27/7
**publisher [1]** 26/13
**publishing [1]** 26/11
**pull [1]** 8/14
**pulled [1]** 11/15
**purpose [1]** 12/16
**purposes [1]** 18/8
**pursue [2]** 40/4 41/14
**put [2]** 21/6 27/11

**Q**

**qualified [6]** 34/25
36/19 36/23 37/8 37/11
37/13
**qualifies [1]** 19/1
**question [5]** 11/22
13/4 30/7 30/14 30/21
**questions [2]** 32/13
**quick [2]** 13/21 47/15
**quickly [2]** 24/25 41/1
**quite [2]** 25/7 29/16
**quote [1]** 8/11

**R**

**radar [1]** 27/11
**raise [5]** 3/24 25/4 28/7
43/19 44/16
**raises [2]** 16/2 16/22
**raising [1]** 17/2
**rather [4]** 11/21 18/22
20/3 34/20
**raw [1]** 10/14
**reached [1]** 32/16
**real [3]** 13/21 24/25
47/15
**really [7]** 13/14 13/18
17/17 20/13 34/12
37/15 40/7
**Realtime [1]** 2/18
**reason [3]** 8/1 8/24
9/22
**reasonable [1]** 40/19
**reasonably [1]** 36/11
**recent [1]** 23/18
**recite [1]** 29/5
**recollection [1]** 16/23
**record [7]** 10/1 10/19
17/3 17/23 23/2 37/7
48/3
**recorded [1]** 2/21
**records [4]** 11/5 19/20
24/14 24/15
**red [2]** 8/10 21/11
**redacted [2]** 28/12
28/13
**redaction [1]** 24/19
**redactions [3]** 24/19
24/20 28/15

**reference [1]** 12/8
**referred [1]** 21/7
**refute [1]** 21/15
**REGAN [1]** 1/18
**reganfirm.com [1]**
1/21
**regard [10]** 9/12 9/14
10/1 10/2 10/4 10/11
10/20 11/13 28/9 29/14
**regarding [1]** 44/9
**Registered [1]** 2/17
**regrettably [1]** 43/21
**relate [4]** 4/9 5/5 7/21
7/22
**related [5]** 5/24 5/25
7/24 7/25 11/10
**relating [1]** 26/2 26/3
**relatively [1]** 23/18
**relevance [1]** 6/22
**relevant [10]** 4/15 4/17
5/3 6/13 6/25 7/8 9/20
13/8 21/5 21/24
**relying [1]** 26/16
**remaining [1]** 4/12
**remember [5]** 10/8
10/12 11/2 30/7 45/24
**remembers [1]** 8/13
**reminder [2]** 4/20 7/20
**remotely [1]** 48/7
**removed [2]** 24/7
24/19
**report [7]** 3/17 5/22 7/4
20/18 23/5 31/18 47/17
**reporter [18]** 2/17 2/17
2/18 2/19 32/20 32/21
33/18 36/21 36/24
37/21 37/25 38/14
38/18 41/12 42/10
42/13 42/19 42/22
**reporter's [1]** 34/11
**reporters [16]** 32/3
32/10 33/1 33/13 34/14
34/23 35/12 35/14
35/18 35/23 36/8 36/12
37/22 38/4 38/9 38/11
**reporters' [1]** 40/24
**reporting [2]** 33/11
48/7
**reports [1]** 5/10
**representatives [1]**
4/25
**request [2]** 35/18
35/23
**requires [1]** 37/14
**reserve [1]** 43/1
**reset [1]** 9/9
**resolve [7]** 3/20 18/16
18/21 20/24 23/1 38/22
46/5
**resolved [3]** 6/12 7/14
33/14
**respect [3]** 12/20 35/4
40/17
**respond [2]** 14/7 27/17
**responding [1]** 27/22
**response [1]** 15/3
**responses [2]** 32/14
32/15

**R**

responsive [3]  11/9
11/16 13/11
rest [1]  41/13
rests [5]  15/23 16/1
16/4 17/4 17/22
result [1]  40/8
retaining [1]  24/20
review [3]  4/13 13/3
24/25
reviewed [2]  3/17
26/21
reviewing [1]  5/14
right [31]  3/10 11/1
12/7 12/14 13/7 13/14
13/22 14/9 16/15 22/21
25/1 25/9 28/4 30/12
30/13 31/22 31/23 36/1
40/2 40/22 42/16 43/2
43/12 44/5 45/2 45/8
45/24 46/12 46/19 47/1
47/23
rightly [1]  16/12
ripe [1]  44/9
RMR [2]  48/2 48/11
road [1]  40/13
rubric [1]  8/12
rule [3]  4/4 11/12 11/19
Rule 26 [2]  11/12 11/19
ruling [1]  41/11
run [1]  14/22

**S**

said [13]  6/10 7/3 16/6
16/6 16/8 16/14 16/17
28/14 31/4 38/5 40/4
42/23 46/21
Sal [7]  7/16 22/20 23/8
43/23 45/13 46/16
47/15
Sal Zambri [1]  22/20
Salvatore [6]  1/18 3/6
14/6 17/7 18/18 25/5
same [3]  8/16 8/17
37/5
sample [1]  19/11
samples [3]  19/3 19/4
19/11
sampling [2]  18/6 18/7
satisfied [1]  7/14
satisfy [1]  14/15
say [29]  6/24 7/8 14/17
14/18 15/3 15/6 17/10
17/19 19/10 19/13
21/18 22/4 22/6 23/14
30/16 31/3 32/10 32/17
32/19 33/4 35/10 35/15
38/4 41/17 41/18 42/18
42/19 42/23 45/22
saying [7]  12/8 14/11
15/14 17/1 20/7 20/11
20/23
says [8]  5/23 17/18
21/9 21/14 22/3 32/20
33/9 38/11
schedule [8]  5/9 22/13
22/23 44/11 44/12 45/6
45/19 45/25

scheduled [1]  25/25
scheduling [1]  45/3
scope [3]  25/17 27/3
36/12
Scott [1]  7/2
scrutiny [1]  30/22
search [1]  34/21
second [3]  27/12 33/25
34/2
section [1]  31/3
see [9]  20/6 20/12
20/18 22/9 26/24 26/25
33/14 41/7 47/12
seeing [1]  8/21
seeking [1]  37/14
seeks [1]  33/9
seems [6]  3/18 17/23
18/1 25/19 25/21 31/9
sees [1]  26/6
selectively [1]  26/1
Sellinger [8]  2/8 3/8
23/21 27/18 33/18
33/22 36/16 36/17
sellingerd [2]  2/6 2/11
sense [7]  3/23 11/9
11/14 12/3 12/17 28/24
44/1
sent [2]  8/25 24/4
sentence [1]  29/5
sentences [1]  28/23
separately [1]  44/10
SERVICES [1]  2/13
set [9]  4/8 5/9 5/21
10/19 43/19 45/10
45/19 46/19 47/13
several [1]  12/6
shake [1]  37/20
share [1]  6/21
she [14]  26/14 26/16
28/19 28/20 29/6 30/10
30/12 32/1 32/1 33/11
34/14 35/12 41/12
42/18
she'll [1]  35/11
she's [2]  28/10 33/11
38/5
shield [5]  26/18 26/23
28/17 29/18 30/25
should [13]  5/20 6/1
8/25 11/21 11/22 11/23
14/19 20/24 31/3 34/22
35/23 35/25 43/19
shouldn't [3]  5/15 5/22
16/10
show [3]  5/2 12/21
17/22
showed [1]  10/13
shown [1]  4/21
shows [1]  22/7
side [6]  12/14 13/1
13/15 14/2 29/9 37/19
sides [3]  13/13 31/7
40/1
significant [2]  18/7
31/17
Similarly [2]  6/3 29/4
simple [2]  38/20 38/25
simply [2]  38/11 39/9

single [2]  18/5 19/14
sites [1]  10/23
situation [1]  37/7
Sixth [2]  2/4 2/13
sleep [1]  29/5
small [1]  13/22
so [99]
So I think [3]  9/23
18/11 26/4
so it's [2]  21/24 23/18
so this is [2]  10/16
33/18
some [17]  4/6 6/5 7/9
13/17 15/25 16/6 19/8
22/25 23/20 24/19 24/19
24/19 27/18 28/15 31/7
31/8 40/20 44/20
somebody [4]  8/20
36/22 37/1 43/14
somehow [1]  42/22
someone [1]  21/6
something [18]  5/2
7/17 7/25 8/12 9/21
10/16 12/4 13/15 22/15
27/10 31/5 31/12 31/13
39/2 40/18 43/10 44/1
45/11
soon [1]  23/21
sooner [3]  18/16 18/21
20/3
sorry [8]  16/18 27/13
28/12 42/5 44/7 45/22
46/21 46/22
sort [15]  3/22 5/2 6/17
9/9 15/14 18/5 18/10
22/3 33/5 34/20 36/20
37/11 39/17 40/3 41/4
sound [1]  13/17
sounds [2]  12/13 24/15
source [13]  34/11
34/24 35/10 35/13
35/20 36/2 36/14 37/16
38/10 38/12 39/2 41/22
42/24
sources [7]  33/2 33/5
33/6 36/25 36/25 37/23
40/24
speak [1]  39/10
speaking [2]  4/17 24/9
specific [1]  24/4
spend [1]  23/10
spoke [3]  29/6 32/18
32/20
sponsor [1]  10/3
spreadsheet [6]  8/4
8/7 9/12 10/2 10/3 21/7
stage [1]  18/23
stand [4]  3/23 21/6
21/14 21/25
start [2]  3/25 9/9
started [1]  32/4
state [1]  7/15
statement [7]  21/22
26/11 26/14 30/23
41/24 42/3 42/21
statements [5]  26/15
26/22 27/1 27/2 31/1

statistically [1]  7/23
17/13 18/7
status [13]  1/14 3/3
3/12 3/17 5/10 5/22 8/6
8/23 11/3 23/5 23/12
24/3 47/17
statute [2]  16/21 16/23
stenography [1]  2/21
still [4]  21/20 22/7 22/9
45/6
stipulate [1]  35/25
stop [1]  6/14
storage [1]  10/22 11/6
store [9]  5/13 7/21 7/22
7/24 7/25 8/9 8/9 8/17
19/11
stored [1]  11/11
stores [10]  4/9 5/25
5/25 10/16 10/21 11/4
11/10 15/8 19/12 21/11
stories [3]  36/2 40/24
41/22
story [2]  34/11 42/24
Street [3]  1/19 2/4 2/13
strikes [3]  37/24 41/20
41/25
strong [1]  19/17
stuff [2]  14/23 32/11
subject [8]  25/25 26/2
26/3 28/15 29/14 30/22
41/19 48/6
subject-matter [3]
25/25 28/15 29/14
submission [1]  47/11
submissions [1]  45/5
submit [2]  20/9 24/25
submitted [1]  47/14
submitting [1]  3/18
substantial [1]  40/6
substantially [1]  37/5
substitute [1]  18/8
such [1]  38/5
suddenly [1]  29/1
sufficient [1]  46/5
suggest [3]  13/8 13/9
19/21
suggested [2]  3/14
35/22
suggesting [2]  6/3
37/19
suggestion [2]  34/5
40/18
suggestive [1]  15/11
suggests [1]  15/11
Suite [4]  1/19 1/23 2/4
2/14
summary [2]  18/9
22/10
supplement [1]  32/13
support [1]  6/7
suppose [2]  17/14
19/12
sure [11]  7/18 9/25
16/5 19/17 19/21 23/19
27/16 27/20 39/18
42/12 43/5
surprise [1]  38/2

surprised [1]  37/22
Susan [1]  28/10
suspicious [1]  9/21
switch [1]  27/21
sword [3]  26/18 28/17
29/18
system [1]  9/1
szambri [1]  1/21

**T**

tag [1]  24/7
take [9]  9/19 22/24
32/25 37/9 39/6 39/8
39/13 39/19 47/23
taken [1]  41/6
taking [1]  30/19
talk [3]  6/17 27/19
29/20
talked [1]  10/23 45/1
talking [5]  12/6 18/11
20/21 24/8 42/15
team [12]  4/22 7/4 8/15
8/17 9/10 9/10 9/14
9/16 9/16 20/8 20/8
27/18
technological [1]  48/7
tee [2]  18/13 20/3
teed [2]  22/13 39/4
TELECONFERENCE
[1]  1/14
tell [3]  15/16 15/17
37/18
telling [1]  12/17
tells [1]  26/1
tend [1]  38/17
tends [2]  13/1 40/10
term [8]  8/10 10/5
16/10
terminated [2]  34/14
34/16
test [1]  35/2
testified [4]  9/11 26/14
31/25 34/13
testimony [14]  9/14
16/13 20/7 20/10 20/12
33/10 34/17 35/11 38/4
38/19 41/11 42/13
42/15 43/4
than [19]  4/23 5/17 6/6
7/3 9/18 11/23 13/10
16/17 18/16 18/22 19/7
20/3 20/14 26/5 31/9
34/13 34/15 34/20 37/4
thank [14]  3/18 16/7
16/7 20/1 28/8 33/24
34/4 36/18 40/15 43/11
45/7 45/9 47/21 47/23
thank you [10]  3/18
9/7 16/7 20/1 28/8
33/24 34/4 43/11 45/7
45/9
that [343]
that'll [2]  13/4 18/8
that's [49]
their [18]  3/23 4/13
5/17 7/10 7/11 8/10
7/23 14/10 14/13 19/5
22/5 22/8 32/5 33/2

**T**

their... **[4]** 34/7 34/23 37/9 39/20

them **[24]** 6/22 7/9 8/5 8/9 11/7 11/8 11/8 11/16 12/12 12/9 12/10 17/10 17/11 19/23 23/15 24/18 28/22 32/4 32/6 33/1 36/6 37/3 37/4 43/21

themselves **[1]** 40/11

then **[47]** 4/9 4/11 4/12 4/15 5/2 6/17 9/3 9/4 12/9 12/16 13/3 13/4 13/17 17/9 17/21 18/1 18/8 18/15 19/2 21/15 22/6 22/22 22/24 25/23 26/23 27/21 28/6 28/6 29/11 30/20 33/12 35/11 35/14 35/18 36/3 36/17 38/10 39/4 39/18 39/19 42/19 42/20 42/24 43/10 45/6 46/20 47/9

there **[52]**

there's **[25]** 4/3 5/12 5/13 7/4 7/13 10/5 14/3 14/12 17/20 21/18 21/20 22/7 25/19 25/25 26/4 26/7 26/23 29/13 34/25 35/6 38/21 41/16 43/9 45/24 47/6

therefore **[3]** 6/1 15/8 48/6

these **[36]** 6/7 6/24 7/8 7/19 8/9 10/6 10/23 11/4 11/6 12/1 12/8 12/15 12/20 12/23 13/7 13/15 13/23 15/15 18/15 19/14 19/19 20/25 24/13 26/22 32/10 34/15 34/6 36/12 36/13 36/25 38/9 38/12 39/25 41/5 41/22 46/5

they **[55]**

they'll **[2]** 39/19 39/20

they're **[16]** 5/11 5/25 7/23 11/9 11/9 11/11 14/21 14/22 19/20 20/11 21/4 26/19 33/2 35/20 37/6 39/3

they've **[3]** 5/2 6/12 14/10

thicket **[1]** 40/6

thing **[10]** 8/3 8/8 14/16 14/17 18/7 21/3 32/4 38/5 41/9 45/19

things **[9]** 3/13 3/18 3/23 7/15 12/13 17/8 25/17 28/21 29/1

think **[77]**

thinks **[2]** 37/19 42/1

this **[125]**

This is **[1]** 3/3

those **[23]** 4/10 4/14 5/11 5/12 5/24 7/21 8/22 10/9 11/4 11/11 11/15 11/18 15/8 15/16

| | |

24/25 27/2 28/11 28/20 39/11

though **[4]** 19/9 28/16 33/7 41/9

thought **[2]** 23/14 41/2

thoughts **[2]** 6/9 43/7

three **[5]** 24/18 25/19 25/20 28/14 47/6

three-day **[1]** 47/6

through **[12]** 4/5 6/17 11/17 12/1 12/9 14/2 19/10 19/10 23/19 25/7 27/5 38/22

throughout **[1]** 7/22

thrown **[1]** 26/23

thus **[1]** 31/9

time **[12]** 11/8 14/11 18/20 19/14 19/14 23/10 24/12 28/11 38/14 39/14 43/19 45/9

tipped **[1]** 32/3

titled **[1]** 48/4

today **[8]** 3/19 4/5 6/10 23/10 25/6 25/15 44/1 45/1

together **[1]** 2/13

told **[7]** 25/22 34/14 35/8 35/9 35/12 37/25 42/19

too **[3]** 9/24 18/9 46/20

took **[2]** 4/9 4/11

tooth **[2]** 38/18 40/10

topic **[3]** 3/21 28/1 28/3

towards **[2]** 3/16 36/23

Tracey **[3]** 29/7 29/10 29/16

traditional **[1]** 15/22

transcript **[3]** 1/14 2/21 48/3

transcription **[1]** 2/22

transfer **[16]** 4/21 4/24 5/18 6/25 7/5 8/15 13/24 14/4 14/12 15/5 17/20 17/21 17/21 18/1 18/3 18/5

transfers **[5]** 6/7 8/11 10/13 22/7 38/8

transforming **[1]** 16/11

TRAURIG **[2]** 2/3 2/8

trial **[5]** 7/11 14/25 18/9 22/10 33/13

true **[1]** 42/20

truth **[2]** 34/21 41/24

truthful **[2]** 26/16 26/22

truthworthiness **[1]** 41/7

try **[4]** 13/15 18/16 34/22 44/24

trying **[5]** 9/24 17/3 21/15 34/1 41/21

TTF **[9]** 14/12 15/4 17/19 17/20 17/25 18/2 20/8 20/14 20/15

TTFs **[16]** 6/7 6/23 6/24 7/8 9/19 13/24 14/3 15/9 15/12 19/4 19/4 21/3 21/15 22/2 22/7

| | |

turn **[1]** 3/22

two **[17]** 4/7 4/22 7/1 7/4 8/15 8/16 9/10 9/14 9/16 10/25 20/8 24/18 26/22 32/24 33/1 33/14 47/7

TX **[2]** 2/5 2/14

**U**

ultimately **[6]** 10/15 15/19 16/3 16/4 17/3 41/5

under **[4]** 11/12 11/18 24/22 38/19

underlying **[1]** 30/25

undermines **[1]** 41/6

understand **[2]** 16/8 39/7

understanding **[2]** 20/11 23/2

unfortunately **[1]** 11/6

unhiding **[1]** 21/9

unique **[1]** 21/4

UNITED **[2]** 1/1 1/15

universe **[1]** 40/3

unlabeled **[3]** 5/24 7/9 7/19

unless **[2]** 11/25 17/19

unlikely **[1]** 7/23

unmarked **[1]** 7/9

unproduced **[1]** 11/25

unrelated **[1]** 29/10

until **[1]** 13/14

up **[21]** 8/14 13/4 17/20 18/13 20/3 22/13 22/24 26/23 29/1 29/20 31/25 32/12 36/17 37/10 39/4 39/10 39/15 40/7 43/3 44/10 44/20

update **[1]** 44/4

uphill **[1]** 38/15

upon **[8]** 4/13 8/24 10/22 11/5 16/12 17/18 26/16 42/2

us **[16]** 5/3 6/13 8/21 20/23 24/4 26/1 26/17 32/19 34/9 35/4 35/8 36/11 36/13 39/13 39/18 45/18

use **[4]** 12/14 14/3 21/12 22/2

used **[3]** 16/10 21/10 26/18

using **[2]** 10/12 10/17

**V**

value **[1]** 13/2

various **[1]** 10/22

VASQUEZ **[20]** 1/8 1/22 3/4 3/7 6/20 11/4 20/7 21/24 35/9 35/16 35/19 35/25 36/13 40/21 44/7 45/18 46/1 46/13 46/20 46/22

verified **[1]** 32/14

verify **[1]** 26/15

versus **[1]** 3/5

| | |

34/4 40/15 47/23

VIA **[1]** 1/14

VICTOR **[2]** 1/8 3/4

Victor Vasquez **[1]** 3/4

view **[2]** 5/5 6/21

viewing **[1]** 9/1

views **[1]** 6/17

violations **[1]** 30/19

vs **[2]** 1/5 1/10

**W**

waive **[2]** 33/5 34/6 35/19

waived **[3]** 26/3 36/20 37/8

waiver **[9]** 25/18 25/21 25/24 25/25 26/5 26/7 29/14 36/7 37/1

waivers **[1]** 25/20

want **[15]** 3/24 5/18 6/5 6/14 12/8 14/22 24/24 25/4 25/16 27/24 28/7 37/6 38/14 40/7 43/18

wanted **[2]** 9/25 27/11

wants **[4]** 7/7 27/20 33/12 41/14

was **[50]**

Washington **[12]** 1/7 1/20 1/24 2/20 12/10 27/7 32/2 32/7 32/18 36/4 38/10 38/17

wasn't **[1]** 35/10

way **[6]** 11/7 13/13 14/8 31/14 35/5 36/23

ways **[2]** 32/25 33/14

we **[129]**

we believe **[3]** 11/16 24/21 24/21

we will **[1]** 4/5

we'll **[17]** 6/8 7/10 9/4 14/25 23/20 31/17 36/17 39/10 39/11 39/18 39/20 41/14 45/6 47/9 47/9 47/11 47/12

we're **[20]** 3/12 4/18 5/3 5/15 6/13 7/20 8/23 11/10 11/12 11/17 12/1 12/4 12/8 12/9 20/3 25/6 25/16 25/21 27/3 35/21

we've **[6]** 7/1 28/21 32/13 32/16 35/3 45/1

weeds **[1]** 18/25

week **[4]** 27/5 44/13 47/8 47/18

weekend **[2]** 46/25 47/7

well **[35]** 3/11 4/2 5/23 6/9 6/16 9/8 12/12 14/6 14/13 15/6 17/16 19/12 21/14 21/18 22/3 22/6 22/11 23/5 25/1 25/7 26/19 26/24 27/23 28/17 29/17 30/2 32/20 33/4 37/25 40/7 42/12 42/20 44/15 45/1 46/13

went **[3]** 8/21 14/10

| | |

were **[28]** 3/13 6/7 8/8 10/4 10/4 10/7 10/13 14/10 15/7 23/13 23/17 24/13 24/13 26/15 26/22 27/2 27/25 28/13 28/13 30/19 33/5 35/13 36/2 36/13 38/9 38/12 39/1 42/22

weren't **[1]** 33/6

West **[2]** 2/4 2/13

what **[58]**

what's **[10]** 11/8 13/16 15/15 15/16 15/17 20/16 27/3 38/20 46/14 46/21

Whatever **[1]** 44/13

when **[13]** 4/21 7/4 8/8 14/11 16/2 17/12 18/24 22/2 22/12 26/23 43/16 45/22 47/17

where **[11]** 3/23 10/18 12/13 26/4 26/17 36/21 36/24 37/7 38/1 38/23 38/24

whereas **[2]** 16/1 17/1

whether **[15]** 6/25 9/21 9/22 11/23 19/1 23/22 27/1 31/14 34/11 35/5 36/2 36/19 40/23 43/3 44/15

which **[20]** 4/9 4/14 4/16 6/9 8/24 12/4 15/23 16/1 16/13 17/25 19/10 22/3 23/11 26/1 29/22 33/2 33/3 34/23 35/6 37/4

while **[3]** 16/20 21/13 45/25

who **[8]** 5/11 5/24 20/7 28/10 29/8 29/8 30/22 43/16

who's **[1]** 33/18

whole **[49]**

Whole Foods **[4]** 3/5 4/25 44/10 45/16

wholefoods.com **[2]** 2/7 2/16

wholly **[2]** 14/16 19/5

why **[17]** 3/22 3/25 9/3 9/6 10/7 10/8 22/11 22/22 27/23 28/5 36/17 45/4 45/11 46/12 46/19 47/2 47/5

wide **[3]** 21/18 21/22 30/18

wild **[1]** 10/17

will **[11]** 4/5 8/3 27/21 30/16 34/10 36/19 37/22 38/10 39/4 39/25 41/5

William **[4]** 2/17 48/2 48/10 48/11

willing **[3]** 12/1 34/23 35/19

Wisconsin **[1]** 1/23

wish **[1]** 12/7

withheld **[1]** 24/14

**within [1]** 4/12
**without [1]** 29/24
**witness [1]** 21/13
**witnesses [3]** 7/11
20/10 39/13
**word [3]** 8/12 10/11
10/12
**words [1]** 21/10
**work [5]** 23/25 24/10
29/11 30/25 30/25
**working [1]** 25/7
**works [2]** 14/8 45/12
**worse [2]** 19/6 19/7
**would [33]** 8/19 12/7
13/5 15/11 17/9 18/4
18/5 18/14 30/2 31/12
32/7 32/10 34/6 34/18
35/17 36/5 36/8 36/10
36/13 37/22 37/25 38/2
39/3 40/1 42/9 42/10
42/15 42/19 43/4 43/13
46/24 47/17 47/19
**wouldn't [4]** 8/20
13/12 42/4 42/24
**writing [2]** 31/7 31/13
**written [1]** 32/13
**wrong [2]** 12/16 37/24
**wrongdoing [1]** 19/8
**wrongly [1]** 16/12

**Y**

**yeah [8]** 19/12 24/12
39/23 41/18 44/6 47/1
47/19 47/22
**year [1]** 10/24
**years [1]** 10/25
**yes [7]** 21/9 22/18
24/17 25/10 42/23 43/8
46/9
**yet [2]** 14/2 27/4
**you [140]**
**you know [1]** 15/8
**you'll [5]** 13/3 20/12
38/7 43/10 47/7
**you're [14]** 4/2 9/8
12/17 17/2 17/10 20/17
20/21 38/23 39/24 40/5
40/12 40/13 45/5 46/7
**you've [6]** 18/6 21/14
21/14 22/3 23/4 39/25
**you-all [3]** 17/4 17/18
45/4
**your [76]**
**Your Honor [54]**
**Your Honor's [1]** 26/9
**yours [1]** 15/19
**yourself [1]** 40/6
**yourselves [1]** 22/12

**Z**

**Zambri [29]** 1/18 1/18
3/6 3/14 3/25 7/16 9/23
11/14 14/7 16/6 17/7
18/19 20/2 20/24 21/7
22/20 23/4 23/8 23/25
24/4 24/8 24/10 24/23
25/3 25/5 43/23 45/13

**Zambri's [1]** 6/21
**Zaremba [4]** 2/17 48/2
48/10 48/11