UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOR VASQUEZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WHOLE FOODS MARKET, INC., *et al.*, <br><br> Defendants. | Civ. No. 1:17-cv-00112(APM) |

**PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY OF ANTHONY CAMPANELLI AND PRODUCTION OF DOCUMENTS**

KLAPROTH LAW PLLC

Brendan J. Klaproth (D.C. Bar No. 999360)
Jesse C. Klaproth  (D.C. Bar No. PA0063)
2141 Wisconsin Ave NW
Suite M3
Washington, DC 20007
Ph:     (202) 618-2344
Fx:     (202) 618-4636
Email: bklaproth@klaprothlaw.com
Email: jklaproth@klaprothlaw.com
*Counsel for Plaintiffs*

Plaintiffs respectfully move to compel the testimony of Anthony Campanelli and the production of documents relating to his analysis of labor shifting that occurred in Whole Foods' stores.

## I. Introduction

Whole Foods has identified Mr. Campanelli as a fact witness based on work that he performed investigating Whole's Foods Gainsharing program that is the subject of this lawsuit. But Whole Foods has only permitted discovery into the work Mr. Campanelli performed for Whole Foods relating to the nine stores where Plaintiffs worked. For all other work performed by Mr. Campanelli relating to stores other than the nine where Plaintiffs worked, Whole Foods has asserted privilege claiming Mr. Campanelli to be an "expert" or a "non-testifying expert" for analysis performed on those stores. In other words, Whole Foods is claiming Mr. Campanelli to be a fact witness on those areas of his knowledge that Whole Foods finds beneficial to its defense, and to be a non-testifying expert on topics that undermine its defenses.

But as set forth below, the privilege cannot be wielded in such a manner. The law does not recognize the arbitrary distinction that Whole Foods hopes to draw between a fact witness and a non-testifying expert. Moreover, even if Mr. Campanelli's work and communications with Whole Foods were privileged work-product (it is not), Whole Foods has waived the privileged by injecting him into this litigation.

## II. Facts

### A. Pre-Deposition Disclosures re Mr. Campanelli

Although Mr. Campanelli was retained by Defendants Whole Foods Market Group, Inc. and Whole Foods Market Services, Inc. (collectively "Whole Foods") in connection with its investigation into the Gainsharing program as early as December 14, 2016 (prior to the filing of

this lawsuit), Whole Foods did not identify or disclose Mr. Campanelli as a witness until February 5, 2021. Jt. Status Report at 5 [ECF No. 103]. At that time, Whole Foods identified Mr. Campanelli "as a knowledgeable witness" and as a "potential hybrid expert and fact witness." *Id.* In that report, Whole Foods stated, "Mr. Campanelli was involved as an expert in the calculation of payment to team members at the nine store," which may "qualif[y] him as a fact witness." *Id.* at 5-6.

The following month, Whole Foods reported to the Court that it "is in the process of collecting documents provided to or created by Mr. Campanelli" which it anticipated to "include— or at a minimum be based on—the data and spreadsheet provided by Mr. Grady" to Mr. Campanelli. *See* Jt. Status Report at 3 [ECF No. 104]. From approximately, March 23, 2021 through May 3, 2021, Whole Foods produced documents relating to analysis performed by Mr. Campanelli. Klaproth Decl. ¶ 2 [attached as Exhibit 2]. On April 7, 2021, Whole Foods provided a supplemental privilege log, which identified five documents as withheld on the basis of "privileged draft communication created by Whole Foods' retained expert and provided to Whole Foods' attorneys regarding gainsharing investigation and expert analysis." *See* Supplemental Privilege Log at Priv_324-328.[1,2] Whole Foods later provided redacted versions of these documents. Klaproth Decl. at ¶ 4. In addition to these five documents, Whole Foods asserted privilege over eleven communications (plus the document attached to the communications) involving Mr. Campanelli. *See* Supplemental Privilege Log at Priv_38, 66-72, 74, 77-84, 90, 91, 96-98, and 196. Based on Mr. Campanelli's testimony, Whole Foods did not log all of the communications and documents involving Mr. Campanelli or the analysis he performed.

---

[1]     The Supplemental Privilege Log was filed under seal at ECF No. 129-6.

[2]     These five documents are also subject of Plaintiffs' Motion to Compel filed at ECF No. 129.

3

The Parties agreed that Mr. Campelli's deposition would occur on June 8, 2021. Klaproth Decl. at ¶ 5.  The deposition was rescheduled for June 21, 2021 after Whole Foods agreed to produce redacted versions of Priv324-328 in response to counsel for the *Molock* Plaintiffs demand for unredacted versions of those documents. Klaproth Decl. at ¶ 5.  The rescheduled date was to provide Whole Foods with time to produce the documents and for Plaintiffs to review them in advance of Mr. Campanelli's deposition. *Id.*

### B.  Mr. Campanelli's Deposition

Mr. Campanelli's deposition took place on June 21, 2021. The first-time that Whole Foods indicated that Mr. Campanelli's testimony was limited in scope was during Mr. Campanelli's deposition. Campanelli Dep. 330:7-331:11, 350:7-351:12 [attached as Exhibit 1]. Whole Foods never communicated in writing or orally that it would only permit Mr. Campanelli to testify regarding his knowledge of the nine stores. Klaproth Decl. at ¶ 6. Similarly, Whole Foods did not move for a protective order prior to the deposition.  Campanelli Dep. 381:13-382:2.

Mr. Campanelli is a forensic accountant employed by Deloitte Financial Advisory Services, LLP as a partner. Campanelli Dep. 8:4-8; 391:16-18. Deloitte was hired by Whole Foods on December 14, 2016 pursuant to an engagement letter between Deloitte, Wholte Foods Market Group and Epstein Becker & Green. Campanelli Dep. 346:22-349:1. A subsequent addendum to that engagement letter was entered into "bringing [Greenberg Traurig] on to the original engagement letter…" *Id.*  The engagement letter and the addendum adding Greenberg Traurig is the "entire universe of engagement letters…that sets forth the scope as to Deloitte's engagement on behalf of Whole Foods." *Id.*; *see also* Tr. (June 28, 2021) at 18:7-16. These engagement letters were requested by Plaintiffs. Campanelli Dep. 353:1-7.

Mr. Campanelli and his team of "around 25 or so" people at Deloitte analyzed whether transfers of labor could were "supportable" or "unsupportable." Campanelli Dep. 361:19-362:9.

4

Mr. Campanelli analyzed Kronos data for "manual" transfers that occurred in the Kronos systems (*e.g.* a manual modification or input in the Kronos timekeeping software). Campanelli Dep. 402:14-403:1. Mr. Campanelli further performed a "payment analysis to those [employees] that may have been impacted." *Id.* Mr. Campanelli created Excel spreadsheets detailing the amounts owed to each individual employee as a result of the labor transfers. Campanelli Dep. 209:6-210:10. The spreadsheet for the P Street is attached hereto as Exhibit 3 as an exemplar for the Court.

When asked any question relating to stores other than the nine stores where the Plaintiffs worked, Whole Foods asserted privilege and instructed the witness not to answer on the basis that he is a non-testifying expert with respect to those stores. *See e.g.* Campanelli Dep. 349:2-353:20; *see also e.g. Id.* 372:20-389:11. Despite those objections, Mr. Campanelli did confirm that he received Kronos data from Mr. Grady via Mr. Gearhart—both Whole Foods' employees involved in the investigation. Campanelli Dep. 370:21-372:5. This has not been produced. Mr. Campanelli also received Gainsharing Reports from Whole Foods. Campanelli Dep. 372:3-11. These have not been produced. Mr. Campanelli testified that he received additional "data" from Whole Foods, but Whole Foods would not permit him to testify about it. Campanelli Dep. 373:9-377:1. He received the "data" from Mr. Grady, and possibly others, but Whole Foods would not permit him testify any further about the "data" other than that it was received in approximately April or May of 2017. *Id.* Likewise, this "data" was not produced.[3]

Mr. Campanelli confirmed unequivocally that he did receive data relating to stores other than the nine where Plaintiffs worked. Campanelli Dep. 385:15-17. When asked "how many

---

[3] Mr. Campanelli could not confirm whether Deloitte had deleted the emails transmitting the "data" to him. Campanelli Dep 377:16-379:18. Mr. Campanelli also testified that his team took notes when interviewing PBS at the nine stores, but that those notes have been destroyed. Campanelli Dep. 359:3-361:18.

stores", Whole Foods instructed the witness not to answer. Campanelli Dep. 385:18-21. When asked which stores he looked at data for, Whole Foods instructed the witness not to answer. Campanelli Dep. 385:22-386:16.

Mr. Campanelli further confirmed that he performed analysis on that data he received for stores other than the nine where Plaintiffs worked. Campanelli Dep. 386:21-387:1. But again, Whole Foods instructed Mr. Campanelli not to answer questions as to what analysis he performed and whether he formed any conclusions or opinions based on that analysis. Campanelli Dep. 387:2-14. Whole Foods would not even permit Mr. Campanelli to answer whether he performed analysis as to every store in the United States. Campanelli Dep. 387:15-18.

But Mr. Campanelli did testify that he prepared reports, spreadsheets, PowerPoints, and (possibly) Microsoft Word documents in connection with the analysis he performed on stores other than the nine where Plaintiffs worked. Campanelli Dep. 387:19-388:18. Mr. Campanelli further testified that he communicated with Whole Foods relating to stores other than the nine where Plaintiffs worked and "there may be email communications regarding the work…" Campanelli Dep. 389:3-11. These reports, spreadsheets, PowerPoints, Word documents, and emails have neither been produced nor logged by Whole Foods.

Finally, Mr. Campanelli testified that he formed no opinions in the course of work performed for Whole Foods. Campanelli Dep. 389:12-397:7. This testimony should at least remove one (testifying expert) of the three hats Mr. Campanelli is purportedly wearing in this litigation. So, that leaves him as a fact witness and a purported non-testifying expert.

C. Documents Plaintiffs are Seeking to Compel

In addition, to compelling Mr. Campanelli's testimony relating to the analysis he performed for Whole Foods on the Gainsharing program, Plaintiffs are seeking to compel production of the following documents:

1. All unlogged documents and communications relating to Deloitte's analysis performed for Whole Foods relating to the Gainsharing program;

2. Unredacted versions of Priv_324-328;

3. Priv_38, 66-72, 74, 77-84, 90, 91, 96-98, and 196;

4. The December 14, 2016 engagement letter and subsequent addendum; and,

5. All invoices Deloitte produced in connection with the work it performed for Whole Foods.

**III.    Argument**

### A. Whole Foods has Failed to Establish that the Documents and Communications are Privileged

As a threshold matter, Whole Foods has failed to carry its burden of showing that the withheld and redacted documents are privileged. Rule 26(b)(5)(A) requires that a party withholding information on the basis of privilege "must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that… will enable other parties to assess the claim." In other words, if a party is asserting privilege over certain documents, it must produce a privilege log that enable other parties to assess the claim. Whole Foods' Supplemental Privilege Log only logged sixteen documents relating to Deloitte and/or Mr. Campanelli.  During his deposition, Mr. Campanelli identified the existence of documents, spreadsheets, PowerPoints, reports, and communications that have not been identified on a privilege log.  As a result, neither Plaintiffs nor the Court have an understanding of the universe of documents over which Whole Foods is asserting privilege, the basis for withholding the particular documents, and an ability to assess any such assertion of privilege by Whole Foods. Accordingly, Whole Foods should be compelled to produce a second Supplemental Privilege Log that identifies each document that Whole Foods is withholding relating to the analysis performed by Mr. Campanelli and/or Deloitte.

7

**B. The Analysis Performed by Deloitte and Related Documents are not Privileged**

Because Whole Foods has not provided a privilege log as required, it is unclear what documents have been withheld and Whole Foods' basis[4] for withholding the documents. Similarly, Whole Foods has not produced a copy of the engagement letter, so there is no way for Plaintiffs or the Court to assess Deloitte's scope of work and whether its purported work as a non-testifying expert is delineated in any way from its work as a fact witness or testifying expert. Nevertheless, what we do know is that Mr. Campanelli was retained to provide analysis to assist Whole Foods with making a business decision. Campanelli Dep. 20:21-22:22, 402:14-403:7 ("I was asked to, based upon the company's business decision, to perform a payment analysis…"). Based on his testimony, it is evident that the withheld Deloitte documents are not subject to the work-product privilege.

In this Circuit, when considering whether a document is work-product, that is "prepared in 'anticipation of litigation,' this Court employs a 'because of' test, inquiring 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *F.T.C. v. Boehringer Ingelheim Pharms., Inc*., 778 F.3d 142, 149 (D.C. Cir. 2015).[5] "Where a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." *Id.*; *see also United States v. Deloitte LLP,* 610 F.3d 129, 136 (D.C. Cir. 2010) (reversing district court's finding of privilege over memorandum created by Deloitte as part of an annual audit).

---

[4] It is hard to imagine that Whole Foods is asserting attorney-client privilege over Deloitte's analysis of labor transfers and the gainsharing program, as well Deloitte's communications with Whole Foods. Accordingly, Plaintiffs are assuming that Whole Foods is asserting the work-product privilege.

[5] Internal citations and quotations are omitted unless stated otherwise.

8

In a factually analogous case, this Court recently rejected a defendant's attempt to categorize its investigation as a "two-tracked investigation," one track that is privilege and a second track that is non-privileged. *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 10-13 (D.D.C. 2021). In *Guo Wengui*, the defendant had engagement letters that explicitly stated that the law firm was hired "in anticipation of litigation, and that, on the same day," the law firm retained a consultant. *Id.* at 13. The court found there, however, that the defendant had "papered the arrangement using its attorneys" and that approach "appears to have been designed to help shield material from disclosure," which is insufficient to establish work-product. *Id.* The court held:

> In light of the record before the Court, including the [consulting firm] Report itself (which the Court has reviewed *in camera*), [defendant] has not met its burden to show that the Report, or a substantially similar document, "would [not] have been created in the ordinary course of business irrespective of litigation." For many organizations, surely among them law firms that handle sensitive materials, "discovering how a cyber breach occurred is a necessary business function regardless of litigation or regulatory inquiries. There is a need to conduct an investigation ... in order to figure out the problem that allowed the breach to occur so that the organization can solve that problem and ensure such a breach cannot happen again." **It is therefore more likely than not, if not "highly likely that [defendant] would have conducted an investigation" into the attack's cause, nature, and effect "irrespective of the prospect of litigation."** From the Court's *in camera* review, it is clear that the [consulting firm] Report summarizes the findings of such an investigation, and that "substantially the same document would have been prepared in any event ... as part of the ordinary course of Defendant's business."

*Id.* 10-11.

Here, we know Whole Foods would have conducted this investigation into Gainsharing regardless of the litigation because it pronounced to world on December 13, 2016 (prior to the filing of this lawsuit) via the Associated Press that it had done a "company-wide investigation" and that it was "still investigating exactly how much money is involved and plans to ensure that employees at the affected stores are compensated properly." *See* ECF No. 129-2. If this were a

9

truthful statement, Whole Food would not have analyzed the nine stores where the Plaintiffs any different than the rest of the stores across the country. The same, Mr. Campanelli's scope of work would not have been limited to just the nine stores, but to all of the stores that Whole Foods claimed it was investigating.  And of no coincidence, Deloitte's engagement letter was dated December 14, 2016—the day after the Associated Press article was published.[6] Moreover, Mr. Campanelli testified unequivocally that he was retained to perform analysis to assist Whole Foods in making a "business decision," and not for litigation.

As in *Guo Wengui*, here, it is certainly "more likely than not, if not highly likely, that [Whole Foods] would have conducted an investigation into the [gainsharing program]…irrespective of the prospect of litigation." *Guo Wengui*, 338 F.R.D at 10-11.

Moreover, Whole Foods is not the first defendant to try to "alternately don[] and doff[] the privileged hat of a litigation consultant and the 'non-privileged hat' of the testifying witness" where convenient. *Yeda Rsch. & Dev. Co. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 108 (D.D.C. 2013). When there is any ambiguity between the expert's two roles, "a court should order disclosure." *Id.* at 113. Indeed, in situations such as this, there is a "presumption in favor of the party seeking discovery [which] means that if the subject matter directly relates to the opinion in the expert report, there will be at least an ambiguity as to whether the materials informed the expert's opinion, and consulting materials should be disclosed." *Id.* In *Yeda*, the court compelled disclosure by finding that the plaintiff waived the work product protection over plaintiff's consultant by designating him as a testifying expert witness." *Id.* at 115.  Even more tenuous here for Whole Foods, it is undisputed that Mr. Campanelli was testifying as a fact witness and that he

---

[6] It is rather telling that Whole Foods stated that it had completed a company-wide investigation, even though it had not even retained Deloitte yet.

10

formed no opinions in connection with the work that he performed. He is a fact witness. Yet, Whole Foods is attempting to cast him as a "consultant" relating to the data he reviewed for stores other than the nine where Plaintiffs worked simply to shield the information because it is presumably detrimental to Whole Foods' defense. But that's not how litigation works. Moreover, the fact that Deloitte performed all of its work under a single engagement letter defeats any attempt by Whole Foods to treat Mr. Campanelli as both a fact witness (or testifying expert as they claim[7]) and non-testifying expert. At a minimum, it creates ambiguity as to his role in this litigation, which requires production.

Accordingly, documents created by Deloitte and/or Mr. Campanelli are not work product.

**C.  Whole Foods Waived any Applicable Privilege**

Even if the documents created by Deloitte were privileged, Whole Foods waived the privilege. "[U]nder the doctrine of 'implied' or 'at issue' waiver, the attorney-client privilege is waived when the client places otherwise privileged matters in controversy." *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 518, 522 (D.D.C. 2005) (citing *Ideal Electronic Security Co. v. International Fidelity Insurance Co*., 129 F.3d 143, 151 (D.C.Cir.1997)). The purpose of "implied waiver" is to "prevent an abuse of the privilege, that is, to prevent the confidentiality protected by the privilege from being used as a tool for manipulation of the truth-seeking process." *Minebea Co., Ltd.,* 355 F. Supp. 2d at 522. Under this doctrine, "a party asserting privilege cannot be allowed, after disclosing as much as it pleases to withhold the remainder." *Id.* "This is particularly true where ... a party partially discloses the allegedly privileged information in support of its claim against another, but then asserts the privilege as a basis for withholding from its opponent the

---

[7]  Even if Mr. Campanelli were a testifying expert, Plaintiffs would be entitled to discovery of all "facts or data" considered by Mr. Campanelli. Rule 26(a)(2)

remainder of the information which is necessary to defend against the claim." *Ideal Elec. Sec. Co.,* 129 F.3d at 151.

As stated more fully in Plaintiff's Motion to Compel Production of Documents Relating to Whole Foods' Investigation into Gainsharing (ECF No. 129), at issue in this case is whether Whole Foods did in fact conduct a "company-wide investigation" and whether labor transfers were "isolated" to the nine stores where Plaintiffs worked. The work and analysis performed by Deloitte and Mr. Campanelli are directly at issue in this litigation. Similarly, if Whole Foods has knowledge, through the analysis performed by Deloitte, that unsupported labor transfers occurred in stores other than the nine where Plaintiffs worked, then this would be evidence of malice for purposes of punitive damages.

Whole Foods cannot voluntarily disclose the analysis relating to the nine stores where Plaintiff's worked, and then withhold information relating to all of the other stores. The privilege cannot be wielded in such a way. "[A]ny voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter." *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982); *see also Williams & Connolly v. SEC,* 662 F.3d 1240, 1244 (D.C. Cir. 2011) ("[One who] voluntarily discloses part of an attorney-client conversation ... may have waived confidentiality—and thus the attorney client privilege—for the rest of that conversation and for any conversations related to the same subject matter.").[8]  Such "selective disclosure for tactical purposes  waives the privilege." *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982).

---

[8]  This subject matter waiver doctrine has been curtailed with respect to inadvertent disclosures by the 2010 amendment to FED. R. EVID. 502. *United States Equal Emp. Opportunity Comm'n v. George Washington Univ.,* No. 17-CV-1978 (CKK/GMH), 2020 WL 3489478, at *8

Accordingly, Whole Foods selective disclosure of Deloitte's analysis for only the nine stores where Plaintiff's worked constitutes a waiver of privilege for all of Deloitte's analysis.

## IV. Conclusion

Whole Foods has failed to establish that the withheld documents and communications relating to the work performed by Deloitte in connection with the Gainsharing program are privileged. Moreover, even if the documents were privileged, any such privilege was waived by Whole Foods by placing the documents at-issue in this case and by selectively disclosing some documents and information relating to Deloitte's work. Accordingly, Plaintiffs respectfully request the Court to order Whole Foods to produce: (1) All unlogged documents and communications relating to Deloitte's analysis performed for Whole Foods relating to the Gainsharing program; (2) Unredacted versions of Priv_324-328; (3) Priv_38, 66-72, 74, 77-84, 90, 91, 96-98, and 196; (4) the December 14, 2016 engagement letter and subsequent addendum; and, (5) all invoices Deloitte produced in connection with the work it performed for Whole Foods. Plaintiffs further respectfully request the Court to order Mr. Campanelli to appear for a deposition to testify on all of his analysis performed on behalf of Whole Foods.

Dated: July 14, 2021                                            Respectfully submitted,

                                                                /s/ Brendan J. Klaproth
                                                                Brendan J. Klaproth (D.C. Bar No. 999360)
                                                                Jesse C. Klaproth (Bar No. P0063)
                                                                Klaproth Law PLLC
                                                                2141 Wisconsin Ave NW
                                                                Suite M3
                                                                Washington, DC 20007
                                                                Tel:    202-618-2344

---

(D.D.C. June 26, 2020). The disclosures at issue here, however, do not involve inadvertent disclosures that occurred during the course of this lawsuit or during discovery. So, Rule 502 does not apply.

13

Email: <u>bklaproth@klaprothlaw.com</u>
<u>jklaproth@klaprothlaw.com</u>
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on this July 14, 2021, I caused to be served a true and correct copy of the foregoing Motion and supporting documents through the court's electronic filing system on counsel of record for all parties in this case.

Dated: July 14, 2021

                                            /s/ Brendan J. Klaproth