# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOR VASQUEZ, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET GROUP, INC.;<br>and WHOLE FOODS MARKET SERVICES,<br>INC.,<br>          Defendants. | Case No. 1:17-cv-00112-APM |

## WHOLE FOODS' RESPONSE TO NON-PARTY
## MATTHEW BARAKAT'S MOTION TO QUASH

Defendants Whole Foods Market Group, Inc. and Whole Foods Market Services, Inc. (collectively, "Whole Foods"), by and through their undersigned counsel, respectfully file this Response to Non-Party Matthew Barakat's Motion to Quash [Dkt. 142].

## INTRODUCTION

This motion to quash involves a subpoena issued to Matthew Barakat, a reporter in Northern Virginia, who wrote one of the news articles that serves as the basis for the defamation claim brought by Plaintiffs, most of whom worked in Virginia. Because he has information that goes to the heart of Whole Foods' defense, and because this information cannot be obtained from anyone else, Whole Foods served a subpoena on Mr. Barakat for a deposition on eight discrete written questions. Mr. Barakat argues that responses to each of Whole Foods' eight questions are privileged under the D.C. Free Flow of Information Act (the "D.C. Shield Law"). But he is wrong. Virginia law, which provides for a qualified reporter privilege only, controls this motion. Under Virginia law, the answers to these eight questions are simply not protected by privilege and should be provided. Accordingly, Whole Foods asks this court to deny the Motion to Quash.

1

## **FACTUAL BACKGROUND**

Mr. Barakat is an Associated Press reporter who authored one of the news articles that Plaintiffs claim includes defamatory statements made by Whole Foods' employee Brooke Buchanan. *See* Exhibit A to Motion to Quash (hereinafter the "The Article") [Dkt. 142-2]. Mr. Barakat published the article in McLean, Virginia. *See id.* On December 12, 2016, in the course of preparing the article, Mr. Barakat emailed Whole Foods asking about allegations of which he was already aware from another source, seeking Whole Foods' comment. He wrote:

> I am checking out some allegations that about 18 Whole Foods stores in the mid-Atlantic area have fired managers, and that lawsuits may be forthcoming, over improper actions by managers to manipulate a profit-sharing program at the company in a way that regular store employees were cheated out of share that they may have deserved.
>
> I am just in the preliminary stages of my inquiry, but if you have any info about this that could clarify the situation, I would appreciate it.

Declaration of David Sellinger ("Sellinger Decl."), Ex. A at 2 (December 12, 2016 Email from M. Barakat)[1].

Ms. Buchanan subsequently spoke to Mr. Barakat. She testified that Mr. Barakat told her he had originally learned about the firings from one or more of the "terminated store team leaders." *See* Sealed Mot. for Leave to File Document Under Seal, Dkt. 130-1 at 107:21–108:5.

In discovery, Whole Foods sought Mr. Barakat's deposition and attempted, through counsel, to reach agreement on a deposition of limited scope. All counsel engaged in a good-faith effort to negotiate a resolution of this discovery dispute; however, those efforts were unsuccessful. Ultimately, Whole Foods reduced the scope of its requested discovery of Mr. Barakat to eight

---

[1] Exhibit A is a copy of a document produced as Bates Labelled WFMGI GAINSHARE 0482763- WFMGI GAINSHARE 0482764. This document was produced as Attorneys' Eyes Only, however, Whole Foods has redacted those portions of the document that are confidential so that it may be filed as a public exhibit.

*ACTIVE 59014491v9*

discrete written questions, and on July 16, 2021, served, through counsel, a subpoena and notice of deposition on written questions upon Mr. Barakat. *See* Exhibit C to Motion to Quash (the "Subpoena") [Dkt. 142-4]. On July 19, 2021, Mr. Barakat filed a motion to quash or, in the alternative, a motion for protective order, on grounds of privilege regarding the subpoena [Dkt. 142].

## ARGUMENT

### I.     Mr. Barakat's Motion to Quash is Properly Analyzed Under Virginia Law.

Mr. Barakat's Motion largely focuses on the D.C. Shield Law, D.C. Code §§ 16-4701 *et seq*. However, this entirely ignores that in the circumstances presented here, the correct inquiry is whether Mr. Barakat's information is protected by the reporter privilege under Virginia law. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Under Virginia law, the reporter privilege is a qualified privilege only that is not absolute and can be waived. Applying the established factors under Virginia law, Mr. Barakat's Motion to Quash should be denied.

### A.  *Under this court's choice of law rules, Virginia Privilege Law Applies.*

There is a conflict between the D.C. Shield Law and Virginia's qualified reporter privilege. While the D.C. Shield Law is an absolute shield to divulging a reporter's source and provides for disclosure of other news and information only in limited circumstances, *see* D.C. Code §§ 16-4701 *et seq*., Virginia's reporter's privilege law, in contrast, is qualified. Virginia courts apply the *LaRouche* test, which allows disclosure when the information is relevant, cannot be obtained by alternate means, and there is a compelling interest in the information. *LaRouche v. Nat'l Broad. Co., Inc*., 780 F.2d 1134 (4th Cir. 1986). Because a conflict exists between D.C. and Virginia law on the privilege determination,  this Court must conduct a choice of law analysis.

Under a choice of law analysis, the District of Columbia federal courts apply the substantial interest analysis from the Restatement (Second) of Conflict of Laws. *See Ideal Elec. Sec. Co., Inc. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997). This analysis "requires the court to weigh various jurisdictions' contacts with the transaction at issue and to determine which has the most substantial interest in the matter." *Id.*

The reporter's privilege relates to the news-gathering process, which in this case appears to have taken place in Northern Virginia. Mr. Barakat published his article from Virginia and identified himself as a "reporter with the Associated Press in northern Virginia." *See* Ex. A, The Article [Dkt. 142-2] (datelined McLean, Virginia); Sellinger Decl., Ex. A at 2, ("I'm a reporter with Associated Press in northern Virginia"). In addition, the majority of the claimed impact of the alleged defamation occurred in Virginia. Five of the Plaintiffs worked at a store in Virginia. *See* Second Am. Compl. [Dkt. 16-2] ¶¶ 10–11, 13, 16–17. Two Plaintiffs worked at both Virginia and Maryland stores. *Id.* at ¶¶ 14–15.[2] Only one of the Plaintiffs—Victor Vasquez—worked as a Store Team Leader in Washington, D.C. *Id.* at ¶ 9. Accordingly, the majority of the *Vasquez* Plaintiffs' defamation claims are subject to Virginia law. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006) (holding defamation actions are subject to state law of the place where employee suffered reputational damage—where they worked). Compared to Virginia, the District of Columbia has a very small interest in the conversations between a reporter officed in Virginia and  Ms. Buchanan, a Whole Foods spokeswoman who was employed in Texas, about employees who largely did not work in the District. Sealed Mot. for Leave to File Document Under Seal, Dkt. 130-1 at 23:6–8. Rather, Virginia has the most substantial interest in these claims. For

---

[2] For a similar analysis under the attorney client privilege, Whole Foods directs the Court and the Parties to its prior briefing. *See* Whole Foods' Brief on Plaintiffs' Demand for Unredacted Attorney Invoices [Dkt. 111].

*ACTIVE 59014491v9*

the foregoing reasons, Virginia privilege law should apply because the news-gathering process occurred in Virginia and the majority of the impact of the alleged defamation occurred in Virginia.

### B.  *On the Merits, Answers to the Propounded Questions Are Not Protected Under Virginia Law.*

"Under Virginia law, reporters have a qualified privilege against disclosure of confidential sources in public figure defamation cases." *Hatfill v. New York Times Co.*, 459 F. Supp. 2d 462, 466 (E.D. Va. 2006)[3]. To determine whether the privilege applies, "Virginia courts have applied the three-part balancing test adopted by the Fourth Circuit in *LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134 (4th Cir. 1986)." *Id.* The *LaRouche* test considers "(1) whether the information is relevant, (2) whether the information can be obtained by alternate means, and (3) whether there is a compelling interest in the information." *LaRouche*, 780 F.2d at 1139. Virginia law also recognizes that a reporter may waive any such privilege: "[reporter] waived any privilege by violating the promise of confidentiality and disclosing the information to a third party." *Sterling*, 724 F.3d at 509  (applying *LaRouche* test and reversing district court's order granting reporter's motion to quash).

For instance, the *Hatfill* Court ordered disclosure of confidential sources in a defamation action against the defendant who published articles alleging the plaintiff was involved in the 2001 anthrax attacks. 45 F. Supp. 2d at 464. The *Hatfill* Court found that the confidential sources were

---

[3] The *LaRouche* test applies regardless of whether there is a disagreement over whether the plaintiff qualifies as a public figure. *See Hatfill*, 459 F. Supp. 2d at 464, n.2 ("The parties disagree on whether Plaintiff is a public figure, requiring him to prove actual malice by Defendant, or not a public figure, requiring him to prove only negligence by Defendant."); *see also United States v. Sterling*, 724 F.3d 482, 449, 509 (4th Cir. 2013) (analyzing *LaRouche* test  in criminal case and rejecting reporter's "claim to a First Amendment reporter's privilege that would permit him to resist the legitimate, good faith subpoena issued to him."); *Alexis v. Kamras*, No. 3:19-cv-543, 2020 WL 2616705, at *4 (E.D. Va. May 22, 2020) (applying *LaRouche* test to defamation case without stating whether public or private individual).

relevant to the plaintiff's defamation case because the defendant asserted it had acted with the requisite intent. *Id*. at 467. The *Hatfill* Court also found that the requested information was not available by other means because the journalist had not provided enough identifying information for the sources for the moving party to pursue that information elsewhere. *Id*. Finally, the *Hatfill* Court found that there was a compelling interest in the information because the plaintiff may need to place the confidential sources or their information at issue in order to effectively prove its case. *Id*.

Applying the *LaRouche* test to this case warrants disclosure, as it did in *Hatfill*. Contrary to Mr. Barakat's assertion, the information sought is relevant to the case. The *Vasquez* Plaintiffs have sued Whole Foods for defamation. The standard applied to defamation cases relies, in part, on whether the plaintiff is a public figure, limited public figure or private individual. *See generally New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (laying out heightened standard—*i.e.*, actual malice—for defamation of public figures). Limited public figures are also subject to a heightened standard. *See generally Draego v. City of Charlottesville,* No. 3:16-CV-00057, 2016 WL 6834025 (W.D. Va. Nov. 18, 2016) (explaining heightened level of protection provided to matters of public concern); *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 40 (D.D.C. 2005) (same). A limited public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 351 (1974). Accordingly, one of the factors used to determine whether an individual is a limited public figure and is therefore subject to the heightened standard laid out in *New York Times* is whether the plaintiffs here injected themselves into the controversy, for instance by speaking to Mr. Barakat. *See Clyburn v. News World Commc'ns, Inc*., 705 F. Supp. 635, 640 (D.D.C. 1989), *aff'd*, 903 F.2d 29 (D.C. Cir. 1990) (explaining plaintiff can become a

6

limited purpose public figure by taking "a significant role in the controversy, either by voluntarily attempting to affect the outcome" by speaking to the media); *Tate v. Bradley*, 679 F. Sup. 608, 612 (W.D. La. 1987) (plaintiff became public figure by communicating with reporter for story), *aff'd*, 837 F.2d 206 (5th Cir. 1988).

Accordingly, whether one or more of the *Vasquez* Plaintiffs served as the original source for Mr. Barakat's article is germane to determining a central and contested issue in this case—whether the *Vasquez* Plaintiffs played a central role in the controversy, making themselves limited public figures and therefore subject to the heightened standard. Moreover, putting aside the legal issue of the applicable standard, factually this is precisely what this entire case is about: if one or more of the *Vasquez* Plaintiffs communicated with Mr. Barakat and therefore was the source of his article, the *Vasquez* Plaintiffs cannot complain that Whole Foods, in reacting to Mr. Barakat's inquiry, somehow caused them to be exposed to public attention.

For the same reasons that this information is relevant, there is a compelling interest in the answers to the at-issue questions. *See Alexis*, 2020 WL 2616705, at *6 (explaining that under *LaRouche,* "[t]he test for whether there is a compelling interest in disclosing a piece of evidence turns on whether the evidence 'could play a role in the outcome in the proceedings.'") (*quoting Frederico v. Lincoln Military Hous., LLC*, 2014 WL 3962823, at *6 (E.D. Va. Aug. 13, 2014). Central to resolution of this case is whether Plaintiffs themselves contacted Mr. Barakat, who then proceeded to ask Whole Foods' spokesperson for a statement. This goes precisely to the heart of the case and determines the standard that this Court, on summary judgment, or a jury, at trial, will apply to determine Plaintiffs' burden of proof.

Moreover, as in *Hatfill* the information cannot be gained by other means. Whole Foods has already asked each Plaintiff if he or she was the source of the story to Mr. Barakat. Whole Foods

7

propounded detailed interrogatories to each of the Plaintiffs, asking them whether they had communicated with any news reporter, including Mr. Barakat in particular, and, if so, asking for the details. All nine Plaintiffs denied that they spoke with Mr. Barakat. *See* Sellinger Decl., Exs. B–J (Interrogatory Responses of Plaintiffs at No. 1 and 3). The only other possible person who can disclose the identity of Mr. Barakat's source is Mr. Barakat himself. Because the information is relevant to the case, unavailable by any other means, and there is a compelling interest in its disclosure, as the *Hatfill* Court determined, disclosure is warranted under the *LaRouche* test.

In the alternative, Virginia law recognizes that a reporter can waive his reporter's privilege. *See Sterling*, 724 F.3d at 509. Ms. Buchanan testified that Mr. Barakat stated that "he received information from the terminated store team leaders." *See* Sealed Mot. for Leave to File Document Under Seal, Dkt. 130-1 at 108:2–4. By "disclosing the information to" Ms. Buchanan,[4] Mr. Barakat waived any such qualified privilege that exists under *LaRouche*. *See Sterling*, 724 F.3d at 509. Accordingly, under Virginia law, the Court should deny Mr. Barakat's Motion to Quash.

## II. Mr. Barakat's Responses to Whole Foods' Deposition on Written Questions Are Not Protected by the Free Flow of Information Act, D.C. Code §§ 16-4701 *et seq*.

In the event that the Court finds that Virginia law does not apply, the D.C. Shield Law does not protect every answer to Whole Foods' eight deposition questions. Mr. Barakat asserted privilege to the entirety of Whole Foods' Subpoena under the D.C. Shield Law and the federal common law under *Zerilli*.[5] Whole Foods disagrees with his position and maintains that, under

[4] Although Mr. Barakat has provided a declaration describing his "practice" and stating that he has "not divulged the name or any identifying information about any other source [apart from Ms. Buchanan] for the Article to anyone outside the AP," his declaration does not expressly deny the statement attributed to him by Ms. Buchanan. *See* Mot. to Quash, Dkt. 142-1, Barakat Decl. ¶ 5.

[5] Plaintiffs' brief also relies on *Zerilli v. Smith*, 656 F.2d 705, 716 (D.C. Cir. 1981). Because this case is a diversity case applying state substantive law, *Zerilli* does not apply. *Lee v. U.S. Dep't of Justice*, 287 F. Supp. 2d 15 (D.D.C. 2003), *aff'd sub nom. Lee v. Dep't of Justice*, 413 F.3d 53 (D.C. Cir. 2005). But even if *Zerilli* applied, disclosure would be warranted for the same reasons

D.C. law, most of  the requested information is either not privileged or is privileged but subject to disclosure.  Whole Foods does not challenge that the D.C. Shield Law "accords total protection to news sources, whether confidential or not, and whether disclosed to others or not." *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336 (D.D.C. 1994).[6] But the D.C. Shield Law does not protect the answers to all of Whole Foods' questions: (1) questions 1 through 3 are foundational only, Question 3 does not go beyond the four corners of the article, and none of these questions seeks privileged information protected by the D.C. Shield law; (2) question 8 does not seek information that is protected by the D.C. Shield law, and the answer is obvious based upon the four corners of the article; and (3) questions 1 through 6 and 8 qualify for compelled disclosure under the D.C. Shield Law.

### A. *Whole Foods' Deposition Question 8 Does Not Call for Privileged Information About the Source.*

Whole Foods' Deposition on Written Question 8 asks: "Is it correct that you contacted Whole Foods for a reactive statement to information you'd already learned from a source other than a Whole Foods representative." Subpoena, Exhibit C [Dkt. 142-4]. While the source of Mr. Barakat's article is protected by the D.C. Shield Law in the event that it applied, which it does not, questions about information  communicated in the news media itself is not protected. Section 16-4702 provides that compelled disclosure is prohibited for "[a]ny news or information procured by the person while employed by the news media in the course of pursuing professional activities that *is not itself communicated in the news media*, including any . . . (F) Other data, irrespective of its

---

it is warranted under the *LaRouche* test. *Lee,* 287 F. Supp.2d at 18.  (explaining that under *Zerilli* where "the information sought is 'of central importance' to the civil litigant's case," "reporters may be compelled to disclose their sources, 'but only after the litigant has shown that he has exhausted every reasonable alternative source of information'") (quoting *Zerilli*, 656 F.2d at 713.). Whole Foods satisfies the test for disclosure under *Zerilli.*

[6] Because of this, if the Court determines the D.C. Shield Law applies, Whole Foods withdraws its Question Number 7 that asks Mr. Barakat for the name of his source.

nature, *not itself communicated in the news media*." D.C. Code § 16–4702(2)(F) (emphasis added). Question 8 does not call for the source of the article or information protected by § 16–4702(F). Question 8 simply asks Mr. Barakat to state the obvious based on his article, namely, that he called Whole Foods to investigate a lead for a story that Whole Foods obviously had no interest in affirmatively putting out in the press and asked Whole Foods for a response, and that Ms. Buchanan's statement was a reactive statement to information Mr. Barakat already had learned from a source other than a Whole Foods representative. *See also* Sellinger Decl., Ex. A at 2 (requesting comment from Whole Foods on allegations Barakat already was pursuing). Nothing in the question goes beyond the inescapable inference from the four corners of the story itself. Even the D.C. Shield law allows parties to question reporters about the accuracy of the information laid out in the four corners of the article. For these reasons, Question Number 8 it is not subject to the protection provided by § 16–4702(F).

**B.  *Whole Foods' Deposition Questions 1 through 3 are Foundational and Not Privileged.***

Similarly, Whole Foods' Deposition Questions 1 and 2 ask only about authorship, and Question 3 asks only for confirmation that Mr. Barakat communicated with Ms. Buchanan, whom he cites in the article as the person who made the statement that he includes therein.  There is nothing privileged about the answers to these questions; Mr. Barakat can be asked these questions to confirm the accuracy of his article; and the answers are not covered by the protection afforded under  § 16–4702(F). *See* Subpoena, Exhibit C [Dkt. 142-4].

**C.  *Whole Foods' Deposition Questions 1 Through 6 and 8 Can Be Compelled Under Section 16-4703.***

While the D.C. Shield law, D.C. Code 16-4702(1), provides an absolute bar to compelled disclosure of a reporter's sources, Section 16-4703 provides that compelled disclosure of "news or information" otherwise protected from disclosure under section 16-4702(2) is permitted in certain

*ACTIVE 59014491v9*

circumstances. The D.C. Shield law provides  only a qualified privilege for "news and information" that is covered by section 16-4702(2) and is not the reporter's source, and states that such compelled disclosure is permitted where a party shows by clear and convincing evidence that:

> (1) The news or information is relevant to a significant legal issue before a judicial, legislative, administrative, or other body that has the power to issue a subpoena;
>
> (2) The news or information could not, with due diligence, be obtained by any alternative means; and
>
> (3) There is an overriding public interest in the disclosure."

D.C. Code § 16-4703.

Whole Foods has satisfied these elements by clear and convincing evidence. As explained in Section I above, the information requested in Questions 1 through 6 and 8 goes to the heart of this case. These questions do not call for the source of Mr. Barakat's article. Rather, they seek information akin to the types of information laid out in Section 16-4702(2), which is "conditionally privileged," at most.[7] *Grunseth v. Marriott Corp*., 868 F. Supp. 333, 336 (D.D.C. 1994). Further, this information cannot be obtained by any other means given that only Mr. Barakat (or, as applicable, Mr. Barakat and Ms. Buchanan) has knowledge of such information. *See* Section I above.

Finally, there is an overriding public interest in compelling disclosure of this limited information. The policy of protecting a reporter's source under the D.C. Shield Law is consistent with the public interest in a  full and accurate airing of matters of public interest.  The subject of the article was a matter of public interest, as evidenced by the fact that the article was picked up and republished numerous times by other news outlets. This article reports on a story that from

---

[7] Whole Foods does not concede that the information requested in Question Number 8 is privileged. But assuming *arguendo* that it is privileged, the privilege is only conditional under D.C. Code 16-4702(2) and 16-4703, as explained in the text.

Whole Foods' perspective, was obviously negative and not one that Whole Foods would have chosen to affirmatively present to the public. Ms. Buchanan has testified that Mr. Barakat reached out to Whole Foods regarding allegations of which he already was aware, and that her statement reported in the article was provided in response to the information about which Mr. Barakat inquired. *See* Sealed Mot. for Leave to File Document Under Seal, Dkt. 130-1 at 46:9–47:11. As Ms. Buchanan testified:

> 1   Q What was discussed with Matthew Barakat?
> **2     A The reporter called my cell phone and**
> **3   asked me about a situation happening in the**
> **4   Mid-Atlantic, that there were store team leaders**
> **5   who had been terminated.**
> **6      And when I followed up and asked him, you**
> **7   know, where he heard this from, you know, you**
> **8   typically ask how did out learn of this, he**
> **9   informed me that one of, or several of the store**
> **10 team impacted Whole Foods' employees contacted him**
> **11 directly.**
>               *     *     *
> 1   Q What were his questions?
> **2     A His question was: What is the company's**
> **3   response to the, the firing or the termination of**
> **4   store team leaders in the Mid-Atlantic region.**

*Id.* at 47:1–11, 48:1–5. In having responded to the reporter's inquiry, Whole Foods should not have its hands tied behind its back in a private defamation action and be denied the right to obtain the minimal confirmation from the reporter as to the fact that it was a source other than Whole Foods who initiated the article – a confirmation that would provide vital support for Whole Foods' defense. Permitting disclosure of the limited information in these questions is fully consistent with promoting the ability of reporters to obtain information from company spokespersons such as Mr. Buchanan. Accordingly, disclosure is permitted under D.C. Code § 16-4703.

12

### III.   The Subpoena Requests Necessary and Purposefully Limited Discovery.

Finally, contrary to Mr. Barakat's position, the subpoena seeks his appearance for an eight-question deposition on written questions, which is not only necessary but limited in scope so as to specifically avoid being unduly burdensome for Mr. Barakat. *See Alexis*, 2020 WL 2616705, at *6 ("In addition to the *LaRouche* factors, the Court must consider the burden producing the information places on the" third party). Whole Foods went to great lengths to limit the questions for Mr. Barakat in order to take as little of his time as possible and to avoid, if possible, a privilege fight. *See* Subpoena, Exhibit C [Dkt. 142-4]. To that end, Whole Foods propounded only eight questions to Mr. Barakat. *Id.* Most of these questions can be answered in one-word answers. *Id.* This would be a 15-minute deposition, which the witness could attend by ZOOM. Accordingly, Whole Foods has taken steps to limit the scope of the deposition to comply with Federal Rule of Civil Procedure 45.

### IV.   If the Court Finds that the Answers to the Questions are Privileged, the Court Should Find that Mr. Barakat Is Unavailable as a Witness.

In the event that the Court finds that Mr. Barakat has a privilege protecting him from having to answer the deposition questions, Whole Foods respectfully requests that the Court rule that Mr. Barakat is unavailable as a witness for purposes of Rule 804 of the Federal Rules of Evidence. Rule 804(a)(1) provides that "[a] declarant is considered to be unavailable as a witness if the declarant: (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies." Fed. R. Evid. 804(a)(1); *United States v. Miller*, 904 F.2d 65 (D.C. Cir. 1990) (stating that where a witness can properly assert a privilege he is "undeniabl[y]" unavailable under Rule 804).

As explained above, Whole Foods desires Mr. Barakat's testimony on the eight discrete questions set forth in the deposition notice because his answers would go to an issue at the heart

of the case and they are not subject to protection pursuant to a privilege under Virginia law or otherwise. If, however, the Court disagrees, Whole Foods would like to be able to argue at a later date that Mr. Barakat's out-of-court statement that he had communicated with one or more of the terminated store managers is admissible, under a hearsay exception or another theory. Whole Foods is not asking to brief, nor is it requesting a court ruling on that issue at this time.[8] What Whole Foods is requesting is a ruling consistent with the ruling on privilege, if it is held applicable, that for purposes of Federal Rule of Evidence 804(a)(1), as a result of the Court's privilege ruling, Mr. Barakat shall be considered to be unavailable as a witness at the trial in this action because he is exempted from answering the requested deposition questions because a privilege applies.

## CONCLUSION

For the foregoing reasons, Whole Foods respectfully requests that the Court deny Mr. Barakat's Motion to Quash [Dkt. 142]. A proposed Order is attached. In the alternative, if the Court finds that a privilege applies to the requested deposition questions, and as set forth in the attached alternative Proposed Order, Whole Foods respectfully requests that the Court rule that Mr. Barakat is an unavailable witness under Federal Rule of Evidence 804(a)(1).

Respectfully submitted,

**GREENBERG TRAURIG, LLP**
By: */s/ Gregory J. Casas*
Gregory J. Casas
Bar No. 455329
300 West 6th Street, Suite 2050
Austin, Texas 78701
Email: casasg@gtlaw.com
Telephone:  512.320.7200
Facsimile:  512.320.7210

---

[8] Whole Foods respectfully suggests that that issue should be the subject of a briefing schedule at a later date.

14

*ACTIVE 59014491v9*

David Sellinger
Bar No. 282780
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Email: sellingerd@gtlaw.com
Telephone: 973.360.7900
Facsimile: 973.301.8410

**WHOLE FOODS MARKET SERVICES, INC.**
John H. Hempfling, II (Pro Hac Vice)
Vice President, Associate General Counsel,
Litigation
828 West 6th Street, Suite 200
Austin, TX 78703
Email: john.hempfling@wholefoods.com
Telephone: 512.542.0213
Facsimile: 512.482.7213

*Attorneys for Defendants Whole Foods Market
Group, Inc. and Whole Foods Market Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service are being served this 4th day of August 2021, via the Court's CM/ECF System.

*/s/ Gregory J. Casas*
Gregory J. Casas

*ACTIVE 59014491v9*