IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
MICHAEL MOLOCK, ET AL.,            )
                                   )
          Plaintiffs,              )
                                   )   CA No. 16-2483
     vs.                           )
                                   )
WHOLE FOODS MARKET, INC., ET AL.,  )
                                   )
          Defendants.              )   Washington, D.C.
-----------------------------------)   November 5, 2021
                                   )   2:12 p.m.
VICTOR VASQUEZ, ET AL.,            )
                                   )
          Plaintiffs,              )
                                   )
     vs.                           )   CA No. 17-112
                                   )
WHOLE FOODS MARKET, INC., ET AL.,  )
                                   )
          Defendants.              )
_____)
```

TRANSCRIPT OF JOINT DISCOVERY HEARING
VIA ZOOM PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Molock Plaintiffs:          Salvatore J. Zambri
                                REGAN ZAMBRI & LONG, PLLC
                                1919 M Street, NW
                                Suite 350
                                Washington, D.C. 20036
                                (202) 463-3030
                                szambri@reganfirm.com


For Vasquez Plaintiffs:         Brendan J. Klaproth
                                KLAPROTH LAW PLLC
                                2141 Wisconsin Ave., NW
                                Suite M3
                                Washington, D.C. 20007
                                (202) 618-2344
                                bklaproth@klaprothlaw.com

APPEARANCES CONTINUED

For the Defendants:                Gregory J. Casas
                                   Emily Collins
                                   Alan Hersh
                                   GREENBERG TRAURIG, LLP
                                   300 West Sixth Street
                                   Suite 2050
                                   Austin, TX 78701
                                   (512) 320-7238
                                   casasg@gtlaw.com
                                   collinse@gtlaw.com
                                   hersha@gtlaw.com

                                   David E. Sellinger
                                   GREENBERG TRAURIG LLP
                                   500 Campus Drive
                                   Suite 400
                                   Florham Park, New Jersey 07932
                                   (973) 360-7925
                                   sellingerd@gtlaw.com

                                   John H. Hempfling, II
                                   WHOLE FOODS MARKET
                                   SERVICES, INC.
                                   828 West Sixth Street
                                   Suite 100
                                   Austin, TX 78703
                                   (512) 542-0213
                                   Email:
                                   john.hempfling@wholefoods.com

For Non-Party
Petitioner
Matthew Barakat:                   Jay Ward Brown
                                   BALLARD SPAHR LLP
                                   1909 K Street, NW
                                   12th Floor
                                   Washington, D.C. 20006
                                   (202) 508-1136
                                   Email:
                                   brownjay@ballardspahr.com

APPEARANCES CONTINUED:

Court Reporter:                 William P. Zaremba
                                Registered Merit Reporter
                                Certified Realtime Reporter
                                Official Court Reporter
                                E. Barrett Prettyman CH
                                333 Constitution Avenue, NW
                                Washington, D.C. 20001
                                (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1              P R O C E E D I N G S

2              COURTROOM DEPUTY:  Good afternoon, Your Honor.

3     This is a joint discovery call in Civil Action 16-2483,

4     Michael Molock, et al., versus Whole Foods Market, Inc.,

5     et al; and Civil Action 17-112, Victor Vasquez, et al.,

6     versus Whole Foods Market, Inc., et al.

7              Salvatore Zambri for the Molock Plaintiffs.

8              Brendan Klaproth for the Vasquez Plaintiffs.

9              Gregory Casas, David Sellinger, John Hempfling,

10    Emily Collins, and Alan Hersh for the defendants.

11             Jay Ward Brown is on the line for Non-party

12    Petitioner Matthew Barakat.

13             THE COURT:  Okay.  Good afternoon, everybody.

14    I hope everyone is doing well.  It's nice to see everyone.

15    Thank you for being available this afternoon.

16             I wanted to get to, at long last, the various

17    pending discovery motions that the parties have briefed and

18    have been outstanding for some months, and so I wanted to

19    just go ahead and get to that.  And I'm sorry it has taken

20    as long as it has to resolve these matters.

21             I want to go ahead and just -- I think, a handful

22    of these, I can -- I want to just dispose of, and then

23    there's two in particular I want to have further discussion

24    on.

25             So I want to just start with the motion to quash

1    the subpoenas to the reporter, Mr. Barakat, that's ECF 142.

2    Let me just go ahead and rule on that.

3            So Whole Foods has filed a motion that seeks to

4    compel Non-party Matthew Barakat, who's a reporter for the

5    *Associated Press*, to sit for deposition by written

6    questions.

7            Mr. Barakat wrote an *AP* story that appeared on

8    December 13th, 2016, that reported that Whole Foods had

9    terminated the Vasquez Plaintiffs, and that article both

10   contained purportedly defamatory statements that were

11   attributable -- were attributed to Brooke Buchanan at

12   Whole Foods, who at the time was the spokesperson for the

13   company.

14           Whole Foods has asked that Mr. Barakat sit for a

15   deposition of eight questions, written questions, be

16   presented to him that he answer.  Those questions, some of

17   which are fairly straightforward, including that

18   Mr. Barakat -- confirming that he wrote the article and that

19   he spoke with Ms. Buchanan.  Those are two of the questions.

20           The balance of the questions seek to determine

21   whether Mr. Barakat spoke to any of the Vasquez Plaintiffs

22   before he spoke to Ms. Buchanan, and to identify who those

23   sources might be, if, in fact, he spoke to any of the

24   Vasquez Plaintiffs before he approached Whole Foods.

25           This all arises out of the deposition testimony of

1   Ms. Buchanan, who testified that Mr. Barakat told her, when

2   he spoke to her, that he obtained some information from the

3   fired managers before he contacted Whole Foods.

4        Mr. Barakat has submitted a sworn declaration in

5   which he denies having made any such disclosure to

6   Ms. Buchanan, and in which he says that it is his practice

7   not to disclose such sources to anyone except for those

8   inside the *Associated Press*.

9        The *Associated Press* has moved to quash the

10  deposition subpoena on written questions to Mr. Barakat.

11  In so moving, it relies on the reporter's privilege under

12  D.C. state or statutory law, and then also relies on the

13  First Amendment privilege under federal law.

14       Whole Foods responds by disputing that D.C.

15  reporter's privilege applies and, instead, contends that

16  Virginia law applies and its privilege for qualified --

17  excuse me, qualified privilege applies, and it makes the

18  argument that it satisfied the qualified privilege under

19  Virginia law.  And that it in any event, even if D.C. law

20  applies, that the majority of the questions aren't --

21  Mr. Barakat is not prohibited from -- is not barred from or

22  can be compelled, I should say, to answer those questions,

23  even if D.C. -- reporter's privilege under D.C. law applies.

24       I don't think I have to decide which state law

25  applies here because, in my view, Whole Foods' demand to

1    question Mr. Barakat fails under the qualified

2    First Amendment privilege that's recognized in this Circuit

3    under *Zerilli v. Smith*, that's 656 F.2d 705, D.C. Circuit

4    (1981):  "Information from a reporter can only be compelled

5    if the information sought goes to the 'heart of the

6    matter.'"

7            Here, I think Whole Foods fails that test.  It

8    contends that it needs to determine whether -- it needs to

9    determine, from Mr. Barakat, whether the plaintiffs in this

10   case, or any one of them, by speaking to the media, made

11   themselves limited public figures, thereby making their

12   defamation claim subject to a more stringent standard of

13   proof.

14           They also argue that if a Vasquez Plaintiff was a

15   source for Mr. Barakat, then they cannot -- I'm quoting

16   here, "they cannot complain that Whole Foods, in reacting to

17   Mr. Barakat's inquiries, somehow caused them to be exposed

18   to public attention."

19           I reject both of these arguments.  First, even if

20   the plaintiff, or any particular Vasquez Plaintiff, spoke to

21   Mr. Barakat, it's undisputed that they did so on a

22   confidential basis.  They certainly are not identified

23   anywhere in the *AP* article.  And Whole Foods has cited no

24   case that stands for the proposition that a source who

25   speaks to the media confidentiality -- excuse me,

1    confidentially, is converted into a limited-purpose public

2    figure.

3          Whole Foods does cite two cases for the

4    proposition that speaking to a media -- speaking to the

5    media is a factor in determining whether a person is a

6    limited public figure, and that's *Clyburn v. News World*

7    *Communications*, 705 F.Supp. at 635, and *Tate versus Bradley*,

8    659 F.Supp. 608.  The first case is from our district; the

9    second case is from the Western District of Louisiana.

10         Both those cases are materially different.  Both

11   of those cases involve individuals who actually spoke to

12   media organizations for attribution, and their statements

13   were actually included in the news articles at issue, and

14   so, therefore, they actually did inject themselves into the

15   public discussion about a particular case by being

16   nonconfidential attributable sources to the reporter.

17         That's not the case here.  Even if I were to

18   assume that any particular Vasquez Plaintiff spoke to

19   Mr. Barakat, it would appear, based on the fact that no

20   one's identified in the article, that that was done on an

21   agreement of confidentiality.  Certainly, Mr. Barakat's

22   affidavit suggests as much, and so, therefore, I haven't

23   found any case and no one has cited one that would suggest

24   the mere speaking to a reporter on a confidential basis that

25   doesn't result in the identification of an individual in the

1   article that contains defamatory or other statements somehow

2   converts that person into a limited-purpose figure.  So I

3   don't think, for that purpose, the deposition is warranted.

4        Also, I reject Whole Foods' argument that even if

5   the Vasquez Plaintiffs or any plaintiff had spoken to

6   Mr. Barakat, that they can't now complain about being

7   exposed to public attention.

8        But that doesn't follow.  I mean, just because

9   even if somebody spoke to Whole Foods on background, doesn't

10  mean they invited defamatory statements.  Whole Foods cannot

11  use the fact that any Vasquez Plaintiff might have spoken to

12  Mr. Barakat as an affirmative defense of defamation, nor

13  does it, in my view, mitigate any harm that might have

14  occurred by virtue of a defamatory statement.  So for those

15  reasons, I think a request to compel fails under standards

16  set forth in *Zerilli*.

17       Also, I do find that the subpoenas are unnecessary

18  and unduly burdensome.  Mr. Barakat already has answered

19  most of the questions, if not all of them, by deposition --

20  excuse me, by written declaration; it's under oath.  It does

21  seem to me burdensome to make him sit for a deposition,

22  particularly when the requested information has already

23  been, A, put in a written declaration, and, B, any further

24  compulsion is not warranted under *Zerilli*, and to whatever

25  extent a written deposition, or deposition by written

1  questions, would be beneficial at this stage, seems to me to

2  be outweighed by the burden that would be placed upon

3  Mr. Barakat and having to disclose sources.

4        So with that, that motion will be denied, and,

5  Mr. Brown, you are free to leave or you can stick around if

6  you'd like.

7        All right.  With that, let me turn then to the two

8  other motions that, I think, are at least issues that

9  I think I can dispose of quickly.

10        The first concerns the unlabeled boxes, unindexed

11  boxes.  Vasquez and Molock Plaintiffs are under the view

12  that these boxes don't even contain relevant information.

13  In their view, they will be able to establish gainsharing

14  violations based just upon what's contained in some of the

15  gainsharing reports, as well as testimony about gainsharing

16  reports.  In their view, the TTFs that are a part of all

17  this and whether those TTFs may be in those boxes, they

18  don't need to even rely on those to establish an inference

19  of improper labor shifting and in violation of the

20  gainsharing program.

21        Whole Foods, on the other hand, says the

22  gainsharing reports are not enough, they're not enough to

23  show that there's been any violation in the gainsharing

24  program or any improper labor shifting; rather, that you

25  actually have to look to the TTFs that might be found in

those boxes, as well as other evidence to determine if the
labor that was shifted was, in fact, improper and a
violation of store policy.

There are 3500 boxes of documents at issue;
they've not been reviewed by either party, either by
Whole Foods or by Plaintiffs' counsel.  These boxes are
unlabeled and they don't have indexes and they're not
otherwise traceable to any particular store.  So the bottom
line is, nobody knows what's in these boxes.

The plaintiffs, as far as I can tell, based on
their responses, are not looking for any relief at this
time, including the missing-evidence instruction -- a
missing-evidence instruction.  Whole Foods has briefed that
issue.  I don't think it is an issue, because it's not one
the plaintiffs have asked for.  So put that to the side.

To the extent that Whole Foods has suggested in
its papers that it might argue that TTFs might be in the
boxes, certainly at this point I'm not inclined to permit
that kind of argument.  That seems to be an argument based
on speculation and asking the jury to draw an inference from
the plaintiffs' non-presentation of evidence as to what the
contents of those boxes are.

I think the bottom line, from where I sit, is that
neither side has any made any effort to look at these boxes,
and, therefore, any argument about what those boxes contain

1    would be based entirely on speculation, and I think that

2    kind of speculative argument or effort to ask a jury to draw

3    that kind of speculative inference, when there's no factual

4    basis whatsoever to believe that any of those boxes might

5    contain relevant information, at this point would be

6    improper.

7              This is a preliminary -- it's preliminary.

8    If there's some reason to think that you should -- my view

9    should change, you all will let me know before we ever get

10   to a trial, but that's my current view.  So that's that

11   issue.

12             The Vasquez Plaintiffs' motion to compel

13   production of documents relating to Whole Foods' alleged

14   damages, this is at ECF No. 112 on the Vasquez docket.

15             Let me just say this now:  I preliminarily think

16   there certainly is waiver here, to some extent.  Whole Foods

17   has said that, as part of its damages in its counterclaim in

18   the Vasquez case, that it is asserting legal fees associated

19   with the investigation that it conducted, as well as the

20   legal fees and any liability that occurs, I believe also

21   liability that occurs in the Molock case.  And so I mean,

22   I think it's sort of black letter law that when a party puts

23   its legal fees at issue, there is some waiver to some

24   degree.

25             There's no law that says as to when those

1  documents need to be produced.  And I think here for three

2  reasons, I'm not inclined to -- I'm not going to order

3  disclosure at this juncture:

4          The first is, as the Whole Foods points out, the

5  Scheduling Order says the expert discovery relating to

6  damages shall occur after the Court rules on a party's

7  motion for summary judgment, if any, as to liability.

8          I do view a question of Whole Foods' damages here

9  to be inextricably intertwined with expert discovery.  And

10 while the Scheduling Order may not be crystal clear on this

11 point, certainly expert discovery is going to be required in

12 terms of assessing the reasonableness or the necessity of

13 Whole Foods' legal fees that it expended either in

14 connection with the investigation or in connection with the

15 Molock litigation.  And so I do think to the extent there

16 should be discovery on this, it's probably better reserved

17 for expert discovery.

18         Secondly, the Vasquez Plaintiffs are in agreement

19 and have said that the requested discovery here only goes to

20 damages, and so I think that their further reason warrants

21 delaying any disclosure.

22         And then finally -- and I think this is a real

23 important, if not the main reason, which is that, we have

24 cases here that are operating on parallel tracks.

25 I understand that Mr. Klaproth and Mr. Zambri, to some

1   extent, it's my sense, I don't know if either of them have

2   actually said this expressly, but I believe they've been

3   working under some common-interest agreement here in this

4   case.

5           So to disclose or to force disclosure of invoices,

6   particularly invoices that would reveal litigation strategy

7   and litigation efforts in the Molock case to counsel in the

8   Vasquez matter, really creates a lot of ground for mischief

9   here, not only because of the common interests that the two

10  plaintiffs share, but also because there are overlapping

11  issues in these cases.

12          And so there's a real risk here that what is

13  contained in some of these invoices insofar as it relates to

14  overlapping legal and factual issues between the two cases,

15  if it were to be disclosed at this juncture, in my view, has

16  the real prospect of very much prejudicing Whole Foods in

17  its defense of the Molock case, and even in the Vasquez

18  case, certainly given that at most, these documents are

19  relevant to damages, that liability has not yet been

20  established, I think it's premature to order the disclosure

21  of those records.  So Vasquez Plaintiffs' motion will be

22  denied, which is at 112.

23          All right.  So those are the three motions that

24  I'm prepared to rule on and have ruled on quickly.

25          Let's talk then about the last two motions that

1   involve issues of waiver.

2          I want to talk first about the waiver issue

3   concerning Ms. Buchanan and her statements and what that

4   means for what, I think, are about 311 pages -- excuse me,

5   311 documents that have been identified by Whole Foods on a

6   privilege log.

7          Just to tee the issue up, the issue is basically

8   this:  That Ms. Buchanan, as I alluded to earlier, made four

9   or five statements, I think, four statements to the

10  *Associated Press*, those statements are identified at ECF

11  129, page 3 of the Vasquez Plaintiffs' brief, and those

12  statements were made to an *Associated Press* reporter.

13         According to her deposition testimony, the basis

14  for those statements -- and I can confirm with Mr. Casas --

15  I'll ask Mr. Casas to confirm the accuracy of this, but

16  Ms. Buchanan testified at least that the basis of those

17  statements -- or the source of those statements, the factual

18  information in those statements, came from Whole Foods'

19  counsel.

20         It's not clear to me whether it came from in-house

21  Counsel or outside counsel that may have conducted or

22  participated in the investigation, but, nevertheless, it

23  seems to be the case that Ms. Buchanan derived some of the

24  information that she then shared with the *AP* with

25  Whole Foods -- excuse me, with -- that she learned from

1    counsel to Whole Foods with the *Associated Press*.

2            The plaintiffs have asserted that that constitutes

3    a waiver of -- I think they're arguing -- all privileges,

4    both attorney-client and work-product.  I don't know that

5    they've really distinguished between the two, although there

6    is a difference, not only because they're different

7    privileges, but they're on different underlying principles

8    associated with each individual, including as to waiver, and

9    so the motion is seeking to the disclosure of all 311

10   pages -- or 311 documents.

11           Let me begin with Mr. Casas.  And let me just

12   confirm that I am right, as a factual matter, that

13   Ms. Buchanan's testimony was that statements that she made

14   to *AP* did derive from or were sourced to legal counsel?

15           MR. CASAS:  Thanks, Your Honor.

16           What she testified to in her deposition was that

17   she spoke with information -- she spoke with and got

18   information from five people:  Roberta Lang, who was the

19   former General Counsel for Whole Foods; Susan Anderson, who

20   is a former in-house counsel for Whole Foods; Martin Tracey,

21   who's not an attorney, Martin was the former head of the

22   human resources department for Whole Foods; and then

23   David Lannon and Ken Meyer, who were Executive Vice

24   Presidents for Whole Foods sort of at that upper level of

25   management, and both were responsible for the stores at

1    issue and the region in general, the Mid-Atlantic region.

2    And so three out of the five individuals she spoke with were

3    not attorneys.

4            THE COURT:  Well, I know she spoke -- and I'm glad

5    you clarified that.  I mean, I'm aware that she testified

6    she also spoke to non-lawyers.

7            But I'm also looking at what Mr. Klaproth has

8    quoted at the bottom of page 4 in his brief:  "Ms. Buchanan

9    stated that she received all the information on Whole Foods'

10   investigation from Whole Foods' in-house counsel."  That's a

11   summation.  "When asked if she received factual information

12   from non-lawyers and HR.  In a later shift, Ms. Buchanan

13   testified" this is quoting from her:  "No, I relied on my

14   legal counsel to help me in responding to the inquiry from

15   *AP*."

16           So that's what I was basing my factual assertions

17   on.  Am I missing something?

18           MR. CASAS:  I think the distinction there,

19   Your Honor, is, when learning about the investigation, she

20   did talk to those five individuals.

21           But when talking to the *AP* and trying to figure

22   out how to craft the responses, so as to potentially avoid

23   liability, which could result in a lawsuit, I think she did

24   receive some legal advice from Roberta Lang and Susan

25   Anderson about how to frame the answers.  And that's legal

1   advice with regard to the specific sentences that she said

2   to the *AP*.

3           But as far as the background on the investigation

4   that was ongoing at Whole Foods, that information was coming

5   from the -- and truly, that information was coming from

6   Susan Anderson and then the three gentlemen that I

7   mentioned.  So I think there's a distinction here between

8   what she was relying upon legal counsel for --

9           THE COURT:  Well, can I ask -- I mean, look, there

10   are some arguable factual assertions.  And I think -- look,

11   I mean, I think the way in which you've couched it is

12   interesting.  You know, to the extent Whole Foods -- and

13   I'm not -- these are my words, not yours, Mr. Casas.

14   I mean, you know, legal counsel, it seems, may have assisted

15   in crafting her responses with an eye toward Whole Foods'

16   liability.  There's are my words, not yours precisely, but I

17   heard you say something to that effect.

18           So I think the question in my mind is, at a

19   minimum, why -- to the extent that she relied on

20   Whole Foods' legal counsel for factual information; for

21   example, that, you know, the manipulation only happened in

22   nine of our locations, relatively small number of stores, if

23   she relies on legal counsel for those facts, why isn't there

24   are a waiver of communications and work product insofar as

25   they relate to those facts?

1          MR. CASAS:  I think those facts are discoverable.

2    And had plaintiffs asked for the depositions of Mr. Tracey,

3    Mr. Lannon, or Mr. Meyer, we would have provided their

4    depositions.

5          We're not trying to prevent them from learning

6    about the underlying investigation.  As a matter of fact,

7    I think the topics that we have set for the 30(b)(6)

8    deposition that's going to occur later in December include

9    the Whole Foods investigation.  So I think that's fair game.

10          The issue here is that there was -- these

11   311 documents, some of which relate to the investigation, do

12   contain legal advice, and I think that's what Mr. Klaproth

13   is seeking, and that's wholly separate from the facts that

14   are related to the investigation.

15          THE COURT:  Yeah, look, I agree.

16          And I mean, you know, Mr. Klaproth, I'll give you

17   an opportunity, but I think one of the -- what is

18   indiscriminate about Mr. Klaproth's ask, it seems to me, is

19   the waiver of command here is indiscriminate as to the type

20   of -- well, the subject matter of any of the underlying

21   records that have been withheld.

22          Now, in fairness, in fairness, it's not as if the

23   privilege log reveals a whole lot as to what the subject

24   matter is.  I mean, it's a fairly very vanilla privilege log

25   that, if memory serves, just simply parrots the usual

1    standards when it comes to privilege; it doesn't really

2    provide much detail.

3              But I mean, I think -- look, I am concerned that,

4    you know, Whole Foods, what it seems to have done -- and,

5    look, I understand corporations are put in this position,

6    but you have -- Ms. Buchanan did convey some information she

7    received from counsel's -- about counsel's findings

8    regarding the investigation.

9              And I don't know -- having done that, it's not

10   clear to me how Whole Foods can now then sort of fence off

11   communications relating to those facts or -- and maybe even

12   work product relating to those facts.  In other words, if

13   counsel has reached legal -- has reached conclusions,

14   factual or legal, those conclusions are shared with

15   Ms. Buchanan, who then shares that with the *Associated*

16   *Press*.  How is that not a waiver at least as to those

17   topics?

18             MR. CASAS:  Well, again, Your Honor, I draw the

19   distinction between the seeking of legal advice and the

20   facts.  And so to the extent that Ms. Anderson had facts

21   that she provided to Ms. Buchanan, I do think those are fair

22   game, and I do believe that they're the subject of topics

23   for the 30(b)(6) deposition.

24             But as far as a communication between her and

25   Ms. Buchanan about legal conclusions that maybe Ms. Anderson

1    had drawn that were unrelated to the comments that

2    Ms. Buchanan then provided to the *AP*, I'm not sure how

3    there's a waiver of that legal communication back and forth

4    between Ms. Anderson and Ms. Buchanan.

5             THE COURT:  No, I -- look, I mean, say

6    hypothetically there was some communication with

7    Ms. Anderson and what she said to Ms. Buchanan, that she

8    gave her impressions about the scope of the wrongdoing.

9             I mean, if Ms. Buchanan then relies on those

10   impressions of counsel, shouldn't those communications -- at

11   least those communications be available, or shouldn't that

12   at least constitute a waiver?

13            Again, I've not studied, nor do I think it's

14   possible to, given how it's structured, the privilege log in

15   a way to determine how many, if any, of the records that are

16   identified on that privilege log actually relate to these

17   facts that Mr. Klaproth actually cares about or at least

18   believes, I should just say, claims are the defamatory

19   statements.

20            There's a separate question about subject-matter

21   waiver.  But leaving that aside for a moment, the narrow

22   question of what, if any, records relate to these

23   statements.

24            Is there any way to determine that?

25            MR. CASAS:  I mean, yeah, we can review the

1    documents, Your Honor, and we can provide them -- to the

2    extent that we believe they relate to the statements that

3    Ms. Buchanan made to the *AP*, we can provide those in camera

4    for the Court's review.

5              I think from the privilege log, I mean, you're

6    right, it doesn't have a whole bunch of detail because we

7    didn't want to give away the privileged information as part

8    of the log.

9              THE COURT:  Say hypothetically, Ms. Lang is one of

10   the -- she's in-house counsel, correct?

11             MR. CASAS:  She's the former General Counsel,

12   right.

13             THE COURT:  So say hypothetically Ms. Lang -- you

14   know, there's a communication with Ms. Lang and her

15   in-house -- and outside counsel that says, you know, we've

16   been able to confirm nine -- you know, improper gainsharing

17   at nine stores, but we're still continuing to determine

18   whether there are -- but we think -- we have reason to

19   believe there may be improper labor shifting elsewhere, but

20   we're still working on that.

21             I mean, it seems to me that that kind of

22   communication, particularly if Ms. Lang then communicates

23   only nine stores are -- there are only nine stores where

24   manipulation happened and it's relatively small, might be

25   fair game.

1          MR. CASAS:  But I think, though, Your Honor, it's

2     a little bit of a blend of fact and legal advice.

3          I think the underlying facts about we have

4     uncovered nine stores -- and then I forget the exact rest of

5     the hypothetical -- I think you said it may be -- or we

6     haven't yet learned whether it's occurred anywhere else,

7     those would be underlying facts that could be obtained from

8     Martin Tracey, those are underlying facts that could be

9     obtained from Scott Allshouse as a 30(b)(6) witness later on

10    in December.

11          So I don't see the need here to breach the

12    attorney-client privilege, given that those are underlying

13    facts that we've never objected to talking about or having

14    any witness talk about.

15          It's the communication itself, I think, between

16    Ms. Anderson and Ms. Lang and Ms. Buchanan.  Whatever was

17    said among those three, that's a subject of a privilege.

18          And as Ms. Buchanan testified and as Mr. Klaproth

19    instructed her during his depositions, I just want the

20    facts.  And so she just provided the facts, as per his

21    instructions, and not the legal advice, and so that's the

22    distinction and the line we're drawing.

23          THE COURT:  Okay.

24          I guess, Mr. Klaproth, how were you -- look,

25    I will say this, that I don't think you've made the case to

1   get all 311 records.  In other words, just because

2   Ms. Buchanan made these statements and some of them were

3   based upon conversations with counsel, it's not clear to me

4   you get everything, but tell me why that's not right.

5          MR. KLAPROTH:  So, Your Honor, there's a couple

6   things going on here.

7          And just to answer your specific question now:

8   We're not seeking everything in their privilege log.  And

9   I did try to be very, very discriminate as to anything

10  regarding the litigation, Mr. Zambri's case, to carve that

11  out, because that's not what I was seeking.

12         But, you know, one of the defamatory statements is

13  that they did a company-wide investigation and then she

14  reports on what the results of that investigation were.  So

15  the topic or the subject matter to which the privilege is

16  waived is the investigation.

17         And we tried to be very targeted.

18         THE COURT:  Well, I don't -- I mean, I'm not -- is

19  that -- look, the fact that a company does an investigation

20  and that is made public, that doesn't automatic -- I mean,

21  that's not true, we know that's just not accurate, which is

22  to say, the fact that Whole Foods told the public that

23  there's an internal investigation means that everything

24  relating to the internal investigation is waived.  I mean,

25  that's just not accurate.  That's not the law.

1          MR. KLAPROTH:  And I'm not saying that.

2          THE COURT:  What's that?

3          MR. KLAPROTH:  And I'm not saying that.

4          THE COURT:  Okay.

5          So I mean, if the argument is that -- the

6    argument, seems to me, that, look, specific findings of the

7    investigation were made public and privileged communications

8    relating to those findings -- to the extent there are

9    privileged communications as to those findings, well, then,

10   those should be disclosed, because that's been waived.

11         MR. KLAPROTH:  That's right.

12         THE COURT:  That's your best argument, as opposed

13   to everything is available now relating to the

14   investigation.

15         MR. KLAPROTH:  Well -- and so I think the *In Re*

16   *Kellogg Brown & Root* case draws that distinction, because in

17   that particular case, the party disclosed in a footnote in

18   summary judgment briefing that there was an investigation.

19   And the D.C. Circuit made clear, and I think the quote was:

20   "Here's the rub."  They didn't disclose the results of the

21   investigation or any findings of the investigation; whereas

22   here, Whole Foods did both of those things.  They disclosed

23   what they claim to be the results of the investigation and

24   facts relating to the investigation.

25         And so one of the issues we have here is that, you

1    know, as the plaintiff, we need to prove that the statements

2    were made negligently, recklessly, and for punitive damages,

3    that Whole Foods acted with malice.  So we need to know what

4    Whole Foods knew when those statements were made.  And when

5    I took Ms. Buchanan's deposition, as you would in any

6    defamation case, I asked her, well, what did you do to

7    verify that this information was accurate?  And she just

8    says, I spoke with the lawyers.

9         And so another side point:  Mr. Casas indicated

10   that lawyers here were helping crafting the message.  That's

11   not legal advice, that's PR advice, that's business advice.

12   You don't need to be a lawyer to tell someone, you know,

13   what message you want to convey to the public.

14        THE COURT:  Well, that's -- I mean, that's --

15   look, when companies make public statements, whether they're

16   filed with the SEC or otherwise, there's a reason lawyers

17   look at them, and it's not just for PR.

18        So what public companies say have potential legal

19   consequences.  So I don't think it's fair to fully

20   characterize what a lawyer does when providing some guidance

21   to a PR person as purely PR.

22        MR. KLAPROTH:  Understood.

23        But just to take a look, for example, on page 2 of

24   the privilege log, here's an example of communication.  It's

25   from November 25th, 2016.  It's the first entry for

 1    Exhibit 5.  And Bates number for the record is 482458.  And

 2    it's a communication between Golda Sahayam and Scott

 3    Allshouse.  And the subject is:  Initial report attached,

 4    investigation update.  It's withheld for attorney-client

 5    privilege, neither one of those individuals is an attorney,

 6    and it's clearly relating to investigation findings.  So,

 7    you know, that's essentially what we're after:  What

 8    Whole Foods knew when they made those statements and

 9    published the statements.

10          And the source for Ms. Buchanan, you know, where

11    we hit a wall is, you know, the fact that she was speaking

12    with attorneys to gather the information to report on the

13    investigation.

14          So I just don't see how the plaintiffs, without

15    being severely prejudiced, can prove negligence,

16    recklessness, or even malice without knowing the full extent

17    of what Whole Foods' knowledge was, because that's at issue

18    in this case, and that's why the at-issue waiver doctrine

19    applies.

20          THE COURT:  Well, I'm not -- so maybe I don't

21    understand the at-issue waiver doctrine, but I don't think

22    Whole Foods puts its privileged communications at issue

23    because you bring a lawsuit.

24          In other words, the fact that you need or you'd

25    like to have privileged communications to prove your claim

1 doesn't make those communications at issue. They're put at

2 issue if the holder of the privilege does something to put

3 them at issue.

4      So, for example, in the case of the legal fees,

5 for instance, they put those at issue because they've

6 claimed those as damages. If, for example, they advance an

7 advice-of-counsel defense, they would then put it at issue.

8 I don't think the mere fact that you could, in theory, rely

9 on privileged information to make out your case constitutes

10 an at-issue waiver. In that case, that would be true

11 anytime.

12      MR. KLAPROTH: And Whole Foods here, there are

13 four things to put at issue; one, they published the

14 statements about their investigation, they did not need to

15 do that, especially when the source of the information was

16 the attorneys.

17      The second thing they did was they filed a

18 counterclaim that states: "Its internal" -- and I'm

19 quoting: "Its internal investigation revealed that

20 plaintiffs were manipulating and falsifying labor reports."

21 And that's paragraph 3 of the counterclaim. That was an

22 affirmative act by Whole Foods to put its investigation at

23 issue in this case.

24      Third, Buchanan testified that her sources of

25 information was the attorneys.

1          And essentially, you know, she is, in a way,

2    invoking the reliance upon the advice of counsel, because

3    Ms. Buchanan's position here is, well, I wasn't reckless or

4    negligent because, you know, I talked to the attorneys.  So,

5    again, you know, I hit a roadblock because of that

6    framework.

7          THE COURT:  Well, let me ask this:  Mr. Casas,

8    what -- I mean, imagine we're at trial, and is Whole Foods

9    going to stand up in its defense and say, these statements

10   weren't defamatory because we weren't negligent and/or they

11   were true, because we conducted an investigation, thorough

12   investigation, and this is what the investigation's findings

13   showed?

14         I mean, if that's going to be Whole Foods'

15   defense, which is that, we had an investigation, we hired

16   lawyers, we hired maybe others, and we did this

17   investigation and this is what we found, and so that at the

18   time Ms. Buchanan made these statements, this is what we

19   understood.  I mean, if that's going to be Whole Foods'

20   defense, then why isn't the plaintiff entitled to poke holes

21   in that?

22         MR. CASAS:  Well, Your Honor, the plaintiffs are

23   entitled to poke holes in those facts, and we have no

24   problem disclosing those facts.  We have produced documents

25   that show what kind of internal investigation was going on,

1    and we produced documents that show the results.

2            What we're saying here is that the communication

3    or the analysis, to the extent any existed when Mr. Anderson

4    was communicating with Ms. Buchanan or Ms. Lang with

5    Ms. Buchanan, that legal analysis is not fair game.  But to

6    the extent that Mr. Klaproth would -- has had access to and

7    wants to further delve into the investigation and the facts

8    behind the investigation, he has the opportunity to do that

9    in a 30(b)(6) deposition.

10           We were not shielding those facts.  And so

11   we believe that we are entitled to say at trial, here is

12   what the investigation was, it was run by HR, it was

13   communicated through various non-legal personnel, and these

14   are the facts that came back.  And I think that is not at

15   issue -- we're not putting at issue our legal advice at that

16   point or Whole Foods' internal legal advice at that point,

17   it's just what the facts are.

18           And the fact that there was an investigation and

19   that Ms. Buchanan disclosed it based upon communications she

20   admittedly had with not just lawyers but her boss, Martin

21   Tracey, and then two Executive Vice Presidents, all three of

22   them are non-lawyers, those are the facts that we think

23   we're entitled to rely upon and that we have disclosed and

24   that Mr. Klaproth can cross-examine on them.

25           THE COURT:  Is either side aware of a case that is

1    better than the ones that have been cited to me that

2    actually involve an internal investigation and the scope of

3    waiver if a company makes disclosures, whether it be either

4    to media, of its findings, or, as is more commonly the case,

5    when a company goes in and makes disclosures to a regulatory

6    body or to the Department of Justice?

7            MR. CASAS:  Your Honor, we have not revisited the

8    research since the filing of the papers.  We are happy to do

9    so, but we don't have any authority today.

10           MR. KLAPROTH:  Your Honor, this is from memory,

11   and I want to say it's the *In Re: Sealed Case*, 676 F.2d,

12   I just have a page here, 818.  I believe in that case what

13   happened was the party participated in a voluntary

14   disclosure program with the SEC, and because they

15   disclose --

16           THE COURT:  Yeah, that case is different.  I mean,

17   I just read it the other day and it -- if my memory serves,

18   and maybe I'm wrong, that case involved the question of --

19   maybe I'm thinking of a different case, but there were

20   certain disclosures made by the government -- or maybe this

21   is the *Williams & Connolly* case, I'm sorry.

22           Anyway, I'm sorry.  Why don't you go ahead,

23   Mr. Klaproth.

24           MR. KLAPROTH:  So this particular case -- and my

25   memory is a little fuzzy on the facts as well, but what

1    happened was, there was a large multinational corporation

2    that disclosed information as part of an SEC voluntary

3    disclosure program.  And what happened was because they

4    disclosed some of the information --

5              THE COURT:  Right.

6              MR. KLAPROTH:  -- they waived the privilege as to

7    all of the information.  They couldn't just have their

8    crafted message that was disclosed, and I think that's

9    similar here.

10             THE COURT:  Yeah.  I mean, I don't know.

11             I now remember the case.  And the District Court

12   in that case sort of forced the disclosure of a couple of

13   documents but not others.  The case involved a Grand Jury,

14   where sort of the -- you know, when courts are kind of

15   weighing the need for records, you know, their need for

16   records by a Grand Jury is sort of at its zenith.  I'll take

17   a look at it again.

18             MR. KLAPROTH:  I was just going to say, just to

19   get into the weeds a little bit, you know, looking at

20   Whole Foods, page 7 of Exhibit 5 of the privilege log,

21   I mean, these are communications between non-lawyers,

22   Golda Sahayam, Mike Grady.  Initially --

23             THE COURT:  That's a different issue,

24   Mr. Klaproth.

25             I mean -- and that's not just one that's before

1   me.   In other words -- I mean, to the extent that your

2   contention is there's no attorney-client privilege attaching

3   to documents between non-lawyers -- or no work product

4   attaching to non-lawyers, that issue is not before me.

5           MR. KLAPROTH:  It was raised in our briefing in

6   the first section, saying that they failed to establish that

7   the documents were even privileged.

8           But moreover to my point was, the subject of these

9   communications are "initial report attached investigation

10  update."  And so I mean, these are the individuals who are

11  doing the investigation.  I just don't see how those could

12  possibly -- I mean, this is directly at issue.

13          Mike Grady is the one who prepared these

14  spreadsheets, including the one with the missing columns.

15  So any sort of preliminary work that was done as part of

16  that investigation, you know, I think we're entitled to

17  these, it's at issue.  And it's not just what they said at

18  the end, you know, it was nine stores and here's our support

19  for that, you know, I get to see how the math was done.

20          MR. CASAS:  And, Your Honor, if I might, I don't

21  remember that specific email, but I remember emails like

22  that.  And the cover that we have withheld here, the email

23  with the report attached, that email actually -- my

24  recollection is, is the forwarding of legal advice from

25  counsel to those who need to enforce or implement the legal

1    advice.

2           The document that was attached, that report,

3    that's been produced.  And so, you know, to the extent that

4    Mr. Klaproth wants to see the sausage being made from that

5    investigation that was conducted by non-lawyers, that

6    information has been produced.  It's the cover email that's

7    transmitting legal advice to those who are going to be

8    implementing it.  That's what we're withholding here.

9           And I believe we've just -- we withheld the entire

10   document because the report itself -- and, again, this is by

11   memory -- the report itself has been produced separately in

12   another -- as part of our larger production.

13          THE COURT:  Well, I'm loath to ask, Mr. Casas:

14   How many documents are we talking about here?

15          MR. CASAS:  I'm going to have to --

16          THE COURT:  I guess there are 311 on the privilege

17   log.  How big a stack of material is that?

18          MR. CASAS:  That I don't know, Your Honor.

19          And I'm not sure that all 311 fall into the

20   category that Mr. Klaproth just talked about.

21          I would -- again, this is by memory.  A few dozen

22   might be the kind that would have a cover email and then the

23   report attached or a document attached.

24          THE COURT:  So am I remembering correctly that

25   I think Whole Foods did submit the privilege log with some

1   highlighting of it, and highlighting those privilege records

2   that Mr. Klaproth -- now that I remember -- I'm starting to

3   remember.

4            The log itself had 311 entries, and I think

5   Mr. Klaproth identified some subsection of those that he

6   thought were subject to waiver, is that correct, it's not

7   all 311?

8            MR. CASAS:  That's correct, Your Honor.

9            So it's document 132.  And it was Exhibit A,

10  which, I believe, comes across at 132-1 in the record, which

11  is the color-coded.

12           THE COURT:  Right.

13           MR. CASAS:  It's Mr. Hersh's affidavit.

14           THE COURT:  Right.

15           Mr. Hersh, am I recalling that correctly?

16  You're on, so I'll just ask you directly.

17           MR. HERSH:  Yes, Your Honor, you're recalling that

18  correctly.

19           As I recall, and I'm reviewing just to make sure,

20  but the Vasquez Plaintiffs in their opening brief raised a

21  question, the same question that Mr. Klaproth is, about

22  whether any of these issues were -- documents were privilege

23  in the first place, kind of separate and apart from the

24  waiver argument.

25           So I went through the privilege log and

1    highlighted various categories of documents, including ones

2    that didn't specifically name an attorney in the email

3    address but were forwarding legal advice, then ones that

4    were, prior to his litigation, didn't really have anything

5    to do with it.

6            I'm going to have review what the color-coding

7    was, but, yes, I included an affidavit just showing that,

8    yeah, I've reviewed every document and they conform to the

9    description I gave in that declaration.

10           MR. KLAPROTH:  And, Your Honor, just a point of

11   clarification:  I attached as Exhibit 5 as well the entire

12   privilege log, and then I highlighted the entries that were

13   being challenged.  So those were highlighted in just yellow.

14   That was Exhibit 5, which was filed under seal.

15           And Exhibit 4 -- so there was 311 that were

16   highlighted of a much larger subsection -- section.

17   So I don't have the exact total number of documents that

18   were on the log, but it did exceed 311.

19           THE COURT:  Okay.

20           All right.  I think where I'm with this is,

21   although I'm loath to ask:  Can you all send those documents

22   to me, Mr. Casas?  Just put them on the thumb drive and send

23   them over.

24           MR. CASAS:  Of course, Your Honor.

25           THE COURT:  It would be helpful to probably at

1   least eyeball them to see what these documents look like.

2           MR. HERSH:  Your Honor, just so we have that

3   right, are we talking about the 311 in our supplemental

4   privilege log or what Mr. Klaproth was referring to just

5   recently?

6           THE COURT:  I guess I'm -- what I would say is

7   that I'm interested in those documents that Mr. Klaproth was

8   interested in obtaining, because he says there's been either

9   a failure to establish privilege or waiver of privilege.

10          MR. KLAPROTH:  And just for the record, Exhibit 4,

11  Mr. Hersh also lists the Bates numbers of each of the

12  documents, so that might be an easy way to do that.

13          MR. HERSH:  And just so I -- Exhibit 4 to your

14  response or to your opening brief, sorry?

15          MR. KLAPROTH:  Opening brief.

16          And I can send that to you, the document, if it's

17  even easier.

18          MR. HERSH:  I appreciate that.  Thank you.

19          THE COURT:  Yeah.

20          So if you would just send that over to chambers

21  and -- that would be helpful.

22          I just think this is a thorny issue, and

23  I'm not -- this is not a knock at either side, but I also

24  don't feel like I've got a case or even two -- two, let

25  alone one, that kind of lights the way in this situation.

1          So send me the documents over and I'll take a look

2     at them and then I'll make a ruling based upon having

3     reviewed them, and I think that may help sort of shape my

4     thinking about some of this, okay?

5          MR. CASAS:  Of course, Your Honor.  Thank you.

6          THE COURT:  All right.

7          Let's talk about Mr. Campanelli.

8          Let me just give you my impressions and then I'll

9     hear from both sides about how to proceed.

10          Look, there's no question that an individual can

11     fill multiple roles; they can be a fact witness; they can be

12     a percipient fact -- excuse me, a fact witness, they can be

13     an expert witness.  I think the case law makes that clear.

14          What's unusual about what's happened here is, as

15     far as I can tell, based upon the engagement letter that was

16     sent by Mr. Casas and that I've reviewed, is that

17     Mr. Campanelli was hired as a consulting expert.

18          There's a paragraph in the engagement letter, if

19     memory serves, that essentially says that Deloitte will

20     agree that everything they produce is privileged.  So he's

21     clearly hired in the capacity that is intended to maintain

22     privileged communications with him and whatever work product

23     he produces on behalf of counsel.

24          At some point and for whatever reason, Whole Foods

25     then makes a decision to make Mr. Campanelli available as a

1    fact witness in connection with what I can only presume is

2    work that he did as a consulting expert, because I don't

3    believe there's any separate engagement letter that puts him

4    in that other capacity; in other words, he's doing work on

5    these nine stores, maybe more, but he's doing work.  Then

6    Whole Foods decides at some point to make Mr. Campanelli

7    available to talk about what he did, which otherwise would

8    have been privileged, in his capacity as a consulting

9    expert, and makes him available for deposition to discuss

10   his work with respect to the nine stores, but he's prevented

11   from testifying beyond that.

12         That is an usual fact pattern; it's not one that

13   I think is covered by any of the cases that either side put

14   forward.  And I have real concerns, as I suppose I did with

15   Ms. Buchanan's situation and perhaps even more so here, that

16   what Whole Foods is doing is being selective in the

17   information it is providing and willing to disclose about

18   somebody who they've hired as a consulting expert and now

19   want to use as a fact expert as to some issues but not

20   others.

21         And I mean, Whole Foods has suggested that the

22   work on the nine stores was discrete and separate and apart

23   from the rest of the work he's done.  And while I trust

24   Mr. Casas in the sense that that's how Whole Foods has tried

25   to use him, I think the real question is, what's the

1    evidence before me that that's, in fact, how it happened,

2    given the representations of counsel?

3           I mean, you know, there is just one engagement

4    letter, and that engagement letter characterizes this person

5    as a consulting expert who's going to keep his work

6    privileged.

7           And then -- I mean, there is a second engagement

8    letter, right, Mr. Casas, that supplements -- I don't think

9    it substantively changes anything, it simply brings

10   Greenberg Traurig into the mix -- essentially makes

11   Greenberg Traurig a party to the initial investigation.

12           MR. CASAS:  It supplements, Your Honor.

13           It does bring us into the engagement, but it also

14   is later in time, it's in February of 2017.

15           And I do think that it does have a substantive air

16   to it as well that we think at least, you know, puts it more

17   in the lines of a consulting role under that new -- or that

18   supplemental engagement letter of February 9th, 2017.

19           THE COURT:  All right.

20           Bear with me, everyone.

21           Hang on.

22           If everybody would just bear with me, I'm going to

23   go off camera, I'd like to print out the letter and just

24   take another look at it.

25           MR. CASAS:  Sure.  Thank you.

```
1              (Pause)

2              THE COURT:  Okay.

3              Sorry.  Thanks, everybody, for your indulgence.

4    I've had a chance to read it again.  I read it a few days

5    ago when it came through.

6              So, Mr. Casas, you were saying that you thought

7    the supplemental letter provides some substantive content

8    that the original engagement letter did not.

9              I mean, I agree with you that it does provide

10   some.  I mean, it talks about, in addition, since signing

11   the original engagement letter, Deloitte has been retained

12   to provide additional services, and those include potential

13   expert testimony in responding to the class-action lawsuits

14   and the SEC investigation.

15             Is that what you're referring to?

16             MR. CASAS:  Yes, Your Honor.

17             Also, just in the second part of the first

18   paragraph, it does talk about providing certain services on

19   an as-needed basis to the original counsel and the added

20   counsel.

21             So from our perspective, it does have, you know,

22   more of an assistance or a consulting tone to it, as opposed

23   to the first engagement letter, which seems to really

24   contemplate a more active role in the investigation that was

25   ongoing at that point.
```

1          THE COURT:  And everything that's at issue here is

2    work product; is that correct?

3          MR. CASAS:  Yes, Your Honor, it is.

4          Mr. Sellinger is more in the weeds on this

5    particular issue.  But, yes, I mean, we're not talking about

6    communications with Mr. Campanelli, we're talking about the

7    work that he did after completing the work on the nine

8    stores, which we're trying to determine how much to repay

9    those impacted team members and who they might be.

10          MR. SELLINGER:  That's correct, Your Honor.

11          THE COURT:  And can you share with me what, if

12   anything, of Mr. Campanelli's work product has been

13   disclosed with respect to the nine stores?

14          MR. SELLINGER:  Yes, Your Honor.

15          This is David Sellinger.  I'm prepared to speak to

16   this issue.  Thank you, Judge.

17          THE COURT:  Okay.

18          MR. SELLINGER:  We've given very extensive

19   discovery with respect to the nine-store payment project,

20   which is the scope of what we let Mr. Campanelli talk about.

21   We basically went to Deloitte and asked for everything, and

22   I think it can fairly be said that we gave them everything

23   that Deloitte had.

24          Deloitte basically -- they were charged with

25   helping the company effect its business decision, that they

1    wanted, as a business matter, to pay all the people in the

2    nine stores who were potentially impacted, and they asked

3    Mr. Campanelli, who was already on the scene, to do that.

4            Initially, there was a highly detailed memorandum,

5    which is called the Grapefruit Memo, which described the

6    parameters by which they were going to go and look at these

7    different time entries and determine how to categorize them.

8            And basically, the business decision, Judge, was

9    that if they put things into three different buckets,

10   whether there was no documentation, whether there was some

11   documentation but they thought insufficient documentation to

12   support the time transfer or whether there was documentation

13   that was sufficient to support the time transfer -- and

14   that's all they did.  They never really got to the ultimate

15   issue of whether or not the transfer failed or --

16           THE COURT:  I'm sorry.

17           Was that done for only nine stores or more than

18   nine stores?

19           MR. SELLINGER:  The analysis that was originally

20   done with respect to the payment project was done for the

21   nine stores.

22           THE COURT:  Okay.

23           MR. SELLINGER:  And the reason it was -- and the

24   reason it was done for the nine stores, Judge, was because

25   the company had decided that it was as to those nine stores

1   that they wanted to make sure that people who are

2   potentially impacted were paid.

3           THE COURT:  And the analysis that you've described

4   of three different buckets, was that done with respect to

5   other stores?

6           MR. SELLINGER:  It was, Your Honor, but for

7   different purposes.

8           THE COURT:  And was that -- any of that analysis

9   shared with a business -- decision-makers for business

10  purposes?

11          MR. SELLINGER:  No, Your Honor, because it had to

12  do with the litigation.

13          The original -- the company decided it was going

14  to pay these people, and that's the reason why they already

15  had forensic accountants who were there as consultants on

16  scene and they were just tasked with that project.

17          You know, when they identified -- and there were

18  additional steps.  It wasn't just looking at those buckets,

19  it was, how much would they have been paid if, in fact, they

20  weren't given a payment that they should have gotten under

21  gainsharing.  So that, I'm sure, ultimately went to

22  businesspeople, because they had to be paid, and the company

23  did pay them.

24          After the nine payment -- the nine-store payment

25  project was completed, Mr. Campanelli and his people went

1    back to being litigation consultants for the purposes that

2    they were originally hired, answering to Mr. Casas and to

3    Mr. Hempfling, you know, and to others on the team, and they

4    did analyses, the only purpose of which was to assist

5    Whole Foods in defending this case.  It was never -- there

6    was no further analysis at any time that I'm aware of as to

7    payments, how would you calculate payments to people on

8    teams other than the affected --

9             THE COURT:  I'm sorry, has anything been withheld

10   based on attorney-client privilege or work product relating

11   to the nine stores and Mr. Campanelli's work?

12            MR. SELLINGER:  To the best of my knowledge,

13   Your Honor, the only things that were withheld were

14   approximately six to nine pages of these PowerPoints, the

15   rest of which were produced, and we logged those on a

16   privilege log.  And the reason those weren't produced is

17   because they really spoke to ongoing efforts that related to

18   litigation defense and not to the nine-store payment

19   project.  So it was really pages or portions of pages within

20   those PowerPoints.

21            But as I started to say, Your Honor, there were

22   hundreds of -- you asked what was produced.  In addition to

23   this initial memo, there were hundreds of reports that were

24   produced that kind of looked at the fruits of their efforts

25   at different levels in looking at transfers and in

1    calculating payments and in calculating an additional

2    payment for the time value, an enhancer payment, and things

3    like that, and all the work papers associated with what they

4    found as to what buckets they fit in at the nine stores and

5    what the payment would be, how it was calculated, were all

6    produced.

7                THE COURT:  Okay.

8                I'll just make one more observation and then I'll

9    turn to plaintiffs' counsel.

10               I think this is a hard issue, I really do.  I've

11   spent a decent amount of time with this and the other issue

12   over the last few days.

13               And the one aspect of this that I don't know

14   that -- that is important, at least in the Campanelli

15   context, is that work-product waiver is not as -- is not as

16   rigorous, if you will, than waiver of attorney-client

17   privilege communications.  In other words, it's a lot easier

18   to waive and have found waived attorney-client

19   communications and related subject matter to those

20   communications.

21               Look, the Circuit has said in the *In Re: Grand*

22   *Jury* case and, I think, most recently in the *Williams &*

23   *Connolly* decision, is that, when it comes to attorney --

24   excuse me, attorney work product, because the underlying

25   principles and values are different, even disclosure -- and

1    this is from circuit cases -- even disclosure to adversaries

2    may not result in subject matter disclosure of the

3    attorney-client work product -- excuse me, the attorney work

4    product.

5             So what I'm trying to figure out is, what lines --

6    where the lines are to be drawn here and whether what Mr. --

7    what Whole Foods has done here with Mr. Campanelli does

8    affect any waiver more broadly than his work on these nine

9    stores.  So that's not an answer, it's just an observation.

10            So, Mr. Zambri and Mr. Klaproth, do you want to be

11   further heard about this?

12            MR. SELLINGER:  Yeah, can I speak to that issue?

13            I thought I was just answering your prior question

14   as to what documents were produced, but can I speak to that

15   issue either before or after you hear from Mr. Zambri and

16   Mr. Klaproth?

17            THE COURT:  Yeah, why don't you go ahead,

18   Mr. Sellinger, and then I'll turn to the plaintiffs'

19   counsel.

20            MR. SELLINGER:  Your Honor, I heard your comment

21   that he came in as a consultant and he was already a

22   consultant and they had him do this payment project.  That

23   is true.

24            But the payment project was for a business

25   purpose.  And I don't know that, given that purpose, that

1    that particular project would have been entitled to work

2    product protection, because that really was why it was done,

3    it was to figure out how to implement Whole Foods' business

4    decision to pay people who were substantially impacted, and

5    Campanelli and his team did that.

6            When that was over, they shifted gears back to

7    plan A, which was to be litigation consultants.  And the

8    focus of their efforts and the various things they did was

9    to help us defend the case, and that's very different.

10           And I don't see how the fact that he was produced

11   as really the only fact witness who could answer the

12   question that Mr. Klaproth and Mr. Zambri had asked, which

13   is, how were these guys paid, we want the details, because

14   Mr. Grady really wasn't able to answer them, and Whole Foods

15   had essentially outsourced that function to Mr. Campanelli's

16   team, should not result in a waiver with respect to

17   litigation-centered activity, which is what the --

18           THE COURT:  Yeah.

19           I mean, look, Mr. Sellinger, I hear you and I

20   appreciate the clarification.

21           I think what certainly -- there's -- it hasn't

22   been documented that way, let's put it that way, at least

23   based on the record in front of me.

24           I mean, I've got two engagement letters, one with

25   the original law firm, and the other when Greenberg arrives

1   on the scene, and neither of those engagement letters carve

2   out Mr. Campanelli's role as a fact witness or somebody

3   whose work is being done for business purposes.  And so

4   that's the reason why I think there's some ambiguity here in

5   his role.

6           MR. SELLINGER:  Yeah.

7           And, Your Honor, I wouldn't say that he was

8   originally kind of engaged to be the fact witness, it just

9   worked out that way.

10          And if you look at the date of the two letters, on

11  December 14th, which was, I think, the day following, you

12  know, one of these articles that appeared, he was hired as a

13  litigation consultant at around -- and the testimony from

14  Mr. Campanelli at his deposition was -- at around that

15  time -- and I think he said in his deposition testimony the

16  second week in December, you know, they decided, we need to

17  get these people paid.

18          THE COURT:  And what role did he have, if any, in

19  connection with the investigation, the internal

20  investigation?  What was his role in connection with the

21  investigation?

22          MR. SELLINGER:  I would say -- and others may

23  disagree and think I'm not being accurate.  I would say

24  zero.  That was not his task.

25          Mr. -- you know -- there's been testimony.  And

1  Mr. Casas was talking about it already, you know, that there

2  were people who would -- Mr. Grady had already started --

3  they were doing their investigation.

4         Mr. Campanelli testified at his deposition that he

5  was at a meeting, either on a conference call or at a

6  meeting with Susan Anderson, where she, you know, mentioned

7  to him the Whole Foods investigation.

8         At the time, he was still, you know, actively

9  involved in supervising this team that -- I think he was

10  still actively involved at that time -- that was, you know,

11  doing this payment project.  And he had nothing to do with

12  the internal investigation at Whole Foods.  What he had to

13  do with was assisting us.

14         THE COURT:  Okay.

15         MR. SELLINGER:  And, you know, by that time,

16  Epstein Becker & Green was no longer in the picture, so that

17  meant reporting to Mr. Casas, Mr. Hempfling, and the others

18  on the litigation team.

19         THE COURT:  Okay.

20         Mr. Klaproth, Mr. Zambri, any reaction, response?

21         MR. ZAMBRI:  Good afternoon, Your Honor.  This is

22  Salvatore Zambri for the Molocks plaintiff.

23         Your Honor, I have lots of thoughts.  And forgive

24  me if I'm speaking a little bit as a stream of conscious,

25  because there's been a lot of issues that have been raised,

1    but let me just make a couple threshold points if I might.

2           First, a lot of what Mr. Sellinger said to you

3    today is the first we're ever hearing of it.  It's not in

4    the briefing, it's not in Mr. Casas's declaration.  So yet

5    it's new argument that they're coming up with after the

6    fact.

7           And so I know the Court has made a ruling

8    regarding Mr. Casas's declaration, which was a late

9    declaration, but there shouldn't now be even additional

10   non-sworn declarations that ought to be, I would

11   respectfully submit, part of the consideration here.

12          And this idea of a nine-store payment project,

13   that is a new thing.  The first time anyone ever talked

14   about that was in Mr. Casas's reply when he raised his

15   declaration for the first time.  Mr. Campanelli did a manual

16   transfer analysis that he explained in his deposition, which

17   was consistent with a Grapefruit Memo that he prepared.

18          And the idea that this -- he was just around for

19   this nine-store payment project is a fiction.  It's a

20   brand-new, clever legal argument to get the Court to think

21   that there's some bright-line demarcation between nine

22   stores and other stores, but it's a fiction.

23          We know it's a fiction because they told the world

24   they did a universal investigation and decided that only

25   nine stores were involved, yet Mr. Sellinger wants you to

```
 1   believe that this gentleman was only involved in nine
 2   stores -- this nine-store payment project.  His deposition
 3   testimony tells us differently.
 4          THE COURT:  Well, do you -- well, let me ask you:
 5   Why do you say his deposition testimony says differently
 6   than he was involved in anything more than the nine store --
 7   or what they call the nine-store project?
 8          MR. CASAS:  Your Honor, it's --
 9          THE COURT:  I mean, for example, I asked, was he
10   involved in the investigation, and Mr. Sellinger said no.
11   So do you have reason to believe that his role was more than
12   what Mr. Sellinger has cabined it to be?
13          MR. ZAMBRI:  Yeah, I don't accept that,
14   Mr. Sellinger's statement.  In his deposition,
15   Mr. Campanelli said that he created spreadsheets.
16          Now, I'm not willing to concede, but I'm willing,
17   for sake of argument, to accept Mr. Casas's representation
18   that that did not -- none of those spreadsheets actually
19   referenced payments that would be owed to people.  But he
20   used the same data that Mr. Grady gave him for the nine
21   stores to create spreadsheets regarding several other stores
22   throughout the country, the scope of which I don't yet know,
23   but the scope of which I think I deserve to know for the
24   merits of this case.
25          And my assumption is going to be that we're going
```

1    to see a lot of the same spreadsheets that we saw with

2    respect to the nine stores related to other stores.  So

3    under his sworn testimony, he's created those things, and

4    those are the very documents and issues that opposing

5    counsel forbade him to speak about in his deposition.  So

6    just because there's not a spreadsheet or maybe even a

7    finding by him about money being paid to a particular other

8    store, we're not saying that that's all that we want.  We

9    want all the other data analyses.

10            And, Your Honor, I'll make the point that the case

11   law is clear, we believe, through the briefing that we've

12   provided, that if you're going to walk that tight rope of

13   hiring the same darn person, let alone a relation who's

14   going to be a testifying exert and a consulting expert,

15   you're going to be held to strict scrutiny.  And the law

16   favors disclosure whenever there is ambiguity.

17            And if this case -- if they've made it so hard to

18   figure it out, by definition, at best for them, it's

19   ambiguous, which favors disclosure.  And the scope of the

20   disclosure is everything that's reasonably related to the

21   subject matter.  And that's all we're asking for.

22            And I am sure that these other documents are

23   reasonably related to the same data, because he told us it's

24   based on the same data he got from Mike Grady to handle the

25   nine stores, for which he came up with many conclusions.

1          So, Your Honor, I can keep going.  But, you

2    know -- the *Trigon* case, I think, is a really useful case.

3    That's the case where the defendant used a hired expert who

4    owned a consulting corporation, and the Court warned the

5    defendant and said, you're playing with fire.  And it turned

6    out that the ruling was, you had to disclose it, because

7    there were some documents that were exchanged between the

8    consulting and the so-called -- the non-testifying

9    consulting versus the testifying expert.  That stuff becomes

10   disclosed.  Here, there's not even a one degree of

11   separation.  It's the same man.  It's the same man doing the

12   same subject-matter work.

13          And for those reasons and others that we've

14   briefed, Your Honor, unless you have some questions, there

15   is no doubt, I'll just finally add here, that this is

16   tactical.

17          Mr. Sellinger's comment to you a moment ago that

18   we didn't set out to have him be a fact witness, it just

19   worked out that way.  You know why it worked out that way?

20   Because they felt tactically it was going to be better for

21   Whole Foods to do it that way.

22          And he should have been disclosed in their initial

23   disclosures, and so they have played with fire.

24          THE COURT:  When was he first disclosed to you and

25   in what context?

1          MR. ZAMBRI:  He was disclosed to us, Your Honor,

2     at a status conference -- and, Mr. Casas, you probably have

3     the date handy -- but it was late in the game when they

4     notified us for the first time.  Brendan, if you could chime

5     in, or, Greg, I don't want to give the wrong date.  I can

6     look it up in my computer; I have it somewhere, but it was

7     very, very late.

8          Brendan, Greg, please help me answer that question

9     for the Court, if you can.

10          MR. CASAS:  I don't recall the date, Your Honor,

11     but it was temporally after the lawsuit has been filed for a

12     while.

13          But it was actually, I believe, sometime in April

14     of 2020.  But the record will reflect it; I don't remember.

15          MR. HEMPFLING:  This is John Hempfling.

16          I'm sorry to chime in, but I believe this issue

17     first came up during Mike Grady's deposition.  Sal, if that

18     sounds right to you.  And it would have been potentially at

19     the status conference following Mike Grady's deposition; is

20     that right?

21          MR. KLAPROTH:  According to my records for the

22     Vasquez case, ECF No. 103, the Joint Status Report at page 5

23     is the first time Whole Foods disclosed Mr. Campanelli as a

24     knowledgeable witness.

25          MR. ZAMBRI:  Do you have that date, Mr. Klaproth?

1          THE COURT:  I'm sorry, that's -- Mr. Klaproth,

2     could you just repeat?  You said JSR 103?

3          MR. KLAPROTH:  Yes, ECF 103 is the Joint Status

4     Report in Vasquez.  It's on page 5.  It was February 5th,

5     2021.  And Whole Foods identified Mr. Campanelli, quote, "as

6     a knowledgeable witness," and as a potential "hybrid expert

7     and fact witness."

8          MR. SELLINGER:  And the reason, Your Honor, was

9     because plaintiffs had identified that they wanted a witness

10    to testify about the payments.

11         MR. ZAMBRI:  Your Honor, I mean, really, is that

12    why?  I mean, that's in our complaint.  I mean, that's in

13    our initial discovery.  That's not an excuse for not

14    proffering this, man.

15         But putting that aside for a moment, okay, he's

16    late, we got him.  But the idea that he sort of just became

17    a fact witness and, therefore, we're not waiving what

18    otherwise would have been a work-product privilege, there's

19    a disconnect there, there's a massive disconnect there.

20         They waived it.  And unless the Court sees

21    something in that retention agreement, which I haven't seen,

22    and from what I'm hearing, I don't think it exists, where

23    this line of demarcation that Mr. Casas talks about for the

24    first time in his declaration, some payment project line of

25    demarcation, some further line of demarcation that limits

1    his -- the scope of his consulting -- I'm sorry, the scope

2    of his expert testimony, from December 16th to some month in

3    2017 and nothing beyond that, that's a legal fiction,

4    there's no evidence before you of that.

5              And so because it's so disfavored for two people,

6    let alone one, to wear two hats, and because there is an

7    avalanche of ambiguity, if not clear evidence of the

8    non-existence of any line of demarcation, and given the

9    importance of that information to the merits of this case,

10   we would ask that the Court order them to produce all that

11   information, as set forth in our brief.

12             THE COURT:  One last question:

13             Mr. Sellinger, is there any documentation, to your

14   knowledge, of one of two subjects; one, that defines

15   Mr. Campanelli's work that was ultimately disclosed to

16   decision-makers, business decision-makers.  You've said that

17   Mr. Campanelli did the nine stores, it was because they made

18   the decision to repay folks.  Is there anything, paperwork,

19   that shows him hired for that capacity, one; and two is -- I

20   suppose the related question is, is there any documentation

21   of Whole Foods making that decision?  Or maybe it's not in

22   an engagement letter or something like that, but it's in

23   some document that reflects a decision being made to take

24   Mr. Campanelli's work and use it for a business purpose?

25             MR. SELLINGER:  Again, let me start with the

1    second, Your Honor.

2              I would be highly surprised if there was any

3    document by Whole Foods making that decision, you know, that

4    they were shifting Mr. Campanelli for business purposes.

5              I do believe, and I could be incorrect, but I was

6    present at the time, that this was a decision that was made

7    by litigation counsel, inside and outside the company, in

8    response to plaintiffs' discovery request, where

9    Mr. Campanelli was just the most obvious witness.  Turning

10   to -- so I don't think there's any documentation about that.

11             And I'm not suggesting that there's any

12   document --

13             THE COURT:  Is there any deposition testimony you

14   can point to about the decision to turn Mr. Campanelli's

15   work product over to the businesspeople, the business side

16   of the equation?

17             MR. SELLINGER:  None that I can recall.

18             The only relevant deposition would have been

19   Mr. Campanelli's.  And there's certainly repeated testimony

20   by Mr. Campanelli over and over again in response to my

21   opponent's questions, that the scope -- that that part of

22   his work that was related to the nine-store payment project

23   was to accomplish Whole Foods' business decisions that it

24   wanted to find out how much it would have to repay to the

25   employees in that store -- in those nine stores.

1          And in terms of the documentation, I don't know

2   how many business decision-makers ever would have seen, but

3   we have produced, in response to your question, what

4   documentation is there as to -- that was disclosed to

5   decision-makers about the work on the nine stores.

6          I'm not suggesting for a moment that Mr. -- there

7   was ever a discussion of kind of a separate retention of

8   Mr. Campanelli for that purpose, but there were a set of

9   PowerPoints that were for purposes of discussion with

10  Whole Foods, you know, relating to the nine-store payment

11  project, and all of those -- so those show you the

12  communications, Judge, to the extent that there were any

13  communications during this project, I think those are, at

14  least the primary ones -- and those show you what

15  Mr. Campanelli was telling Whole Foods about the nine-store

16  payment project, and they were PowerPoints prepared for

17  counsel and given to counsel.

18          But even then, Judge, I think, again, I come back

19  to, no, he wasn't separately hired for that, he was just

20  there.  But to the extent that that was for a business

21  purpose, I don't know that that would even qualify for

22  attorney work product protection under Rule 26.

23          And then the only other thing I would add,

24  Your Honor --

25          THE COURT:  I guess what I would say in response,

1   Mr. Sellinger, is, if someone is hired as a litigation

2   consultant and then the decision is made at some point to

3   use that person for business purposes as well, the owner of

4   the privilege runs a real risk that you're playing fast and

5   loose with the privilege, the work-product privilege.

6          I mean, if you hire somebody to be a litigation

7   consultant, as this person was, I don't think there's any

8   dispute about that, and then somewhere along the way,

9   whether it's litigation counsel or the businesspeople at

10  Whole Foods make the decision, well, let's take some of the

11  work that he's done and use it for some of our business

12  purposes, that's a problem.  On the other hand, if the

13  record were, well, let's hire Mr. Campanelli separately and

14  have him just do a project for the business folks and report

15  to the business folks, that's arguably more defensible.

16         But it feels like this is the first, the former

17  scenario, much less so the latter scenario, which is that

18  you all were looking across and saying, all right, we need

19  somebody to do a project, we've already got Campanelli,

20  let's hire him.

21         Rather, it seems like what happened here is that

22  Campanelli was doing his work for the lawyers, at the

23  direction of the lawyers, and then the business folks said,

24  you know what, we need Campanelli's work to pay these

25  workers, and that's what it feels like to me.

1          MR. ZAMBRI:  Well, Your Honor, can I jump in and

2    make a point?

3          THE COURT:  Yeah, last point, because I want to

4    wrap this up and figure things out.

5          MR. ZAMBRI:  Your Honor, I think you said it very

6    succinctly there.

7          And just to put some icing on that, we know that

8    they did that with respect to more than the nine stores.

9    I mean -- well, they concede they did it for the nine stores

10   as a business purpose.  All the information they provided to

11   us was provided to executives at Whole Foods.

12         And the other stuff that he did, I just -- I'm

13   unwilling to accept that they never saw it; that somehow it

14   was siloed; all these other spreadsheets for all this other

15   work for which they paid Deloitte, I imagine, a ton of

16   money, respectfully deserved, that they're going to just

17   silo it between him and some attorneys and not share it with

18   executives for business purposes.

19         But I don't even have to worry about that too

20   much, even though it's unbelievable to me that that's the

21   case, because they waived the privilege, because this man is

22   the same person doing multiple things.  And they divulged

23   stuff for tactical reasons.  Now anything that's related to

24   that subject matter should be discovered.

25         MR. KLAPROTH:  Your Honor, could I just make a

1    point of clarification, too, just briefly?

2            Mr. Campanelli testified nowhere in his deposition

3    about a nine-store payment project.  I just want to make

4    sure that point's clear that this is only a categorization

5    that was done after the fact during briefing and today.

6            One other thing, too, is, Mr. Campanelli produced

7    three different types of spreadsheets:  A manual transfer

8    analysis is the first; the second is a summary of that

9    manual transfer analysis for each store; and then the third

10   was the payment analysis for each store.

11           And so when I asked him, you know, did you

12   produce -- did you create spreadsheets for the manual

13   transfer analysis for other stores than the nine?  That's

14   when there was objections.  And it did appear to be the

15   existence of documents relating to the manual transfer.

16           So we're not even talking about the payment

17   amount.  We're talking about the analysis of transfers of

18   labor, and in my case it's particularly relevant to whether

19   those transfers occurred in stores other than the nine.

20           So those are the only points I just wanted to make

21   briefly.

22           MR. ZAMBRI:  And, Your Honor, you asked a question

23   about the record, Your Honor, whether we established a

24   record in deposition about business purposes.

25           Just so the Court knows, I asked him, and I'm sure

1    Mr. Klaproth did, too, multiple times, you know, did you

2    create a spreadsheet, a PowerPoint like this related to the

3    other stores?  Don't answer that question.  Did you create

4    spreadsheets?  Yes, I did.  Where did you get the data from?

5    Mike Grady, yes.  Which stores did they pertain to?  I'm not

6    going to answer that question -- well, he was instructed not

7    to answer that question.

8              So we tried to get to the heart and the foundation

9    of all of the business purposes; we were shut down at every

10   turn, which I think tells you something.

11             THE COURT:  All right.

12             MR. SELLINGER:  Your Honor, I would just add one

13   point, if I could.

14             What's really totally lacking from this whole

15   discussion is any discussion of exceptional circumstances

16   under which it would be impractical for them to replicate

17   any of the work that Mr. Campanelli did.

18             We're taking about, for the most part, data

19   analysis --

20             THE COURT:  Yeah, I don't know --

21             MR. SELLINGER:  -- and there's no reason --

22             THE COURT:  Yeah, I don't know that exceptional

23   circumstances are the standard here.  That's not what we're

24   being -- I'm not being asked to acknowledge the work-product

25   privilege but rule that exceptional circumstances exist to

1    nevertheless compel disclosure; rather, the issue is waiver.

2           MR. HEMPFLING:  Your Honor, if I can just make one

3    quick point.

4           As you look at the Epstein Becker letter versus

5    the letter to Greg Casas at Greenberg Traurig, there's a

6    clear demarcation, and I think it's been muddled here, in

7    that when Epstein Becker was part of the investigation, what

8    they were doing was for the businesspeople, and litigation

9    had nothing to do with it, we came in -- so they were doing

10   that role, they were doing the repayment role.

11          At that point as the repayment was going on,

12   litigation got involved, and then we took over Deloitte from

13   that.  So the separation point, the demarcation point is

14   when we came in and started doing work forward, that's the

15   work we're saying is consulting only.

16          This all came up at the --

17          THE COURT:  I hear you, Mr. Hempfling.

18          I think my problem is that the only people that

19   are telling me that are the lawyers.  And not to suggest

20   that that's not worth something, but you haven't put a

21   single document in front of me to establish that.

22          I mean, the only documents that are in front of me

23   are the two engagement letters.  The first one clearly

24   demarcates him and defines him to be a consulting expert.

25   I don't think there's any doubt about that.  Nobody's really

1    argued otherwise.  But it appears that somewhere along the

2    way, Whole Foods made the decision to also use him in a

3    business sense.  I think that's just the reality of it.

4              MR. ZAMBRI:  Your Honor, may I -- I'm sorry.

5              THE COURT:  So anyway, look, I think I've heard

6    enough.  I need to think about this.

7              MR. ZAMBRI:  May I mention one thing, Your Honor,

8    just for the record, for preservation of my interests?

9              THE COURT:  Somehow I doubt that you've not left

10   anything unpreserved.  But if you want to do that, go ahead,

11   Mr. Zambri.

12             MR. ZAMBRI:  Well, I appreciate that.  Thank you,

13   Your Honor.

14             But just with respect to Mr. Hempfling's comments,

15   just to preserve my record, I would ask that the Court not

16   accept his new declaration, which is not a sworn statement,

17   as additional evidence of somehow favoring their decision.

18   It should have been in the earlier evidence provided to the

19   Court.

20             THE COURT:  I understand.

21             All right.

22             Can I just ask on the other issue of getting those

23   privilege log documents, what's a reasonable time to expect

24   those?  Today's Friday, the 5th.  Can we get those by

25   mid-week?  Is that something you can put together and put in

1    a FedEx envelope?

2              MR. CASAS:  I believe so, Your Honor.  I would

3    have to talk to Mr. Hersh, and then our paralegal,

4    Zach Douglas, who's the keeper of these kind of documents.

5    I think that's possible.  If not, I'll notify the Court.

6              THE COURT:  Look, you know, I've let all of this

7    sit longer than I would like.  And I know you all have a

8    deadline coming up, so I don't want to be responsible for

9    the --

10             MR. SELLINGER:  Your Honor, if I may, can I

11   address two housekeeping issues which I need to ask you

12   about as long we're in front of you, please?  This is David

13   Sellinger.  One's a scheduling issue.

14             THE COURT:  Go ahead.

15             MR. SELLINGER:  We need to ask for a 30-day

16   extension on our expert report in the Vasquez case.  I spoke

17   to Mr. Klaproth, who agreed to the extension.  We need it to

18   get additional Kronos data.  And we thought it would be easy

19   and we've been working on it for months.  It turns out that

20   we sort of finally have it today, but we didn't have it

21   until today, despite ongoing efforts from us.  And our

22   expert hasn't, therefore, had a chance to do the analyses

23   that he needs to do that will be based on the Kronos data.

24             And for that reason, I ask for a 30-day extension

25   on our expert report, and it will not change any of the

1    other -- I mean, it will change the dates for expert

2    discovery, but it won't change the trial date or any of the

3    other dates in the Vasquez case.  That's housekeeping.

4           MR. KLAPROTH:  Your Honor, if I could just respond

5    briefly to that.

6           We just learned about this issue yesterday.  And

7    I was hoping not to open this can of worms, as Your Honor

8    already has enough in front of him.

9           I have no problems with extensions for deadlines

10   or anything like that.  But the reason I do have a problem

11   with, and that's, all of a sudden, there's this new data,

12   all this new data and a new system that they've unearthed,

13   and now they have a new witness that they want to use.  And

14   so it's basically a brand-new defense with new evidence

15   that's being disclosed outside of discovery, and so I do

16   have an issue with that.

17          And maybe it's not appropriate now, but we would

18   be moving to strike any sort of new data.  I mean, we've

19   spent hundreds of hours analyzing Kronos data.  And now that

20   we're just learning yesterday that there's a new system at

21   the close of discovery -- after discovery is something I do

22   have an issue with.

23          So I do object to that.  I don't object to the

24   extension, though.

25          MR. SELLINGER:  Okay.

1            MR. ZAMBRI:  Your Honor, this is Salvatore Zambri,

2     if I can add something.

3            I learned about this, I think, even later in the

4     day than Mr. Klaproth did.

5            It is my understanding that Whole Foods wants to

6     dump a massive amount of new data on us.

7            And despite Mr. Sellinger's comment that they've

8     been trying to get this for months, his email to me

9     yesterday tells me that he only recently learned about a

10    whole new software system, a whole new Kronos software

11    system.

12           I am nervous that this is -- if the Court were to

13    allow this kind of thing to happen at this phase --

14           THE COURT:  Let me tell you, I don't -- you know,

15    if this is about 30 days to finish up an expert report and

16    Mr. Klaproth doesn't object, it's fine by me, if it doesn't

17    affect any other deadlines.

18           But we are so far along in this case that if

19    there's going to be new repositories of evidence that are

20    coming into the mix, you can rest assured I'm going to have

21    real doubts about the use of that evidence.

22           I'm not making any promises, but this schedule is

23    sticking.  And, you know, the length of this discovery

24    period is on me as much as it is on anybody, but I'm done,

25    this case has got to move forward.  And if new evidence in

 1   large volumes is being dumped on other side, it's not going

 2   to sit well with me, okay?

 3           What's the second issue, Mr. Sellinger?

 4           MR. SELLINGER:  Yes, that's the second issue,

 5   Your Honor.

 6           We have discovered an additional application,

 7   which we were previously unaware, that contains a lot of

 8   details that go to the heart of the issues about the manual

 9   transfers.  And I know it's late in the afternoon.  And if

10   you want us to do this at a different time or in a different

11   way, we are happy to do that, Your Honor.

12           What I propose to Mr. Klaproth and Mr. Zambri --

13           THE COURT:  Well, this is more than a housekeeping

14   issue.  I can tell you, you can talk to opposing counsel

15   about it and get on my calendar.  But if you're telling me

16   Whole Foods, after years of litigating this case, is only

17   now discovering another set of data, you're not going to get

18   a very sympathetic ear and -- you're not going to get a very

19   sympathetic ear from me.

20           We have been involved in discovery now for --

21   maybe we've been pushing two and a half years, and the idea

22   that this brand-new dataset has just become available and

23   known to counsel, even if that's accurate, it's not going to

24   get a lot of sympathy from me.  So you all can talk about

25   it, but that's my view at this point.

1          MR. ZAMBRI:  Your Honor, just so the Court knows,

2    in the email I received yesterday from Mr. Sellinger, the

3    software is called Kronos Workforce Central.  How in the

4    heck does Whole Foods not know about --

5          THE COURT:  I'm not interested right now.

6          You should all talk about if it's an issue.  But

7    I'm telling you right now, I'm not at all inclined to

8    entertain new evidence at this point.  We opened up

9    discovery for limited purposes a few months ago, about four

10   weeks ago, very limited purposes.  There was an emergent

11   situation involving an expert if memory serves -- no, that

12   was a different case, sorry -- but, nevertheless, it was

13   limited purposes.

14         There's no way -- I'm not -- I'm done, it's late

15   in the day, we've been at this for almost two hours.  If you

16   want to set a separate hearing for this, that's fine, but

17   I'm not -- now is probably not the time you want to try and

18   sell me on this, let's put it that way, okay?

19         MR. CASAS:  Understood, Your Honor.

20         What we'll do is we'll set up a time to meet and

21   confer with Mr. Zambri and Mr. Klaproth, probably even share

22   screens so they can see what it is we're talking about.  And

23   then if we can't reach a resolution, we'll contact

24   Mr. Douyon for a discovery conference.

25         THE COURT:  Okay.

1          So we'll look forward to getting those papers next

2     week, and then I'll continue to think about this Campanelli

3     issue and I will give you a decision very soon, okay?

4          Thanks, everyone.

5          Have a nice weekend.

6          (Proceedings concluded at 3:51 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

   I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.

   Please note:  This hearing occurred during
the COVID-19 pandemic and is therefore subject to the
technological limitations of court reporting remotely.


Date:__November 10, 2021____   /S/__William P. Zaremba_____

          William P. Zaremba, RMR, CRR

COURTROOM
DEPUTY: [1]  4/2
MR. CASAS: [24]
16/15 17/18 19/1 20/18
21/25 22/11 23/1 29/22
31/7 33/20 34/15 34/18
35/8 35/13 36/24 38/5
40/12 40/25 41/16 42/3
52/8 55/10 66/2 70/19
MR. HEMPFLING: [2]
55/15 64/2
MR. HERSH: [4]  35/17
37/2 37/13 37/18
MR. KLAPROTH: [19]
24/5 25/1 25/3 25/11
25/15 26/22 28/12
31/10 31/24 32/6 32/18
33/5 36/10 37/10 37/15
55/21 56/3 61/25 67/4
MR. SELLINGER: [22]
42/10 42/14 42/18
43/19 43/23 44/6 44/11
45/12 47/12 47/20 49/6
49/22 50/15 56/8 57/25
58/17 63/12 63/21
66/10 66/15 67/25 69/4
MR. ZAMBRI: [13]
50/21 52/13 55/1 55/25
56/11 61/1 61/5 62/22
65/4 65/7 65/12 68/1
70/1
THE COURT: [67]
4/13 17/4 18/9 19/15
21/5 22/9 22/13 23/23
24/18 25/2 25/4 25/12
26/14 27/20 29/7 30/25
31/16 32/5 32/10 32/23
34/13 34/16 34/24
35/12 35/14 36/19
36/25 37/6 37/19 38/6
40/19 41/2 42/1 42/11
42/17 43/16 43/22 44/3
44/8 45/9 46/7 47/17
48/18 49/18 50/14
50/19 52/4 52/9 54/24
56/1 57/12 58/13 59/25
61/3 63/11 63/20 63/22
64/17 65/5 65/9 65/20
66/6 66/14 68/14 69/13
70/5 70/25

'
'heart [1]  7/5

/
/S [1]  72/10

0
0213 [1]  2/15
07932 [1]  2/10

1
10 [1]  72/10
100 [1]  2/14
103 [3]  55/22 56/2 56/3
112 [4]  1/10 4/5 12/14
14/22

129 [1]  15/11
12th [1]  2/19
132 [1]  35/9
132-1 [1]  35/10
13th [1]  5/8
142 [1]  5/1
14th [1]  49/11
16-2483 [2]  1/4 4/3
16th [1]  57/2
17-112 [2]  1/10 4/5
19 [1]  72/6
1909 [1]  2/19
1919 [1]  1/19
1981 [1]  7/4

2
20001 [1]  3/5
20006 [1]  2/20
20007 [1]  1/24
20036 [1]  1/20
2016 [2]  5/8 26/25
2017 [3]  40/14 40/18
57/3
202 [4]  1/20 1/24 2/20
3/5
2020 [1]  55/14
2021 [3]  1/7 56/5 72/10
2050 [1]  2/4
2141 [1]  1/23
2344 [1]  1/24
2483 [2]  1/4 4/3
25th [1]  26/25
26 [1]  59/22
2:12 [1]  1/8

3
30 [5]  19/7 20/23 23/9
30/9 68/15
30-day [2]  66/15 66/24
300 [1]  2/4
3030 [1]  1/20
311 [12]  15/4 15/5 16/9
16/10 24/1 34/16 34/19
35/4 35/7 36/15 36/18
37/3
311 documents [1]
19/11
320-7238 [1]  2/5
3249 [1]  3/5
333 [1]  3/4
350 [1]  1/19
3500 [1]  11/4
354-3249 [1]  3/5
360-7925 [1]  2/10
3:51 [1]  71/6

4
400 [1]  2/9
463-3030 [1]  1/20
482458 [1]  27/1

5
500 [1]  2/9
508-1136 [1]  2/20
512 [2]  2/5 2/15
542-0213 [1]  2/15
5th [2]  56/4 65/24

6
608 [1]  8/8
618-2344 [1]  1/24
635 [1]  8/7
656 [1]  7/3
659 [1]  8/8
676 [1]  31/11

7
705 [2]  7/3 8/7
7238 [1]  2/5
78701 [1]  2/5
78703 [1]  2/14
7925 [1]  2/10

8
818 [1]  31/12
828 [1]  2/13

9
973 [1]  2/10
9th [1]  40/18

A
able [3]  10/13 22/16
48/14
about [70]  8/15 9/6
10/15 11/25 14/25 15/2
15/4 17/19 17/25 19/6
19/18 20/7 20/25 21/8
21/17 21/20 23/3 23/13
23/14 28/14 34/14
34/20 35/21 37/3 38/4
38/7 38/9 38/14 39/7
39/17 41/10 41/18 42/5
42/6 42/20 47/11 50/1
51/14 53/5 53/7 56/10
56/23 58/10 58/14 59/5
59/15 60/8 61/19 62/3
62/16 62/17 62/23
62/24 63/18 64/25 65/6
66/12 67/6 68/3 68/9
68/15 68/21 69/8 69/15
69/24 70/4 70/6 70/9
70/22 71/2
above [1]  72/4
above-titled [1]  72/4
accept [4]  52/13 52/17
61/13 65/16
access [1]  30/6
accomplish [1]  58/23
According [2]  15/13
55/21
accountants [1]  44/15
accuracy [1]  15/15
accurate [5]  24/21
24/25 26/7 49/23 69/23
acknowledge [1]  63/24
across [2]  35/10 60/18
act [1]  28/22
acted [1]  26/3
action [3]  4/3 4/5 41/13
active [1]  41/24
actively [2]  50/8 50/10
activity [1]  48/17
actually [11]  8/11 8/13
8/14 10/25 14/2 21/16
21/17 31/2 33/23 52/18

add [4]  54/15 59/23
63/12 68/2
added [1]  41/19
addition [2]  41/10
45/22
additional [7]  41/12
44/18 46/1 51/9 65/17
66/18 69/6
address [2]  36/3 66/11
admittedly [1]  30/20
advance [1]  28/6
adversaries [1]  47/1
advice [17]  17/24 18/1
19/12 20/19 23/2 23/21
26/11 26/11 26/11 28/7
29/2 30/15 30/16 33/24
34/1 34/7 36/3
affect [2]  47/8 68/17
affected [1]  45/8
affidavit [3]  8/22 35/13
36/7
affirmative [2]  9/12
28/22
after [10]  13/6 27/7
42/7 44/24 47/15 51/5
55/11 62/5 67/21 69/16
afternoon [5]  4/2 4/13
4/15 50/21 69/9
again [10]  20/18 21/13
29/5 32/17 34/10 34/21
41/4 57/25 58/20 59/18
ago [4]  41/5 54/17 70/9
70/10
agree [3]  19/15 38/20
41/9
agreed [1]  66/17
agreement [4]  8/21
13/18 14/3 56/21
ahead [7]  4/19 4/21 5/2
31/22 47/17 65/10
66/14
aided [1]  3/7
air [1]  40/15
al [8]  1/3 1/6 1/8 1/11
4/4 4/5 4/5 4/6
Alan [2]  2/3 4/10
all [43]  5/25 9/19 10/7
10/16 12/9 14/23 16/3
16/9 17/9 24/1 30/21
32/7 34/19 35/7 36/20
36/21 38/6 40/19 43/1
43/14 46/3 46/5 53/8
53/9 53/21 57/10 59/11
60/18 60/18 61/10
61/14 61/14 63/9 63/11
64/16 65/21 66/6 66/7
67/11 67/12 69/24 70/6
70/7
All right [1]  63/11
alleged [1]  12/13
allow [1]  68/13
Allshouse [2]  23/9
27/3
alluded [1]  15/8
almost [1]  70/15
alone [3]  37/25 53/13
57/6

along [3]  60/8 65/1
68/18
already [9]  9/18 9/22
43/3 44/14 47/21 50/1
50/2 60/19 67/8
also [13]  6/12 7/14 9/4
9/17 12/20 14/10 17/6
17/7 37/11 37/23 40/13
41/17 65/2
although [2]  16/5
49/8
am [7]  16/12 17/17
20/3 34/24 35/15 53/22
68/12
ambiguity [3]  49/4
53/16 57/7
ambiguous [1]  53/19
Amendment [2]  6/13
7/2
AMIT [1]  1/15
among [1]  23/17
amount [3]  46/11
62/17 68/6
analyses [3]  45/4 53/9
66/22
analysis [13]  30/3 30/5
43/19 44/3 44/8 45/6
51/16 62/8 62/9 62/10
62/13 62/17 63/19
analyzing [1]  67/19
Anderson [16]  16/19
17/25 18/6 20/20 20/25
21/4 21/7 23/16 30/3
50/6
another [4]  26/9 34/12
40/24 69/17
answer [5]  5/16 6/22
24/7 47/9 48/11 48/14
55/8 63/3 63/6 63/7
answered [1]  9/18
answering [2]  45/2
47/13
answers [1]  17/25
any [58]  5/21 5/23 6/5
6/19 7/10 7/20 8/18
8/23 9/5 9/11 9/13 9/23
10/23 10/24 11/8 11/11
11/24 11/24 11/25 12/4
12/20 13/7 13/21 19/20
21/15 21/22 21/24
23/14 25/21 26/5 30/3
31/9 33/15 35/22 39/3
39/13 44/8 45/6 47/8
49/18 50/20 57/8 57/13
57/20 58/2 58/10 58/11
58/13 59/12 60/7 63/15
63/17 64/25 66/25 67/2
67/18 68/17 68/22
anybody [1]  68/24
anyone [2]  6/7 51/13
anything [10]  24/9
36/4 40/9 42/12 45/9
52/6 57/18 61/23 65/10
67/10
anytime [1]  28/11
anyway [2]  31/22 65/5
anywhere [2]  7/23 23/6
AP [9]  5/7 7/23 15/24

**A**

AP... [6] 16/14 17/15
17/21 18/2 21/2 22/3
apart [2] 35/23 39/22
appear [2] 8/19 62/14
APPEARANCES [3]
1/17 1/25 2/22
appeared [2] 5/7 49/12
appears [1] 65/1
application [1] 69/6
applies [7] 6/15 6/16
6/17 6/20 6/23 6/25
27/19
appreciate [3] 37/18
48/20 65/12
approached [1] 5/24
appropriate [1] 67/17
approximately [1]
45/14
April [1] 55/13
are [70] 5/17 5/19 7/22
8/10 9/17 10/5 10/8
10/11 10/16 10/22 11/4
11/6 11/11 11/22 13/18
13/24 14/10 14/18
18/13 18/16 18/24 19/1
19/14 20/5 20/14 20/21
21/15 21/18 22/18
22/23 22/23 23/8 23/12
25/8 28/12 29/22 30/11
30/14 30/17 30/22
30/22 31/8 32/14 32/21
33/9 33/10 33/10 34/7
34/14 34/16 37/3 44/1
46/25 47/6 53/4 53/22
59/13 62/20 63/23
64/19 64/19 64/22
64/23 68/18 68/19
69/11
aren't [1] 6/20
arguable [1] 18/10
arguably [1] 60/15
argue [2] 7/14 11/17
argued [1] 65/1
arguing [1] 16/3
argument [13] 6/18 9/4
11/19 11/19 11/25 12/2
25/5 25/6 25/12 35/24
51/5 51/20 52/17
arguments [1] 7/19
arises [1] 5/25
around [4] 10/5 49/13
49/14 51/18
arrives [1] 48/25
article [5] 5/9 5/18 7/23
8/20 9/1
articles [2] 8/13 49/12
as [97]
as-needed [1] 41/19
aside [1] 21/21 56/15
ask [15] 12/2 15/15
18/9 19/18 29/7 34/13
35/16 36/21 52/4 57/10
65/15 65/22 66/11
66/15 66/24
asked [14] 5/14 11/15
17/11 19/2 26/6 42/21

62/11 62/22 62/25
63/24
asking [2] 11/20 53/21
aspect [1] 46/13
asserted [1] 16/2
asserting [1] 12/18
assertions [2] 17/16
18/10
assessing [1] 13/12
assist [1] 45/4
assistance [1] 41/22
assisted [1] 18/14
assisting [1] 50/13
associated [10] 5/5 6/8
6/9 12/18 15/10 15/12
16/1 16/8 20/15 46/3
assume [1] 8/18
assumption [1] 52/25
assured [1] 68/20
Atlantic [1] 17/1
attached [7] 27/3 33/9
33/23 34/2 34/23 34/23
36/11
attaching [2] 33/2 33/4
attention [2] 7/18 9/7
attorney [15] 16/4
16/21 23/12 27/4 27/5
33/2 36/2 45/10 46/16
46/18 46/23 46/24 47/3
47/3 59/22
attorney-client [8] 16/4
23/12 27/4 33/2 45/10
46/16 46/18 47/3
attorneys [6] 17/3
27/12 28/16 28/25 29/4
61/17
attributable [2] 5/11
8/16
attributed [1] 5/11
attribution [1] 8/12
Austin [2] 2/5 2/14
authority [1] 31/9
automatic [1] 24/20
available [7] 4/15
21/11 25/13 38/25 39/7
39/9 69/22
avalanche [1] 57/7
Ave [1] 1/23
Avenue [1] 3/4
avoid [1] 17/22
aware [3] 17/5 30/25
45/6
away [1] 22/7

**B**

back [5] 21/3 30/14
45/1 48/6 59/18
background [2] 9/9
18/3
balance [1] 5/20
BALLARD [1] 2/18
ballardspahr.com [1]
2/21
Barakat [21] 2/18 4/12
5/1 5/4 5/7 5/14 5/18
5/21 6/1 6/4 6/10 6/21
7/1 7/9 7/15 7/21 8/19

Barakat's [2] 7/17 8/21
barred [1] 6/21
Barrett [1] 3/4
based [13] 8/19 10/14
11/10 11/19 12/1 24/3
30/19 38/2 38/15 45/10
48/23 53/24 66/23
basically [5] 15/7
42/21 42/24 43/8 67/14
basing [1] 17/16
basis [6] 7/22 8/24
12/4 15/13 15/16 41/19
Bates [2] 27/1 37/11
be [77]
bear [2] 40/20 40/22
became [1] 56/16
because [44] 6/25 9/8
9/14 14/9 14/10 16/6
22/6 24/1 24/11 25/10
25/16 27/17 27/23 28/5
29/2 29/4 29/5 29/10
29/11 31/14 32/3 34/10
37/8 39/2 43/24 44/11
44/22 45/17 46/24 48/2
48/13 50/25 51/23 53/6
53/23 54/6 54/20 56/9
57/5 57/6 57/17 61/3
61/21 61/21
Becker [3] 50/16 64/4
64/9
become [1] 69/22
becomes [1] 54/9
been [37] 4/18 9/23
10/23 11/5 14/2 14/19
15/5 19/21 22/16 25/10
31/1 34/3 34/6 34/11
37/8 39/8 41/11 42/12
44/19 45/9 48/1 48/22
49/25 50/25 50/25
54/22 55/11 55/18
56/18 58/18 64/6 65/18
66/19 68/8 69/20 69/21
70/15
before [10] 1/15 5/22
5/24 6/13 12/9 32/25
33/4 40/1 47/15 57/4
begin [1] 16/11
behalf [1] 38/23
behind [1] 30/8
being [16] 4/15 8/15
9/6 27/15 34/4 36/13
39/16 45/1 49/3 49/23
53/7 57/23 63/24 63/24
67/15 69/1
believe [18] 12/4 12/20
14/2 20/22 22/2 22/19
30/11 31/12 34/9 35/10
39/3 52/1 52/11 53/11
55/13 55/16 58/5 66/2
believes [1] 21/18
beneficial [1] 10/1
best [3] 25/12 45/12
53/18
better [3] 13/16 31/1
54/20
between [13] 14/14
16/5 18/7 20/19 20/24

33/3 51/21 54/7 61/17
beyond [2] 39/11 57/3
big [1] 34/17
bit [3] 23/2 32/19 50/24
bklaproth [1] 1/25
black [1] 12/22
blend [1] 37/4
body [1] 31/6
boss [1] 30/20
both [8] 5/9 7/19 8/10
8/10 16/4 16/25 25/22
38/9
bottom [3] 11/8 11/23
17/8
boxes [13] 10/10 10/11
10/12 10/17 11/1 11/4
11/6 11/9 11/9 11/18 11/22
11/24 11/25 12/4
Bradley [1] 8/7
brand [3] 51/20 67/14
69/22
brand-new [3] 51/20
67/14 69/22
breach [1] 23/11
Brendan [4] 1/22 4/8
55/4 55/8
Brendan Klaproth [1]
4/8
brief [6] 15/11 17/8
35/20 37/14 37/15
57/11
briefed [3] 4/17 11/13
54/14
briefing [5] 25/18 33/5
51/4 53/11 62/5
briefly [3] 62/1 62/21
67/5
bright [1] 51/21
bright-line [1] 51/21
bring [2] 27/23 40/13
brings [1] 40/9
broadly [1] 47/8
Brooke [1] 5/11
Brooke Buchanan [1]
5/11
Brown [4] 2/18 4/11
10/5 25/16
brownjay [1] 2/21
Buchanan [29] 5/11
5/19 5/22 6/1 6/6 15/3
15/8 15/16 15/23 17/8
17/12 20/6 20/15 20/21
20/25 21/2 21/4 21/7
21/9 22/3 23/16 23/18
24/2 27/10 28/24 29/18
30/4 30/5 30/19
Buchanan's [4] 16/13
26/5 29/3 39/15
buckets [4] 43/9 44/4
44/18 46/4
bunch [1] 22/6
burden [1] 10/2
burdensome [2] 9/18
9/21
business [26] 26/11
42/25 43/1 43/8 44/9
44/9 47/24 48/3 49/3

85/16 57/24 58/4 58/15
58/23 59/2 59/20 60/3
60/11 60/14 60/15
60/23 61/10 61/18
62/24 63/9 65/3
businesspeople [4]
44/22 58/15 60/9 64/8

**C**

CA [2] 1/4 1/10
cabined [1] 52/12
calculate [1] 45/7
calculated [1] 46/5
calculating [2] 46/1
46/1
calendar [1] 69/15
call [3] 4/3 50/5 52/7
called [3] 43/5 54/8
70/3
came [10] 15/18 15/20
30/14 41/5 47/21 53/25
55/17 64/9 64/14 64/16
camera [2] 22/3 40/23
Campanelli [30] 38/7
38/17 38/25 39/6 42/6
42/20 43/3 44/25 46/14
47/7 48/5 49/14 50/4
51/15 52/15 55/23 56/5
57/17 58/4 58/9 58/20
59/8 59/15 60/13 60/19
60/22 62/2 62/6 63/17
71/2
Campanelli's [9] 42/12
45/11 48/15 49/2 57/15
57/24 58/14 58/19
60/24
Campus [1] 2/9
can [44] 4/22 6/22 7/4
10/5 10/9 11/10 15/14
18/9 20/10 21/25 22/1
22/3 27/15 30/24 36/21
37/16 38/10 38/11
38/11 38/12 38/15 39/1
42/11 42/22 47/12
47/14 54/1 55/5 55/9
58/14 58/17 61/1 64/2
65/22 65/24 65/25
66/10 67/7 68/2 68/20
69/14 69/14 69/24
70/22
can't [2] 9/6 70/23
cannot [2] 7/15 7/16
9/10
capacity [4] 38/21 39/4
39/8 57/19
cares [1] 21/17
carve [2] 24/10 49/1
Casas [20] 2/2 4/9
15/14 15/15 16/11
18/13 26/9 29/7 34/13
36/22 38/16 39/24 40/8
41/6 45/2 50/1 50/17
55/2 56/23 64/5
Casas's [4] 51/4 51/8
51/14 52/17
casasg [1] 2/6
case [57] 7/10 7/24 8/8
8/9 8/15 8/17 8/23

**C**

case... [50] 12/18 12/21 14/4 14/7 14/17 14/18 15/23 23/25 24/10 25/16 25/17 26/6 27/18 28/4 28/9 28/10 28/23 30/25 31/4 31/11 31/12 31/16 31/18 31/19 31/21 31/24 32/11 32/12 32/13 37/24 38/13 45/5 46/22 48/9 52/24 53/10 53/17 54/2 54/2 54/3 55/22 57/9 61/21 62/18 66/16 67/3 68/18 68/25 69/16 70/12

cases [8] 8/3 8/10 8/11 13/24 14/11 14/14 39/13 47/1

categories [1] 36/1

categorization [1] 62/4

categorize [1] 43/7

category [1] 34/20

caused [1] 7/17

centered [1] 48/17

Central [1] 70/3

certain [2] 31/20 41/18

certainly [8] 7/22 8/21 11/18 12/16 13/11 14/18 48/21 58/19

Certified [1] 3/3

certify [1] 72/2

CH [1] 3/4

challenged [1] 36/13

chambers [1] 37/20

chance [2] 41/4 66/22

change [4] 12/9 66/25 67/1 67/2

changes [1] 40/9

characterize [1] 26/20

characterizes [1] 40/4

charged [1] 42/24

chime [2] 55/4 55/16

circuit [5] 7/2 7/3 25/19 46/21 47/1

circumstances [3] 63/15 63/23 63/25

cite [1] 8/3

cited [3] 7/23 8/23 31/1

Civil [2] 4/3 4/5

claim [3] 7/12 25/23 27/25

claimed [1] 28/6

claims [1] 21/18

clarification [3] 36/11 48/20 62/1

clarified [1] 17/5

class [1] 41/13

class-action [1] 41/13

clear [10] 13/10 15/20 20/10 24/3 25/19 38/13 53/11 57/7 62/4 64/6

clearly [3] 27/6 38/21 64/23

clever [1] 51/20

client [8] 16/4 23/12 27/4 33/2 45/10 46/16 46/18 47/3

Clyburn [1] 8/6

coded [1] 35/11

coding [1] 36/6

Collins [2] 2/2 4/10

collinse [1] 2/6

color [1] 35/11 36/6

color-coded [1] 35/11

color-coding [1] 36/6

COLUMBIA [1] 1/1

columns [1] 33/14

come [1] 59/18

comes [3] 20/1 35/10 46/23

coming [5] 18/4 18/5 51/5 66/8 68/20

command [1] 19/19

comment [3] 47/20 54/17 68/7

comments [2] 21/1 65/14

common [2] 14/3 14/9

common-interest [1] 14/3

commonly [1] 31/4

communicated [1] 30/13

communicates [1] 22/22

communicating [1] 30/4

communication [9] 20/24 21/3 21/6 22/14 22/22 23/15 26/24 27/2 30/2

communications [20] 8/7 18/24 20/11 21/10 21/11 25/7 25/9 27/22 27/25 28/1 30/19 32/21 33/9 38/22 42/6 46/17 46/19 46/20 59/12 59/13

companies [2] 26/15 26/18

company [10] 5/13 24/13 24/19 31/3 31/5 42/25 43/25 44/13 44/22 58/7

company-wide [1] 24/13

compel [4] 5/4 9/15 12/12 64/1

compelled [2] 6/22 7/4

complain [2] 7/16 9/6

complaint [1] 56/12

completed [1] 44/25

completing [1] 42/7

compulsion [1] 9/24

computer [2] 3/7 55/6

computer-aided [1] 3/7

concede [2] 52/16 61/9

concerned [1] 20/3

concerning [1] 15/3

concerns [2] 10/10 39/14

concluded [1] 71/6

conclusions [4] 20/13

conducted [4] 12/19 15/21 29/11 34/15

confer [1] 70/21

conference [4] 50/5 55/2 55/19 70/24

confidential [7] 7/22 8/24

confidentiality [2] 7/25 8/21

confidentially [1] 8/1

confirm [4] 15/14 15/15 16/12 22/16

confirming [1] 5/18

conform [1] 36/8

connection [5] 13/14 13/14 39/1 49/19 49/20

Connolly [2] 31/21 46/23

conscious [1] 50/24

consequences [1] 26/19

consideration [1] 51/11

consistent [1] 51/17

constitute [1] 21/12

constitutes [2] 16/2 28/9

Constitution [1] 3/4

consultant [5] 47/21 47/22 49/13 60/2 60/7

consultants [3] 44/15 45/1 48/7

consulting [14] 38/17 39/2 39/8 39/18 40/5 40/17 41/22 53/14 54/4 54/8 54/9 57/1 64/15 64/24

contact [1] 70/23

contacted [1] 6/3

contain [4] 10/12 11/25 12/5 19/12

contained [3] 5/10 10/14 14/13

contains [2] 9/1 69/7

contemplate [1] 41/24

contends [2] 6/15 7/8

content [1] 41/7

contention [1] 33/2

contents [1] 11/22

context [2] 46/15 54/25

continue [1] 71/2

CONTINUED [2] 2/1 3/1

continuing [1] 22/17

conversations [1] 24/3

converted [1] 8/1

converts [1] 9/2

convey [2] 20/6 26/13

corporation [2] 32/1 54/4

corporations [1] 20/5

correct [6] 22/10 35/6 35/8 42/2 42/10 72/3

correctly [1] 34/24

corrects [2] 35/15 35/18

couched [1] 18/11

could [12] 17/23 23/7

conducted [4] 12/19 ...

55/4 56/2 58/5 61/25 63/13 67/4

couldn't [1] 32/7

counsel [37] 11/6 14/7 15/19 15/21 15/21 16/1 16/14 16/19 16/20 17/10 17/14 18/8 18/14 18/20 18/23 20/13 21/10 22/10 22/11 22/15 24/3 28/7 29/2 33/25 38/23 40/2 41/19 41/20 46/9 47/19 53/5 58/7 59/17 59/17 60/9 69/14 69/23

counsel's [2] 20/7 20/7

counterclaim [3] 12/17 28/18 28/21

country [1] 52/22

couple [3] 24/5 32/12 51/1

course [2] 36/24 38/5

court [18] 1/1 3/2 3/3 13/6 32/11 51/7 51/20 54/4 55/9 56/20 57/10 62/25 65/15 65/19 66/5 68/12 70/1 72/7

Court's [1] 22/4

courts [1] 32/14

cover [3] 33/22 34/6 34/22

covered [1] 39/13

COVID [1] 72/6

COVID-19 [1] 72/6

craft [1] 17/22

crafted [1] 32/8

crafting [2] 18/15 26/10

create [4] 52/21 62/12 63/2 63/3

created [2] 52/15 53/3

creates [1] 14/8

cross [1] 30/24

cross-examine [1] 30/24

CRR [2] 72/2 72/11

crystal [1] 13/10

current [1] 12/10

**D**

D.C [10] 1/7 1/20 1/24 2/20 3/5 6/12 6/14 6/19 6/23 6/23

D.C. [2] 7/3 25/19

D.C. Circuit [2] 7/3 25/19

damages [8] 12/14 12/17 13/6 13/8 13/20 14/19 26/2 28/6

darn [1] 53/13

data [14] 52/20 53/9 53/23 53/24 63/4 63/18 66/18 66/23 67/11 67/12 67/18 67/19 68/6 69/17

dataset [1] 69/22

date [7] 49/10 55/3 55/5 55/10 55/25 67/2

dates [2] 67/1 67/3

David [5] 2/8 4/9 16/23 42/15 66/12

David Lannon [1] 16/23

day [6] 31/17 49/11 66/15 66/24 68/4 70/15

days [3] 41/4 46/12 68/15

deadline [1] 66/8

deadlines [2] 67/9 68/17

December [6] 5/8 19/8 23/10 49/11 49/16 57/2

decent [1] 46/11

decide [1] 6/24

decided [4] 43/25 44/13 49/16 51/24

decides [1] 39/6

decision [21] 38/25 42/25 43/8 44/9 46/23 48/4 57/16 57/16 57/18 57/21 57/23 58/3 58/6 58/14 59/2 59/5 60/2 60/10 65/2 65/17 71/3

decision-makers [5] 44/9 57/16 57/16 59/2 59/5

decisions [1] 58/23

declaration [10] 6/4 9/20 9/23 36/9 51/4 51/8 51/9 51/15 56/24 65/16

declarations [1] 51/10

defamation [3] 7/12 9/12 26/6

defamatory [7] 5/10 9/1 9/10 9/14 21/18 24/12 29/10

defend [1] 48/9

defendant [2] 54/3 54/5

defendants [4] 1/7 1/12 2/2 4/10

defending [1] 45/5

defense [8] 9/12 14/17 28/7 29/9 29/15 29/20 45/18 67/14

defensible [1] 60/15

defines [2] 57/14 64/24

definition [1] 53/18

degree [2] 12/24 54/10

delaying [1] 13/21

Deloitte [7] 38/19 41/11 42/21 42/23 42/24 61/15 64/12

delve [1] 30/7

demand [1] 6/25

demarcates [1] 64/24

demarcation [7] 51/21 56/23 56/25 56/25 57/8 64/6 64/13

denied [2] 10/4 14/22

denies [1] 6/5

department [2] 16/22 31/6

deposition [30] 5/5

**D**

deposition... [29]  5/15
5/25 6/10 9/3 9/19 9/21
9/25 9/25 15/13 16/16
19/8 20/23 26/5 30/9
39/9 49/14 49/15 50/4
51/16 52/2 52/5 52/14
53/5 55/17 55/19 58/13
58/18 62/2 62/24
depositions [3]  19/2
19/4 23/19
derive [1]  16/14
derived [1]  15/23
described [2]  43/5
44/3
description  36/9
deserve [1]  52/23
deserved [1]  61/16
despite [2]  66/21 68/7
detail [2]  20/2 22/6
detailed [1]  43/4
details [2]  48/13 69/8
determine [9]  5/20 7/8
7/9 11/1 21/15 21/24
22/17 42/8 43/7
determining [1]  8/5
did [44]  7/21 8/14
16/14 17/20 17/23 20/6
24/9 24/13 25/22 26/6
28/14 28/17 29/16
34/25 36/18 39/2 39/7
39/14 41/8 42/7 43/14
44/23 45/4 48/5 48/8
49/18 51/15 51/24
52/18 57/17 61/8 61/9
61/12 62/11 62/12
62/14 63/1 63/1 63/3
63/4 63/4 63/5 63/17
68/4
did you [5]  62/11 62/12
63/1 63/3 63/4
didn't [6]  22/7 25/20
36/2 36/4 54/18 66/20
difference [1]  16/6
different [17]  8/10 16/6
16/7 31/16 31/19 32/23
43/7 43/9 44/4 44/7
45/25 46/25 48/9 62/7
69/10 69/10 70/12
differently [2]  52/3
52/5
direction [1]  60/23
directly [2]  33/12 35/16
disagree [1]  49/23
disclose [7]  6/7 10/3
14/5 25/20 31/15 39/17
54/6
disclosed [18]  14/15
25/10 25/17 25/22
30/19 30/23 32/2 32/4
32/8 42/13 54/10 54/22
54/24 55/1 55/23 57/15
59/4 67/15
disclosing [1]  29/24
disclosure [16]  6/5
13/3 13/21 14/5 14/20
16/9 31/14 32/3 32/12
62/25 47/1 47/2 53/16

disclosures [4]  31/3
31/5 31/20 54/23
disconnect [2]  56/19
56/19
discoverable [1]  19/1
discovered [2]  61/24
69/6
discovering [1]  69/17
discovery [20]  1/14 4/3
4/17 13/5 13/9 13/11
13/16 13/17 13/19
42/19 56/13 58/8 67/2
67/15 67/21 67/21
68/23 69/20 70/9 70/24
discrete [1]  39/22
discriminate [1]  24/9
discuss [1]  39/9
discussion [6]  4/23
8/15 59/7 59/9 63/15
63/15
disfavored [1]  57/5
dispose [2]  4/22 10/9
dispute [1]  60/8
disputing [1]  6/14
distinction [5]  17/18
18/7 20/19 23/22 25/16
distinguished [1]  16/5
district [6]  1/1 1/1 1/15
8/8 8/9 32/11
divulged [1]  61/22
do [40]  9/17 13/8 13/15
19/11 20/21 20/22
21/13 26/6 28/15 30/8
31/8 36/5 37/12 40/15
43/3 44/12 46/10 47/10
47/22 50/11 50/13 52/4
52/5 52/11 54/21 55/25
58/5 60/14 60/19 64/9
65/10 66/22 66/23
67/10 67/15 67/21
67/23 69/10 69/11
70/20
do you [1]  52/4
do you have [2]  52/11
55/25
docket [1]  12/14
doctrine [2]  27/18
27/21
document [10]  34/2
34/10 34/23 35/9 36/8
37/16 57/23 58/3 58/12
64/21
documentation [9]
43/10 43/11 43/11
43/12 57/13 57/20
58/10 59/1 59/4
documented [1]  48/22
documents [30]  11/4
12/13 13/1 14/18 15/5
16/10 19/11 22/1 29/24
30/1 32/13 33/3 33/7
34/14 35/22 36/1 36/17
36/21 37/1 37/7 37/12
38/1 47/14 53/4 53/22
54/7 62/15 64/22 65/23
66/4
does [13]  8/3 9/13 9/20

40/15 41/9 41/18 41/21
47/7 70/4
doesn't [9]  8/25 9/8 9/9
20/1 22/6 24/20 28/1
68/16 68/16
doing [14]  4/14 33/11
39/4 39/5 39/16 50/3
50/11 54/1 60/22
61/22 64/8 64/9 64/10
64/14
don't [50]  6/24 9/3
10/12 10/18 11/7 11/14
14/1 16/4 20/9 23/11
23/25 24/18 26/12
26/19 27/14 27/20
27/21 28/8 31/9 31/22
32/10 33/11 33/20
34/18 36/17 37/24 39/2
40/8 46/13 47/17 47/25
48/10 52/13 52/22 55/5
55/10 55/14 56/22
58/10 59/1 59/21 60/7
61/19 63/3 63/20 63/22
64/25 66/8 67/23 68/14
done [18]  8/20 20/4
20/9 33/15 33/19 39/23
43/17 43/20 43/20
43/24 44/4 44/7 48/2
49/3 60/11 62/5 68/24
70/14
doubt [3]  54/15 64/25
65/9
doubts [1]  68/21
Douglas [1]  66/4
Douyon [1]  70/24
down [1]  63/9
dozen [1]  34/21
draw [3]  11/20 12/2
20/18
drawing [1]  23/22
drawn [2]  21/1 47/6
draws [1]  25/16
drive [2]  2/9 36/22
dump [1]  68/6
dumped [1]  69/1
during [5]  23/19 55/17
59/13 62/5 72/5

**E**

each [4]  16/8 37/11
62/9 62/10
ear [2]  69/18 69/19
earlier [2]  15/8 65/18
easier [2]  37/17 46/17
easy [2]  37/12 66/18
ECF [5]  5/1 12/14
15/10 55/22 56/3
effect [2]  18/17 42/25
effort [2]  11/24 12/2
efforts [5]  14/7 45/17
45/24 48/8 66/21
eight [1]  5/15
either [11]  11/5 11/5
13/13 14/1 30/25 31/3
37/8 37/23 39/13 47/15
50/5
else [1]  23/6

elsewhere... [1]  52/19
52/9
email [10]  2/15 2/21
33/21 33/22 33/23 34/6
34/22 36/2 68/8 70/2
emails [1]  33/21
emergent [1]  70/10
Emily [2]  2/2 4/10
employees [1]  58/25
end [1]  33/18
enforce [1]  33/25
engaged [1]  49/8
engagement [15]
38/15 38/18 39/3 40/3
40/4 40/7 40/13 40/18
41/8 41/11 41/23 48/24
49/1 57/22 64/23
enhancer [1]  46/2
enough [4]  10/22
10/22 65/6 67/8
entertain [1]  70/8
entire [2]  34/9 36/11
entirely [1]  12/1
entitled [6]  29/20 29/23
30/11 30/23 33/16 48/1
entries [3]  35/4 36/12
43/7
entry [1]  26/25
envelope [1]  66/1
Epstein [3]  50/16 64/4
64/7
equation [1]  58/16
especially [1]  28/15
essentially [5]  27/7
29/1 38/19 40/10 48/15
establish [5]  10/13
10/18 33/6 37/9 64/21
established [2]  14/20
62/23
et [8]  1/3 1/6 1/8 1/11
4/4 4/5 4/5 4/6
et al [2]  4/4 4/5
even [28]  6/19 6/23
7/19 8/17 9/4 9/9 10/12
10/18 14/17 20/11
27/16 33/7 37/17 37/24
39/15 46/25 47/1 51/9
53/6 54/10 59/18 59/21
61/19 61/20 62/16 68/3
69/23 70/21
event [1]  6/19
ever [5]  12/9 51/3
51/13 59/2 59/7
every [2]  36/8 63/9
everybody [3]  4/13
40/22 41/3
everyone [4]  4/14 4/14
40/20 71/4
everything [9]  24/4
24/8 24/23 25/13 38/20
42/1 42/21 42/22 53/20
evidence [14]  11/1
11/12 11/13 11/21 40/1
57/4 57/7 65/17 65/18
67/14 68/19 68/21
68/25 70/8
exact [2]  23/4 36/17
examine [1]  30/24
example [6]  18/21

40/23 26/24 28/4 28/6
52/9
exceed [1]  36/18
except [1]  6/7
exceptional [3]  63/15
63/22 63/25
exchanged [1]  54/7
excuse [9]  6/17 7/25
9/20 15/14 15/32 46/24 47/3 56/13
Executive [2]  16/23
30/21
executives [2]  61/11
61/18
exert [1]  53/14
Exhibit [8]  27/1 32/20
35/9 36/11 36/14 36/15
37/10 37/13
Exhibit 5 [1]  27/1
Exhibit A [1]  35/9
exist [1]  63/25
existed [1]  30/3
existence [2]  57/8
62/15
exists [1]  56/22
expect [1]  65/23
expended [1]  13/13
expert [24]  13/5 13/9
13/11 13/17 38/13
38/17 39/2 39/9 39/18
39/19 40/5 41/13 53/14
54/3 54/9 56/6 57/2
64/24 66/16 66/22
66/25 67/1 68/15 70/11
explained [1]  51/16
exposed [2]  7/17 9/7
expressly [1]  14/2
extension [4]  66/16
66/17 66/24 67/24
extensions [1]  67/9
extensive [1]  42/18
extent [17]  9/25 11/16
12/16 13/15 14/1 18/12
18/19 20/20 22/2 25/8
27/16 30/3 30/6 33/1
34/3 59/12 59/20
eye [1]  18/15
eyeball [1]  37/1

**F**

F.2d [2]  7/3 31/11
F.Supp [2]  8/7 8/8
fact [29]  5/23 8/19 9/11
11/2 19/6 23/2 24/19
24/22 27/11 27/24 28/8
30/18 38/11 38/12
38/12 39/1 39/12 39/19
40/1 44/19 48/10 48/11
49/2 49/8 51/6 54/18
56/7 56/17 62/5
factor [1]  8/5
facts [24]  18/23 18/25
19/1 19/13 20/11 20/12
20/20 20/20 21/17 23/3
23/7 23/8 23/13 23/20
23/20 25/24 29/23
29/24 30/7 30/10 30/14
30/17 30/22 31/25

**F**

**factual [9]** 12/3 14/14 15/17 16/12 17/11 17/16 18/10 18/20 20/14
**failed [2]** 33/6 43/15
**fails [3]** 7/1 7/7 9/15
**failure [1]** 37/9
**fair [5]** 19/9 20/21 22/25 26/19 30/5
**fairly [5]** 5/17 19/24 42/22
**fairness [2]** 19/22 19/22
**fall [1]** 34/19
**falsifying [1]** 28/20
**far [5]** 11/10 18/3 20/24 38/15 68/18
**fast [1]** 60/4
**favoring [1]** 65/17
**favors [5]** 53/16 53/19
**February [3]** 40/14 40/18 56/4
**federal [1]** 6/13
**FedEx [1]** 66/1
**feel [1]** 37/24
**feels [2]** 60/16 60/25
**fees [5]** 12/18 12/20 12/23 13/13 28/4
**felt [1]** 54/20
**fence [1]** 20/10
**few [4]** 34/21 41/4 46/12 70/9
**fiction [4]** 51/19 51/22 51/23 57/3
**figure [8]** 8/2 8/6 9/2 17/21 47/5 48/3 53/18 61/4
**figures [1]** 64/4
**filed [5]** 5/3 26/16 28/17 36/14 55/11
**filing [1]** 31/8
**fill [1]** 38/11
**finally [5]** 13/22 54/15 66/20
**find [2]** 9/17 58/24
**finding [1]** 53/7
**findings [8]** 20/7 25/6 25/8 25/9 25/21 27/6 29/12 31/4
**fine [2]** 68/16 70/16
**finish [1]** 68/15
**fire [2]** 54/5 54/23
**fired [1]** 6/3
**firm [1]** 48/25
**first [24]** 6/13 7/2 7/19 8/8 10/10 13/4 15/2 26/25 33/6 35/23 41/17 41/23 51/2 51/3 51/13 51/15 54/24 55/4 55/17 55/23 56/24 60/16 62/8 64/23
**First Amendment [2]** 6/13 7/2
**fit [1]** 46/4
**five [4]** 15/9 16/18 17/2 17/20
**Floor [1]** 2/19

**focus [1]** 48/8
**folks [4]** 57/18 60/14 60/15 60/23
**follow [1]** 9/8
**following [2]** 49/11 55/19
**FOODS [71]** 1/6 1/11 2/12 4/4 4/6 5/3 5/8 5/12 5/14 5/24 6/3 6/14 7/7 7/16 7/23 8/3 9/9 9/10 10/21 11/6 11/13 11/16 12/16 13/4 14/16 15/5 15/25 16/1 16/19 16/20 16/22 16/24 18/4 18/12 19/9 20/4 20/10 24/22 25/22 26/3 26/4 27/8 27/22 28/12 28/22 29/8 32/20 34/25 38/24 39/6 39/16 39/21 39/24 45/5 47/7 48/14 50/7 50/12 54/21 55/23 56/5 57/21 58/3 59/10 59/15 60/10 61/11 65/2 68/5 69/16 70/4
**Foods' [16]** 6/25 9/4 12/13 13/8 13/13 15/18 17/9 17/10 18/15 18/20 27/17 29/14 29/19 30/16 48/3 58/23
**footnote [1]** 25/17
**forbade [1]** 53/5
**force [1]** 14/5
**forced [1]** 32/12
**foregoing [1]** 72/3
**forensic [1]** 44/15
**forget [1]** 23/4
**forgive [1]** 50/23
**former [5]** 16/19 16/20 16/21 22/11 60/16
**forth [3]** 9/16 21/3 57/11
**forward [4]** 39/14 64/14 68/25 71/1
**forwarding [2]** 33/24 36/3
**found [5]** 8/23 10/25 29/17 46/4 46/18
**foundation [1]** 63/8
**four [4]** 15/8 15/9 28/13 70/9
**frame [1]** 17/25
**framework [1]** 29/6
**free [1]** 10/5
**Friday [1]** 65/24
**front [5]** 48/23 64/21 64/22 66/12 67/8
**fruits [1]** 45/24
**full [1]** 27/16
**fully [1]** 26/19
**function [1]** 48/15
**further [7]** 4/23 9/23 13/20 30/7 45/6 47/11 56/25
**fuzzy [1]** 31/25

**G**

**gainsharing [8]** 10/13

10/22 10/23 22/16 44/21
**game [5]** 19/9 20/22 22/25 30/5 55/3
**gather [1]** 27/12
**gave [4]** 21/8 36/9 42/22 52/20
**gears [1]** 48/6
**general [3]** 16/19 17/1 22/11
**gentleman [1]** 52/1
**gentlemen [1]** 18/6
**get [18]** 4/16 4/19 12/9 24/1 24/4 32/19 33/19 49/17 51/20 63/4 63/8 65/24 66/18 68/8 69/15 69/17 69/18 69/24
**getting [5]** 65/22 71/1 38/8 55/5 71/3
**given [9]** 14/18 21/14 23/12 40/2 42/18 44/20 47/25 57/8 59/17
**glad [1]** 17/4
**go [10]** 4/19 4/21 5/2 31/22 40/23 43/6 47/17 65/10 66/14 69/8
**go ahead [5]** 4/21 5/2 31/22 65/10 66/14
**goes [3]** 7/5 13/19 31/5
**going [32]** 13/2 13/11 19/8 24/6 29/9 29/14 29/19 29/25 32/18 34/7 34/15 36/6 40/5 40/22 43/6 44/13 52/25 52/25 53/12 53/14 53/15 54/1 54/20 61/16 63/6 64/11 68/19 68/20 69/1 69/17 69/18 69/23
**Golda [2]** 27/2 32/22
**Golda Sahayam [1]** 32/22
**Good [3]** 4/2 4/13 50/21
**got [9]** 16/17 37/24 43/14 48/24 53/24 56/16 60/19 64/12 68/25
**gotten [1]** 44/20
**government [1]** 31/20
**Grady [7]** 32/22 33/13 48/14 50/2 52/20 53/24 63/5
**Grady's [2]** 55/17 55/19
**Grand [3]** 32/13 32/16 46/21
**Grapefruit [2]** 43/5 51/17
**Green [1]** 16/21
**GREENBERG [6]** 2/3 2/8 40/10 40/11 48/25 64/5
**Greg [3]** 55/5 55/8 64/5
**Greg Casas [1]** 64/5
**Gregory [2]** 2/2 4/9
**ground [1]** 14/8

**H**

**guess [4]** 23/24 34/16 37/6 59/25
**guidance [1]** 26/20
**guys [1]** 48/13

**had [25]** 5/8 9/5 19/2 20/20 21/1 29/15 30/6 30/20 35/4 41/4 42/23 43/25 44/11 44/15 44/22 47/22 48/12 48/15 50/2 50/11 50/12 54/6 56/9 64/9 66/22
**half [1]** 69/21
**hand [2]** 10/21 60/12
**handful [1]** 4/21
**handle [1]** 53/24
**handy [1]** 55/3
**Hang [1]** 40/21
**happen [2]** 68/13
**happened [8]** 18/21 22/24 31/13 32/1 32/3 38/14 40/1 60/21
**happy [2]** 31/8 69/11
**hard [2]** 46/10 53/17
**harm [1]** 9/3
**has [36]** 4/19 4/20 5/3 5/14 6/4 6/9 7/23 8/23 9/18 9/22 11/3 11/16 11/24 12/17 14/15 14/19 17/7 20/13 20/13 30/6 30/8 34/6 34/11 39/21 39/24 41/11 42/12 45/9 46/21 47/7 51/7 52/12 55/11 67/8 68/25 69/22
**hasn't [2]** 48/21 66/22
**hats [1]** 57/6
**have [84]**
**haven't [4]** 8/22 23/6 56/21 64/20
**having [5]** 6/5 10/3 20/9 23/13 38/2
**he [51]** 5/16 5/18 5/19 52/22 5/23 5/24 6/2 6/2 6/3 6/5 6/6 30/8 35/5 37/8 38/23 39/2 39/7 42/7 47/21 47/21 48/10 49/7 49/12 49/19 49/18 50/4 50/8 50/9 50/11 50/12 51/14 51/16 51/17 51/18 52/6 52/9 52/15 52/19 53/23 53/24 53/25 54/22 54/24 55/1 56/16 59/19 59/19 61/12 63/6 66/23 68/9
**he said [1]** 49/15
**he's [8]** 38/20 39/4 39/5 39/10 39/23 53/3 56/15 60/11
**head [1]** 16/21
**hear [4]** 38/9 47/15 48/19 64/17
**heard [4]** 18/17 47/11 60/20 65/5

**hearing [5]** 1/14 51/3 56/22 70/24 72/5
**heart [2]** 63/8 69/8
**heck [1]** 70/4
**held [1]** 53/15
**help [4]** 17/14 38/3 48/9 55/8
**helpful [2]** 36/25 37/21
**helping [2]** 26/10 42/25
**Hempfling [6]** 2/12 4/9 45/3 50/17 55/15 64/17
**Hempfling's [1]** 65/14
**her [14]** 6/1 6/2 15/3 15/13 16/16 17/13 18/15 20/24 21/8 22/14 23/19 26/6 28/24 30/20 43/22 44/22
**here [41]** 6/25 7/7 7/16 8/17 12/16 13/1 13/8 13/19 13/24 14/3 14/9 14/12 18/7 19/10 19/19 23/11 24/6 25/22 25/25 26/10 28/12 29/3 30/2 30/11 31/12 32/9 33/22 34/8 34/14 38/14 39/15 42/1 47/6 47/7 49/4 51/11 54/10 54/15 60/21 63/23 64/6
**here's [5]** 25/20 26/24 33/18
**Hersh [5]** 2/3 4/10 35/15 37/11 66/3
**Hersh's [1]** 35/13
**hersha [1]** 2/7
**highlighted [1]** 36/1 36/12 36/13 36/16
**highlighting [2]** 35/1 35/1
**highly [2]** 43/4 58/2
**him [23]** 5/16 9/21 38/22 39/3 39/9 39/25 47/22 50/7 52/20 53/5 53/7 54/18 56/16 57/19 60/14 60/20 61/17 62/11 62/25 64/24 64/24 65/2 67/8
**hire [3]** 60/6 60/13 60/20
**hired [11]** 29/15 29/16 38/17 38/21 39/18 45/2 49/12 54/3 57/19 59/19 60/1
**hiring [1]** 53/13
**his [34]** 6/6 17/8 23/19 40/5 44/25 47/8 48/5 49/5 49/14 49/15 49/20 49/24 50/4 51/14 51/16 52/2 52/5 52/11 52/14 53/3 53/5 56/24 57/1 57/1 57/2 58/22 60/22 62/2 65/16 68/8
**hit [2]** 27/11 29/5
**holder [1]** 28/2
**holes [2]** 29/20 29/23
**Honor [60]** 4/2 16/15 17/19 20/18 22/1 23/1 24/5 29/22 31/7 31/10

**H**

Honor... [50] 33/20
34/18 35/8 35/17 36/10
36/24 37/2 38/5 40/12
41/16 42/3 42/10 42/14
44/6 44/11 45/13 45/21
47/20 49/7 50/21 50/23
52/8 53/10 54/1 54/14
55/1 55/10 56/8 56/11
58/1 59/24 61/1 61/5
61/25 62/22 63/2
63/12 64/2 65/4 65/7
65/13 66/2 66/10 67/4
67/7 68/1 69/5 69/11
70/1 70/19
HONORABLE [1] 1/15
hope [1] 4/14
hoping [2] 67/19 70/15
hours [2] 67/19 70/15
house [5] 15/20 16/20
17/10 22/10 22/15
housekeeping [3]
66/11 67/3 69/13
how [27] 17/22 17/25
20/10 20/16 21/2 21/14
21/15 23/24 27/14
33/11 33/19 34/14
34/17 38/9 39/24 40/1
42/8 43/7 44/19 45/7
46/5 48/3 48/10 48/13
58/24 59/2 70/3
HR [2] 17/12 30/12
human [1] 16/22
hundreds [3] 45/22
45/23 67/19
hybrid [1] 56/6
hypothetical [1] 23/5
hypothetically [3] 21/6
22/9 22/13

**I**

I also [1] 37/23
I am [3] 16/12 20/3
68/12
I believe [5] 12/20 34/9
35/10 55/13 55/16
I can [11] 4/22 10/9
11/10 15/14 37/16
38/15 39/1 54/1 55/5
58/17 69/14
I did [2] 24/9 39/14
I don't [19] 6/24 23/25
26/19 27/20 27/21 28/8
33/20 39/2 40/8 52/13
52/22 55/14 56/2 60/7
61/19 64/25 66/8 67/23
68/14
I don't recall [1] 55/10
I gave [1] 36/9
I guess [4] 23/24 34/16
37/6 59/25
I have [3] 6/24 50/23
67/9
I haven't [2] 8/22 56/21
I hope [1] 4/14
I just [10] 23/19 27/14
31/12 31/17 33/11
37/22 61/12 61/25 62/3

I know [4] 17/4 51/7
66/7 69/9
I mean [32] 9/8 12/21
17/5 18/11 18/14 19/24
20/3 21/9 22/5 24/20
24/24 25/5 26/14 29/8
29/14 29/19 32/10
32/21 32/25 33/10
39/21 40/3 40/7 41/9
42/5 48/24 56/11 56/12
60/6 61/9 64/22 67/1
I should [2] 6/22 21/18
I think [56] 4/21 7/7
10/8 10/9 11/23 12/1
12/22 13/1 13/22 14/20
15/4 15/9 16/3 17/18
17/23 18/10 18/11 19/1
19/7 19/12 19/17 20/3
21/13 22/5 23/3 23/15
25/19 30/14 32/8 33/16
34/25 35/4 36/20 38/3
38/13 39/13 39/25
42/22 46/10 46/22
48/21 49/4 49/11 49/15
50/9 52/23 54/2 59/13
59/18 61/5 63/10 64/6
64/18 65/3 65/5 66/5
I thought [1] 47/13
I understand [3] 13/25
20/5 65/20
I want [5] 4/21 4/22
4/25 15/2 31/11
I wanted [2] 4/16 4/18
I was [5] 17/16 24/11
47/13 58/5 67/7
I went [1] 35/25
I will [2] 23/25 71/3
I'd [1] 40/23
I'll [14] 15/15 19/16
32/16 35/16 38/1 38/2
38/8 46/8 46/8 47/18
53/10 54/15 66/5 71/2
I'm [62] 4/19 7/15
11/18 13/2 13/2 14/24
17/4 17/5 17/7 18/13
21/2 24/18 25/1 25/3
27/20 28/18 31/18
31/19 31/21 31/22
34/13 34/15 34/19 35/2
35/19 36/6 36/20 36/21
37/6 37/7 37/23 40/22
42/15 43/16 44/21 45/6
45/9 47/5 49/23 50/24
52/16 52/16 55/16 56/1
56/22 57/1 58/11 59/6
61/12 62/25 63/5 63/24
65/4 68/20 68/22 68/24
70/5 70/7 70/7 70/14
70/14 70/17
I'm going [3] 34/15
40/22 68/20
I'm not [16] 11/18 13/2
13/2 18/13 27/20 37/23
49/23 52/16 58/11 59/6
63/24 68/22 70/5 70/7
70/7 70/17
I'm not sure [2] 21/2

I'm sorry [7] 4/19
43/16 45/9 55/16 56/1
57/1 65/4
I'm sure [1] 62/25
I'm thinking [1] 31/19
I've [9] 21/13 36/8
37/24 38/16 41/4 46/10
48/24 65/5 66/6
icing [1] 61/7
idea [4] 51/12 51/18
56/16 69/21
identification [1] 8/25
identified [9] 7/22 8/20
15/5 15/10 21/16 35/5
44/17 56/5 56/9
identify [1] 5/22
II [1] 2/12
imagine [2] 29/8 61/15
impacted [4] 42/9 43/2
44/2 48/4
implement [2] 33/25
48/3
implementing [1] 34/8
importance [1] 57/9
important [2] 13/23
46/14
impractical [1] 63/16
impressions [3] 21/8
21/10 38/8
improper [6] 10/19
10/24 11/2 12/6 22/16
22/19
INC [5] 1/6 1/11 2/13
4/4 4/6
inclined [1] 11/18 13/2
70/7
include [2] 19/8 41/12
included [2] 8/13 36/7
including [5] 5/17
11/12 16/8 33/14 36/1
incorrect [1] 58/5
indexes [1] 11/7
indicated [1] 26/9
indiscriminate [1]
19/18 19/19
individual [3] 8/25 16/8
38/10
individuals [5] 8/11
17/2 17/20 27/5 33/10
indulgence [1] 41/3
inextricably [1] 13/9
inference [3] 10/18
11/20 12/3
information [30] 6/2
7/4 7/5 9/22 10/12 12/5
15/18 15/24 16/17
16/18 17/9 17/11 18/4
18/5 18/20 20/6 22/7
26/7 27/12 28/9 28/15
28/25 32/2 32/4 32/7
34/6 39/17 57/9 57/11
61/10
initial [6] 27/3 33/9
40/11 45/23 54/22
56/13
Initially [1] 32/22 43/4
inject [1] 8/14

inquiries [1] 17/14
inquiry [1] 17/14
inside [2] 6/8 58/7
insofar [2] 14/13 18/24
instance [1] 28/5
instead [1] 6/15
instructed [2] 23/19
63/6
instruction [2] 11/12
11/13
instructions [1] 23/21
insufficient [1] 43/11
intended [1] 38/21
interest [1] 14/3
interested [3] 37/7
37/8 70/5
interesting [1] 18/12
interests [2] 14/9 65/8
internal [9] 24/23
24/24 28/18 28/19
29/25 30/16 31/2 49/19
50/12
intertwined [1] 13/9
investigation [56]
12/19 13/14 15/22
17/10 17/19 18/3 19/6
19/9 19/11 19/14 20/8
24/13 24/14 24/16
24/19 24/22 24/24 25/7
25/14 25/18 25/21
25/21 25/23 25/24 27/4
27/6 27/13 28/14 28/19
28/22 29/11 29/12
29/15 29/17 29/25 30/7
30/8 30/12 30/18 31/2
33/9 33/11 33/16 34/5
40/11 41/14 41/24
49/19 49/20 49/21 50/3
50/7 50/12 51/24 52/10
64/7
investigation's [1]
29/12
invited [1] 9/10
invoices [3] 14/5 14/6
14/13
invoking [1] 29/2
involve [3] 8/11 15/1
31/2
involved [10] 31/18
32/13 50/9 50/10 51/25
52/1 52/6 52/10 64/12
69/20
involving [1] 70/11
is [188]
is that correct [1] 42/2
is there [5] 21/24 57/13
57/18 57/20 58/13
isn't [2] 18/23 29/20
issue [50] 8/13 11/4
11/14 11/14 12/11
12/23 15/2 15/7 15/7
17/1 19/10 27/17 27/18
27/21 27/22 28/1 28/2
28/3 28/5 28/7 28/10
28/13 28/23 30/15
30/15 32/23 33/4 33/12
33/17 37/22 42/1 42/5
42/6 43/15 46/10

55/11 47/12 47/15
55/16 64/1 65/22 66/13
67/6 67/16 67/22 69/3
69/4 69/14 70/6 71/3
issues [11] 10/8 14/11
14/14 15/1 25/25 35/22
39/19 50/25 53/4 66/11
70/6 70/14
it [144]
it would be [3] 36/25
63/16 66/18
it's [67] 4/14 7/21 9/20
11/14 12/7 12/22 13/16
14/1 14/20 15/20 19/22
19/24 20/9 21/13 21/14
22/24 23/1 23/6 23/15
24/3 26/17 26/19 26/24
26/25 27/2 27/4 27/6
30/17 31/11 33/17
33/17 34/6 35/6 35/9
35/13 37/16 39/12
40/14 46/17 47/9 51/3
51/4 51/5 51/19 51/22
51/23 52/8 53/18 53/23
54/11 54/11 56/4 57/5
57/21 57/22 60/9 61/20
62/18 64/6 67/14 67/17
68/16 69/1 69/9 69/23
70/6 70/14
its [14] 6/16 11/17
12/17 12/17 12/23
14/17 27/22 28/18
28/19 28/22 29/9 31/4
32/16 42/25
itself [4] 23/15 34/10
34/11 35/4

**J**

Jay [2] 2/18 4/11
Jersey [1] 2/10
John [3] 2/12 4/9 55/15
john.hempfling [1]
2/16
joint [4] 1/14 4/3 55/22
56/3
JSR [1] 56/2
JUDGE [6] 1/15 42/16
43/8 43/24 59/12 59/18
judgment [2] 13/7
25/18
jump [1] 61/1
juncture [2] 13/3 14/15
jury [5] 11/20 12/2
32/13 32/16 46/22
just [87]
Justice [1] 31/6

**K**

keep [2] 40/5 54/1
keeper [1] 66/4
Kellogg [1] 25/16
Ken [1] 16/23
kind [14] 11/19 12/2
12/3 22/21 29/25 32/14
34/22 35/23 37/25
45/24 49/8 59/7 66/4
68/13
Klaproth [33] 1/22 1/22

**K**

**Klaproth...** [31] 4/8 13/25 17/7 19/12 19/16 21/17 23/18 23/24 30/6 30/24 31/23 32/24 34/4 34/20 35/2 35/5 35/21 37/4 37/7 47/10 47/16 48/12 50/20 55/25 56/1 63/1 66/17 68/4 68/16 69/12 70/21
**Klaproth's** [1] 19/18
**klaprothlaw.com** [1] 1/25
**knew** [2] 26/4 27/8
**knock** [1] 37/23
**know** [70] 12/9 14/1 16/4 17/4 18/12 18/14 18/21 19/16 20/4 20/9 22/14 22/15 22/16 24/12 24/21 26/1 26/3 26/12 27/7 27/10 27/11 29/1 29/4 29/5 32/10 32/14 32/15 32/19 33/16 33/18 33/19 34/3 34/18 40/3 40/16 41/21 44/17 45/3 46/13 47/25 49/12 49/16 49/25 50/1 50/6 50/8 50/10 50/15 51/7 51/23 52/22 52/23 54/2 54/19 58/3 59/1 59/10 59/21 60/24 61/7 62/11 63/1 63/20 63/22 66/6 66/7 68/14 68/23 69/9 70/4
**knowing** [1] 27/16
**knowledge** [3] 27/17 45/12 57/14
**knowledgeable** [2] 55/24 56/6
**known** [1] 69/23
**knows** [3] 11/9 62/25 70/1
**Kronos** [5] 66/18 66/23 67/19 68/10 70/3

**L**

**labor** [6] 10/19 10/24 11/2 22/19 28/20 62/18
**lacking** [1] 63/14
**Lang** [8] 16/18 17/24 22/9 22/13 22/14 22/22 23/16 30/4
**Lannon** [2] 16/23 19/3
**large** [2] 32/1 69/1
**larger** [2] 34/12 36/16
**last** [5] 4/16 14/25 46/12 57/12 61/3
**late** [6] 51/8 55/3 55/7 56/16 69/9 70/14
**later** [5] 17/12 19/8 23/9 40/14 68/3
**latter** [1] 60/17
**law** [15] 1/22 6/12 6/13 6/16 6/19 6/19 6/23 6/24 12/22 12/25 24/25 38/13 48/25 53/11 53/15
**lawsuit** [3] 17/23 27/23

**lawsuits** [1] 41/13
**lawyer** [2] 26/12 26/20
**lawyers** [15] 17/6 17/12 26/8 26/10 26/16 29/16 30/20 30/22 32/21 33/3 33/4 34/5 60/22 60/23 64/19
**learned** [5] 15/25 23/6 67/6 68/3 68/9
**learning** [3] 17/19 19/5 67/20
**least** [11] 10/8 15/16 20/16 21/11 21/12 21/17 37/1 40/16 46/14 48/22 59/14
**leave** [1] 10/5
**leaving** [1] 21/21
**left** [1] 65/9
**legal** [34] 12/18 12/20 12/23 13/13 14/14 16/14 17/14 17/24 17/25 18/8 18/14 18/20 18/23 19/12 20/13 20/14 20/19 20/25 21/3 23/2 23/21 26/11 26/18 28/4 30/5 30/13 30/15 30/16 33/24 33/25 34/7 36/3 51/20 57/3
**length** [1] 68/23
**less** [1] 60/17
**let** [17] 5/2 10/7 12/9 12/15 16/11 16/11 29/7 37/24 38/8 42/20 51/1 52/4 53/13 57/6 57/25 66/6 68/14
**let's** [7] 14/25 38/7 48/22 60/10 60/13 60/20 70/18
**letter** [16] 12/22 38/15 38/18 39/3 40/4 40/4 40/8 40/18 40/23 41/7 41/8 41/11 41/23 57/22 64/4 64/5
**letters** [4] 48/24 49/1 49/10 64/23
**level** [1] 16/24
**levels** [1] 45/25
**liability** [6] 12/20 12/21 13/7 14/19 17/23 18/16
**lights** [1] 37/25
**like** [14] 10/6 27/25 33/21 37/1 37/24 40/23 46/3 57/22 60/16 60/21 60/25 63/2 66/7 67/10
**limitations** [1] 72/7
**limited** [7] 7/11 8/1 8/6 9/2 70/9 70/10 70/13
**limited-purpose** [2] 8/1 9/2
**limits** [1] 56/25
**line** [9] 4/11 11/9 11/23 23/22 51/21 56/23 56/24 56/25 57/8
**lines** [3] 40/17 47/5 47/6
**lists** [1] 37/11
**litigating** [1] 69/16

litigation [6] 13/16 14/6 14/7 24/10 36/4 44/12 45/1 45/18 48/7 48/17 49/13 50/18 58/7 60/1 60/6 60/9 64/8 64/12
**litigation-centered** [1] 48/17
**little** [4] 23/2 31/25 32/19 50/24
**LLP** [2] 2/3 2/8 2/18
**loath** [2] 34/13 36/21
**locations** [1] 18/22
**log** [19] 15/6 19/23 19/24 21/14 21/16 22/5 22/8 24/8 26/24 32/20 34/17 34/25 35/4 35/25 36/12 36/18 37/4 45/16 65/23
**logged** [1] 45/15
**long** [4] 1/18 4/16 4/20 66/12
**longer** [2] 50/16 66/7
**look** [28] 10/25 11/24 18/9 18/10 19/15 20/3 20/5 21/5 23/24 24/19 25/6 26/15 26/17 26/23 32/17 37/1 38/1 38/10 40/24 43/6 46/21 48/19 49/10 55/6 64/4 65/5 66/6 71/1
**looked** [1] 45/24
**looking** [6] 11/11 17/7 32/19 44/18 45/25 60/18
**loose** [1] 60/5
**lot** [8] 14/8 19/23 46/17 50/25 51/2 53/1 69/7 69/24
**lots** [1] 50/23
**Louisiana** [1] 8/9

**M**

**M3** [1] 1/23
**made** [25] 6/5 7/10 11/24 15/8 15/12 16/13 22/3 23/25 24/2 24/20 25/7 25/19 26/2 26/4 27/8 29/18 31/20 34/4 51/7 53/17 57/17 57/23 58/6 60/2 65/2
**main** [1] 13/23
**maintain** [1] 38/21
**majority** [1] 6/20
**make** [18] 9/21 26/15 28/1 28/9 35/19 38/2 38/25 39/6 44/1 46/8 51/1 53/10 60/10 61/2 61/25 62/3 62/20 64/2
**makers** [1] 44/9 57/16 57/16 59/2 59/5
**makes** [6] 6/17 31/3 31/5 38/13 38/25 39/9 40/10
**making** [4] 7/11 57/21 58/3 68/22
**malice** [2] 26/3 27/16
**man** [4] 54/11 54/11

management [1] 16/25
**managers** [1] 6/3
**manipulating** [1] 28/20
**manipulation** [1] 18/21 22/24
**manual** [6] 51/15 62/7 62/9 62/12 62/15 69/8
**many** [4] 21/15 34/14 53/25 59/2
**MARKET** [5] 1/6 1/11 2/12 4/4 4/6
**Martin** [4] 16/20 16/21 23/8 30/20
**massive** [2] 56/19 68/6
**material** [1] 34/17
**materially** [1] 8/10
**math** [1] 33/19
**matter** [14] 14/8 16/12 19/6 19/20 19/24 21/20 24/15 43/1 46/19 47/2 53/21 54/12 61/24 72/4
**matter.'** [1] 7/6
**matters** [1] 4/20
**Matthew** [3] 2/18 4/12 5/4
**may** [12] 10/17 13/10 15/21 18/14 22/19 23/5 38/3 47/2 49/22 65/4 65/7 66/10
**maybe** [12] 20/11 20/25 27/20 29/16 31/18 31/19 31/20 39/5 53/6 57/21 67/17 69/21
**me** [56] 5/2 6/17 7/25 9/20 9/21 10/1 10/7 12/9 12/15 15/4 15/20 15/25 16/11 16/11 17/14 19/18 20/10 22/21 24/3 24/4 25/6 29/7 31/1 33/1 33/4 36/22 38/1 38/8 38/12 40/1 40/20 40/22 42/11 46/24 47/3 48/23 50/24 51/1 52/4 55/8 57/25 60/25 61/20 64/19 64/21 64/22 68/8 68/9 68/14 68/16 68/24 69/2 69/15 69/19 69/24 70/18
**mean** [47] 9/8 9/10 12/21 17/5 18/9 18/11 18/14 19/16 19/24 20/3 21/5 21/9 21/25 22/5 22/21 24/18 24/20 24/24 25/5 26/14 29/8 29/14 29/19 31/16 32/10 32/21 32/25 33/1 33/10 33/12 39/21 40/3 40/7 41/9 41/10 42/5 48/19 48/24 52/9 56/11 56/12 56/12 60/6 61/9 64/22 67/1 67/18
**means** [2] 15/4 24/23
**meant** [1] 50/17
**mechanical** [1] 3/6
**media** [6] 7/10 7/25 8/4 8/5 8/12 31/4

meet [1] 70/20
**meeting** [2] 50/5 50/6
**MEHTA** [1] 1/15
**members** [1] 42/9
**memo** [3] 43/5 45/23 51/17
**memorandum** [1] 43/4
**memory** [8] 19/25 31/10 31/17 31/25 34/11 34/21 38/19 70/11
**mention** [1] 65/7
**mentioned** [2] 18/7 50/6
**mere** [2] 8/24 28/8
**Merit** [1] 3/2
**merits** [2] 52/24 57/9
**message** [3] 26/10 26/13 32/8
**Meyer** [2] 16/23 19/3
**MICHAEL** [2] 1/3 4/4
**Michael Molock** [1] 4/4
**mid** [2] 17/1 65/25
**Mid-Atlantic** [1] 17/1
**mid-week** [1] 65/25
**might** [13] 5/23 9/11 9/13 10/25 11/17 11/17 12/4 22/24 33/20 34/22 37/12 42/9 51/1
**Mike** [6] 32/22 33/13 53/24 55/17 55/19 63/5
**mind** [1] 18/18
**minimum** [1] 18/19
**mischief** [1] 14/8
**missing** [4] 11/12 11/13 17/17 33/14
**missing-evidence** [2] 11/12 11/13
**mitigate** [1] 9/13
**mix** [2] 40/10 68/20
**MOLOCK** [9] 1/3 1/18 4/4 4/7 10/11 12/21 13/15 14/7 14/17
**Molocks** [1] 50/22
**moment** [2] 21/21 54/17 56/15 59/6
**money** [2] 53/7 61/16
**month** [1] 57/2
**months** [4] 4/18 66/19 68/8 70/9
**more** [16] 7/12 31/4 39/5 39/15 40/16 41/22 41/24 42/4 43/17 46/8 47/8 52/6 52/11 60/15 61/8 69/13
**moreover** [1] 33/8
**most** [5] 9/19 14/18 46/22 58/9 63/18
**motion** [7] 4/25 5/3 10/4 12/12 13/7 14/21 16/9
**motions** [4] 4/17 10/8 14/23 14/25
**move** [1] 68/25
**moved** [1] 6/9
**moving** [2] 6/11 67/18
**Mr** [5] 47/6 49/25 59/6 70/21 70/21

**M**

Mr. [143]
Mr. Anderson [1] 30/3
Mr. Barakat [18] 5/1
5/7 5/14 5/18 5/21 6/1
6/4 6/10 6/21 7/1 7/9
7/15 7/21 8/19 9/6 9/12
9/18 10/3
Mr. Barakat's [2] 7/17
8/21
Mr. Brown [1] 10/5
Mr. Campanelli [25]
38/7 38/17 38/25 39/6
42/6 42/20 43/3 44/25
47/7 49/14 50/4 51/15
52/15 55/23 56/5 57/17
58/4 58/9 58/20 59/8
59/15 60/13 62/2 62/6
63/17
Mr. Campanelli's [8]
42/12 45/11 48/15 49/2
57/15 57/24 58/14
58/19
Mr. Casas [17] 15/14
15/15 16/11 18/13 26/9
29/7 34/13 36/22 38/16
39/24 40/8 41/6 45/2
50/1 50/17 55/2 56/23
Mr. Casas's [4] 51/4
51/8 51/14 52/17
Mr. Douyon [1] 70/24
Mr. Grady [3] 48/14
50/2 52/20
Mr. Hempfling [1] 45/3
50/17 64/17
Mr. Hempfling's [1]
65/14
Mr. Hersh [3] 35/15
37/11 66/3
Mr. Hersh's [1] 35/13
Mr. Klaproth [29]
13/25 17/7 19/12 19/16
21/17 23/18 23/24 30/6
30/24 31/23 32/24 34/4
34/20 35/2 35/5 35/21
37/4 37/7 47/10 47/16
48/12 50/20 55/25 56/1
63/1 66/17 68/4 68/16
69/12
Mr. Klaproth's [1]
19/18
Mr. Lannon [1] 19/3
Mr. Meyer [1] 19/3
Mr. Sellinger [11] 42/4
47/18 48/19 51/2 51/25
52/10 52/12 57/13 60/1
69/3 70/2
Mr. Sellinger's [3]
52/14 54/17 68/7
Mr. Tracey [1] 19/2
Mr. Zambri [7] 13/25
47/10 47/15 48/12
50/20 65/11 69/12
Mr. Zambri's [1] 24/10
23/16
Ms [1] 23/16
Ms. [41] 5/19 5/22 6/1
6/6 15/3 15/8 15/16
15/23 16/13 17/8 17/12

Mr. [143]
20/25 20/25 21/2 21/4
21/4 21/7 21/7 21/9
22/3 22/9 22/13 22/14
22/22 23/16 23/16
23/18 24/2 26/5 27/10
29/3 29/18 30/4 30/4
30/5 30/19 39/15
Ms. Anderson [5]
20/20 20/25 21/4 21/7
23/16
Ms. Buchanan [27]
5/19 5/22 6/1 6/6 15/3
15/8 15/16 15/23 17/8
17/12 20/6 20/15 20/21
20/25 21/2 21/4 21/7
21/9 22/3 23/16 23/18
24/2 27/10 29/18 30/4
30/5 30/19
Ms. Buchanan's [4]
16/13 26/5 29/3 39/15
Ms. Lang [5] 22/9
22/13 22/14 22/22 30/4
much [10] 8/22 14/16
20/2 36/16 42/8 44/19
58/24 60/17 61/20
68/24
muddled [1] 64/6
multinational [1] 32/1
multiple [3] 38/11
61/22 63/1
my [29] 6/25 9/13 12/8
12/10 14/1 14/15 17/13
17/16 18/13 18/16
18/18 31/17 31/24 33/8
33/23 38/3 38/8 45/12
52/25 55/6 55/21 58/20
62/18 64/18 65/8 65/15
65/8 69/15 69/25

**N**

name [1] 36/2
narrow [1] 21/21
necessity [1] 13/12
need [18] 10/18 13/1
23/11 26/1 26/3 26/12
27/24 28/14 32/15
32/15 33/25 49/16
60/18 60/24 65/6 66/11
66/15 66/17
needed [1] 41/19
needs [1] 7/8 7/8 66/23
negligence [1] 27/15
negligent [2] 29/4
29/10
negligently [1] 26/2
neither [3] 11/24 27/5
49/1
nervous [1] 68/12
never [4] 23/13 43/14
45/5 61/13
nevertheless [3] 15/22
64/1 70/12
new [21] 2/10 40/17
51/5 51/13 51/20 65/16
67/11 67/12 67/12
67/13 67/14 67/14
67/18 67/20 68/6 68/10

news [2] 8/6 8/13
next [1] 71/1
nice [2] 4/14 71/5
nine [48] 18/22 22/16
22/17 22/23 22/23 23/4
33/18 39/5 39/10 39/22
42/7 42/13 42/19 43/2
43/17 43/18 43/21
43/24 43/25 44/14
44/24 45/11 45/14
45/18 46/4 47/8 51/12
51/19 51/21 51/25 52/1
52/2 52/6 52/7 52/20
53/2 53/25 57/17 58/22
58/25 59/5 59/10 59/15
61/8 61/9 62/3 62/13
62/19
nine-store [11] 42/19
44/24 45/18 51/12
51/19 52/2 52/7 58/22
59/10 59/15 62/3
no [27] 1/4 1/10 7/23
8/19 8/23 12/3 12/14
12/25 17/13 21/5 29/23
33/2 33/3 38/10 43/10
44/11 45/6 50/16 52/10
54/15 55/22 57/4 59/19
63/21 67/9 70/11 70/14
nobody [1] 11/9
Nobody's [1] 64/25
non [15] 2/17 4/11 5/4
11/21 17/6 17/12 30/13
30/22 32/21 33/3 33/4
34/5 51/10 54/8 57/8
non-existence [1] 57/8
non-lawyers [7] 17/6
17/12 30/22 32/21 33/3
33/4 34/5
non-legal [1] 30/13
Non-Party [1] 2/17
4/11 5/4
non-presentation [1]
11/21
non-sworn [1] 51/10
non-testifying [1] 54/8
nonconfidential [1]
8/16
none [2] 52/18 58/17
not [116]
note [1] 72/5
nothing [1] 50/11 57/3
64/9
notified [1] 55/4
notify [1] 66/5
November [3] 1/7
26/25 72/10
now [20] 9/6 12/15
19/22 20/10 24/7 25/13
32/11 35/2 39/18 51/9
52/16 61/23 67/13
67/17 67/19 69/17
69/20 70/5 70/7 70/17
nowhere [1] 62/2
number [3] 18/22 27/1
36/17
numbers [1] 37/11

69/22 70/8

**O**

oath [1] 9/20
object [3] 67/23 67/23
68/16
objected [1] 23/13
objections [1] 62/14
observation [2] 46/8
47/9
obtained [1] 6/2 23/7
23/9
obtaining [1] 37/8
obvious [1] 58/9
occur [2] 13/6 19/8
occurred [4] 9/14 23/6
62/19 72/5
occurs [2] 12/20 12/21
off [2] 20/10 40/23
Official [1] 3/3
okay [17] 4/13 23/23
25/4 36/19 38/4 41/2
42/17 43/22 46/7 50/14
50/19 56/15 67/25 69/2
70/18 70/25 71/3
one [31] 7/10 8/23 8/23
11/14 19/17 22/9 24/12
25/25 27/5 28/13 32/25
33/13 33/14 37/25
39/12 40/3 46/8 46/13
48/24 49/12 54/10 57/6
57/12 57/14 57/14
57/19 62/6 63/12 64/2
64/23 65/7
one's [2] 8/20 66/13
ones [4] 31/1 36/1 36/3
59/14
ongoing [4] 18/4 41/25
45/17 66/21
only [23] 7/4 13/19
14/9 16/6 18/21 22/23
22/23 39/1 43/17 45/4
45/13 48/11 51/24 52/1
58/18 59/23 62/4 62/20
64/15 64/18 64/22 68/9
69/16
open [1] 67/7
opened [1] 70/8
opening [3] 35/20
37/14 37/15
operating [1] 13/24
opponent's [1] 58/21
opportunity [2] 19/17
30/8
opposed [2] 25/12
41/22
opposing [2] 53/4
69/14
order [5] 13/2 13/5
13/10 14/20 57/10
organizations [1] 8/12
original [5] 41/8 41/11
41/19 44/13 48/25
originally [3] 43/19
45/2 49/8
other [36] 9/1 10/8
10/21 11/1 20/12 24/1

3/4

3/4
24/24 31/17 33/1 39/4
39/4 44/5 45/8 46/11
46/17 48/25 51/22
52/21 53/2 53/7 53/9
53/22 59/23 60/12
61/12 61/14 61/14 62/6
62/13 62/19 63/3 65/22
67/1 67/3 68/17 69/1
others [7] 29/16 32/13
39/20 45/3 49/22 50/17
54/13
otherwise [5] 11/8
26/16 39/7 56/18 65/1
ought [1] 51/10
our [16] 8/8 18/22
30/15 33/5 33/18 34/12
37/3 41/21 56/12 56/13
57/11 60/11 66/3 66/16
66/21 66/25
out [19] 5/25 13/4 17/2
17/22 24/11 28/9 40/23
47/5 48/3 49/2 49/9
53/18 54/6 54/18 54/19
54/19 58/24 61/4 66/19
outside [4] 15/21 22/15
58/7 67/15
outsourced [1] 48/15
outstanding [1] 4/18
outweighed [1] 10/2
over [9] 36/23 37/20
38/1 46/12 48/6 58/15
58/20 58/20 64/12
overlapping [2] 14/10
14/14
owed [1] 52/19
owned [1] 54/4
owner [1] 60/3

**P**

p.m [2] 1/8 71/6
page [7] 15/11 17/8
26/23 31/12 32/20
55/22 56/4
pages [5] 15/4 16/10
45/14 45/19 45/19
paid [7] 44/2 44/19
44/22 48/13 49/17 53/7
61/15
pandemic [1] 72/6
papers [4] 11/17 31/8
46/3 71/1
paperwork [1] 57/18
paragraph [3] 28/21
38/18 41/18
paralegal [1] 66/3
parallel [1] 13/24
parameters [1] 43/6
Park [1] 2/10
parrots [1] 19/25
part [11] 10/16 12/17
22/7 32/2 33/15 34/12
41/17 51/11 58/21
63/18 64/7
participated [2] 15/22
31/13
particular [10] 4/23
7/20 8/15 8/18 11/8
25/17 31/24 42/5 48/1

**P**

**particular...** [1] 53/7
**particularly** [4] 9/22 14/6 22/22 62/18
**parties** [1] 4/17
**party** [8] 2/17 4/11 5/4 11/5 12/22 25/17 31/13 40/11
**party's** [1] 13/6
**pattern** [1] 39/12
**Pause** [1] 41/1
**pay** [5] 43/1 44/14 44/23 48/4 60/24
**payment** [22] 42/19 43/20 44/20 44/24 44/24 45/18 46/2 46/2 46/5 47/22 47/24 50/11 51/12 51/19 52/2 56/24 58/22 59/10 59/16 62/3 62/10 62/16
**payments** [5] 45/7 45/7 46/1 52/19 56/10
**pending** [1] 4/17
**people** [12] 16/18 43/1 44/1 44/14 44/25 45/7 48/4 49/17 50/2 52/19 57/5 64/18
**per** [1] 23/20
**percipient** [1] 38/12
**perhaps** [1] 39/15
**period** [1] 68/24
**permit** [1] 11/18
**person** [8] 8/5 9/2 26/21 40/4 53/13 60/3 60/7 61/22
**personnel** [1] 30/13
**perspective** [1] 41/21
**pertain** [1] 63/5
**Petitioner** [2] 2/17 4/12
**phase** [1] 68/13
**picture** [1] 50/16
**place** [1] 55/23
**placed** [1] 10/2
**plaintiff** [9] 7/14 7/20 7/20 8/18 9/5 9/11 26/1 29/20 50/22
**plaintiffs** [23] 1/4 1/9 1/18 1/22 4/7 4/8 5/9 5/21 5/24 7/9 9/5 10/11 11/10 11/15 13/18 14/10 16/2 19/2 27/14 28/20 29/22 35/20 56/9
**plaintiffs'** [8] 11/6 11/21 12/12 14/21 15/11 46/9 47/18 58/8
**plan** [1] 48/7
**played** [1] 54/23
**playing** [2] 54/5 60/4
**please** [3] 55/8 66/12 72/5
**PLLC** [2] 1/18 1/22
**point** [24] 11/18 12/5 13/11 26/9 30/16 30/16 33/8 36/10 38/24 39/6 41/25 53/10 58/14 60/2 61/2 61/3 62/1 63/13 64/3 64/11 64/13 64/13 64/25 70/8

**points** [3] 13/4 51/1 62/20
**poke** [2] 29/20 29/23
**policy** [1] 11/3
**portions** [1] 45/19
**position** [2] 20/5 29/3
**possible** [2] 21/14 66/5
**possibly** [1] 33/12
**potential** [3] 26/18 41/12 56/6
**potentially** [4] 17/22 43/2 44/2 55/18
**PowerPoint** [1] 63/2
**PowerPoints** [4] 45/14 45/20 59/9 59/16
**PR** [4] 26/11 26/17 26/21 26/21
**practice** [1] 6/6
**precisely** [1] 18/16
**prejudiced** [1] 27/15
**prejudicing** [1] 14/16
**preliminarily** [1] 12/15
**preliminary** [3] 12/7 12/7 33/15
**premature** [1] 14/20
**prepared** [5] 14/24 33/13 42/15 51/17 59/16
**present** [1] 58/6
**presentation** [1] 11/21
**presented** [1] 5/16
**preservation** [1] 65/8
**preserve** [1] 65/15
**Presidents** [2] 16/24 30/21
**Press** [7] 5/5 6/8 6/9 15/10 15/12 16/1 20/16
**presume** [1] 39/1
**Prettyman** [1] 3/4
**prevent** [1] 19/5
**prevented** [1] 39/10
**previously** [1] 69/7
**primary** [1] 59/14
**principles** [2] 16/7 46/25
**print** [1] 40/23
**prior** [2] 36/4 47/13
**privilege** [44] 6/11 6/13 6/15 6/16 6/17 6/18 6/23 7/2 15/6 19/23 19/24 20/1 21/14 21/16 22/5 23/12 23/17 24/8 24/15 26/24 27/5 28/2 32/6 32/20 33/2 34/16 34/25 35/1 35/22 35/25 36/12 37/4 37/9 37/9 45/10 45/16 46/17 56/18 60/4 60/5 60/5 61/21 63/25 65/23
**privileged** [11] 22/7 25/7 25/9 27/22 27/25 28/9 33/7 38/20 38/22 39/8 40/6
**privileges** [2] 16/3 16/7
**probably** [5] 13/16 36/25 55/2 70/17 70/21
**problem** [4] 29/24

**problems** [1] 67/9
**proceed** [1] 38/9
**proceedings** [4] 1/14 3/6 71/6 72/4
**produce** [3] 38/20 57/10 62/12
**produced** [16] 3/7 13/1 29/24 30/1 34/3 34/6 34/11 45/15 45/16 45/22 45/24 46/6 47/14 48/10 59/3 62/6
**produces** [1] 38/23
**product** [18] 16/4 18/24 20/12 33/3 38/22 42/2 42/12 45/10 46/15 46/24 47/3 47/4 48/2 56/18 58/15 59/22 60/5 63/24
**production** [2] 12/13 34/12
**proffering** [1] 56/14
**program** [4] 10/20 10/24 31/14 32/3
**prohibited** [1] 6/21
**project** [21] 42/19 43/20 44/16 44/25 45/19 47/22 47/24 48/1 50/11 51/12 51/19 52/2 52/7 56/24 58/22 59/11 59/13 59/16 60/14 60/19 62/3
**promises** [1] 68/22
**proof** [1] 7/13
**propose** [1] 69/12
**proposition** [2] 7/24 8/4
**prospect** [1] 14/16
**protection** [2] 48/2 59/22
**prove** [3] 26/1 27/15 27/25
**provide** [5] 20/2 22/1 22/3 41/9 41/12
**provided** [8] 19/3 20/21 21/2 23/20 53/12 61/10 61/11 65/18
**provides** [1] 41/7
**providing** [3] 26/20 39/17 41/18
**public** [12] 7/11 7/18 8/1 8/6 8/15 9/7 24/20 24/22 25/7 26/13 26/15 26/18
**published** [2] 27/9 28/13
**punitive** [1] 26/2
**purely** [1] 26/21
**purportedly** [1] 5/10
**purpose** [10] 8/1 9/2 9/3 45/4 47/25 47/25 57/24 59/8 59/21 61/10
**purposes** [14] 44/7 44/10 45/1 49/3 58/4 59/9 60/3 60/12 61/18 62/24 63/9 70/9 70/10 70/13
**pushing** [1] 69/21

**puts** [4] 12/22 27/22 39/3 40/16
**putting** [2] 30/15 56/15

**Q**

**qualified** [4] 6/16 6/17 6/18 7/1
**qualify** [1] 59/21
**quash** [2] 4/25 6/9
**question** [21] 7/1 13/8 18/18 21/20 21/22 24/7 31/18 35/21 35/21 38/10 39/25 47/13 48/12 55/8 57/12 57/20 59/3 62/22 63/3 63/6 63/7
**questions** [13] 5/6 5/15 5/15 5/16 5/19 5/20 6/10 6/20 6/22 9/19 10/1 54/14 58/21
**quick** [1] 64/3
**quickly** [2] 10/9 14/24
**quote** [2] 25/19 56/5
**quoted** [1] 17/8
**quoting** [3] 7/15 17/13 28/19

**R**

**raised** [4] 33/5 35/20 50/25 51/14
**rather** [3] 10/24 60/21 64/1
**Re** [3] 25/15 31/11 46/21
**reach** [1] 70/23
**reached** [2] 20/13 20/13
**reacting** [1] 7/16
**reaction** [1] 50/20
**read** [3] 31/17 41/4 41/4
**real** [7] 13/22 14/12 14/16 39/14 39/25 60/4 68/21
**reality** [1] 65/3
**really** [16] 14/8 16/5 20/1 36/4 41/23 43/14 45/17 45/19 46/10 48/2 48/11 48/14 54/2 56/11 63/14 64/25
**Realtime** [1] 3/3
**reason** [16] 12/8 13/20 13/23 22/18 26/16 38/24 43/23 43/24 44/14 45/16 49/4 52/11 56/8 63/21 66/24 67/10
**reasonable** [1] 65/23
**reasonableness** [1] 13/12
**reasonably** [2] 53/20 53/23
**reasons** [2] 9/15 13/2

**recall** [3] 35/19 55/10 58/17
**recalling** [2] 35/15 35/17
**receive** [1] 17/24
**received** [4] 17/9 17/11 20/7 70/2
**recently** [1] 37/5 46/22 68/9
**reckless** [1] 29/3
**recklessly** [1] 26/2
**recklessness** [1] 27/16
**recognized** [1] 7/2
**recollection** [1] 33/24
**record** [11] 27/1 35/10 37/10 48/23 55/14 60/13 62/23 62/24 65/8 65/15 72/3
**recorded** [1] 3/6
**records** [9] 14/21 19/21 21/15 21/22 24/1 32/15 32/16 35/1 55/21
**referenced** [1] 52/19
**referring** [2] 37/4 41/15
**reflect** [1] 55/14
**reflects** [1] 57/23
**REGAN** [1] 1/18
**reganfirm.com** [1] 1/21
**regard** [1] 18/1
**regarding** [4] 20/8 24/10 51/8 52/21
**region** [2] 17/1 17/1
**Registered** [1] 3/2
**regulatory** [1] 31/5
**reject** [2] 7/19 9/4
**relate** [5] 18/25 19/11 21/16 21/22 22/2
**related** [10] 19/14 45/17 46/19 53/2 53/20 53/23 57/20 58/22 61/23 63/2
**relates** [1] 14/13
**relating** [12] 12/13 13/5 20/11 20/12 24/24 25/8 25/13 25/24 27/6 45/10 59/10 62/15
**relation** [1] 53/13
**relatively** [2] 18/22 22/24
**relevant** [5] 10/12 12/5 14/19 58/18 62/18
**reliance** [1] 29/2
**relied** [2] 17/13 18/19
**relief** [1] 11/11
**relies** [4] 6/11 6/12 18/23 21/9
**rely** [3] 10/18 28/8 30/23
**relying** [1] 18/8
**remember** [6] 32/11 33/21 33/21 35/2 35/3 55/14
**remembering** [1] 34/24
**remotely** [1] 72/7
**repay** [3] 42/8 57/18 58/24

**R**

repayment [2] 64/10 64/11
repeat [1] 56/2
repeated [1] 58/19
replicate [1] 63/16
reply [1] 51/14
report [14] 27/3 27/12 33/9 33/23 34/2 34/10 34/11 34/23 55/22 56/4 60/14 66/16 66/25 68/15
reported [1] 5/8
reporter [10] 3/2 3/2 3/3 3/3 3/5 5/1 5/4 7/4 8/16 8/24 15/12
reporter's [3] 6/11 6/15 6/23
reporting [2] 50/17 72/7
reports [6] 10/15 10/16 10/22 24/14 28/20 45/23
repositories [1] 68/19
representation [1] 52/17
representations [1] 40/2
request [2] 9/15 58/8
requested [2] 9/22 13/19
required [1] 13/11
research [1] 31/8
reserved [1] 13/16
resolution [1] 70/23
resolve [1] 4/20
resources [1] 16/22
respect [9] 39/10 42/13 42/19 43/20 44/4 48/16 53/2 61/8 65/14
respectfully [2] 51/11 61/16
respond [1] 67/4
responding [2] 17/14 41/13
responds [1] 6/14
response [6] 37/14 50/20 58/8 58/20 59/3 59/25
responses [3] 11/11 17/22 18/15
responsible [2] 16/25 66/8
rest [4] 23/4 39/23 45/15 68/20
result [4] 8/25 17/23 47/2 48/16
results [4] 24/14 25/20 25/23 30/1
retained [1] 41/11
retention [2] 56/21 59/7
reveal [1] 14/6
revealed [1] 28/19
reveals [1] 19/23
review [3] 21/25 22/4 36/6
reviewed [4] 11/5 36/8

reviewing [1] 35/19
revisited [1] 31/7
right [22] 10/7 14/23 16/12 22/6 22/12 24/4 25/11 32/5 35/12 35/14 36/20 37/3 38/6 40/8 40/19 55/18 55/20 60/18 63/11 65/21 70/5 70/7
rigorous [1] 46/16
risk [2] 14/12 60/4
RMR [2] 72/2 72/11
roadblock [1] 29/5
Roberta [2] 16/18 17/24
role [9] 40/17 41/24 49/2 49/5 49/18 49/20 52/11 64/10 64/10
roles [1] 38/11
Root [1] 25/16
rope [1] 53/12
rub [1] 25/20
rule [4] 5/2 14/24 59/22 63/25
Rule 26 [1] 59/22
ruled [1] 14/24
rules [1] 13/6
ruling [3] 38/2 51/7 54/6
run [1] 30/12
runs [1] 60/4

**S**

Sahayam [2] 27/2 32/22
said [19] 12/17 13/19 14/2 18/1 21/7 23/5 23/17 33/17 42/22 46/21 49/15 51/2 52/10 52/15 54/5 56/2 57/16 60/23 61/5
sake [1] 52/17
Sal [1] 55/17
Salvatore [4] 1/18 4/7 50/22 68/1
same [10] 35/21 52/20 53/1 53/13 53/23 53/24 54/11 54/11 54/12 61/22
satisfied [1] 6/18
sausage [1] 34/4
saw [2] 53/1 61/13
say [21] 6/22 12/15 18/17 21/5 21/18 22/9 22/13 23/25 24/22 26/18 29/9 30/11 31/11 32/18 37/6 45/21 49/7 49/22 49/23 52/5 59/25
saying [8] 25/1 25/3 30/2 33/6 41/6 53/8 60/18 64/15
says [9] 6/6 10/21 12/25 13/5 22/15 26/8 37/8 38/19 52/5
scenario [2] 60/17 60/17
scene [3] 43/3 44/16

schedule [1] 68/22
scheduling [3] 13/5 13/10 66/13
scope [9] 21/8 31/2 42/20 52/22 52/23 53/19 57/1 57/1 58/21
Scott [2] 23/9 27/2
screens [1] 70/22
scrutiny [1] 53/15
seal [1] 36/14
Sealed [1] 31/11
SEC [2] 26/16 31/14 32/2 41/14
second [9] 8/9 28/17 40/7 41/17 49/16 58/1 62/8 69/3 69/4
Secondly [1] 13/18
section [2] 33/6 36/16
see [10] 4/14 23/11 27/14 33/11 33/19 34/4 37/1 48/10 53/1 70/22
seek [1] 5/20
seeking [5] 16/9 19/13 20/19 24/8 24/11
seeks [1] 5/3
seem [1] 9/21
seems [10] 10/1 11/19 15/23 18/14 19/18 20/4 22/21 25/6 41/23 60/21
seen [2] 56/21 59/2
sees [1] 56/20
selective [1] 39/16
sell [1] 70/18
Sellinger [15] 2/8 4/9 42/4 42/15 47/18 48/19 51/2 51/25 52/10 52/12 57/13 60/1 66/13 69/3 70/2
Sellinger's [1] 52/14 54/17 68/7
sellingerd [1] 2/11
send [5] 36/21 36/22 37/16 37/20 38/1
sense [3] 14/1 39/24 65/3
sent [1] 38/16
sentences [1] 18/1
separate [7] 19/13 21/20 35/23 39/3 39/22 59/7 70/16
separately [3] 34/11 59/19 60/13
separation [2] 54/11 64/13
serves [4] 19/25 31/17 38/19 70/11
services [3] 2/13 41/12 41/18
set [8] 9/16 19/7 54/18 57/11 59/8 69/17 70/16 70/20
several [1] 52/21
severely [1] 27/15
shall [1] 13/6
shape [1] 38/3
share [4] 14/10 42/11 61/17 70/21

shared [3] 44/20 44/22 44/9
shares [1] 20/15
she [29] 15/24 15/25 16/13 16/16 16/17 16/17 17/12 17/4 17/5 17/6 17/9 17/11 17/19 17/23 18/1 18/8 18/19 18/23 20/6 20/21 21/7 21/7 23/20 24/13 26/7 27/11 29/1 30/19 50/6
she's [2] 22/10 22/11
shielding [1] 30/10
shift [1] 17/12
shifted [2] 11/2 48/6
shifting [4] 10/19 10/24 22/19 58/4
should [12] 6/22 12/8 12/9 13/16 21/18 25/10 44/20 48/16 54/22 61/24 65/18 70/6
shouldn't [3] 21/10 21/11 51/9
show [5] 10/23 29/25 30/1 59/11 59/14
showed [1] 29/13
showing [1] 36/7
shows [1] 57/19
shut [1] 63/9
side [8] 11/15 11/24 26/9 30/25 37/23 39/13 58/15 69/1
sides [1] 38/9
signing [1] 41/10
silo [1] 61/17
siloed [1] 61/14
similar [1] 32/9
simply [2] 19/25 40/9
since [2] 31/8 41/10
single [1] 64/21
sit [6] 5/5 5/14 9/21 11/23 66/7 69/2
situation [3] 37/25 39/15 70/11
six [1] 45/14
Sixth [2] 2/4 2/13
small [2] 18/22 22/24
Smith [1] 7/3
so [108]
so I don't [1] 58/10
So I don't have [1] 36/17
so I think [4] 13/20 18/7 19/9 25/15
so it's [1] 67/14
so-called [1] 54/8
software [3] 68/10 68/10 70/3
some [42] 4/18 5/16 6/2 10/14 12/8 12/16 12/23 12/23 13/25 14/3 14/13 15/23 17/24 18/10 19/11 20/6 21/6 24/2 26/20 32/4 34/25 35/5 38/4 38/24 39/6 39/19 41/7 41/10 43/10 49/4 51/21 54/7 54/14 54/19 56/25 57/2 57/23

somebody [5] 9/9 39/18 49/2 60/6 60/19
somehow [5] 7/17 9/1 61/13 65/9 65/17
someone [2] 26/12 60/1
something [10] 17/17 18/17 28/2 56/21 57/22 63/10 64/20 65/25 67/21 68/2
sometime [1] 55/13
somewhere [3] 55/6 60/8 65/1
soon [1] 71/3
sorry [12] 4/19 31/21 31/22 37/14 41/3 43/16 45/9 55/16 56/1 57/1 65/4 70/12
sort [11] 12/22 16/24 20/10 32/12 32/14 32/16 33/15 38/3 56/16 66/20 67/18
sought [1] 7/5
sounds [1] 55/18
source [5] 7/15 7/24 15/17 27/10 28/15
sourced [1] 16/14
sources [5] 5/23 6/7 8/16 10/3 28/24
SPAHR [1] 2/18
speak [4] 42/15 47/12 47/14 53/5
speaking [6] 7/10 8/4 8/4 8/24 27/11 50/24
speaks [1] 27/11
specific [4] 18/1 24/7 25/6 33/21
specifically [1] 36/2
speculation [2] 11/20 12/1
speculative [2] 12/2 12/3
spent [2] 46/11 67/19
spoke [17] 5/19 5/21 5/22 5/23 6/2 7/20 8/11 8/18 9/9 16/17 16/17 17/2 17/4 17/6 26/8 45/17 66/16
spoken [2] 9/5 9/11
spokesperson [1] 5/12
spreadsheet [2] 53/6 63/2
spreadsheets [9] 33/14 52/15 52/18 52/21 53/1 61/14 62/7 62/12 63/4
stack [1] 34/17
stage [1] 10/1
stand [1] 29/9
standard [2] 7/12 63/23
standards [2] 9/15 20/1
stands [1] 7/24
start [2] 4/25 57/25
started [3] 45/21 50/2

**started...** [1] 64/14
**starting** [1] 35/2
**state** [2] 6/12 6/24
**stated** [1] 17/9
**statement** [3] 9/14 52/14 65/16
**statements** [27] 5/10 8/12 9/1 9/10 15/3 15/9 15/9 15/10 15/12 15/14 15/17 15/17 15/18 16/13 21/9 21/9 21/23 22/2 24/2 24/12 26/1 26/4 26/15 27/8 27/9 28/14 29/9 29/18
**states** [3] 1/1 1/15 28/18
**status** [4] 55/2 55/19 55/22 56/3
**statutory** [1] 6/12
**stenography** [1] 3/6
**steps** [1] 44/18
**stick** [1] 10/5
**sticking** [1] 68/23
**still** [4] 22/17 22/20 50/8 50/10
**store** [18] 11/3 11/8 42/19 44/24 45/18 51/12 51/19 52/2 52/6 52/7 53/8 58/22 58/25 59/10 59/15 62/3 62/9 62/10
**stores** [40] 16/25 18/22 22/17 22/23 22/23 23/4 33/18 39/5 39/10 39/22 42/8 42/13 43/2 43/17 43/18 43/21 43/24 43/25 44/5 45/11 46/4 47/9 51/22 51/22 51/25 52/2 52/21 52/21 53/2 53/2 53/25 57/17 58/25 59/5 61/8 61/9 62/13 62/19 63/3 63/5
**story** [1] 5/7
**straightforward** [1] 5/17
**strategy** [1] 14/6
**stream** [1] 50/24
**Street** [4] 1/19 2/4 2/13 2/19
**strict** [1] 53/15
**strike** [1] 67/18
**stringent** [1] 7/12
**structured** [1] 21/14
**studied** [1] 21/13
**stuff** [3] 54/9 61/12 61/23
**subject** [16] 7/12 19/20 19/23 20/22 21/20 23/17 24/15 27/3 33/8 35/6 46/19 47/2 53/21 54/12 61/24 72/6
**subject-matter** [2] 21/20 54/12
**subjects** [1] 57/14
**submit** [2] 34/25 51/11
**submitted** [1] 6/4
**subpoena** [1] 6/10

**subpoenas** [2]
9/17
**subsection** [2] 35/5 36/16
**substantially** [1] 48/4
**substantive** [2] 40/15 41/7
**substantively** [1] 40/9
**succinctly** [1] 61/6
**such** [2] 6/5 6/7
**sudden** [1] 67/11
**sufficient** [1] 43/13
**suggest** [2] 8/23 64/19
**suggested** [2] 11/16 39/21
**suggesting** [2] 58/11 59/6
**suggests** [1] 8/22
**Suite** [5] 1/19 1/23 2/4 2/9 2/14
**summary** [3] 13/7 25/18 62/8
**summation** [1] 17/11
**supervising** [1] 50/9
**supplemental** [3] 37/3 40/18 41/7
**supplements** [2] 40/8 40/12
**support** [3] 33/18 43/12 43/13
**suppose** [2] 39/14 57/20
**sure** [9] 21/2 34/19 35/19 40/25 44/1 44/21 53/22 62/4 62/25
**surprised** [1] 58/2
**Susan** [4] 16/19 17/24 18/6 50/6
**sworn** [4] 6/4 51/10 53/3 65/16
**sympathetic** [2] 69/18 69/19
**sympathy** [1] 69/24
**system** [4] 67/12 67/20 68/10 68/11
**szambri** [1] 1/21

---

**T**

**tactical** [2] 54/16 61/23
**tactically** [1] 54/20
**take** [6] 26/23 32/16 38/1 40/24 57/23 60/10
**taken** [1] 4/19
**taking** [1] 63/18
**talk** [12] 14/25 15/2 17/20 23/14 38/7 39/7 41/18 42/20 66/3 69/14 69/24 70/6
**talked** [3] 29/4 34/20 51/13
**talking** [10] 17/21 23/13 34/14 37/3 42/5 42/6 50/1 62/16 62/17 70/22
**talks** [2] 41/10 56/23
**targeted** [1] 24/17
**task** [1] 49/24
**tasked** [1] 44/16

**team** [6] 42/9 45/3 48/5 48/16 50/9 50/18
**teams** [1] 45/8
**technological** [1] 72/7
**tee** [1] 15/7
**tell** [6] 11/10 24/4 26/12 38/15 68/14 69/14
**telling** [4] 59/15 64/19 69/15 70/7
**tells** [2] 52/3 63/10
**temporally** [1] 55/11
**terminated** [1] 5/9
**terms** [2] 13/12 59/1
**test** [1] 7/7
**testified** [9] 6/1 15/16 16/16 17/5 17/13 23/18 28/24 50/4 62/2
**testify** [1] 56/10
**testifying** [4] 39/11 53/14 54/8 54/9
**testimony** [14] 5/25 10/15 15/13 16/13 41/13 49/13 49/15 49/25 52/3 52/5 53/3 57/2 58/13 58/19
**than** [14] 31/1 43/17 45/8 46/16 47/8 52/6 52/6 52/11 61/8 62/13 62/19 66/7 68/4 69/13
**Thank** [6] 4/15 37/18 38/5 40/25 42/16 65/12
**Thank you** [5] 4/15 37/18 38/5 40/25 65/12
**Thanks** [3] 16/15 41/3 71/4
**that** [508]
**that's** [80]
**their** [17] 7/11 8/12 10/13 10/16 11/11 13/20 19/3 24/8 28/14 32/7 32/15 35/20 45/24 48/8 50/3 54/22 65/17
**them** [23] 7/10 7/17 9/19 14/1 19/5 22/1 24/2 26/17 28/3 30/22 30/24 36/22 36/23 37/1 38/2 38/3 42/22 43/7 44/23 48/14 53/18 57/10 63/16
**themselves** [2] 7/11 8/14
**then** [40] 4/22 6/12 7/15 10/7 13/22 14/25 15/24 16/22 18/6 20/10 20/15 21/2 21/9 22/22 23/4 24/13 25/9 28/7 29/20 30/21 34/22 36/3 36/12 38/2 38/8 38/25 39/5 40/7 46/8 47/18 59/18 59/23 60/2 60/8 60/23 62/9 64/12 66/3 70/23 71/2
**theory** [1] 28/8
**there** [55] 11/4 12/16 12/23 13/15 14/10 16/5

**there's** [40] 4/23 10/23 12/3 12/8 12/25 14/12 18/7 18/16 21/3 21/20 22/14 24/5 24/23 26/16 33/2 37/8 38/10 38/18 39/3 48/21 49/4 49/25 50/25 51/21 53/6 54/10 56/18 56/19 57/4 58/10 58/11 58/19 60/7 63/21 64/5 64/25 67/11 67/20 68/19 70/14
**thereby** [1] 7/11
**therefore** [6] 8/14 8/22 11/25 56/17 66/22 72/6
**these** [37] 4/20 4/22 7/19 10/12 11/6 11/9 11/24 14/11 14/13 14/18 18/13 19/10 21/16 21/22 24/2 29/9 29/18 30/13 32/21 33/8 33/10 33/13 33/17 35/22 37/1 39/5 43/6 44/14 45/14 47/8 48/13 49/12 49/17 53/22 60/24 61/14 66/4
**they** [90]
**they're** [10] 10/22 11/7 16/3 16/6 16/7 20/22 26/15 28/1 51/5 61/16 67/12 68/7
**they've** [8] 11/5 14/2 16/5 28/5 39/18 53/17 67/12 68/7
**thing** [6] 28/17 51/13 59/23 62/6 65/7 68/13
**things** [10] 24/6 25/22 28/13 43/9 45/13 46/2 48/8 53/3 61/4 61/22
**think** [90]
**thinking** [2] 31/19 38/4
**third** [2] 28/24 62/9
**this** [112]
**This is** [1] 4/3
**thorny** [1] 37/22
**thorough** [1] 29/11
**those** [87]
**though** [3] 23/1 61/20 67/24
**thought** [5] 35/6 41/6 43/11 47/13 66/18
**thoughts** [1] 50/23
**three** [9] 13/1 14/23 17/2 18/6 23/17 30/21 43/9 44/4 62/7
**threshold** [1] 51/1
**through** [4] 30/13

**throughout** [1] 52/22
**thumb** [1] 36/22
**tight** [1] 53/12
**time** [24] 5/12 11/12 29/18 40/14 43/7 43/12 43/13 45/6 46/2 46/11 49/15 50/8 50/10 50/15 51/13 51/15 55/4 55/23 56/24 58/6 65/23 69/10 70/17 70/20
**times** [1] 63/1
**titled** [1] 72/4
**today** [5] 31/9 51/13 62/5 66/20 66/21
**Today's** [1] 65/24
**together** [1] 65/25
**told** [6] 6/1 24/22 51/23 53/23
**ton** [1] 61/15
**tone** [1] 41/22
**too** [4] 61/19 62/1 62/6 63/1
**took** [2] 26/5 64/12
**topic** [1] 24/15
**topics** [3] 19/7 20/17 20/22
**total** [1] 36/17
**totally** [1] 63/14
**toward** [1] 18/15
**traceable** [1] 11/8
**Tracey** [4] 16/20 19/2 23/8 30/21
**tracks** [1] 13/24
**transcript** [3] 1/14 3/6 72/3
**transcription** [1] 3/7
**transfer** [8] 43/12 43/13 43/15 51/16 62/7 62/9 62/13 62/15
**transfers** [4] 45/25 62/17 62/19 69/9
**transmitting** [1] 34/7
**TRAURIG** [5] 2/3 2/8 40/10 40/11 64/5
**trial** [4] 12/10 29/8 30/11 67/2
**tried** [3] 24/17 39/24 63/8
**Trigon** [1] 54/2
**true** [4] 24/21 28/10 29/11 47/23
**truly** [1] 18/5
**trust** [1] 39/23
**try** [2] 24/9 70/17
**trying** [5] 17/21 19/5 42/8 47/5 68/8
**TTFs** [4] 10/16 10/17 10/25 11/17
**turn** [5] 10/7 46/9 47/18 58/14 63/10
**turned** [1] 54/5
**Turning** [1] 58/9
**turns** [1] 69/10
**two** [21] 4/23 5/19 8/3 10/7 14/9 14/14 14/25 16/5 30/21 37/24 37/24 48/24 49/10 57/5 57/6

**T**

two... [6] 57/14 57/19 64/23 66/11 69/21 70/15
TX [2] 2/5 2/14
type [1] 19/19
types [1] 62/7

**U**

ultimate [1] 43/14
ultimately [2] 44/21 57/15
unaware [1] 69/7
unbelievable [1] 61/20
uncovered [1] 23/4
under [17] 6/11 6/13 6/18 6/23 7/1 7/3 9/15 9/20 9/24 10/11 14/3 36/14 40/17 44/20 53/3 59/22 63/16
underlying [8] 16/7 19/6 19/20 23/3 23/7 23/8 23/12 46/24
understand [4] 13/25 20/5 27/21 65/20
understanding [1] 68/5
understood [3] 26/22 29/19 70/19
undisputed [1] 7/21
unduly [1] 9/18
unearthed [1] 67/12
unindexed [1] 10/10
UNITED [2] 1/1 1/15
universal [1] 51/24
unlabeled [2] 10/10 11/7
unless [2] 54/14 56/20
unnecessary [1] 9/17
unpreserved [1] 65/10
unrelated [1] 21/1
until [1] 66/21
unusual [1] 38/14
unwilling [1] 61/13
up [12] 15/7 29/9 51/5 53/25 55/6 55/17 61/4 64/16 66/8 68/15 70/8 70/20
update [2] 27/4 33/10
upon [9] 10/2 10/14 18/8 24/3 29/2 30/19 30/23 38/2 38/15
upper [1] 16/24
us [11] 40/13 48/9 50/13 52/3 53/23 55/1 55/4 61/11 66/21 68/6 69/10
use [9] 9/11 39/19 39/25 57/24 60/3 60/11 65/2 67/13 68/21
used [2] 52/20 54/3
useful [1] 54/2
usual [1] 19/25 39/12

**V**

value [1] 46/2
values [1] 46/25
vanilla [1] 19/24

**V** (cont.)

values [4] 46/3 36/11 48/8
VASQUEZ [26] 1/8 1/22 4/5 4/8 5/9 5/21 5/24 7/14 7/20 8/18 9/5 9/11 10/11 12/12 12/14 12/18 13/8 14/8 14/17 14/21 15/11 35/20 55/22 56/4 66/16 67/3
verify [1] 26/7
versus [5] 4/4 4/6 8/7 54/9 64/4
very [15] 14/16 19/24 24/9 24/9 24/17 42/18 48/9 53/4 55/7 55/7 61/5 69/18 69/18 70/10 71/3
VIA [1] 1/14
Vice [2] 16/23 30/21
VICTOR [2] 1/8 4/5
Victor Vasquez [1] 4/5
view [10] 6/25 9/13 10/11 10/13 10/16 12/8 12/10 13/8 14/15 69/25
violation [3] 10/19 10/23 11/3
violations [1] 10/14
Virginia [2] 6/16 6/19
virtue [1] 9/14
volumes [1] 69/1
voluntary [2] 31/13 32/2
vs [2] 1/5 1/10

**W**

waive [1] 46/18
waived [7] 24/16 24/24 25/10 32/6 46/18 56/20 61/21
waiver [24] 12/16 12/23 15/1 15/2 16/3 16/8 18/24 19/19 20/16 21/3 21/12 21/21 27/18 27/21 28/10 31/3 35/6 35/24 37/9 46/15 46/16 47/8 48/16 64/1
waiving [1] 56/17
walk [1] 53/12
wall [1] 27/11
want [23] 4/21 4/22 4/23 4/25 15/2 22/7 23/19 26/13 31/11 39/19 47/10 48/13 53/8 53/9 55/5 61/3 62/3 65/10 66/8 67/13 69/10 70/16 70/17
wanted [7] 4/16 4/18 43/1 44/1 56/9 58/24 62/20
wants [4] 30/7 34/4 51/25 68/5
Ward [2] 2/18 4/11
warned [1] 54/4
warranted [2] 9/3 9/24
warrants [1] 13/20
was [153]
Washington [5] 1/7 1/20 1/24 2/20 3/5

**W** (cont.)

way [17] 18/11 21/15 21/24 29/1 37/12 37/25 48/22 48/22 49/9 54/19 54/19 54/21 60/8 65/2 69/11 70/14 70/18
we [83]
we believe [3] 22/2 20/11 53/11
we'll [4] 70/20 70/20 70/23 71/1
we're [28] 19/5 22/17 22/20 23/22 24/8 27/7 29/8 30/2 30/15 30/23 33/16 34/8 42/5 42/6 42/8 51/3 52/25 53/8 53/21 56/17 62/16 62/17 63/18 63/23 64/15 66/12 67/20 70/22
we've [11] 22/15 23/13 34/9 42/18 53/11 54/13 60/19 66/19 67/18 69/21 70/15
wear [1] 57/6
weeds [2] 32/19 42/4
week [3] 49/16 65/25 71/2
weekend [1] 71/5
weeks [1] 70/10
weighing [1] 32/15
well [32] 4/14 10/15 11/1 12/19 17/4 18/9 19/20 20/18 24/18 25/9 25/15 26/6 26/14 27/20 29/3 29/7 29/22 31/25 34/13 36/11 40/16 52/4 52/4 60/3 60/10 60/13 61/1 61/9 63/6 65/12 69/2 69/13
went [4] 35/25 42/21 44/21 44/25
were [69] 5/10 5/11 8/13 8/17 14/15 15/12 16/14 16/23 16/25 17/2 21/1 23/24 24/2 24/14 25/7 26/2 26/4 26/10 28/20 29/11 30/10 31/19 33/7 35/6 35/22 35/22 36/3 36/4 36/12 36/13 36/15 36/18 41/6 42/24 43/2 43/6 44/2 44/15 44/16 44/17 45/2 45/13 45/13 45/15 45/21 45/23 45/23 46/5 47/14 48/4 48/13 50/2 50/3 51/25 54/7 54/7 58/4 59/8 59/9 59/12 59/16 60/13 60/18 63/9 64/8 64/9 64/10 68/12 69/7
weren't [4] 29/10 29/10 44/20 45/16
West [2] 2/4 2/13
Western [1] 8/9
what [80]
what's [9] 10/14 11/9

**W** (cont.)

63/14 65/23 69/3
whatever [4] 39/24 23/16 38/22 38/24
whatsoever [1] 12/4
when [30] 6/1 9/22 12/3 12/22 12/25 17/11 17/19 17/21 20/1 26/4 26/4 26/15 26/20 27/8 28/15 30/3 31/5 32/14 41/5 44/17 46/23 48/6 48/25 51/14 54/24 55/3 62/11 62/14 64/7 64/14 whenever [1] 53/16
where [11] 11/23 22/23 27/10 32/14 36/20 47/6 50/6 54/3 56/22 58/8 63/4
whereas [1] 25/21
whether [19] 5/21 7/8 7/9 8/5 10/17 15/20 22/18 23/6 26/15 31/3 35/22 43/10 43/10 43/12 43/15 47/6 60/9 62/18 62/23
which [43] 5/17 6/5 6/6 6/24 13/23 14/22 17/23 18/11 19/11 24/15 24/21 29/15 35/10 35/10 36/14 39/7 41/23 42/8 42/20 43/5 43/5 43/6 45/4 45/15 48/7 48/12 48/17 49/11 51/8 51/16 52/22 52/23 53/19 53/25 56/21 60/17 61/15 63/5 63/10 63/16 65/16 66/11 69/7
while [3] 13/10 39/23 55/12
who [24] 5/12 5/22 6/1 7/24 8/11 16/18 16/19 16/23 20/15 33/10 33/13 33/25 34/7 39/18 42/9 43/2 43/3 44/1 44/15 48/4 48/11 50/2 54/3 66/17
who's [5] 5/4 16/21 40/5 53/13 66/4
whole [92]
Whole Foods [62] 4/4 5/3 5/8 5/12 5/14 5/24 6/3 6/14 7/7 7/23 8/3 9/9 9/10 10/21 11/6 11/16 12/16 13/4 14/16 15/5 15/25 16/1 16/19 16/20 16/22 16/24 18/4 18/12 19/9 20/10 24/22 25/22 26/3 27/8 27/22 28/12 28/22 29/8 32/20 34/25 38/24 39/6 39/16 39/21 45/5 47/7 48/14 50/7 50/12 54/21 55/23 56/5 57/21 58/3 59/10 59/15 60/10 61/11 65/2 68/5 69/16 70/4
Whole Foods' [13] 6/25 9/4 12/13 13/13 15/17 17/9 17/10 18/15

**W** (cont.)

58/23
wholefoods.com [1] 2/16
wholly [1] 19/13
whose [1] 49/3
why [13] 18/19 18/23 24/4 27/18 29/20 31/22 44/14 47/17 48/2 49/4 52/5 54/19 56/12
wide [1] 22/4
will [12] 10/4 10/13 12/9 14/21 23/25 38/19 46/16 55/14 66/23 66/25 67/1 71/3
William [4] 3/2 72/2 72/10 72/11
Williams [2] 31/21 46/22
willing [3] 39/17 52/16 52/16
Wisconsin [1] 1/23
withheld [6] 19/21 27/4 33/22 34/9 45/9 45/13
withholding [1] 34/8
within [1] 45/19
without [2] 27/14 27/16
witness [17] 23/9 23/14 38/11 38/12 38/13 39/1 48/11 49/2 49/8 54/18 55/24 56/6 56/7 56/9 56/17 58/9 67/13
won't [1] 67/2
words [8] 18/13 18/16 20/12 24/1 27/24 33/1 39/4 46/17
work [44] 16/4 18/24 20/12 33/3 33/15 38/22 39/2 39/4 39/5 39/10 39/22 39/23 40/5 42/2 42/7 42/7 42/12 45/10 45/11 46/3 46/15 46/24 47/3 47/3 47/8 48/1 49/3 54/12 56/18 57/15 57/24 58/15 58/22 59/5 59/22 60/5 60/11 60/22 60/24 61/15 63/17 63/24 64/14 64/15
work-product [5] 16/4 46/15 56/18 60/5 60/10
worked [3] 49/9 54/19 54/19
workers [1] 60/25
Workforce [1] 70/3
working [2] 14/3 22/20 66/19
world [2] 8/6 51/23
worms [1] 67/7
worry [1] 61/19
worth [1] 64/20
would [47] 8/19 8/23 10/1 10/2 12/1 12/5 14/6 19/3 23/7 26/5 28/7 28/10 30/6 34/21 34/22 36/25 37/6 37/20 37/21 39/7 40/22 44/19

# W

**would... [25]** 45/7 46/5
48/1 49/22 49/23 50/2
51/10 52/19 55/18
56/18 57/10 58/2 58/18
58/24 59/2 59/21 59/23
59/25 63/12 63/16
65/15 66/2 66/7 66/18
67/17
**wouldn't [1]** 49/7
**wrap [1]** 61/4
**written [7]** 5/5 5/15
6/10 9/20 9/23 9/25
9/25
**wrong [2]** 31/18 55/5
**wrongdoing [1]** 21/8
**wrote [2]** 5/7 5/18

# Y

**yeah [14]** 19/15 21/25
31/16 32/10 36/8 37/19
47/12 47/17 48/18 49/6
52/13 61/3 63/20 63/22
**years [2]** 69/16 69/21
**yellow [1]** 36/13
**yes [10]** 35/17 36/7
41/16 42/3 42/5 42/14
56/3 63/4 63/5 69/4
**yesterday [4]** 67/6
67/20 68/9 70/2
**yet [5]** 14/19 23/6 51/4
51/25 52/22
**you [140]**
**you know [1]** 29/4
**you'd [2]** 10/6 27/24
**you're [11]** 22/5 35/16
35/17 41/15 53/12
53/15 54/5 60/4 69/15
69/17 69/18
**You're on [1]** 35/16
**you've [5]** 18/11 23/25
44/3 57/16 65/9
**your [72]** 4/2 16/15
17/19 20/18 22/1 23/1
24/5 24/7 25/12 27/25
28/9 29/22 31/7 31/10
33/1 33/20 34/18 35/8
35/17 36/10 36/24 37/2
37/13 37/14 38/5 40/12
41/3 41/16 42/3 42/10
42/14 44/6 44/11 45/13
45/21 47/13 47/20
47/20 49/7 50/21 50/23
52/8 53/10 54/1 54/14
55/1 55/10 56/8 56/11
57/13 58/1 59/3 59/24
61/1 61/5 61/25 62/22
62/23 63/12 64/2 65/4
65/7 65/13 66/2 66/10
67/4 67/7 68/1 69/5
69/11 70/1 70/19
**Your Honor [55]** 4/2
16/15 17/19 23/1 24/5
29/22 31/7 31/10 33/20
34/18 35/17 36/10
36/24 37/2 38/5 40/12
41/16 42/3 42/10 42/14
44/6 44/11 45/13 45/21

52/8 53/10 54/1 54/14
55/1 55/10 56/8 56/11
59/24 61/1 61/5 61/25
62/22 62/23 63/12 64/2
65/4 65/7 65/13 66/10
67/4 67/7 68/1 69/5
69/11 70/1 70/19
**yours [2]** 18/13 18/16

# Z

**Zach [1]** 66/4
**Zach Douglas [1]** 66/4
**Zambri [13]** 1/18 1/18
4/7 13/25 47/10 47/15
48/12 50/20 50/22
65/11 68/1 69/12 70/21
**Zambri's [1]** 24/10
**Zaremba [4]** 3/2 72/2
72/10 72/11
**zenith [1]** 32/16
**Zerilli [3]** 7/3 9/16 9/24
**zero [1]** 49/24
**ZOOM [1]** 1/14