# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOR VASQUEZ, et al., <br><br>            Plaintiffs, <br><br>    v. <br><br> WHOLE FOODS MARKET SERVICES, INC., WHOLE FOODS MARKET GROUP, INC., <br><br>            Defendants. | Case No. 1:17-cv-00112-APM |

## DEFENDANTS WHOLE FOODS MARKET SERVICES, INC., AND WHOLE FOODS MARKET GROUP INC.'S REPLY IN SUPPORT OF OBJECTIONS AND MOTION TO STRIKE

**GREENBERG TRAURIG, LLP**
300 West 6th Street, Suite 2050
Austin, Texas 78701
*Attorneys for Defendant*

## ORAL ARGUMENT REQUESTED

*ACTIVE 681167614v6*

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    A.    Plaintiffs admit that their briefing did not comply with the Court's order. ............ 2

    B.    Plaintiffs' responses to specific evidentiary objections confirm that the evidence cannot be presented in a form that would be admissible at trial.............. 3

        1.    Plaintiffs' speculation regarding third parties' beliefs and hearsay statements are inadmissible.......................................................................... 4

        2.    Plaintiffs' speculation or repetition of hearsay regarding why potential employers did not hire them is inadmissible............................... 6

        3.    Plaintiffs' speculation about what Whole Foods knew is not admissible. ............................................................................................. 7

        4.    The Court should strike the inadmissible speculation of Zeeshan Naqvi. .................................................................................................. 8

        5.    The Response confirms that Plaintiffs lack admissible evidence of compensable mental anguish. .................................................................. 9

        6.    None of the cases cited by Plaintiffs support their speculation on lost wages................................................................................................ 10

*ACTIVE 681167614v6*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Derosier v. USPLabs, LLC*,
    2011 U.S. Dist. LEXIS 132618 (D. Md. Nov. 17, 2011) .........................................................9

*Doe v. Chao*,
    306 F.3d 170 (4th Cir. 2002) .............................................................................................9

*Evans v. Larchmont Baptist Church Infant Care Ctr., Inc.*,
    956 F. Supp.2d 695 (E.D.Va. 2013) .................................................................................9

*Hawthorne v. Canavan*,
    756 A.2d 397 (D.C. 2000) ...............................................................................................10

*Lebron v. Wash. Metro. Area Transit Auth.*,
    665 F. Supp. 923 (D.D.C. 1987) ......................................................................................9

*McSparran v. Pennsylvania*,
    289 F. Supp. 3d 616 (M.D. Penn 2018) ...........................................................................5

*Montgomery v. Risen*,
    197 F. Supp. 3d 216 (D.D.C. 2016) ..............................................................................8, 9

*Owhor v. St. John Health-Providence Hosp.*,
    503 Fed. App'x 307 (6th Cir. 2012) ................................................................................7

*Saberi v. Government of Islamic Republic of Iran*,
    841 F. Supp. 3d 67 (D.D.C. 2021) .................................................................................10

*Seed v. Pruitt*,
    No. 16-CV-0748, 2019 U.S. Dist. LEXIS 58488 (D.D.C. Feb. 11, 2019) ......................10

**Other Authorities**

Fed. R. Evid. 33(c).........................................................................................................5, 6

Fed. R. Evid. 601 ...............................................................................................................9

Fed. R. Evid. 803(3)...........................................................................................................7

Local Rule 7(m) ..................................................................................................................3

*ACTIVE 681167614v6*

## INTRODUCTION

Defendants Whole Foods Market Services, Inc. and Whole Foods Market Group, Inc. ("Whole Foods") submit this reply in support of their Memorandum of Law in Support of their Motion to Strike Summary Judgment Evidence [Dkt. 190] (the "Motion") to address those arguments raised in Plaintiffs' Opposition to Defendants' Objections and the Motion [Dkt. 195] (the "Response"). In support hereof, Whole Foods would respectfully show the Court as follows.

Whole Foods moved to exclude Plaintiffs' evidence filed in response to Whole Foods' Motion for Summary Judgment on two principal grounds. First, Whole Foods moved to strike Plaintiffs' Response to Whole Foods' MSJ [Dkt. 184-1] in its entirety because it does not cite to any statement of fact or counter-statement of facts, as required by this Court's order and the local rules. Motion [Dkt. 190] at 2–4. Instead, Plaintiffs disputed Whole Foods' Proposed Statement of Facts, not based on the actual fact or evidence cited for each statement, but based on paragraph-long narratives about other facts which Plaintiffs claim need to be considered. *Id.* Plaintiffs have admitted this filing did not comply with the Court's orders, and have asked for leave to refile their Response to Whole Foods' Statement of Facts. *See* Pltfs' Mtn. for Leave to File Corrected Statement of Facts [Dkt. 196] 2. Plaintiffs' request should be denied because it would unnecessarily extend the summary judgment briefing schedule for months, prejudicing Whole Foods and the Court both in terms of delay and the burden of additional briefing.[1]

Second, and in the alternative, Whole Foods objected to specific exhibits and statements because Plaintiffs' proffered evidence "cannot be presented in a form that would be admissible in

---

[1] Plaintiffs' Motion for Leave now requires briefing on that issue before even getting to whether the counter statements of fact are objectionable and admissible. Had Plaintiffs complied with the Court's order, any briefing on the admissibility of Plaintiffs' counter statement of facts would at least have occurred contemporaneously with the other briefing on the parties' motions for summary judgment.

1

evidence."  Motion [Dkt. 190] at 4–15.  Plaintiffs raise a host of arguments about these specific objections, including arguing incorrectly that interrogatory responses are automatically admissible regardless of other evidentiary rules; claiming that hearsay statements are not being offered for the truth of the matter asserted, but then explaining their relevance is their underlying truth; and blaming Whole Foods for not developing more evidence on issues for which Plaintiffs will bear the burden of proof.  As is clear from the face of this Response, Plaintiffs seek to survive summary judgment based on evidence that cannot be admissible at trial.  Because binding precedent requires more, Whole Foods' objections should be sustained and Plaintiffs' evidence should be excluded.

## ARGUMENT

### A.    Plaintiffs admit that their briefing did not comply with the Court's order.

Whole Foods moved to strike all of Plaintiffs' Response evidence because none of it is included in cross-statements of fact.  *See* Motion [Dkt. 190] at 2–3; *see also* Order [Dkt. 170] at 2 (requiring counter-statement of facts). Given that Plaintiffs did not present their additional facts in consecutively numbered paragraphs at the end of their response to Whole Foods' Statement of Facts, Plaintiffs did not comply with this Court's order.  *See* Motion [Dkt. 190] at 2–3.

In their Response to this Motion, Plaintiffs argue that they did in fact counter-designate facts by submitting a 97 page dispute to Whole Foods' statement of facts.  *See* Response [Dkt. 195] at 2.  However, Plaintiffs' 97 pages do not contain counter statement of facts.  Rather, they contain attorney narrative and argument.   Plaintiffs have since admitted that they did not comply with the Court's order, and have asked the Court for leave to file a Corrected Statement of Facts with **<u>333 new "Counter-Designated Facts</u>**."  *See* Pltfs.' Mtn. for Leave [Dkt. 196] at 2; Pltfs.' Corrected Statement of Genuine Issues of Fact [Dkt. 196-1] at 98–138.  Thus, it is undisputed that

Plaintiffs' Response to Whole Foods' Motion for Summary Judgment does not comply with the Court's order.[2]  The only issue is how best to resolve that noncompliance.

Given that the proposed Corrected Statement of Facts was filed the day before this reply was due, Whole Foods has not had an opportunity to review all 333 new counter-designated facts to determine whether they raise new issues or arguments.  However, the sheer volume of counter-statements belies the prejudice to Whole Foods and the Court, as Plaintiffs are effectively seeking to redo their briefing in response to Whole Foods Motion for Summary Judgment.  This will invariably require an additional round of objections and responses by Whole Foods, Plaintiffs' additional responses to those objections, and Whole Foods' replies to those responses.

In short, Plaintiffs' attempt to correct their prior non-compliance will extend summary judgment briefing for months.  This in turn will either not afford the Court sufficient time to review the dispositive motions before trial or require further extensions of the trial schedule. To avoid this unreasonable prejudice and delay, the Court should strike Plaintiffs' evidence.

**B.**     **Plaintiffs' responses to specific evidentiary objections confirm that the evidence cannot be presented in a form that would be admissible at trial.**

Whole Foods also moved to strike specific evidence within Plaintiffs' Response to Whole Foods' MSJ.  *See* Motion [Dkt. 190] at 4–15.  These evidentiary objections fell into six broad categories:

---

[2]  In both their Response and Motion for Leave, Plaintiffs blame Whole Foods for not alerting Plaintiffs to their noncompliance before filing its Motion to Strike. *See* Response [Dkt. 195] at 2; Pltfs.' Mtn. for Leave [Dkt. 196] at 2.  This argument is meritless, given that the motions for summary judgment are dispositive and Local Rule LCvR7(m) only requires parties to confer on nondispositive motions.  Moreover, the parties have now met and conferred on the issue of whether Plaintiffs would withdraw their inappropriate narratives and inadmissible statements or whether Whole Foods would agree to let them file their Motion for Leave.  This email exchange necessarily included Whole Foods' motion to strike, and thus the parties have conferred on the substance of this Motion.

*ACTIVE 681167614v6*

(i) Plaintiffs' statements that they believe or were told that third parties understood the alleged defamatory articles to be about Plaintiffs are speculative or contain hearsay;

(ii) Plaintiffs' belief that employers' decision not to hire Plaintiffs were due to the alleged defamatory statements is speculative and/or based on hearsay;

(iii) Plaintiffs' belief that, at the time of its internal investigation, Whole Foods knew Improper Labor Shifting was being directed by regional executives is purely speculative;

(iv) Zeeshan Naqvi's belief that regional executives could have discerned that Improper Labor Shifting was occurring is based on speculation for which Mr. Naqvi admits he lacks personal knowledge;

(v) Plaintiffs' conclusory statements that they have suffered "mental anguish" or "emotional distress" is not sufficient to raise a genuine issue of fact under Virginia, Maryland, or District of Columbia law; and

(vi) Plaintiffs' speculation that they could have obtained a job that paid as much as Whole Foods but-for the alleged defamatory articles is purely speculative.

*See id.* In their Response, Plaintiffs raise a host of arguments, the majority of which are not supported by any legal authority. Because these arguments confirm that Plaintiffs' evidence is inadmissible, the Court should sustain Whole Foods' evidentiary objections.

1. <u>Plaintiffs' speculation regarding third parties' beliefs and hearsay statements are inadmissible</u>.

Whole Foods moved to strike 19 different statements within Plaintiffs' responses to Whole Foods' Interrogatories 14 and 16, which are the only evidence any Plaintiff points to as demonstrating that third parties understood the allegedly defamatory articles referred to Plaintiffs. *See* Motion [Dkt. 190] at 5–7. Plaintiffs raise three flawed responses to these objections.

First, Plaintiffs claim that "it should be obvious to Whole Foods it cannot object to the question it asked or the testimony it elicited, which was responsive to the question." Response [Dkt. 195] at 4. Plaintiffs appear to assert—without citation to any authority—that responses to interrogatories are automatically admissible as evidence, regardless of whether those responses contain hearsay statements or speculation. However, the federal rules expressly refute this

4

argument, stating that "an answer to an interrogatory may be used *to the extent allowed* by the Federal Rules of Evidence." *See* Fed. R. Evid. 33(c) (emphasis added). Thus, Plaintiffs' apparent argument that interrogatory answers are immune from scrutiny under the Federal Rules of Evidence is without merit. *See McSparran v. Pennsylvania*, 289 F. Supp. 3d 616, 626 (M.D. Penn 2018) (excluding interrogatory answers that contained hearsay statements).[3]

Second, Plaintiffs claim that even if these statements contain hearsay, they are not being offered for the truth of the matter asserted, "but instead are offered to show that individuals read the article and understood it to be about Plaintiffs."[4] *See* Response [Dkt. 195] at 4–5. However, that explanation confirms that these statements *are* being offered for the truth of the matter asserted—i.e., that when third parties told Plaintiffs (or some other third party) that they had read the articles and that the third parties knew those articles referred to Plaintiffs, the third parties were telling Plaintiffs the truth. Given that Plaintiffs have not asserted that any non-hearsay exception applies, the Response confirms that these hearsay statements should be stricken.[5]

Finally, Plaintiffs claim that they do not need this evidence because three Whole Foods

---

[3] Plaintiffs also argue that Whole Foods was required to object to the sufficiency of Plaintiffs' interrogatory responses during the course of discovery, presumably to give Plaintiffs an opportunity to cure these issues. *See* Response [Dkt. 195] at 4. There is no rule of civil procedure that Parties must object to interrogatory responses during discovery or else they are automatically admissible.

[4] Plaintiffs also claim that "Whole Foods does not identify any specific hearsay statements they are seeking to strike that are contained within the interrogatory response." Response [Dkt. 195] at 4. This is clearly refuted by the Motion, which specifically lists 19 separate and discrete statements within Plaintiffs' interrogatory responses that contain either hearsay of what others told Plaintiffs or Plaintiffs' speculation about what others knew. *See* Motion [Dkt. _] at _.

[5] Similarly, Plaintiffs' argument that their statements are not speculative is without merit. Plaintiffs claim that "anyone working at Whole Foods in the Mid-Atlantic region **would** know that he [or she] was one of the 9 store managers" is textbook speculation about what third-parties must have known. All of the 19 individual interrogatory responses identified in the Motion contain either Plaintiffs' recitation of what some third-party told a Plaintiff (i.e., hearsay) or Plaintiffs' speculation about what some unspecified third-party read or believed.

regional executives—Sam Park, David Gearhart, and Jane Mueller—each testified that they knew these allegedly defamatory news articles referred to Plaintiffs. *See* Response [Dkt. 195] at 5–6. This is not an argument for overruling Whole Foods' Motion, but rather an additional argument for striking this evidence as irrelevant. Furthermore, as explained in Whole Foods' Reply in Support of Summary Judgment, each of these regional executives unequivocally testified that they knew why Plaintiffs were terminated long before the news articles were published. *See* Whole Foods' Reply in Supp. of Mot. for Summ. J. [Dkt. 188] at 20 (Plaintiffs have not alleged harm from these executives reading these news articles).

2. Plaintiffs' speculation or repetition of hearsay regarding why potential employers did not hire them is inadmissible.

Whole Foods also moved to exclude 25 separate statements in Plaintiffs' answers to Interrogatories 14, 16, 17, and 20 because these statements contained either Plaintiffs' speculation about why they were not hired or Plaintiffs' recitation of what third-parties told them about why they were not hired. *See* Motion [Dkt. 190] at 7–11. In Response, Plaintiffs raise the same spurious argument that interrogatory responses are automatically admissible regardless of whether they comply with the Federal Rules of Evidence. *See* Response [Dkt. 195] at 6. As outlined above, that theory is contradicted by the plain language of Federal Rule of Civil Procedure 33(c).

Alternatively, Plaintiffs claim that the statements are not being offered for the truth of the matter asserted "but instead explain how [Plaintiffs] were treated less favorably during job interviews, contain questions from interviewers, contain discussions about the articles, or contain reasons provided to Plaintiffs as to why they were not hired." Response [Dkt. 195] at 7. Once again, this explanation confirms that these hearsay statements are being offered for the truth of the matter asserted—i.e., what employers told Plaintiffs (either directly or indirectly) about why Plaintiffs were not hired is in fact true. A prime example of this is the email quoted in the

6

Response, in which a recruiter told Plaintiff Miano that the recruiter was told by a prospective employer that the "firing and now lawsuit has spooked them."[6]  What the employer said to the recruiter who then said it Miano is textbook hearsay and should be struck.[7]

Lastly, Plaintiffs argue that even if their interrogatory responses are not admissible, Plaintiffs testified about similar facts during their depositions.  *See* Response [Dkt. 195] at 8.  This argument ignores the actual objection—the issue is not the form in which Plaintiffs are trying to offer hearsay statements, it is the fact that they are offering hearsay statements at all. Plaintiffs' recitation of hearsay statements is equally inadmissible regardless if it was made during a deposition, an interrogatory response, or on the witness stand.

### 3.   Plaintiffs' speculation about what Whole Foods knew is not admissible.

Whole Foods moved for summary judgment on the fact that its statements to the press were true because Whole Foods' nationwide investigation had only revealed Improper Labor Shifting at Plaintiffs' nine stores.  Mot. for Summ. J. [Dkt. 175-1] at 4–18, 23–27. In Response, Plaintiffs cited their own interrogatory statements that "Whole Foods knows this is false" and "Whole Foods knew this statement was false."  Whole Foods moved to strike these self-serving statements because they are purely speculative regarding what Whole Foods knew at the time of its investigation.  *See* Motion [Dkt. 190] at 11–12.

---

[6] It is worth noting, of course, that this email does not refer to the alleged defamatory news articles—only to Plaintiffs' decision to file a lawsuit.

[7] Plaintiffs also argue that even if these statements are hearsay, they are subject to an exception "to show that the declarant was aware of the news articles."  *See* Response [Dkt. 195] at 7 (citing Fed. R. Evid. 803(3) and (803(21)).  However, the fact that the interviewers were aware of the news articles is irrelevant.  The only material issue is whether those interviewers "notice" of the news articles is the reason Plaintiffs did not obtain employment.  *See Owhor v. St. John Health-Providence Hosp.*, 503 Fed. App'x 307, 313–14 (6th Cir. 2012) (statement about what one person told plaintiff about specific event is not evidence of plaintiff's general reputation in the community). Plaintiffs have set forth no admissible evidence that the article prevented them from getting a job more quickly than they did.

7

Plaintiffs assert that they are not speculating because Plaintiffs will testify that they were told by regional executives to engage in Improper Labor Shifting, and that knowledge of regional executives should be imputed to Whole Foods.  Response [Dkt. 195] at 9–10.  This argument misses the relevant inquiry—the question is not what any Whole Foods employee ever knew, it is whether Whole Foods' investigation revealed Improper Labor Shifting.  It is undisputed that Plaintiffs did not disclose any of their alleged conversations with regional executives during Whole Foods' investigation and there is no evidence that Whole Foods learned about any regional policy during its investigation.  *See* Reply in Supp. of Mtn. for Summ. J. [Dkt. 188] at 17–18.

In short, Plaintiffs cannot speculate about what Whole Foods knew during its investigation based on Plaintiffs' after-the-fact explanations for their wrongdoing.  *Montgomery v. Risen*, 197 F. Supp. 3d 216, 266 (D.D.C. 2016).  Rather, the evidence must solely focus on what Whole Foods learned during its investigation to determine whether Whole Foods' statements about that investigation were substantially true.

4.   <u>The Court should strike the inadmissible speculation of Zeeshan Naqvi</u>.

Whole Foods moved to strike statements by Associate Store Team Leader Zeeshan Naqvi, who speculated that regional executives "would know" about Improper Labor Shifting.  In Response, Plaintiffs assert that Mr. Naqvi was not speculating because "it is not only a reasonable inference, but a fact, that if [regional executives] monitored team deficits, they would know of improper labor transfers."  Response [Dkt. 195] at 11.  Thus, Plaintiffs merely repeat Mr. Naqvi's speculation, without offering anything more than *ipse dixit* speculation that it must be true.

Alternatively, Plaintiffs argue that Whole Foods "opened the door" to allowing Mr. Naqvi to speculate about what others knew by submitting his declaration.  *See* Response [Dkt. 195] at 11–12.  Plaintiffs cite to no authority that would allow a witness to speculate without personal knowledge by "opening the door," nor could Whole Foods find any.  More fundamentally, though,

8

is that Mr. Naqvi's declaration expressly disavows any personal knowledge of executives being aware of Improper Labor Shifting.  *See* Naqvi Decl. [Dkt. 195-4] ¶ 16.  Although the Response is careful not to emphasize this language, Mr. Naqvi stated that "there was no such direction, encouragement or knowledge of such a policy or practice [to engage in Improper Labor Shifting] by regional leadership in the Mid-Atlantic region *to my knowledge*."  *Id.* (emphasis added).

Thus, Mr. Naqvi unambiguously denied having any personal knowledge that any executive knew about Improper Labor Shifting.  His subsequent speculation that they could have known because they monitored labor deficits is inadmissible under Rule 601.

5.   The Response confirms that Plaintiffs lack admissible evidence of compensable mental anguish.

As discussed in the Motion, a "plaintiff's own conclusory allegations that he felt 'embarrassed,' 'degraded,' or 'devastated,' and suffered a loss of self esteem, will not suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress." *Doe v. Chao*, 306 F.3d 170, 181-82 (4th Cir. 2002).[8] Because Plaintiffs have not produced anything more than allegations that they felt embarrassed or hurt by the allegedly defamatory statements, Plaintiffs have not raised a genuine issue of material fact as to special damages for mental anguish.  Motion [Dkt. 190] at 12–13.

Rather than address this precedent, the Response block quotes three pages of excerpts from Plaintiff Bautista's deposition in which she recites the reasons she felt embarrassed or degraded. *See* Response [Dkt. 195] at 13–15.  But nowhere in this soliloquy does Bautista offer any details about *compensable emotional distress*.  *See supra* n.8.  Similarly, Plaintiffs have confirmed that they will not offer any expert testimony or evidence of treatment for any alleged distress.  In short,

---

[8] *See also Lebron v. Wash. Metro. Area Transit Auth.*, 665 F. Supp. 923, 936 (D.D.C. 1987); *Evans v. Larchmont Baptist Church Infant Care Ctr., Inc.*, 956 F. Supp.2d 695, 709 (E.D.Va. 2013); *Derosier v. USPLabs, LLC*, 2011 U.S. Dist. LEXIS 132618, at *19-20 (D. Md. Nov. 17, 2011).

9

there is no evidence to raise a material fact regarding special damages for mental anguish.

      6.   <u>None of the cases cited by Plaintiffs support their speculation on lost wages.</u>

Finally, Whole Foods moved to strike each Plaintiff's speculation that their measure of lost wages was the difference between their salary at Whole Foods and their current salaries because there was no admissible evidence that they were denied a job that paid as much as Whole Foods. *See* Motion [Dkt. 190] at 14–15.  As one court aptly stated, "Plaintiff is reminded that she cannot survive summary judgment by simply speculating about the loss of future job opportunities; instead she must cite to admissible evidence to support such allegations."  *Seed v. Pruitt*, No. 16-CV-0748, 2019 U.S. Dist. LEXIS 58488, at *3 (D.D.C. Feb. 11, 2019).

In Response, Plaintiffs cite two cases in which the measure of lost wages was the difference between actual and expected wages.  However, neither case stands for the broad proposition that expected wages can be measured by the highest wage a plaintiff ever received.  Indeed, in *Hawthorne v. Canavan*, the court held that a plaintiff who was unable to work for months during her recuperation, and thus could recover as lost wages the salary she received *after* returning to work.  756 A.2d 397, 401 (D.C. 2000).  Similarly, in *Saberi v. Government of Islamic Republic of Iran*, the plaintiff was allowed to recover her prior salary because her abduction and subsequent torture by the Iranian government is the reason she lost her prior job as a news reporter; i.e., because of her kidnap and torture she lost her job and was mentally unable to return to fulltime work.  841 F. Supp. 3d 67, 86 (D.D.C. 2021).  That's a far cry from this case, where Plaintiffs lost their job before the alleged defamation and in fact found comparable jobs.

In short, Plaintiffs must present evidence that they would have obtained higher-paying employment after leaving Whole Foods but for the alleged defamation.  Plaintiffs cannot merely speculate that such higher paying jobs must have existed, and thus their proffered calculation of lost wages is inadmissible.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Gregory J. Casas*
    Gregory J. Casas
    Bar No. 455329
    300 West 6th Street, Suite 2050
    Austin, Texas 78701
    Telephone: 512.320.7238
    Facsimile: 512.320.7210
    Email: casasg@gtlaw.com

    David Sellinger
    Bar No. 282780
    500 Campus Drive, Suite 400
    Florham Park, New Jersey 07932
    Telephone: 973.360.7900
    Facsimile: 973.301.8410
    Email: sellingerd@gtlaw.com

**WHOLE FOODS MARKET SERVICES, INC.**
    John H. Hempfling, II (*Pro Hac Vice*)
    828 West 6th Street, Suite 200
    Austin, TX 78703
    Telephone: 512.542.0213
    Facsimile: 512.482.7213
Email: john.hempfling@wholefoods.com

*Attorneys for Defendants Whole Foods Market Services, Inc. and Whole Foods Market Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service, are being served this 3rd day of August, 2022, via the Court's CM/ECF System.

        By:    */s/ Gregory J. Casas*
                   Gregory J. Casas

11